Joseph B. Fiorenzo, Esq. (021421980)
David W. Phillips, Esq. (027141985)
**SILLS CUMMIS & GROSS P.C.**
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERSON REDEVELOPERS URBAN RENEWAL, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE BOROUGH OF EMERSON, NEW JERSEY, AND DANIELLE DIPAOLA,**<br><br>**Defendants.** | Civil Action No.<br><br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff Emerson Redevelopers Urban Renewal, LLC ("Plaintiff"), by its counsel Sills, Cummis & Gross, P.C., complaining of defendants, Borough of Emerson, New Jersey ("Emerson") and Danielle DiPaola, ("DiPaola"), alleges:

### THE NATURE OF THE ACTION

1.       Emerson Redevelopers Urban Renewal, LLC ("ERUR" or "Plaintiff") is the owner of certain property, and certain development rights, located at Block 419 at Kinderkamack Road between Linwood Avenue and Lincoln Boulevard in Emerson, New Jersey, upon which Plaintiff has received approval to construct a 147 Unit, four-story mixed use inclusionary development which will provide 29 Units of low and moderate-income housing, a critical component in satisfying Emerson's Fair Share Housing obligations (the "Project").  The Project has an estimated cost of approximately $48 million dollars and is intended to revitalize an area in need of redevelopment and, critically, satisfy a constitutional

obligation "of Emerson" to meet its low and affordable housing obligation needs. Plaintiff has worked diligently to perform its obligations under certain Agreements with Defendant Emerson, including the Redevelopment Agreement of December 20, 2016 (the "Redevelopment Agreement"). In proceeding forward to fulfill its obligations under the Redevelopment Agreement, Plaintiff has spent substantial sums of money in application and development costs. Despite this, newly-elected officials who took control of Emerson's government in January, 2019, led by Defendant, Mayor Danielle DiPaola ("DiPaola") have embarked upon a course of action designed to interfere, impede and ultimately destroy Plaintiff's ability to complete the Project. These actions, set forth below, have been motivated solely by political animus towards Plaintiff and the Project due to the fact that the Project will result in construction of affordable housing which Emerson, through its newly-elected public officials, including Defendant DiPaola, vehemently oppose. These actions by the Defendants in seeking to interfere with Plaintiff's contractual rights, and impede construction of the Project, are an attempt to appease and curry favor with the residents of Emerson who Defendants perceived were opposed to the Project.

2.     Plaintiff brings this action against Defendants for violation of its constitutional rights, breach of contract, breach of the covenant of good faith and fair dealing, and for various other legal and equitable relief as a result of Defendants' unlawful actions which represent a repudiation of the Redevelopment Agreement and are motivated by improper political attempts to interfere with constitutionally-mandated affordable housing, and constitute little more than a transparent and illegal attempt to deprive Plaintiffs of their property rights under the color of law, in violation of 42 U.S.C., Sec. 1983.

3.     Every municipality in New Jersey has an obligation to provide its fair share of lower income housing, as first enunciated in *Southern Burlington County N.A.A.C.P. v. Mount Laurel Township*, 67 N.J. 151 (1975). *Mount Laurel I*, generally heralded as one of the great civil rights decisions, was

intended to prevent local municipalities from excluding lower income housing – a practice the New Jersey Supreme Court recognized was inherently driven by racial discrimination.  Resistance was immediate and organized, and recalcitrant municipalities devised many methods for avoiding the decision and opening their communities.  Eventually, the New Jersey Supreme Court pushed back in *Mount Laurel II*, and the State passed the Fair Share Housing Act.  In 2015, in an effort to address continuing recalcitrance, in *In re N.J.A.C. 5:96 & 5:97*, 221 N.J. 1 (2015), the Court reinstated the ability of developers to sue recalcitrant municipalities in Superior Court – but gave the recalcitrant municipalities one last chance – a 30 day window to file a declaratory judgment action seeking a judicial determination of their fair share, and mandating a plan to achieve that fair share.

4.      In an effort to protect itself from builder's remedy lawsuits, Emerson filed just such a declaratory judgment action in Superior Court for a judicial determination of its fair share obligation and a plan for meeting that obligation in an action entitled *In the Matter Of Application of the Borough of Emerson, Bergen County, New Jersey, for a Declaratory Judgment*, Superior Court of New Jersey, Bergen County, Docket No. BER-L-6300-15 (the "Mt. Laurel Litigation").

5.      Ultimately, in an effort to protect itself against Mt. Laurel builder's remedy lawsuits, Emerson was compelled to enter into a Redevelopment Agreement on or about June 27, 2016.  This Redevelopment Agreement was a critical component of satisfying Emerson's constitutionally-mandated fair share of low and moderate-income housing and specifically provided that Plaintiff was entitled to redevelop a section of downtown Emerson generally known as Block 419 or the Emerson Train Station project (the "Project").  The Project, among other things, consists of a four story, mixed use inclusionary apartment building, with a 20% set aside for fair share housing units.

6.      The Mt. Laurel Litigation was ultimately settled, which Settlement Agreement was implemented through two critical documents: (a) A January 25, 2019 Conditional Final Judgment of

Compliance and Repose,  (the "Fair Share Judgment" or "Final Judgment"); and (b) a Settlement Agreement which was incorporated into the Fair Share Judgment.

7.       Pursuant to the Fair Share Judgment, Emerson is required to have an additional 53 low to moderate income units.  Of these, 22 units are to be the low income/moderate income units built by Plaintiff in the Project, and another 7 units are to be built by Plaintiff at another site to be determined.

8.       All of these carefully orchestrated agreements, approved by the Court and Special Master, were swept away with the November, 2018 Emerson elections that brought into power defendant DiPaola and her slate of candidates who ran on a platform of stopping the Project as approved by the Court, Special Master, Plaintiff and Emerson through its previous administration.

9.       Since January, 2019, when Defendant DiPaola and her affiliates took control of the levers of power in Emerson, at the direction of Defendant DiPaola, Defendant Emerson, through its agents and employees, has engaged in a continuing course of conduct under color of law, as set forth in detail below, which has interfered with Plaintiff's contractual rights and the construction of affordable housing, through a continuing stream of frivolous roadblocks and impediments to development, and whose goal is to so delay and harm the Project as to make it not economically viable.  Indeed, this course of action has already caused substantial loss and damage to Plaintiff.

## THE PARTIES

10.       Plaintiff is a New Jersey limited liability company with its principal place of business located in New Jersey.

11.       Defendant DiPaola is the Mayor of Emerson, New Jersey, and has an address of 146 Linwood Avenue, Emerson, New Jersey 07630.

12.       Defendant Emerson is a municipal corporation organized under the laws of the State of New Jersey and has an address of 146 Linwood Avenue, Emerson, New Jersey 07630.

## JURISDICTION

13.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

14.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201(c) and 2202.

15.      The Court has jurisdiction over Plaintiff's New Jersey state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because the state law claims form part of the same case or controversy and are so related to the claims in the action within such original jurisdiction.

16.      The Defendants are all residents of the State of New Jersey, and subject to the personal jurisdiction of this Court.

## VENUE

17.      Venue is proper in this District under 28 U.S.C. §§ 1391(b). Venue is proper because Defendants are located in this judicial district.  Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

18.      In *Mount Laurel I* [1] and *Mount Laurel II*,[2] the New Jersey Supreme Court wrote what is commonly called the *Mount Laurel Doctrine*, considered to be one of the most important civil rights cases in this country's history: "The New Jersey Supreme Court's 1983 ruling in the *Mount Laurel* fair-housing case is rightly regarded as one of the most important civil rights decisions of modern times.  The ruling, which greatly influenced fair-housing policy across the nation, limited the use of exclusionary zoning as

---

[1] *Southern Burlington County NAACP v. Township of Mount Laurel*, 67 N.J. 151 (1975).

[2] *Southern Burlington County NAACP v. Township of Mt. Laurel*, 92 N.J. 158 (1983).

a means of preventing the construction of affordable housing in wealthy communities." "*The Mount Laurel Doctrine*," New York Times, Editorial page, January 28, 2013.

19.     The Court held that municipal land use regulations that restrict development of low and moderate income housing in communities are unconstitutional.  New Jersey municipalities were ordered to provide a "realistic opportunity" for development of low and moderate-income housing.

20.     In *Mount Laurel I*, the Supreme Court described the constitutional grounds on which the *Mount Laurel Doctrine* rests: "Procedurally, we think the basic importance of appropriate housing for all dictates that, when it is shown that a developing municipality in its land use regulations has not made realistically possible a variety and choice of housing, including adequate provision to afford the opportunity for low and moderate income housing or has expressly prescribed requirements or restrictions which preclude or substantially hinder it, a facial showing of violation of substantive due process or equal protection under the state constitution has been made out and the burden, and it is a heavy one, shifts to the municipality to establish a valid basis for its action or non-action."

21.     At its core, *Mount Laurel I* was a racial discrimination case: "The case dates back to the late-1960s, when a group of low-income African-Americans found themselves priced out of the increasingly expensive suburb of Mount Laurel, not far from Philadelphia.  They sued after local authorities barred the construction of a small affordable-housing project."  New York Times, *supra*. "[E]xclusionary zoning practices are also often motivated by fear of and prejudices against other social, economic, and racial groups."  *Mount Laurel I*, at 736.  Thus, following in the footsteps of desegregation cases such as *Brown v. Board of Education*, the *Mount Laurel Doctrine* aims to correct endemic segregation and discrimination in New Jersey housing.

22.     In *Mount Laurel II*, the Court found that there was "widespread non-compliance with the constitutional mandate of our original opinion in this case."  The court continued: "In *Mount Laurel I*, this

Court held that a zoning ordinance that contravened the general welfare was unconstitutional.  We pointed out that a developing municipality violated that constitutional mandate by excluding housing for lower income people; that it would satisfy that constitutional obligation by affirmatively affording a realistic opportunity for the construction of its fair share of the present and prospective regional need for low and moderate income housing."

23.     The Supreme Court specifically sought legislative action to implement the constitutional imperative expressed in the *Mount Laurel Doctrine*.  Thus, in 1985, New Jersey passed the Fair Housing Act, N.J.S.A. § 52:27D-301, et seq.

24.     The Fair Housing Act created the Council on Affordable Housing (COAH) to assess the statewide need for affordable housing, allocate that need on a municipal fair share basis, and review and approve municipal housing plans aimed at implementing the local fair share obligation.

25.     For many years, Emerson made no efforts to fulfill its constitutional duty of providing its fair share of affordable housing in its community.

26.     Sometime in 2006, Emerson adopted a Redevelopment Plan for its downtown area, pursuant to which the area known as Block 419 ("Block 419" or the "Property") was found to be an area in need of redevelopment and provision was made in the Redevelopment Plan for the building of affordable housing.  Upon information and belief, this site was designated because there existed a variety of constraints that assured that affordable housing could not be built.

**EMERSON SEEKS PROTECTION AGAINST BUILDER'S REMEDY SUITS
AND FILES THE MT. LAUREL LITIGATION WHICH IS SETTLED
BY INCLUSION OF THE PROPERTY TO MEET ITS MT. LAUREL OBLIGATION**

27.     In 2015, in response to *In re N.J.A.C. 5:96 & 5:97*, 221 N.J. 1 (2015), Emerson filed a declaratory judgment action in Superior Court of New Jersey, seeking a declaration as to its unmet fair share housing needs, and a judgment of compliance and repose, preventing institution of builder's remedy lawsuits against the borough.  *In The Matter Of The Application Of The Borough Of Emerson, New Jersey, For A Declaratory Judgment*, Superior Court of New Jersey, Bergen County, BER-L-6300-15 (the "Mt. Laurel Litigation").

28.     In order to demonstrate the viability and suitability of Block 419 as an Affordable Housing site, and since it was a critical component for satisfying the Court and Special Master that it would create a plan to truly address its Affordable Housing obligation, Emerson was required to take actions that would facilitate and cooperate with the development of that site.

29.     Emerson issued a Request for Proposals from developers for redevelopment of Block 419, to which Plaintiff responded, and ultimately was selected as the Designated Redeveloper.

30.     On June 27, 2016, Plaintiff entered into a Redevelopment Agreement with Defendant Emerson, setting forth the terms and conditions pursuant to which the Project would be developed on Block 419 by Plaintiff (the "Redevelopment Agreement").  The Redevelopment Agreement was an essential component part to Emerson conveying to the Court and Special Master its good-faith effort to comply with its Affordable Housing obligations.

31.     On December 20, 2016, in furtherance of the terms of the Redevelopment Agreement, Emerson amended its Redevelopment Plan by Ordinance No. 1535-16 (the "Redevelopment Plan Ordinance").

32.     The Redevelopment Agreement, as amended, provided, among other things, as follows:

- 8 -

A.  It authorized Redevelopment of Block 419 for a four-story, 147 Unit mixed use inclusionary development for the property located at Kinderkamack Road in Emerson, between Linwood Avenue and Lincoln Boulevard, which is designated as Block 419, Lots 1-4, 6.01, 6.02, 7-10 on the Tax Map of Emerson (the "Property").

B.    Critically, it intended the Project as providing 29 units of low and moderate-income housing representing 55% of Emerson's affordable housing obligation which was a key component to satisfying Emerson's Fair Share Housing obligations.

### EMERSON SETTLES THE MT. LAUREL LITIGATION

33.    The Redevelopment Agreement makes plain that Defendant Emerson, is obligated to cooperate and provide consent in order to ensure that construction moves forward promptly.  Article 13, paragraph 13.01, expressly provides as follows:

> The parties hereto agree to cooperate with each other and to provide all necessary and reasonable documentation, certificates, and consents in order to satisfy the terms and conditions hereof, and the Terms and conditions of the Plan.

34.    On or before November 21, 2017, Emerson reached a settlement with the Fair Share Housing Center in the Emerson DJ Action, as to how Emerson would meet its fair share obligations (the "Settlement Agreement").  Of Emerson's realistic development potential of 53 units, 29 were to be built in the Project, although Plaintiff has the ability to develop 22 on-site and 7 off site.  Thus, the Project was responsible for fulfilling 55% of Emerson's constitutional obligation for affordable housing.

35.    The Settlement Agreement makes clear that Emerson did not voluntarily enter into the Redevelopment Agreement, but did so only because it was compelled to in order to satisfy its constitutional obligation and to demonstrate that there would no longer be any impediments to developing Block 419:

> The Borough is providing a realistic opportunity for the Block 419 Project through is prior issuance of a Request for Proposals from redevelopers on January 8, 2016; publishing a ranking of Plaintiff respondents, and then executing a Redevelopment Agreement, first Amendment to Redevelopment Agreement and Second Amendment to Redevelopment Agreement (hereinafter collectively. referred to as "Redevelopment Agreement" and attached hereto as Exhibit B) with Emerson Redevelopers Urban Renewal, LLC (Redeveloper), the selected redeveloper ranked the highest in the review by the Governing

Body.  Plaintiff has been pursuing good faith negotiations with each of the property owners within the Block 419 Project area, and currently holds options for all but two of the properties.  In the event Plaintiff is not able to purchase one or more property(s) through good faith negotiations prior to the end of the first quarter of 2018, Plaintiff shall request that the Borough assist It in purchasing such or acquiring such properties as permitted under N.J.S.A. 40A:12A-8(c), 20:3-1. et. al., N.J.S.A: 52:27D-801 et al. and/or any other laws that grant the Borough the authority to acquire such properties.  The Borough will expeditiously undertake good faith negotiations with any remaining property owner(s), and in the event that good faith negotiations are unsuccessful, the Borough is committed to moving to immediately acquire the properties through eminent domain.

36.    In further implementation of the Settlement Agreement, and consistent with the Redevelopment Agreement, Emerson adopted, on December 6, 2018, the "Emerson Housing Element and Third Round Fair Share Plan (the "Third Round Plan"), which states in relevant part:

> The Block 419 Project is an integral component of the Borough's Fair Share Plan. This project is necessary and useful for the construction of 29 low and moderate income family rental housing units in a centrally located portion of town, with easy access to both bus and train lines for commuters.  To accomplish this Project, the Borough of Emerson issued a Request for Proposals from redevelopers on January 8, 2016; publishing a ranking of Plaintiff respondents, and then executing a Redevelopment Agreement, First Amendment to Redevelopment Agreement and Second Amendment to Redevelopment Agreement (hereinafter collectively referred to as "Redevelopment Agreement" with Emerson Redevelopers Urban Renewal, LLC (Redeveloper).  The selected redeveloper ranked the highest in the review by the Governing Body

37.    On December 10, 2018, Plaintiff appeared before the Emerson Land Use Board on an application for Site Plan approval for construction of the Project, as contemplated by the Settlement Agreement.  Following a Hearing before the Board, a vote was taken and the Project was approved (the "Site Plan Approval").

38.    On December 14, 2018, the Court-appointed Special Master, Mary Beth Lonergan, filed her "Master's Report For A Mount Laurel Compliance Hearing Borough of Emerson, Bergen County, *IMO Application of the Borough of Emerson*, Docket No. BER-L-6300-15," dated December 14, 2018 (the "Special Master's Report").  In her Report, the Special Master addressed the issue of Emerson's compliance with the Settlement Agreement in preparation for a compliance hearing before the  Court on December 28, 2018, she stated:

Public notice of the Borough's January 24, 2018 fairness hearing (subsequently adjourned to March 23, 2018 and then to May 21, 2018) was published in accordance with established Mount Laurel case law. In response to the public notice, the Borough received objections in a letter, dated January 8, 2018, from Richard P. De Angelis, Esq. on behalf of 214 Kinderkamack, LLC ("214 Kinderkamack" or "objector") and Delores Della Volpe, Trustee ("Della Volpe" or "objector"), property owners in the Borough whose properties are located in the Block 419 redevelopment area which contributes significantly to the Borough's RDP. FSHC and the Borough filed responses to the De Angelis objections and the Borough filed a motion to compel the intervention of the objectors to ensure that any court decision in the Borough's declaratory judgment matter would also be binding in the other matter challenging the Borough's local redevelopment and housing law ("LRHL") procedures or future legal challenges.

On March 16, 2018, I submitted a *Fairness Report* in which I recommended that the Court approve the Settlement Agreement and grant the Borough 120 days to comply with the requirements of that Agreement and the recommendations of my report. My recommendation was contingent on the Court finding that the Borough has a right, through the NJ Fair Housing Act ("FHA"), to condemn the objectors' properties for an inclusionary development by a for-profit redeveloper.

In a May 21, 2018 order, the Court denied the Borough's motion to compel intervention by 214 Kinderkamack and Della Volpe but granted the Borough's motion to deem that the objectors are on notice of the fairness hearing and granted the Borough's motion to "deem that 214 and Della Volpe be bound by the Court's findings at the Fairness Hearing...to the extent that all non-parties and members of the public are so bound."

On June 15, 2018, the objectors submitted a letter continuing to object to the realistic opportunity of the Block 419 redevelopment site in the Borough's Plan and requesting the full adjudication of the redevelopment dispute prior to a final judgment of compliance and repose. On June 20, 2018, the Court held the continuation of the Borough's Fairness Hearing. On June 29, 2018, the Court issued an order declaring that "the Settlement is fair and reasonable to low and moderate income persons and that the properties located within Block 419 Redevelopment Project area are all 'necessary or useful' to provide low and moderate income housing" (see attached June 29, 2018 order).

Subsequently, the Borough provided appropriate notice for a Compliance Hearing to be held on August 23, 2018 which was adjourned to December 10, 2018 and ultimately to December 21, 2018. We are not aware of any comments or filed objections filed regarding the Borough's compliance plan.

39.     The Special Master's Report also addressed Block 419 and its importance to satisfaction

of Emerson's Mt. Laurel obligation:

**Block 419 Redevelopment**

Emerson is proposing to redevelop the entirety of Block 419 (Lots 1-5, 6.01, 6.02, and 7-10) in the Borough's downtown with a mixed-use multi-family inclusionary rental development. The Borough has provided a redeveloper's agreement, dated June 27, 2016, and two (2) amendments, dated October 4, 2016 and November 20, 2017, for Block 419. The second amendment of Plaintiff's agreement includes an affordable set-aside requirement of 20%, and a requirement that at least 15% of all units be affordable and provided on-site. The remaining units may be provided at another location in the Borough, through a payment-in-lieu of construction ("PIL"), or a combination of off-site units and a PIL. Pursuant to the Settlement Agreement, Plaintiff will provide 29 affordable units, including 22 on-site affordable units and seven (7) affordable units through an off-site mechanism and/or a PIL as established in Plaintiff's agreement. The Settlement Agreement also stipulates that the Borough will show, at the July 2020 midpoint review, how it will provide a realistic opportunity for the affordable units provided off-site or through a PIL. The agreement and amendments do not expressly identify age-restrictions or status as rental or for-sale with regard to the affordable units provided as part of the redevelopment.

Special Master's Report, p. 8. At the conclusion of the Special Master's Report, Ms. Lonergan recommended that the Court enter a Conditional Final Judgment of Compliance and Repose.

40. Consistent with the Settlement Agreement and in furtherance of its constitutional obligation, on December 28, 2018, Defendant Emerson, acting through the Emerson Land Use Board adopted a Resolution approving Plaintiff's Site Plan application for construction of Block 419, as required under the Settlement Agreement (the "Site Plan Approval").

41. On January 25, 2019, a "Conditional Final Judgement of Compliance and Repose" was entered by the Superior Court in the Mt. Laurel Litigation (the "Final Judgment" or "Fair Share Judgment") which incorporated recommendations of the Special Master and, in substance, ordered Emerson to proceed forward with the Project which would result in the construction of 29 units of affordable housing, which comprised 55% of the total affordable housing obligation of Defendant Emerson.

**DEFENDANT'S VIOLATION OF PLAINTIFF'S
CONTRACTUAL RIGHTS AS REDEVELOPER AND EFFORTS TO
INTERFERE WITH CONSTRUCTION OF AFFORDABLE HOUSING**

42.     Defendant Emerson, through its then government officials, was supportive of redevelopment of the Property, since it held the key to satisfying 55% of its affordable housing obligation under Mt. Laurel.

43.     However, all of that changed when Emerson elected Defendant DiPaola, who ran a political campaign openly hostile to the Project and openly telling the electorate that she would impede or stop the Project in the form that it was proposed.

44.     On November 8, 2018, an election occurred which brought a change to government in Emerson.  Defendant DiPaola, who ran for Mayor was elected following a campaign in which her stated purpose was to obstruct and interfere with Plaintiff's development rights and the construction of affordable housing intended to primarily benefit the poor and minorities.

45.     Immediately following her election victory, Defendant DiPaola, made plain her intent to obstruct construction of the four-story development project and that she would oppose the town's contractual obligation to utilize eminent domain to acquire portions of the Property in order for the Project to proceed:

> Since 2010, DiPaola has served the borough as a councilwoman, but said she decided to run for mayor because she "didn't like the direction the town was going in," with particular concerns about overdevelopment in the downtown.
>
> *          *          *
>
> On a larger scale, DiPaola, who served on the borough's Land Use Board in the past, would like to ensure development in the downtown is done in a "reasonable" way "that isn't four-story buildings."
>
> "Everyone has this idea that I'm against development, but I'm not against it," said DiPaola. "I'm against eminent domain. I would like to move forward and bring positive change to the downtown." (www.northjersey.com)

46.     Additionally, shortly after the election, Defendant DiPaola, called upon town officials to take no further action to fulfill Emerson's obligation under the Settlement Agreement until January when she would be sworn in as Mayor:

> A vocal critic of elements of an ambitious mixed-use redevelopment plan taking shape under Lamatina, she called her Nov. 6 election "a referendum on overdevelopment."

> "We swept, all three of us. It was great. We won, but what really happened is that Emerson won," DiPaola told Pascack Press the morning of Nov. 7.

> Later in the day, she added, "The people of Emerson have spoken. It is apparent that the people have serious concerns about the direction the town was taking. I would ask that the governing body, out of respect to the voters, take no further action [on redevelopment] until January."

47.     On December 14, 2018, Defendant DiPaola, continued to publically pronounce her opposition to the Project which was legally binding upon Defendant Emerson, by virtue of the Settlement Agreement, the Redevelopment Agreement and the Final Judgment:

> DiPaola reminded the board she and her ticket swept in on the issue of overdevelopment. She derided the proposal's rendering as too big and boxy, particularly compared to the first pitch rendering, which she held up for comparison.

> She asked the board whether the new design was "really what you want to see in the downtown for the next 100 years."

48.     Upon being sworn in as Mayor on January 2, 2019, Defendant DiPaola, undeterred by the Settlement Agreement, Redevelopment Agreement, the Final Judgment, or Emerson's constitutional obligation to provide low and moderate-income affordable housing, again publically announced to the press her intention to obstruct and terminate the Project:

> DiPaola, Gordon and Hoffman (returned after two terms, 2005 through 2010) had campaigned hard on the issue of what they called overdevelopment, taking aim at the four-story Block 419 redevelopment project long taking shape and just approved.

> With her rise, DiPaola, who often found herself the lone no vote on Block 419 matters, might well find herself presiding at the project's ribbon cutting.

49.     On January 23, 2019, Defendant DiPaola, made clear her objective to block Plaintiff's ability to develop the Project pursuant to the Agreements and Court Order unless Plaintiff was willing to "scale back" the Project:

> She said affordable housing and redevelopment were the big ticket items she is carrying over but said she wanted to renew outreach to senior citizens "and dealing with our community members and making sure that we really do represent our motto, The Family Town."

> She added, "I think we've gotten a little bit lost on trying to do big projects. We're going to continue with all of the drainage projects that we've started and we have a lot of grants for those."

> Downtown redevelopment is in the process of acquiring properties, she said.

> In the meantime, she said, "We're trying to scale this back and make it more of a reasonable development that is friendlier to our small downtown."

50.     Defendant DiPaola was well aware that since the Project required below-market affordable housing, it could only be economically viable at the size and scope contained in the Settlement Agreement and understood that to "scale back" the Project would render it not economically viable and, thus, kill the Project.

51.     True to her word, Defendant DiPaola, under color of law using the instruments of the government in Emerson, has engaged in a series of actions designed to accomplish her goal of terminating the Project.  The defendants have engaged in a series of acts, including intentional delays and compelling Plaintiff to take actions not required under the Agreements or applicable law.  All of these actions have had the cumulative effect of interfering with Plaintiff's property rights and causing substantial damages.

52.     The actions of Defendants to interfere with the Redevelopment Agreement, Settlement Agreement and Final Judgment, and to impede the construction of affordable housing, including, but are not limited to, the following:

> a.   **<u>Refusal to issue demolition permit.</u>**  The Defendants arbitrarily refused to issue demolition permits by frivolously taking the position that Plaintiff had to first show

full resolution compliance and obtain all outside agency approvals. There existed no legal basis whatsoever for these frivolous demands and they were made solely to interfere with the ability to move forward with construction. Eventually, after considerable delay, and knowing that their position was defenseless, they were forced to relent and issue the demolition permit.

b. **Refusal to issue fence permit.** After applications for fence permits were submitted in the form and manner sought by Emerson, and in compliance with the site plan application, at last minute, Emerson demanded to conduct a new review of the area to be fenced, and withheld approval of the permit. Incredibly, at the same time, Emerson asserted that Plaintiff was not securing the Project sufficiently and that there were squatters in the vacant buildings. These arbitrary actions were a transparent attempt to delay construction, cause economic harm to the Project, which Defendants hoped would make the Project not economically viable.

c. **Demand for inappropriate information from asbestos contractor.** When asbestos removal began, the Borough demanded that the asbestos removal contractor file for a Borough permit, as well as provide the names of all their workers and insurance information. These demands were arbitrary, capricious and without any legal basis, and were designed to delay and impede Plaintiff's ability to move forward with construction. Ultimately, because its demands were frivolous, the improper request was withdrawn, but only after significant harm and damage to the Project.

d. **Denial of permits for utility disconnections.** Defendants arbitrarily and capriciously denied Plaintiff's application for permits by frivolously demanding that Plaintiff obtain documentation from the NJDEP concerning the alleged monitoring wells. Defendants had no right to attempt to impose such precondition and they knew that the monitoring wells had been decommissioned years ago and were no longer in use, despite these demands which caused further delay.

e. **More delay of demolition permits.** The Borough still further delayed the demolition permits by insisting that all the demolition permits, for every lot in the Project, had to be completed and submitted at once. This also had no basis in law, or good construction (or demolition) practices, and caused further delay and effort.

f. **Refuse to issue sewer and water cutting and capping permits.** The Borough unnecessarily refused to process and issue permits for the cutting and capping of the sewer and water lines until all the demolition was complete for all of the lots. This again caused delay and expense.

g. **Signoff by fire and police.** Defendants imposed the frivolous requirement that the Fire and Police officials physically sign an acknowledgement that any concerns of theirs are being addressed despite the fact that there was an approved Site Plan.

h. **Delay in issuance of resolution compliance.** Defendants have frivolously imposed conditions through a "Resolution of Compliance" which have no basis in

- 16 -

law, or fact, and which have had the effect of unduly delaying the Project's construction.   After substantial delay, when the Borough Engineer issued a Resolution Compliance letter, it contained myriad demands, contrary to the law and contrary to the approved Site Plan.  All of this had the intended effect of causing substantial delay and damage to Plaintiff.

i.  **Refusal to execute municipal consent for TWA.**  Currently, the Borough has refused to issue its consent for the Treatment Works Approval ("TWA").  In fact, the Borough has missed its deadline under law to consent or object to the issuance of the TWA to Redeveloper, so Plaintiff can proceed without the Borough's consent.  However, the Borough's refusal to act on the request caused additional substantial delay in the Project.

j.  **Failure to contest prerogative writ lawsuit.**  A prerogative writ action was filed challenging the Borough's December 28, 2018, Resolution memorializing site plan approvals for the Project, as well as the entire Redevelopment Plan put in place in 2006, *Hassan v. Borough of Emerson*, Superior Court of New Jersey, Bergen County, Docket No. BER-L-002577-19.  Although the Complaint was filed well after the 45 day deadline of R. 4:69 to challenge the Resolution, and despite several communications from Redeveloper and its counsel, the Borough failed to answer or otherwise respond to the lawsuit, in an obvious attempt to have a default judgment entered invalidating the Site Plan approval Defendant Emerson, at the direction of Defendant DiPaola, failed to answer or otherwise respond to the lawsuit, in violation of its duty to cooperate and the covenant of good faith.   This jeopardized not just the Project, but Emerson's fair share housing settlement and the Court's Judgment of repose and compliance in this action.  Redeveloper was forced to intervene in the lawsuit and move for dismissal, which was granted with prejudice.  The Defendants never filed an answer to the lawsuit in the hope that it would terminate the Project.

k.  **Failure to respond to cease & desist letter.**  After the Settlement Agreement, the Conditional Final Judgment, and the dismissal of the *Hassan* prerogative writ suit, counsel for Cork & Keg purported to demand that the Borough "cease and desist" from redeveloping Block 419 with the Project, and demanded that the Borough refuse to issue demolition permits.  Incredibly, the Borough again made no response to this demand, and left it to Plaintiff to respond to counsel.

l.  **Failure to proceed with condemnation of Caiqui Zheng.**  Defendants were informed that Plaintiff was unable to purchase the leasehold interest on the property of Caiqui Zheng and, as a result, condemnation proceedings must be initiated as required by the Settlement Agreement.  In an effort to further delay the Project and drive up its costs, Defendants unjustifiably delayed in initiating the condemnation which was necessary for development of the Project.

53.     The cumulative effect of the conduct of the Defendants is undeniable.  Consistent with the promises made by Defendant DiPaola, when she ran for Mayor, the Defendants have engaged in every

technique they could muster to interfere with and delay the Project in order to stop the construction of affordable housing by driving up the cost of the Project to such an extent that the Project is no longer economically viable, thus, effectively terminating the Project.

54.     As quoted in an article in the Pascack Press, Defendant DiPaola, made clear that her opposition to the Project was directly connected to affordable housing:

> Mayor Danielle DiPaola, a Republican who inherited Democratic predecessor Louis Lamatina's agreements for a major mixed-use redevelopment project downtown, told the Greater Pascack Valley Chamber of Commerce on Jan. 29 that the borough has lost "seven of its thriving businesses due to redevelopment in the name of affordable housing."

> In order to get 29 affordable housing units, Emerson "lost seven businesses so far. Two others are still open and they're fighting for their lives," she said at the chamber's annual mayors breakfast at The Iron Horse Restaurant in Westwood.

55.     Plaintiff has continually objected to the delay and obstruction orchestrated by the Defendants in order to interfere with the Project and the construction of affordable housing.

56.     In an effort to further delay and obstruct the Project, Defendant Emerson, as orchestrated by Defendant DiPaola, on March 3, 2020, adopted a Resolution authorizing Emerson's counsel to file a lawsuit against the Plaintiff relating to the Project, understanding that this further interfered with Plaintiff's rights under the Redevelopment Agreement to construct affordable housing.  In the video of that meeting, it shows the Board taking a break to go into closed session to discuss the filing of a lawsuit against Plaintiff, and when they returned, the Mayor asked for a motion to authorize the filing of the suit.  The governing body members, including Defendant DiPaola, are laughing, chortling and tripping over each other to be the first to "so move" and "second" before enthusiastically adopting the motion.

57.     Pursuant to Paragraph 3.04 of the Redevelopment Agreement, Emerson agreed that if Plaintiff is successful in enforcing any of its rights under the Redevelopment Agreement, Emerson must pay Plaintiff's attorneys fees and costs: "In the event a party is successful in enforcing any of its rights hereunder, such unsuccessful party shall pay and reimburse the successful party for all of its reasonable

attorneys fees together with any costs and expense incurred by the successful party in enforcing its rights hereunder."

## FIRST COUNT

**(Violations of Plaintiffs' Rights to Substantive Due Process,
Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. §§ 1983 and 1988)**

58.     Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

59.     At all times relevant to this action, Plaintiff has had, and continues to have, a protected constitutional interest in and to the contractual rights set forth in the complex Redevelopment Agreement, and the underlying property on which the Project is to be developed.  Plaintiffs also have the right to be free from unlawful action by Defendants, who are acting under color of law with respect to the property rights of Plaintiffs.

60.     Further, Emerson has a constitutionally mandated obligation to provide its fair share of low and moderate income housing in the borough.

61.     As set forth above, Defendants Emerson and DiPaola have sought to derail and destroy the Project through a course of delay and obstruction.

62.     Defendants' actions are not related to a legitimate State interest, and are motivated by bias, bad faith and/or partisan political reasons and personal reasons unrelated to a proper governmental purpose and shock the conscience.

63.     This is far from a common planning dispute.  Like Bridgegate, this is a form of self-dealing for the benefit of the Mayor's and her cronies' own dislike of the Project.  Defendants' actions to hinder and destroy the Project will cause Emerson to be in violation of its constitutionally mandated obligation to provide low and moderate income housing, and expose it to builder's remedy lawsuit, all at the expense

of the public good and in violation of court orders and settlements.  Such conduct, in light of Emerson's long history with this redevelopment project, and its long failure to comply with *Mount Laurel I*, shocks the conscience and cannot be tolerated or condoned.

64. Mayor DiPaola and the Emerson Council were at all times relevant acting under color of State law at all relevant times.

65. Defendants' actions violate Plaintiffs' right to substantive due process under the Fourteenth Amendment to the U.S. Constitution and Plaintiffs have been, and will continue to be, damaged by such actions.

**WHEREFORE**, Plaintiff Emerson Redevelopers Urban Renewal, LLC, demands judgment against Defendants for the following relief:

A. Restraining Defendants, or any of their agents, servants and employees from taking any actions to interfere with Plaintiff's rights under the Redevelopment Agreement;

B. Ordering Defendants to specifically perform their obligations under the Redevelopment Agreement, including their duty to cooperate, by promptly granting approvals and cooperation pursuant to the Redevelopment Agreement, the Final Judgment, and the Site Plan approval;

C. Compensatory damages;

D. Punitive damages;

E. Plaintiffs' costs of suit, including reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §§ 1983 and 1988; and

F. Such other and further relief as the Court may deem equitable and just.

## SECOND COUNT
### (Violation of Plaintiffs' Right to Equal Protection, Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. §§ 1983 and 1988)

66. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

67.     As set forth above, Defendants, acting under color of law, have violated Plaintiffs' constitutional rights by interfering with Plaintiffs' ability to develop the Project for improper motives and by treating Plaintiffs differently from others similarly situated.

68.     Plaintiffs own a protected property right in the Project as Plaintiff pursuant to the Redevelopment Agreement, the Settlement Agreement and the Conditional Final Judgment of Compliance and Repose.

69.     Defendants have no rational basis for treating Plaintiff differently from others similarly situated and are motivated by political animus which is rooted in their desire to interfere with their constitutional obligation to provide affordable housing.

70.     As set forth above, and based upon Mayor DiPaola's public pronouncements and statements in the media, the motives causing her to treat Plaintiffs differently from those similarly situated derived from her personal animosity to the Project.

71.     Defendants treated Plaintiff differently from other developers by the delay and obstruction of the Project detailed hereinabove, which delay and obstruction upon information and belief were visited solely on Plaintiff and the Project.

72.     Defendants' actions were, and continue to be, irrational and wholly arbitrary.

73.     As such, Defendants' actions violate Plaintiff's right to equal protection under the Fourteenth Amendment to the U.S. Constitution and under the Constitution of the State of New Jersey.

74.     As a direct and proximate result of Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered substantial damages.

**WHEREFORE**, Plaintiff Emerson Redevelopers Urban Renewal, LLC, demands judgment against Defendants for the following relief:

A.     Restraining Defendants, or any of their agents, servants and employees from taking any actions to interfere with Plaintiff's rights under the Redevelopment Agreement;

B.     Ordering Defendants to specifically perform their obligations under the Redevelopment Agreement, including their duty to cooperate, by promptly granting approvals and cooperation pursuant to the Redevelopment Agreement, the Final Judgment, and the Site Plan approval;

C.     Compensatory damages;

D.     Punitive damages;

E.     Plaintiffs' costs of suit, including reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §§ 1983 and 1988; and

F.     Such other and further relief as the Court may deem equitable and just.

## THIRD COUNT
### (Breach of Contract)

75.     Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Amended Complaint as if fully set forth herein.

76.     As set forth above, Plaintiff and Emerson are parties to the Redevelopment Agreement.

77.     As set forth above, Plaintiff has performed its obligations under the Redevelopment Agreement diligently and in good faith.

78.     The actions of Defendants in delaying and obstructing as set forth hereinabove the Project are in breach of the Redevelopment Agreement.

79.     The actions of Defendants have delayed Plaintiff's ability to move forward and complete the Project and have caused substantial damage.

80.     As a direct and proximate result of this conduct, Plaintiff has suffered damages, together with costs, expenses, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff Emerson Redevelopers Urban Renewal, LLC, demands judgment against Defendants for the following relief:

A.      Restraining Defendants, or any of their agents, servants and employees from taking any actions to interfere with Plaintiff's rights under the Redevelopment Agreement;

B.      Ordering Defendants to specifically perform their obligations under the Redevelopment Agreement, including their duty to cooperate, by promptly granting approvals and cooperation pursuant to the Redevelopment Agreement, the Final Judgment, and the Site Plan approval;

C.      Compensatory damages;

D.      Attorneys' fees and costs of suit; and

E.      Such other and further relief as the Court may deem equitable and just.

## FOURTH COUNT
### (Breach of Cooperation Covenant)

81.     Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

82.     In Article 13, Paragraph 13.01, of the Redevelopment Agreement, Emerson agreed as follows: "The parties hereto agree to cooperate with each other and to provide all necessary and reasonable documentation, certificates and consents in order to satisfy the terms and conditions hereof and the Terms and conditions of the Plan."

83.     Defendants have breached the express covenant of cooperation by failing to cooperate, by interfering with, hindering and obstructing the Project, as set forth above.

**WHEREFORE**, Plaintiff Emerson Redevelopers Urban Renewal, LLC, demands judgment against Defendants for the following relief:

A.      Restraining Defendants, or any of their agents, servants and employees from taking any actions to interfere with Plaintiff's rights under the Redevelopment Agreement;

B.      Ordering Defendants to specifically perform their obligations under the Redevelopment Agreement, including their duty to cooperate, by promptly granting approvals and cooperation pursuant to the Redevelopment Agreement, the Final Judgment, and the Site Plan approval;

C.      Compensatory damages;

D.      Attorneys' fees and costs of suit; and

E.      Such other and further relief as the Court may deem equitable and just.

### FIFTH COUNT
**(Breach of Covenant of Good Faith and Fair Dealing)**

84.     Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

85.     There is implied, as a matter of law, a covenant of good faith and fair dealing in the Redevelopment Agreement, and the amendments thereto, to the same extent as if same were expressly set forth therein, mandating that Defendants deal with Plaintiff with the utmost good faith and honesty and not engage in any act that would have the effect of depriving Plaintiff of the fruits of the Redevelopment Agreement.

86.     By virtue of the conduct of Defendants, as set forth in detail above, they have violated the covenant of good faith and fair dealing.

87.     By virtue of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and damage.

**WHEREFORE**, Plaintiff Emerson Redevelopers Urban Renewal, LLC, demands judgment against Defendants for the following relief:

A.      Restraining Defendants, or any of their agents, servants and employees from taking any actions to interfere with Plaintiff's rights under the Redevelopment Agreement;

B.      Ordering Defendants to specifically perform their obligations under the Redevelopment Agreement, including their duty to cooperate, by promptly granting approvals and cooperation pursuant to the Redevelopment Agreement, the Final Judgment, and the Site Plan approval;

C.      Compensatory damages;

D.      Attorneys' fees and costs of suit; and

E.      Such other and further relief as the Court may deem equitable and just.

## SIXTH COUNT
### (Violation of New Jersey Civil Rights Act, N.J.S.A. 10:6-1, *et seq.*)

88.     Plaintiff repeats and reiterates the allegations of the preceding paragraphs of this Complaint as if set forth herein verbatim and at length.

89.     The New Jersey Civil Rights Act, N.J.S.A. 10:6-2 provides:

> Any person who has been deprived of any substantive due process or equal protection rights, or privileges or immunities  secured by the constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the constitution or laws of this State, or whose exercise or enjoyment of their substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation, or coercion by a person acting under color of law, may bring a civil action for damages and for injunction or other appropriate relief.  The penalty provided in Section (e) of this section shall be applicable to the violation of this subsection.

90.     The New Jersey Constitution prohibits the State from the arbitrary exercise of governmental power that interferes with citizens' rights to "acquiring, possessing and protecting property."

91.      By virtue of the actions set forth in detail above, Defendant, acting under color of law, have interfered with Plaintiff's property rights deriving from the Redevelopment Agreement, the Site Plan Approval and the Property, which actions constitute a deprivation of Plaintiff's substantive due process and equal protection rights secured by the Constitution and laws of the United States and of the State of New Jersey.

92.     As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer substantial damages.

**WHEREFORE**, Plaintiff Emerson Redevelopers Urban Renewal, LLC, demands judgment against Defendants for the following relief:

A.      Restraining Defendants, or any of their agents, servants and employees from taking any actions to interfere with Plaintiff's rights under the Redevelopment Agreement;

B.      Ordering Defendants to specifically perform their obligations under the Redevelopment Agreement, including their duty to cooperate, by promptly granting approvals and cooperation pursuant to the Redevelopment Agreement, the Final Judgment, and the Site Plan approval;

C.      Compensatory damages;

D.      Punitive damages;

E.      Plaintiffs' costs of suit, including reasonable attorneys' fees and expenses pursuant to N.J.S.A. 10:6-2(f); and

F.      Such other and further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by a jury in this action of all issues so triable.

Dated:  April 21, 2020                    SILLS CUMMIS & GROSS P.C.

By:  *Joseph B. Fiorenzo*
        Joseph B. Fiorenzo, Esq.
        David W. Phillips, Esq.
    One Riverfront Plaza
    Newark, New Jersey 07102-5400
    (973) 643-7000
    jfiorenzo@sillscummis.com
    dphillips@sillscummis.com
    *Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I, counsel of record for Plaintiffs in the above-referenced matter, hereby certify that the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding, except that a *Mount Laurel* declaratory judgment action brought by defendant Borough of Emerson remains pending in the Superior Court of New Jersey, Bergen County, *In The Matter*

*Of The Application Of The Borough Of Emerson, New Jersey, For A Declaratory Judgment*, Docket No. BER-L-3600-15.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**SILLS CUMMIS & GROSS P.C.**

By: <u>*Joseph B. Fiorenzo*</u>
      Joseph B. Fiorenzo, Esq.
One Riverfront Plaza
Newark, New Jersey 07102-5400
(973) 643-7000
jfiorenzo@sillscummis.com

*Attorneys for Plaintiffs*

Dated:  April 21, 2020

## CERTIFICATION OF NON-ARBITRABILITY
## PURSUANT TO LOCAL RULE 201.1(d)

I, counsel of record for Plaintiffs in the above-referenced matter, hereby certify that the damages potentially recoverable in this matter exceed the sum of $150,000, exclusive of interest, costs, and any claim for punitive damages.  Accordingly, Local Rule 201.1(d) does not apply to this matter.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


SILLS CUMMIS & GROSS P.C.


By: *Joseph B. Fiorenzo*
    Joseph B. Fiorenzo, Esq.
One Riverfront Plaza
Newark, New Jersey 07102-5400
(973) 643-7000
jfiorenzo@sillscummis.com

*Attorneys for Plaintiffs*

Dated:  April 21, 2020