UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

February 23, 2021

VIA ECF

**LETTER ORDER**

Re:   **Emerson Redevelopers Urban Renewal, LLC v. Borough of Emerson, et al., Civil Action No. 20-4728**

Dear Litigants:

This matter comes before the Court on Defendant Borough of Emerson, New Jersey's ("Emerson" or the "Town") Motion to Dismiss, ECF No. 14, and Defendant Danielle DiPaola's ("DiPaola" and together with Emerson, "Defendants") Motion to Dismiss, ECF No. 12. Plaintiff Emerson Redevelopers Urban Renewal, LLC ("Plaintiff") opposes the Motions. ECF Nos. 16, 19. For the reasons explained below, the Motions are **GRANTED**.

**I.   FACTUAL BACKGROUND**[1]

This Section 1983 action arises from Defendants' alleged interference with Plaintiff's contractual right to construct a four-story, 147-unit, mixed-use housing development in Emerson (the "Project"). See generally Compl. Plaintiff is a property developer and owns certain property located at Block 419 at Kindermack Road between Linwood Avenue and Lincoln Boulevard in Emerson ("Block 419"). Id. ¶ 1. DiPaola has served as the elected Mayor of Emerson since January 2, 2019. Id. ¶¶ 11, 48.

**A.   The Mt. Laurel Litigation and Redevelopment Agreement**

In 2015, Emerson filed a declaratory judgment action in New Jersey Superior Court to determine whether it was in compliance with its affordable housing obligations under the New Jersey Constitution and to obtain temporary immunity from "builder's remedy" suits alleging exclusionary zoning (the "Mt. Laurel Litigation").[2] Id. ¶ 27. During this litigation and as part of its efforts to obtain a favorable declaration, Emerson issued a Request for Proposals to redevelop Block 419 in a manner consistent with its obligations. Id. ¶ 28. Plaintiff responded and was

---

[1] These facts are drawn from the Complaint, ECF No. 3.

[2] The Mount Laurel doctrine requires New Jersey municipalities to exercise their zoning authority "in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low- and moderate-income families." In re Adoption of N.J.A.C. 5:96 & 5:97 ex rel. N.J. Council on Affordable Hous., 221 N.J. 1, 3 (2015) (citing S. Burlington Cnty. N.A.A.C.P. v. Twp. of Mount Laurel, 67 N.J. 151 (1975)). In 2015, the New Jersey Supreme Court held that developers could directly sue municipalities to ensure compliance with Mount Laurel but permitted a thirty-day grace period for municipalities to seek a judicial declaration that its housing plan is presumptively valid. Id. at 35-36

ultimately selected. Id. ¶ 29. The Redevelopment Agreement between Plaintiff and Emerson provided that the Project would include 29 units of low- and moderate-income housing, or 55% of Emerson's housing obligations. Id. ¶ 32. It further required Emerson "to provide all necessary and reasonable documentation, certificates, and consents" to facilitate the Project. Id. ¶ 33.

On November 21, 2017, the Town entered into a Settlement Agreement in the Mt. Laurel Litigation, the terms of which incorporated the proposed redevelopment of Block 419. Id. ¶ 34. The settlement required Emerson to, inter alia, assist Plaintiff in acquiring all property within the Project area and, in the event good faith negotiations with property owners are unsuccessful, acquire the property through eminent domain. Id. ¶ 35. The Town's Land Use Board approved construction of the Project on December 28, 2018. Id. ¶ 40. Thereafter, the Superior Court entered a Conditional Final Judgment of Compliance and Repose, dated January 25, 2019, that ordered Emerson to proceed with the Project. Id. ¶ 41.

### B. Defendants' Alleged Interference with the Project

Despite the Town's initial support, enthusiasm for the Project evaporated following DiPaola's election as Mayor in November 2018. DiPaola, a former member of the Land Use Board, was described as "the lone no vote on Block 419 matters" and openly campaigned on a promise to "impede or stop the Project in the form that it was proposed." Id. ¶¶ 43-44, 48. Following her election, DiPaola continued to make statements reflecting her opposition to "overdevelopment" and the use of eminent domain in general and to the Project in particular. Id. ¶¶ 45-49. DiPaola also publicly attributed the loss of seven of Emerson's businesses to "redevelopment in the name of affordable housing." Id. ¶ 54.

Since DiPaola took office, the Town has taken a series of actions allegedly designed to impede construction of the Project and its affordable housing, including (1) delaying or denying certain permits germane to the construction; (2) imposing arbitrary requirements on Plaintiff's efforts to secure permits; (3) failing to contest lawsuits challenging the Project brought by third parties; (4) delaying proceedings to condemn property within the Project area; and (5) authorizing a separate lawsuit against Plaintiff. Id. ¶¶ 52, 56. Plaintiff contends that these actions are not related to a legitimate State interest but are instead intended "to stop the construction of affordable housing by driving up the cost of the Project to such an extent that the Project is no longer economically viable." Id. ¶¶ 53, 62.

Plaintiff filed the Complaint on April 22, 2020 asserting six counts against Defendants: (1) violation of substantive due process, contrary to the Fourteenth Amendment and 42 U.S.C. § 1983 ("Section 1983"), id. ¶¶ 58-65 ("Count I"); (2) violation of equal protection, contrary to the Fourteenth Amendment and Section 1983, id. ¶¶ 66-74 ("Count II"); (3) breach of contract, id. ¶¶ 75-80 ("Count III"); (4) breach of cooperation covenant, id. ¶¶ 81-83 ("Count IV"); (5) breach of the implied covenant of good faith and fair dealing, id. ¶¶ 84-87 ("Count V"); and (6) violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., id. ¶¶ 88-92 ("Count VI"). Defendants have each separately moved to dismiss the Complaint. ECF Nos. 12, 14.

### II.     LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny,

515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

**III.   DISCUSSION**

### A.   Constitutional Claims

Plaintiffs bring two constitutional claims under Section 1983. "[T]o state a claim for relief under [Section] 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law." Hagan v. N.J. State Parole Bd., No. 18-14063, 2019 WL 157298, at *2 (D.N.J. Jan. 10, 2019). The Court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). The Court will therefore separately evaluate each constitutional claim.

#### 1.   Fourteenth Amendment — Substantive Due Process

Defendants argue that Plaintiff has failed to allege conscious-shocking conduct sufficient to support a substantive due process claim. The Court agrees.

A valid substantive due process claim requires allegations of (1) an interest protected by the substantive due process clause and (2) the government's deprivation of that protected interest in a manner which "shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). Plaintiffs allege a protected interest in the ownership and use of their physical property located at Block 419, a right protected by the Fourteenth Amendment. Compl. ¶ 59; see, e.g., Ecotone Farm LLC v. Ward, 639 F. App'x 118, 125 (3d Cir. 2016); Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 n.12 (3d Cir. 1997).[3]

The threshold requirement of "conscious-shocking" behavior prevents every state law violation from being constitutionalized and preserves Fourteenth Amendment claims for truly egregious conduct. See, e.g., 8600 Landis, LLC v. City of Sea Isle City, No. 17-2234, 2018 WL 6522911, at *2 (D.N.J. Dec. 12, 2018) (citing Whittaker v. Cnty. of Lawrence, 437 F. App'x 105, 109 (3d Cir. 2011)).[4] Without more, allegations of "improper motive, . . . even where the motive is unrelated to the merits of the underlying decision," fail to meet this standard. Chainey, 523 F.3d at 220 (citation omitted). A violation of state law will only shock the conscious when accompanied by "allegations of corruption, self-dealing, bias against an ethnic group," or similarly outrageous behavior. Whittaker, 437 F. App'x at 108-09.

---

[3] Plaintiff also asserts a protected interest in its contractual rights under the Redevelopment Agreement. Compl. ¶ 59. "[S]tate-created contract rights," however, are not entitled to substantive due process protection. See Nicholas v. Pa. State Univ., 227 F.3d 133, 142-43 & n.2 (3d Cir. 2000).

[4] Whether conduct shocks the conscience is a question of law for the court to decide. Whittaker, 437 F. App'x at 108.

3

The Complaint does not allege improper financial gain on the part of Defendants and does not directly allege racial bias. Instead, the Complaint asserts that DiPaola opposes the Project and redevelopment in general, that 29 of the 147 units in the Project will be earmarked for low- and moderate-income families, and that affordable housing benefits the poor and minorities. See, e.g., Compl. ¶¶ 1, 44-45. Plaintiff then invites the Court to infer from these allegations that DiPaola acted with racial animus. Pl. Opp. to Emerson Mot. 22, ECF No. 19. Such inference is not a reasonable reading of the Complaint as currently pled.

Drawing all reasonable inferences in Plaintiff's favor, the Complaint depicts, at most, Defendants' resistance to fulfilling Emerson's Mt. Laurel obligation to provide its fair share of affordable housing. See Compl. ¶¶ 44, 50, 52-54, 69. While the Court recognizes the importance of the Mt. Laurel doctrine, land use decisions motivated by a reluctance to comply with state law do not, without more, give rise to an independent substantive due process claim under the Federal Constitution. See Whittaker, 437 F. App'x at 108-09. A contrary holding would effectively federalize all Mt. Laurel-related disputes and create the precise result that the "conscious shocking" requirement seeks to avoid. See Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) ("What is clear is that this test is designed to avoid converting federal courts into super zoning tribunals."). The Complaint's vague allegations of personal and political bias—which derive solely from DiPaola's opposition to redevelopment, Compl. ¶¶ 1, 62—also cannot satisfy Plaintiff's burden, see Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin, 656 F. App'x 1, 7 (3d Cir. 2016) (holding that the "mere inclusion of the phrase 'personal and political animus' in the Complaint is clearly insufficient" absent additional supporting facts).

Without any plausible allegations of conscious-shocking motive, Emerson's delays, failure to properly issue permits, and general ambivalence towards litigation targeting the Project do not state a substantive due process claim. See Eichenlaub, 385 F.3d at 286 (holding that allegations that zoning officials applied arbitrary requirements, delayed permits, pursued "unannounced and unnecessary" inspections and otherwise "maligned and muzzled" a developer did not shock the conscious). Count I is dismissed without prejudice.[5]

### 2. Fourteenth Amendment — Equal Protection

Defendants next argue that Plaintiff has failed to state a "class of one" equal protection claim under the Fourteenth Amendment. The Court agrees.

A plaintiff asserting a "class of one" claim must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Nance v. Nogan, No. 17-672, 2018 WL 2298357, at *7 (D.N.J. May 21, 2018) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006)) (quotation marks omitted). A plaintiff need not identify "specific instances" of differential

---

[5] The Court also agrees with DiPaola that the Complaint fails to adequately plead DiPaola's involvement in the Town's challenged conduct. Plaintiff pleads that DiPaola directed the Town to disregard a lawsuit challenging the Project and "orchestrated" an undescribed separate lawsuit by the Town against Plaintiff. Compl. ¶¶ 52(j), 56. However, beyond generalized allegations that DiPaola wished to obstruct the Project, id. ¶¶ 46-49, 61, the Complaint does not allege that DiPaola, as Mayor, had authority or influence over the permitting decisions and arbitrary restrictions that form the core of Plaintiff's case, id. ¶ 52; see C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005) (citation omitted) (holding that an individual is liable under Section 1983 if she "individually participated in the alleged constitutional violation or approved of it"). Any amended pleading must address this deficiency.

treatment at the pleading stage, but he must still allege the existence of similarly situated parties who were treated differently to "nudge his claims across the line from conceivable to plausible." Mann v. Brenner, 375 F. App'x 232, 238-39 (3d Cir. 2010) (citing Phillips, 515 F.3d at 232). "Similarly situated" means "alike 'in all relevant aspects.'" Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).

The Complaint fails to identify any similarly situated parties, alleging only that "Defendants treated Plaintiff differently from other developers." Compl. ¶ 71; see Perano v. Twp. of Tilden, 423 F. App'x 234, 238-39 (3d Cir. 2011) (holding that without more specific factual allegations, plaintiff's claim that "he was treated differently from other similarly situated . . . developers" did not plausibly suggest that "those parties exist and they are like him in all relevant aspects"). The Complaint therefore fails to state an equal protection claim. Count 2 is dismissed without prejudice.[6]

### B. State Law Claims

Having dismissed Plaintiff's constitutional claims, the Court lacks original jurisdiction over this matter[7] and must consider whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367(c)(3). "[A]bsent extraordinary circumstances, where the federal causes of action are dismissed the district court should ordinarily refrain from exercising pendent jurisdiction [over the state law claims]." Bright v. Westmoreland Cnty., 380 F.3d 729, 751 (3d Cir. 2004) (citation and quotation marks omitted); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (citation omitted).

To date, no action has proceeded in this case beyond the instant Motions. Principles of comity and judicial economy therefore weigh against the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims. And the Court observes no extraordinary circumstances that justify departing from these principles. Counts III-VI are dismissed.

### IV. CONCLUSION

For the reasons stated above, Emerson's Motion to Dismiss, ECF No. 14, and DiPaola's Motion to Dismiss, ECF No. 12 are **GRANTED**. The Complaint is **DISMISSED WITHOUT PREJUDICE**. To the extent Plaintiff can cure the deficiencies identified in this Order, they may file an amended pleading within thirty (30) days.

SO ORDERED.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[6] The Court declines to reach the parties' arguments as to Emerson's municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

[7] The Court lacks diversity jurisdiction under 28 U.S.C. § 1332 because each party is domiciled in New Jersey. See Compl. ¶¶ 10-12.