UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERSON REDEVELOPERS URBAN RENEWAL, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>BOROUGH OF EMERSON, et al.,<br><br>*Defendants.* | Civil Action No. 20-4728<br><br>ORDER |

**THIS MATTER** comes before the Court by way of Defendant Borough of Emerson, New Jersey's ("Emerson" or the "Town") Motion to Dismiss, ECF No. 28, and Defendant Danielle DiPaola's ("DiPaola" and together with Emerson, "Defendants") Motion to Dismiss, ECF No. 29;[1]

and it appearing that Plaintiff Emerson Redevelopers Urban Renewal, LLC ("Plaintiff") opposes the Motions, ECF Nos. 32, 33;

and it appearing that this action arises from Defendants' alleged interference with Plaintiff's right to construct a four-story, 147-unit, mixed-use housing development in Emerson (the "Project"), on property Defendant owns at Block 419 in Emerson ("Block 419"), see generally Am. Compl., ECF No. 25;[2]

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] The Court discussed the background of this action at length in its prior letter order dismissing Plaintiff's initial Complaint without prejudice. See ECF No. 24 (the "February 2021 Order"), at 1-2. This Order discusses the relevant facts only to the extent necessary to resolve the instant Motions.

and it appearing that on June 26, 2016, Plaintiff and Emerson entered into a redevelopment agreement, which granted Plaintiff the right to develop the Project, required Emerson to facilitate the Project by providing the necessary consents, and indicated that the Project would satisfy 55% of Emerson's affordable housing obligations pursuant to state law[3] (the "Redevelopment Agreement"), see id. ¶¶ 33-36;

and it appearing that since DiPaola's election as Mayor of Emerson in November 2018, Defendants have allegedly taken a series of actions designed to impede construction of the Project, including arbitrarily denying permits and imposing previously nonexistent land use requirements, see id. ¶ 55;

and it appearing that Plaintiff generally contends that Defendants' actions are intended "to stop the construction of affordable housing by driving up the cost of the Project to such an extent that the Project is no longer economically viable," id. ¶ 56, and that such actions are motivated by a desire to "prevent minorities from living in Emerson," id. ¶ 1;

and it appearing that Plaintiff initiated this action on April 22, 2020 by filing a six-count Complaint against Defendants asserting substantive due process and equal protection violations under 42 U.S.C. § 1983 ("Section 1983"), along with pendent state law claims, see ECF No. 3;

and it appearing that on February 23, 2021, the Court dismissed Plaintiff's Complaint without prejudice, see Feb. 2021 Order;

and it appearing that on March 25, 2021, Plaintiff filed the Amended Complaint, which again asserts six counts: (1) violation of substantive due process, contrary to the Fourteenth Amendment and Section 1983, Am. Compl. ¶¶ 70-77 ("Count I"); (2) violation of equal protection,

---

[3] New Jersey's Mount Laurel doctrine requires municipalities to exercise their zoning authority "in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low- and moderate-income families." In re Adoption of N.J.A.C. 5:96 & 5:97 ex rel. N.J. Council on Affordable Hous., 221 N.J. 1, 3 (2015) (citing S. Burlington Cnty. N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151 (1975)).

2

contrary to the Fourteenth Amendment and Section 1983, id. ¶¶ 78-89 ("Count II"); (3) breach of contract, id. ¶¶ 90-95 ("Count III"); (4) breach of cooperation covenant, id. ¶¶ 96-98 ("Count IV"); (5) breach of the implied covenant of good faith and fair dealing, id. ¶¶ 99-102 ("Count V"); and (6) violation of the New Jersey Civil Rights Act, N.J.S.A. §§ 10:6-1, et seq. ("NJCRA"), id. ¶¶ 103-07 ("Count VI");

and it appearing that Emerson and DiPaola now separately move to dismiss the Amended Complaint, ECF Nos. 28, 29;

and it appearing that Defendants first contend that Count I again fails to state a substantive due process claim;

and it appearing that to plead a substantive due process violation, a plaintiff must allege (1) an interest protected by the substantive due process clause; and (2) the government's deprivation of that protected interest in a manner which "shocks the conscience," Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008);

and it appearing that land use decisions that are intended to "interfere with otherwise constitutionally protected activity" or motivated by "bias against an ethnic group" are sufficiently conscience shocking to support a substantive due process claim, see Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004); see also Thorpe v. Upper Makefield Township, 758 F. App'x 258, 261 (3d Cir. 2018) ("Race-based discriminatory enforcement of zoning ordinances would certainly constitute conscience shocking behavior.");

and it appearing that in assessing Plaintiff's initial Complaint, the Court held that (1) Plaintiff had a constitutionally protected interest in the ownership and use of its physical

3

property located at Block 419;[4] (2) Plaintiff failed to allege that Defendants' arbitrary land use restrictions were motivated by racial bias or otherwise implemented in a manner that "shocks the conscience";[5] and (3) Plaintiff did not adequately allege DiPaola's involvement in the Town's allegedly unlawful conduct, see Feb. 2021 Order at 3-4 & n.5;

and it appearing that the Amended Complaint now squarely alleges that Defendants' permitting decisions and arbitrary restrictions were motivated by a desire "to prevent racially diverse minorities from moving into Emerson," Am. Compl. ¶ 12;[6]

and it appearing that accepted as true, Plaintiff's allegations that Defendants purposefully obstructed the Project due to fear that the Project would attract non-white residents to Emerson are sufficient to shock the conscience;[7]

---

[4] The Court further held that Plaintiff lacked a separately protected interest in its contractual rights under the Redevelopment Agreement. Feb. 2021 Order at 3 n.3.

[5] Specifically, the Court found that the Complaint depicted "at most, Defendants' resistance to fulfilling Emerson's Mt. Laurel obligation to provide its fair share of affordable housing" and held that "land use decisions motivated by a reluctance to comply with state law do not, without more, give rise to an independent substantive due process claim." Feb. 2021 Order at 4.

[6] Defendants ask the Court to disregard Plaintiff's allegations of racial bias because Plaintiff lacks direct evidence of animus, such as "leaked emails" or "inadvertent open mic recordings." Emerson Mem. at 18. The Court disagrees. Plaintiff need not plead the existence of specific pieces of evidence to survive a motion to dismiss, and it has asserted enough factual material to support an inference of racial animus. For instance, Plaintiff has alleged that (a) Emerson currently has few minority residents and intends to prevent minorities from moving into the Town, Am. Compl. ¶¶ 4, 12, 65; (b) DiPaola publicly opposes affordable housing projects and has insinuated that they are responsible for "destroy[ing]" businesses, id. ¶ 66;" and most critically, (c) that DiPaola's public opposition to affordable housing generally, and the Project specifically, is in reality "intended to convey that the potential of people with diverse racial backgrounds at the Project . . . had already destroyed existing businesses and would continue to cause harm," id. ¶ 67.

Of course, Plaintiff will ultimately need to produce evidence showing that Defendants' land use decisions were motivated by racial animus, as opposed to a mere reluctance to comply with state law or a general dislike of large residential buildings. At the pleading stage, however, the Court is satisfied that Plaintiff's allegations are sufficient to "nudge[ its] claim[ ] across the line from conceivable to plausible." Bell At. Corp., 550 U.S. at 547.

[7] Courts have permitted substantive due process claims to proceed even where, as here, the allegedly "conscience shocking" animus underlying land use decisions was principally directed at third parties, rather than the property owner. See, e.g., Rittenhouse Ent., Inc. v. City of Wilkes-Barre, 861 F. Supp. 2d 470, 487 (M.D. Pa. 2012) (permitting claim based on municipal harassment of business "because of the race of [its] patrons"); Assocs. in Obstetrics & Gynecology v. Upper Merion Township, 270 F. Supp. 2d 633, 656 (E.D. Pa. 2003) (permitting claim arising from discriminatory enforcement of zoning ordinance against abortion provider); cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 262 (1977) (holding that real estate developer who contracted to build "low- and moderate-income housing . . . that would probably be racially integrated" had standing to assert that a zoning decision

and it appearing that Emerson argues that even if Plaintiff can state a substantive due process violation, it has failed to allege a custom, policy, or practice sufficient to impose municipal liability under Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 694 (1978);

and it appearing that a plaintiff may pursue a Section 1983 claim against a municipality arising from, among other things, an official act of the city, Langford v. City of Atlantic City, 235 F.3d 845, 850 (3d Cir. 2000), or a decision by an official with "final policymaking authority" in the relevant area, City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988);

and it appearing that Plaintiff has alleged that Emerson has impeded the construction of the Project through official acts of the Town, including the denial of permits and imposition of new land use requirements, Am. Compl. ¶ 55;

and it appearing that Plaintiff further alleges that DiPaola directed officials of the Town to take these actions and had the policymaking authority to do so, id. ¶¶ 57-58;

and it appearing that the Amended Complaint therefore sufficiently alleges municipal liability against Emerson and DiPaola's participation in the alleged constitutional violation;

and it appearing that the Court consequently denies the Motions as to Count I;

and it appearing that Defendants next argue that Count II fails to plausibly allege an equal protection violation;

and it appearing that to plead a "class of one" equal protection claim, a plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment," Nance v.

---

intended to "discriminate[] against racial minorities" violated its "right to be free of arbitrary or irrational zoning actions").

Nogan, No. 17-672, 2018 WL 2298357, at *7 (D.N.J. May 21, 2018) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006)) (quotation marks omitted);

and it appearing that a plaintiff must allege enough factual material to show the existence of specific, similarly situated parties that are "prima facie identical in all relevant respects," Toll Bros. v. Township of Moorestown, No. 10-4843, 2011 WL 2559507, at *6 (D.N.J. June 27, 2011); see also Perano v. Township of Tilden, 423 F. App'x 234, 238-39 (3d Cir. 2011) (holding that without more specific factual allegations, the plaintiff's claim that "he was treated differently from other similarly situated . . . developers" did not plausibly suggest that "those parties exist and they are like him in all relevant aspects");

and it appearing that the Amended Complaint alleges that "there were multiple similarly-situated redevelopers with projects in close proximity to Plaintiff's Property, each with residential, commercial, or mixed residential and commercial projects that did not contain on-site affordable housing like Plaintiff," Am. Compl. ¶ 82;

and it appearing that Plaintiff further alleges that these unnamed redevelopers "obtained permits and approvals from the municipality with none of the roadblocks, impediments, and obstruction the municipality imposed against Plaintiff," id.

and it appearing that the above allegations fail to provide any degree of specificity as to whether, for instance, (a) any other redeveloper is pursuing construction similar to the Project;[8] or (b) the alleged permits and approvals sought by other redevelopers were similar to the alleged permits and approvals sought by Plaintiff;

---

[8] The Project is described as a "147 Unit, four-story mixed use" housing development. Am. Compl. ¶ 1. Plaintiff's allegation that there are other redevelopers "with residential, commercial, or mixed residential and commercial projects" is far too vague to plausibly suggest that any similar redevelopers exist. See, e.g., Toll Bros., 2011 WL 2559507, at *6 ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)).

and it appearing that Count II therefore fails to state a claim for equal protection;

and it appearing that as this is Plaintiff's second failed attempt to plead a viable equal protection claim, the Court finds that further amendment would be futile and dismisses Count II with prejudice;

and it appearing that Counts III and IV each allege a breach of express provisions in the Redevelopment Agreement, see Am. Compl. ¶¶ 93, 97;

and it appearing that Count V alleges a breach of the covenant of good faith and fair dealing implied in the Redevelopment Agreement, id. ¶ 100;

and it appearing that to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing, a plaintiff must allege, among other things, the existence of a contract between the parties, see, e.g., Luongo v. Vill. Supermarket, Inc., 261 F. Supp. 3d 520, 531-32 (D.N.J. 2017);

and it appearing that the Amended Complaint does not allege that DiPaola was a party to the Redevelopment Agreement, which was executed before DiPaola became Mayor of Emerson, see Am. Compl. ¶ 91 ("Plaintiff and Emerson are parties to the Redevelopment Agreement");

and it appearing that Counts III, IV, and V therefore fail to state a claim against DiPaola;[9]

and it appearing that Count VI asserts a claim under the NJCRA, which is "construed . . . in terms nearly identical to its federal counterpart: Section 1983," Wronko v. Howell Township, No. 17-1956, 2018 WL 516055, at *6 (D.N.J. Jan. 23, 2018) (citation omitted);

and it appearing that for the reasons discussed above, Plaintiff has pled a substantive due process claim under the NJCRA against Defendants;

---

[9] Emerson argues that the Court should decline supplemental jurisdiction over Plaintiff's state law claims if all federal claims are dismissed, but it does not separately challenge the merits of Counts III, IV, or V. Those Counts may therefore proceed against the Town.

7

and it appearing that the Court therefore denies the Motions as to Count VI;

**IT IS** on this 22nd day of November, 2021;

**ORDERED** that Emerson's Motion to Dismiss, ECF No. 28, and DiPaola's Motion to Dismiss, ECF No. 29., are each **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Count II is dismissed with prejudice; and it is further

**ORDERED** that Counts III, IV, and V are dismissed with prejudice as to DiPaola; and it is further

**ORDERED** that the Motions are otherwise denied.

                                        */s Madeline Cox Arleo*
                                        **MADELINE COX ARLEO**
                                        **UNITED STATES DISTRICT JUDGE**