# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERSON REDEVELOPERS URBAN RENEWAL, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**THE BOROUGH OF EMERSON, NEW JERSEY, AND DANIELLE DIPAOLA,**<br>Defendants. | Civil Action No.: 2:20-cv-04728 |

## BRIEF ON BEHALF OF DEFENDANT, DANIELLE DIPAOLA, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

THE LAW OFFICES OF RICHARD MALAGIERE
A PROFESSIONAL CORPORATION
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
Tel: (201) 440-0675
Attorneys for Defendant, Danielle DiPaola

Richard Malagiere
    Of Counsel
Leonard E. Seaman
Richard Malagiere
    On the Brief

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................... ii

PRELIMINARY STATEMENT ................................................1

PROCEDURAL HISTORY.......................................................2

STATEMENT OF FACTS ........................................................4

LEGAL ARGUMENT...............................................................12

    I.  THE STANDARD OF REVIEW............................................12

    II.  PLAINTIFF CANNOT SHOW ANY CONSCIENCE SHOCKING BEHAVIOR BY MAYOR DIPAOLA TO SUPPORT ITS REMAINING § 1983 CLAIM ........................................................14

    III.ERUR CANNOT SUSTAIN ITS NEW JERSEY CIVIL RIGHTS CLAIMS .............................................................21

CONCLUSION .........................................................................22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................13

*Button v. Snelson*,
    679 F. App'x 150, 154 (3d Cir. 2017) ............................ 16, 17, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................ 13, 14

*Chainey v. Street*,
    523 F.3d 200 (3d Cir. 2008).......................................................15

*Creative Env'ts, Inc. v. Estabrook*,
    680 F.2d 822 (1st Cir. 1982).......................................................17

*Cty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998) .......................................................... 15, 16

*Eichenlaub v. Twp. of Indiana*,
    385 F.3d 274, 285 (3d Cir. 2004)......................................... 15, 16

*Gleason v. Norwest Mortg., Inc.*,
    243 F.3d 130 (3d Cir. 2001.........................................................19

*Hotop v. Prudential Ins. Co. of Am.*,
    Civil Action No. 18-15312, 2020 U.S. Dist. LEXIS 135393, 2020 WL
    4364337 (D.N.J. July 30, 2020)..................................................19

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1988)...................................................................19

*Marino v. Indus. Crating, Co.*,
    358 F.3d 241 (3d Cir. 2004) ......................................................13

*Pignataro, v. Port Auth. Of New York & New Jersey*,
    593 F.3d 265 (3d Cir. 2010) ......................................................13

*Schoch v. First Fidelity Bancorp.*,
    912 F.2d 654, 657 (3d Cir. 1990) ................................................................14

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*,
    422 F.3d 141 (3d Cir. 2005) .......................................................................15

*Singletary v. Pa. Dept. of Corr.*,
    266 F.3d 186 (3d Cir. 2001) .......................................................................14

*Small v. State*,
    No. A-4113-13T4, 2015 N.J. Super. Unpub. LEXIS 530, 2015 WL 1057840
    (N.J. App. Div. Mar. 12, 2015)..................................................................21

*Southern Burlington County NAACP v. Mt. Laurel Twp.*,
    92 N.J. 158 (1983) .......................................................................................5

*UA Theatre Circuit v. Twp. of Warrington,*
    316 F.3d 392. 400 (3d Cir. 2003).................................................. 15, 16, 17

*V.C. by Costello v. Target Corp.,*
    454 F. Supp. 3d 415 (D.N.J. 2020)............................................................19

*Velez v. Fuentes*,
    No. 15-6939, 2016 U.S. Dist. LEXIS 99328, 2016 WL 4107689  (D.N.J.
    July 29, 2016) ............................................................................................21

*Warfield v. SEPTA*,
    460 F. App'x 127 (3d Cir. 2012)...............................................................19

*Woloszyn v. County of Lawrence*,
    396 F .3d 314 (3d Cir. 2005) ......................................................................14

**Statutes**

42 U.S.C. § 1983 ...............................................................................................2

42 U.S.C. § 1988 ...............................................................................................2

N.J.S.A. 10:6-1 to -2 .........................................................................................2

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................13

## PRELIMINARY STATEMENT

When this Court denied, in part, defendants' *Rule* 12(b)(6) motions to dismiss plaintiff's first amended complaint, it expressly described what plaintiff needed to do in discovery to support its remaining claims against defendant, Danielle DiPaola ("Mayor DiPaola"). The Court announced, "Plaintiff will ultimately need to produce evidence showing that Defendants' land use decisions were motivated by racial animus, as opposed to a mere reluctance to comply with state law or a general dislike of large residential buildings." (ECF No. 36 at 4, fn. 6). After a full and complete discovery period, plaintiff has utterly failed in that endeavor.

There is no evidence that Mayor DiPaola harbors any sort of animus against any minority group. No reasonable inference can be drawn from any of her actions that any decisions she made or directions she gave on the redevelopment project at issue were for any reasons other than the ones she expressed from the outset, that plaintiff's project is too tall, too dense, out of character with the Borough's downtown, and will have a negative impact on existing local businesses. Nothing in Mayor DiPaola's position rises to the level of the conscience shocking behavior required to maintain plaintiff's civil rights claims.

On the proofs that plaintiff will present (taken in the light most favorable to it), no jury could find that Mayor DiPaola's actions amounted to a conscience

shocking denial of plaintiff's right to substantive due process. As a result, summary judgment dismissing the remaining claims against her is appropriate.

## PROCEDURAL HISTORY

Plaintiff, Emerson Redevelopers Urban Renewal, LLC ("ERUR") brought this action against defendants, the Borough of Emerson New Jersey (the "Borough") and its current mayor, Danielle DiPaola, claiming that the they violated its civil rights under color of state law by denying it substantive due process (First Count) and equal protection (Second Count) due to it under the Fourteenth Amendment in violation of 42 U.S.C. §§ 1983 and 1988, along with various state law claims including one under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. (ECF No. 1.)

The Borough and DiPaola moved to dismiss asserting that ERUR's complaint failed to state a claim for which relief may be granted. (ECF Nos 14 and 12, respectively). The Court agreed, dismissing plaintiff's federal claims in the first and second counts without prejudice and affording it thirty days to "cure the deficiencies identified in [the Court's] Order." (ECF No. 24).

With respect to ERUR's allegation that the defendants had violated its right to substantive due process under the Fourteenth Amendment the Court ruled:

> The Complaint does not allege improper financial gain on the part of Defendants and does not directly allege racial bias. Instead, the Complaint asserts that DiPaola opposes the Project and redevelopment in general, that 29

2

> of the 147 units in the Project will be earmarked for low-
> and moderate-income families, and that affordable
> housing benefits the poor and minorities. See, e.g.,
> Compl. ¶¶ 1, 44-45. Plaintiff then invites the Court to
> infer from these allegations that DiPaola acted with racial
> animus. Pl. Opp. to Emerson Mot. 22, ECF No. 19. Such
> inference is not a reasonable reading of the Complaint as
> currently pled.

(ECF No. 24 at 4.) The Court held "[d]rawing all reasonable inferences in
Plaintiff's favor, the Complaint depicts, at most, Defendants' resistance to
fulfilling Emerson's *Mt. Laurel* obligation to provide its fair share of affordable
housing." (*Ibid.*) Finding that complaint lacked plausible allegations of conscious-
shocking behavior, the Court dismissed the substantive due process claim and all
other claims asserted in the complaint. (*Ibid.*)

ERUR filed its first amended complaint on March 25, 2021. (ECF No. 25).
Defendants moved to dismiss plaintiff's amended pleading. (ECF Nos. 28 and 29).
The Court granted those motions in part and denied them in part. In that ruling
(ECF No. 36), the Court dismissed with prejudice Count II (Amended Compl.
¶¶ 78-89) as to all defendants. That count attempted to allege § 1983 claims under
the equal protection clause of the Fourteenth Amendment. The Court also
dismissed Counts III, IV, and V of that pleading with prejudice as to Mayor
DiPaola only. Those counts asserted claims for breach of contract, breach of the
cooperation covenant, and breach of the covenant of good faith and fair dealing

within the contract between ERUR and the Borough. (Amended Compl. ¶¶ 90-102).

However, the Court denied defendants' motions to dismiss Count I of the first amended complaint that alleged denial of ERUR's substantive due process rights in a purported violation of § 1983 (Amended Compl.¶¶ 70-77) or Count VI that asserted similar substantive due process claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (Amended. Compl. ¶¶103-107). (ECF No. 36 at 8).

In its ruling, the Court noted that ERUR had properly pleaded allegations of racially motivated bias on the part of Mayor DiPaola in a way that would survive the motion to dismiss but cautioned that "Plaintiff will ultimately need to produce evidence showing that Defendants' land use decisions were motivated by racial animus, as opposed to a mere reluctance to comply with state law or a general dislike of large residential buildings." (ECF No. 36 at 4, fn. 6).

## STATEMENT OF FACTS

ERUR is the owner of property and certain development rights in Emerson, New Jersey. Plaintiff's property, located on Kinderkamack Road between Linwood Avenue and Lincoln Boulevard makes up Block 419 on the Borough's tax map and is commonly referred to as the Block 419 Project. (Amended Compl. ¶ 1). The

project involves construction of 147-unit, four-story mixed-use development that will provide 29 units of low to moderate-income housing. (*Ibid*.)

Defendant, Danille DiPaola, was elected mayor of the Borough in the 2018 general election. (Declaration of Leonard E. Seaman, 9/12/2024, Exhibit A, Deposition of Danille DiPaola, 4/26/2023 ("DiPaola 1T"), 140-3 to 9)[1]. Seventeen years earlier, during a builder's remedy lawsuit under the *Mount Laurel* doctrine[2] a New Jersey Superior Court Judge, the Honorable Jonathan Harris, J.S.C. made a sweeping declaration that the Borough "persists as a bastion of exclusionary zoning. It has steadfastly resisted taking affirmative steps to provide realistic opportunities for affordable housing within its borders." (Seaman Decl., Exhibit B at 1). Still, Judge Harris determined that builder's remedy was not warranted and, instead, directed the Borough "to adopt affirmative measures … in order to fulfill

[1] Mayor DiPaola's deposition was taken over two days. Her examination began on April 26, 2023 and is designated "DiPaola 1T." It was not completed on that day because of a conflict with plaintiff's counsel's schedule. The deposition resumed and was completed on May 15, 2023 by consent. As none of Mayer DiPaola's testimony from that day is cited here, it has not been included with the moving papers.
[2] A builder's remedy lawsuit allows a developer to file suit to have a specific piece of property chosen by the builder rezoned to allow for the opportunity to construct housing at higher densities than a municipality would otherwise allow, provided that the developer provides a set aside of affordable units that are designated for low and moderate income. A developer is entitled to a builder's remedy if 1) it succeeds in *Mount Laurel* litigation; 2) it proposes a project with a substantial amount of affordable housing, and 3) the site is suitable, i.e. the municipality fails to meet its burden of proving that the site is environmentally constrained or construction of the project would represent bad planning, *Southern Burlington County NAACP v. Mt. Laurel Twp.*, 92 N.J. 158,279-80 (1983).

5

its constitutional obligations to provide shelter opportunities for the beneficiary class of unhoused poor." (*Id.* at 2).

Mayor DiPaola was not a party to that lawsuit or even active in the Borough government at that time. She does not recall when she became aware of that decision. (DiPaola 1T 21-22 to 22-4).

ERUR and the Borough—through the administration that preceded Mayor DiPaola's—entered into a Redevelopment Agreement dated June 14, 2016, (Seaman Decl., Exhibit C). That agreement was amended three times on October 4, 2016 (Seaman Decl., Exhibit D), November 20, 2017 (Seaman Decl., Exhibit E), and December 31, 2018. (Seaman Decl., Exhibit F). The third amendment was completed two days before Mayor DiPaola was sworn in to her first term as mayor on January 2, 2019. (Seaman Decl., Exhibit G). It allowed Accurate Builders and Redevelopers to join the project as the majority owner of ERUR. (Seaman Decl., Exhibit F).

In its answers to interrogatories, as amended as of July 11, 2023, the Plaintiff described the facts that formed the basis for its contention that Mayor DiPaola intended to obstruct or interfere with the Block 419 Project to discriminate against minorities simply by referring to an earlier answer that put forth a laundry list of actions that allegedly demonstrated defendants' course of action to impede

ERUR's ability to complete the project. (Seaman Decl., Exhibit H, Answer to Interrogatory 17.) Plaintiff's response sets out a series of bullet points that include:

the Courts, Special Masters, and Borough professionals identified a pattern of frustration of affordable housing in Emerson by public officials. Moreover, as to the Block 419 Project, the Borough, among other things:

- Sought to increase the cost and time necessary to construct the Project with knowledge that the private construction and operation of affordable housing requires efficiencies to control costs and minimize delays, with the intent that the increased costs and time to complete the project would render the project no longer economical and thereby avoid the construction of affordable housing.
- Repeatedly delayed or conditioned acceptance of an application or granting an application for demolition permits upon various unlawful asserted preconditions, including but not limited to demonstrating the properties had no environmental issues even though environmental actions are governed by the NJDEP; requiring approval of construction drawings prior to demolition; requiring demolition on any lot or portion of a lot be performed at the same time as all other lots in the Project; demanding information regarding demolition contractors without any basis in an ordinance or statute including but not limited to demanding the names of all employees of the asbestos contractors; delaying and obstructing cut and cap permits
- and utility disconnections needed for demolition until ERUR was able to proceed with construction on all lots; delayed vacating Lot 7 after repeated demands to vacate for purposes of demolition; persistently delayed issuance of fence permit needed for demolition, then, when the Zoning Officer issued the fence permit, Borough officials directed ERUR to desist from constructing the duly permitted fence and

failed to respond when ERUR modified fence plan at Borough's request;

- as well as additional actions.
- Borough officials attempted to solicit an investigation by NJDEP of the site to stall or stop the Project.
- ERUR contacted the Borough for required meetings regarding the project and repeatedly received either no response or attempts to stall any meeting.
- Imposed a Developer Fee while refusing to justify its calculations.
- Failed and refused to institute condemnation proceedings, including but not limited to proceedings against Cork & Keg and Laurel Chinese Restaurant, for months after ERUR advised of its inability to settle through good faith negotiations and made demand for condemnation proceedings; assisted the tenants in resisting the Developer in violation of the Borough's cooperation covenant; advised residents that the project would not go forward or would be scaled back thereby frustrating efforts at good faith negotiations; and unlawfully delayed the Borough's obligation to proceed forward with condemnation.
- Failed to oppose prerogative writ action filed by owners/leasees [sic] in redevelopment area and failed to respond to a cease and desist letter by an attorney for Cork & Keg.
- Required physical signatures of police and fire department before moving forward with site plan when all that is required is notice to the police and fire department.
- Failed and delayed in giving consent to the request for consent to the Treatment Works Approval.
- Delayed forming the Redevelopment Subcommittee which was required for review of the construction plans and the commencement of construction.
- Obstructed the agreed-upon construction of seven units of affordable housing on Block 610, Lot 1 needed to satisfy the Redevelopment Agreement and the Borough's affordable housing obligations.

8

- Wrongfully conditioned issuance of construction permits upon full satisfaction of "resolution compliance," including invented conditions contained nowhere in the
- resolution of approval, conditions on items already resolved by the Land Use Board, and conditions that were to be completed at the conclusion of the project, even the Uniform Construction Code provided no basis to refuse the ministerial act of granting the construction permits, resulting in a delay in construction until after

[*Id.*, Answer to Interrogatory 8.]

Yet only the final bullet point even mentions Mayor DiPaola by name and simply contends that:

> Borough officials, including but not limited to Councilmember and Mayor Danielle DiPaola, expressed opposition to affordable housing, the Borough's declaratory judgment action, the settlement with Fair Share Housing Center, the completion of the Block 419 Project, by way of example only, and without limitation, expressing the aim of delaying, stopping, or scaling back the Project, in statements at meetings, to the press, to residents and representatives of Plaintiffs, and with respect to votes on pending ordinances and resolutions, as well as terminating Borough professionals who endorsed or failed to curtail affordable housing and the Block 419 Project, among other things.

[*Id.*, Answer to Interrogatory 8.]

Following her victory in her mayoral campaign, the press reported that Mayor DiPaola expressed a desire to ensure development in downtown is done in a "reasonable" way "that isn't four-story buildings" but that "[e]veryone has this

idea that I'm against development, but I'm not against it." "I'm against eminent domain. I would like to move forward and bring positive change to downtown." (Seaman Decl., Exhibit I). "My opponents have said I'm against progress, but this couldn't be further from the truth. I've always supported and voted yes on projects that actually improve the borough while still being consistent with its small-town character." (Seaman Decl. Exhibit J).

During a meeting with mayors of neighboring municipalities on January 23, 2019, shortly after she assumed office, Mayor DiPaola was quoted by the press as noting that plaintiff was in process of acquiring properties while the Borough was "trying to scale back this project and make it a more reasonable development that is friendlier to our small town." (Seaman Decl., Exhibit K). At a local chamber of commerce meeting a week later, the press reported that Mayor DiPaola based her criticism of the Block 419 Project on its impact on local businesses since the Borough had lost seven businesses and two others were "fighting for their lives" and traffic issues the project would create. (Seaman Decl., Exhibit L).

While a member of the Borough Council, Danielle DiPaola voted against several measures related to the redevelopment project. Those included: (a) an October 4, 2016 resolution authorizing the Borough's entry into the First Amendment to the Redevelopment Agreement (Seaman Decl., Exhibit M); (b) an ordinance to amend the redevelopment plan on December 20, 2016. (Seaman

Decl., Exhibit N); and, (c) a July 18, 2017 resolution authorizing the Borough to enter into the Second Amendment to the Redevelopment Agreement (Seaman Decl., Exhibit O). However, when the Borough Council considered a resolution authorizing adoption of the Third Amendment to the Redevelopment Agreement that, among other things, allowed plaintiff's representative, Yaakovi "Jack" Klugmann, to join the project at the majority owner of ERUR, then Council Member DiPaola abstained. (Seaman Decl., Exhibit F, Exhibit P).

During her deposition, Mayor DiPaola expressed her reasons for her opposition to the project. They included: because the building size was increased to four stories (DiPaola 1T 68-18 to 23, 85-22 to 24) making it "too big" so it "didn't fit into [the Borough's] downtown" (DiPaola 1T 85-19 to 21), because it was too dense (DiPaola 1T 70-1 to 5; 84-18 to 22; 85-14 to 16), and because it required the use of eminent domain (DiPaola 1T 75-13 to 15; 85-17 to 18).

During his deposition, plaintiff's representative, Yaakovi "Jack" Klugmann, could not supply any facts to support ERUR's contention that Mayor DiPaola's actions were motivated by animus against minorities who might occupy the 29 low to moderate income housing units that will comprise a portion of the Block 419 Project's residential units. Instead, he attempted to pivot to allegations that Mayor DiPaola expressed that she did not want Orthodox Jews like him moving into the Borough. (Seaman Decl., Exhibit Q, Deposition of Yaakovi "Jack" Klugmann

11

("Klugman T.") 57:2-14). However, he could only glean this purported animus from her efforts in "fighting the Mount Laurel lawsuit" and comments she allegedly made to other unidentified individuals that she did not want Orthodox Jews to take over the Borough. (*Id.* 57-17 to 6).

Mr. Klugmann based his purported sentiment on one conversation he had had with Mayor DiPaola where they discussed the possibility that kosher breastmilk facility might be part of the Block 419 development and hearsay statements relayed to him by others who reported her comments while campaigning for her second mayoral term. (*Id.* at 58-3 to 13). None of the individuals who allegedly heard these statements were ever identified by plaintiff, and aside from Mr. Klugmann's brief interaction with Mayor DiPaola, plaintiff has failed to offer anything that would meet the requirement the Court set out in its November 22, 2021 ruling "to produce evidence showing that Defendants' land use decisions were motivated by racial animus." (ECF No. 36 at 4, fn. 6).

## LEGAL ARGUMENT

### I.  THE STANDARD OF REVIEW

Summary judgment may be entered where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,322 (1986) *(citing* Fed. R. Civ. P. 56).

An issue is "genuine if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating, Co.*, 358 F.3d 241,247 (3d Cir. 2004) *(citing Anderson*, 477 U.S. at 255); *see also Pignataro, v. Port Auth. Of New York & New Jersey*, 593 F.3d 265,268 (3d Cir. 2010).

The moving party bears the burden of establishing the absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[A] party making summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Ibid* (citation omitted). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact,

'the burden on the moving party may be discharged by 'showing'-that, is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting Celotex, 477 U.S. at 325).

Once the moving party has met its burden, the nonmoving party must identify competent evidence of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the … pleading[s.]" *Saldana v. Kmart Corp.*, 260 F.3d 228,232 (3d Cir. 2001) (internal quotations omitted).To defeat a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Woloszyn v. County of Lawrence*, 396 F .3d 314, 319 (3d Cir. 2005).

"[U]nsupported allegations … and pleadings are not sufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).

## II. PLAINTIFF CANNOT SHOW ANY CONSCIENCE SHOCKING BEHAVIOR BY MAYOR DIPAOLA TO SUPPORT ITS REMAINING § 1983 CLAIM

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or

immunities secured by the Constitution or laws of the United States." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). A substantive due process violation occurs if a government official engages in "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement" that it is barred by the Fourteenth Amendment. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). To establish a prima facie case under § 1983, the ERUR must show that (1) defendants deprived them of a substantive due process right (2) under color of state law. *Shuman*, 422 F.3d at 146. ERUR must prove its "particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

For the purposes of this motion, Mayor DiPaola does not contest whether ERUR has a fundamental property interest protected under the Fourteenth Amendment Due Process Clause. However, no reasonable jury could find that Mayor DiPaola's conduct as developed in the discovery record in this case "shocks the conscience." As a result, summary judgment dismissing the claims leveled against her it appropriate.

"What shocks the conscience is only the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (quoting *UA Theatre Circuit v. Twp. of Warrington,* 316 F.3d 392. 400 (3d Cir. 2003)) (internal

quotations omitted). The Third Circuit has noted that this test is "not precise" and "varies depending on the factual context." *Id.* (*citing Lewis*, 523 U.S. at 847 (1998) and *United Artists*, 316 F.3d at 400. Nevertheless, that Court has affirmed entry of summary judgment when evidence of such conduct was clearly lacking.

In *Eichenlaub,* the Third Circuit addressed claims by landowners that township officials violated their due process rights by applying subdivision requirements inconsistently, pursuing "unannounced and unnecessary inspection and enforcement actions," delaying permits and approvals, increasing tax assessments, and "malign[ing] and muzzl[ing]" him. *Enchenlaub*, 385 F.2d at 286.

The Third Circuit concluded that this alleged misconduct did not "rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test'" and that the allegations mirrored ordinary disagreements frequent in planning disputes. *Id.* at 286.

Rather, the Third Circuit has indicated that "corruption or self-dealing" or "some bias against an ethnic group" amount to the sort of behavior that may shock the conscience. *Id*. at 286; *see also Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) ("Guided by *Eichenlaub*, we see no evidence in this record from which a reasonable jury could find that racial invidiousness, corruption, or self-dealing motivated [the defendant]'s enforcement activities."). Even those actions by a government official that could be viewed by a jury as "overzealous or ill-advised

16

… [,] merely negligent or sometimes contentious performance of official duties …

[do] not satisfy the shock the conscience standard and support dismissals on

summary judgment. *Ibid.*

This standard has an important purpose. "The shocks the conscience

standard … prevents this Court from being cast in the role of a zoning board of

appeals." *Button*, 679 F. App'x at 154 (quoting United Artists, 316 F.3d at 402).

As the *Eichenbaum* Court observed,

> Every appeal by a disappointed developer from an
> adverse ruling of the local planning board involves some
> claim of abuse of legal authority, but "it is not enough
> simply to give these state law claims constitutional labels
> such as 'due process' or 'equal protection' in order to
> raise a substantial federal question under section 1983."
>
> [*United Artists*, 316 F.3d 392 at 402 (quoting *Creative
> Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.
> 1982)).]

ERUR cannot establish any action on the part of Mayor DiPaola that

amounts to the sort of conscience shocking behavior that can be remedied under

§ 1983 because of denial of substantive due process. Through the course of

discovery, plaintiffs have failed to uncover any facts that would suggest that Mayor

DiPaola's actions in connection with the Block 419 Project were motivated by

anything other than her general dislike of the development because of its impact on

local businesses, traffic issues, and a change in the Borough's architectural

17

environment. (Seaman Decl, Exhibits I, J, K, and L, DiPaola 1T 68-18 to 23, 70-1 to 5, 75-13 to 15, 84-18 to 22, 85-14 to 16, 85-17 to 18, 85-19 to 21, 85-22 to 24)

After the full exchange of discovery, ERUR cannot point to any emails or statements by Mayor DiPaola making bigoted comments about the potential low to moderate income residents of the project. There are no embarrassing "hot mike" incidents or any direct statements that can be attributed to her that support any inference that her opposition to this project was based on anything other than the concerns she expressed over the project's size and its impact on the community though things such as loss of local businesses and traffic congestion. (Seaman Decl, Exhibits I, J, K, and L, DiPaola 1T 68-18 to 23, 70-1 to 5, 75-13 to 15, 84-18 to 22, 85-14 to 16, 85-17 to 18, 85-19 to 21, 85-22 to 24) Even if Mayor DiPaola's position is "overzealous or ill-advised" it is not sufficiently conscience shocking for this Court to allow it to proceed to trial. *See Button*, 679 F. App'x at 154.

Likewise, plaintiffs cannot defeat this motion on their concocted claim that Mayor DiPaola's actions were motivated by antisemitism because the developer is an Orthodox Jew. (Klugman T. 57:2-14). That claim is far different than what plaintiff asserted in its first amended complaint—that Mayor DiPaola was motivated by "animus toward potentially, racially diverse low income citizens of New Jersey." (Amended Compl. ¶ 73). ERUR cannot turn Mr. Klugmann's sense that Mayor DiPaola is biased against him into a cause of action at this late date. A

plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment. *Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012).

Even if such a new and different claim is not barred, ERUR cannot establish a prima facia case to support it. First, Mr. Klugmann's impression that Mayor DiPaola harbors antisemitic beliefs is not sufficient to overcome a motion for summary judgment. "A non-moving party's '[u]nsupported allegations, subjective beliefs, or argument' cannot alone overcome a properly supported summary judgment motion." *Hotop v. Prudential Ins. Co. of Am.*, Civil Action No. 18-15312, 2020 U.S. Dist. LEXIS 135393, at *10-11, 2020 WL 4364337 (D.N.J. July 30, 2020) *quoting V.C. by Costello v. Target Corp.,* 454 F. Supp. 3d 415, 423 (D.N.J. 2020). *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.")

Mr. Klugmann is the redeveloper not a potential tenant in the low to moderate income housing units the project would provide. Nor is there any

evidence that plaintiff expects to rent low to moderate income units to Mr. Klugmann or any other Orthodox Jews. The record is simply devoid of any evidence that preventing completion of the project will lead to discrimination of Orthodox Jews or any religious group. Mr. Klugmann's perception that Mayor DiPaola is antisemitic is not enough to defeat this summary judgment motion.

Moreover, even if Mr. Klugmann's sense that Mayor DiPaola is biased against Orthodox Jews could establish a claim, Mr. Klugmann did not become involved in the project until the Redevelopment Agreement was amended for a third time in December 2018. (Seaman Decl., Exhibit F). That was long after Mayor DiPaola expressed opposition to the project by voting against resolutions related to the project as a member of the Borough Council in 2016 and 2017. (Seaman Decl., Exhibits M, N, O). Moreover, contrary to her repeated votes against the project (See *Id.*), when asked to approve Mr. Klugmann's participation, Mayor DiPaola simply abstained. (Seaman Decl., Exhibit P). Nothing in the record supports even an inference that Mayor DiPaola's opposition to the project is motivated by animus toward Orthodox Jews like Mr. Klugmann. She was against the project before Mr. Klugmann was part of it, and the record is devoid of any evidence that his participation in the project altered her position in any way.

Based on the record ERUR might be able to establish at trial, no jury could find any behavior on the part of Mayor DiPaola that shocks its conscience, and for that reason, summary judgment is appropriate at this time.

### III.  ERUR CANNOT SUSTAIN ITS NEW JERSEY CIVIL RIGHTS CLAIMS

The "NJCRA was modeled after § 1983, (and so courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 U.S. Dist. LEXIS 99328, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted); *see also Waselik v. Twp. of Sparta*, No. 16-4969, 2017 U.S. Dist. LEXIS 76646, 2017 WL 2213148, at *8 n.15 (D.N.J. May 18, 2017). "Given their similarity, [New Jersey] courts apply § 1983 immunity doctrines to claims arising under the [NJ]CRA." *Small v. State*, No. A-4113-13T4, 2015 N.J. Super. Unpub. LEXIS 530, 2015 WL 1057840, at *6 (N.J. App. Div. Mar. 12, 2015).

Here, plaintiff's § 1983 claims fail because it cannot demonstrate any action by Mayor DiPaola that amount the required conscience shocking behavior. That same lack of evidence is equally fatal to ERUR's state law claims. That claim should be dismissed as well.

## **CONCLUSION**

For the reasons set forth above, it is respectfully submitted that summary judgment is appropriate and the remaining claims against Mayor DiPaola should be dismissed with prejudice.

s/ Leonard E. Seaman
Richard Malagiere
Leonard E. Seaman
THE LAW OFFICES OF RICHARD MALAGIERE, PC
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
(201) 440-0675
rm@malagierelaw.com
les@malagierelaw.com
Attorneys for Defendant, Danielle DiPaola
Dated: September 13, 2024