# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

EMERSON REDEVELOPERS URBAN RENEWAL, L.L.C.,

               Plaintiffs,

vs.

THE BOROUGH OF EMERSON, NEW JERSEY, AND DANIELLE DIPAOLA,

               Defendants.

**Civil Action No.: 2:20-cv-04728 (MCA-MAH)**

CIVIL ACTION

---

## BRIEF IN SUPPORT OF DEFENDANT, BOROUGH OF EMERSON'S, MOTION FOR SUMMARY JUDGEMENT

---

Christopher C. Botta, Esq (#031561992)
**BOTTA ANGELI, L.L.C.**
50 South Franklin Turnpike
Ramsey, New Jersey 07446
(201) 818-6400
ccb@bottalaw.com
 *Attorneys for Defendant,*
*Borough of Emerson*

Of Counsel and On the Brief
 Christopher C. Botta, Esq.

# **TABLE OF AUTHORITIES**

## **Cases**

Adickes v. S.H. Kress and Co., 398 U.S. 144, 150 (1970) ...................................................... 16

Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004). . . . . . . . . . . . . . . . . . .20

Celotex Corp. v. Catrett, 477 U.S. 317, 322 cert. den. 484 U.S. 1066 (1988) . . . . . . . . . . . . .12

Citta v. Borough of Seaside Park, 2010 WL 3862561, *10, n. 3 (D.N.J. Sept. 27, 2010)..........26

Clark v. Buchka, 936 F.Supp. 212, 217 (D.N.J. 1996) ............................................................ 16

County of Sacramento v. Lewis, 523 U.S. 833, 848, 849 (1998) . . . . . . . . . . . . . . . . .18, 19, 21

Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 (1st Cir. 1982)), cert. denied 459
    U.S. 989 (1982)............................................................................................................... 19

Daniels v. Williams, 474 U.S. 327, 337 (1986)........................................................................ 17

General Motors v. City of Linden, 143 N.J. 336, 350 (1996), cert. denied 519 U.S. 816 (1996)
    ...................................................................................................................................... 16, 17

Gottlieb v. County of Orange, 84 F.3d 511 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Green Acres of Verona v. Verona, 146 N.J. Super. 468, 470 (App. Div. 1977) ....................... 22

Green v. City of Paterson, 971 F.Supp. 891, 912 (D.N.J. 1997) .............................................. 23

Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995) ............................................ 23

Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284 (3d Cir. 1993)
    ...................................................................................................................................... 27

Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)................................................................ 27

Kirk v. City of Newark, 109 N.J. 173, 185 (1988) ................................................................... 16

Kneipp v. Tedder, 95 F.3d 1199, 1205 (3rd Cir. 1996) ............................................................ 16

Kulak v. City of New York, 88 F.3d 63 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13

Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984) ....................................... 24

Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 691, 694, 56 L.Ed.2d 611, 98 S.Ct.
    2018 (1978) **. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24**

Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)................................................. 23

Parratt v. Taylor, 451 U.S. 527, 544 (1981) .......................................................................... 22

Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed. 2d 509 (1981) ............... 24

Popow v. City of Margate, 476 F.Supp. 1237, 1240 (3rd Cir. 1970) ....................................... 16

Reid v. Township of Hazlet, 198 N.J. Super. 229 (App. Div.), cert. denied 101 N.J. 262 (1985)
    ...................................................................................................................................... 24

Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 357, 358, 364, 365, 366, 367, 378, 380, 381 (1996), cert. denied 519 U.S. 911 (1996) ................................................. 16, 17, 18, 19, 21

Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . 13

Skevofilax v. Quigley, 586 F.Supp. 532, 537 (D.N.J. 1984), on rehearing 810 F.2d 378 (3rd Cir. 1987), cert. den. 481 U.S. 1029 (1987) ................................................................... 16

Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin, 656 F.App'x 1, 7 (3d Cir. 2016). 14

Tumpson v. Farina, 2018 N.J. 450, 473, 474 (2014) ................................................ 26

United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.2d 392, 401 (3rd Cir. 2003) 19

United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) .................................... 27

Weimer v. Amen, 870 F.2d. 1400, 1405 (8th Cir. 1989) ............................................ 18

Whittaker v. Township of Neshannock, 437 F. App'x, 105, 108-09 (3d Cir. 2011). . . . . . . . . .18

**Statutes**

28 U.S.C. § 1367(a) ........................................................................ 26

28 U.S.C. § 1367(c)(3) ..................................................................... 27

42 U.S.C. § 1983 .................................................... 15, 16, 21, 22, 23, 24, 26

New Jersey Civil Rights Act., N.J.S.A. 10:6-1 et. seq. ........................................... 26

New Jersey Civil Rights Act, N.J.S.A. 10:6-2c ............................................. 26

**Rules**

Fed. R. Civ. P. 56 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

New Jersey Court Rule 4:69. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Other Authorities**

New Jersey Constitution. Article VI, § 5, ¶ 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

New Jersey Constitution. Article I, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………………….2

TABLE OF CONTENTS........................................................................................4

PRELIMINARY STATEMENT.............................................................................5

STATEMENT OF FACTS ....................................................................................8

LEGAL ARGUMENT

      **Point I**      **SUMMARY JUDGMENT SHOULD BE GRANTED TO THE DEFENDANTS BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT..............................................................................13**

      **Point II**      **PLAINTIFF'S CLAIMS FOR VIOLATIONS OF DUE PROCESS BY THE DEFENDANT SHOULD BE DISMISSED……………………………………...16**

      **Point III**      **PLAINTIFF'S CLAIMS AGAINST THE BOROUGH OF EMERSON SHOULD BE DISMISSED BECAUSE IT CANNOT BE HELD LIABLE UNDER RESPONDENT SUPERIOR OR VICARIOUS LIABILITY……………………………………………25**

      **Point IV**      **DEFENDANT IS ENTITLED TO A DISMISSAL OF PLAINTIFF'S STATE LAW CONSTITUTIONAL CLAIMS……………………………………………27**

      **Point V**      **PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED DUE TO THE LACK OF SUPPLEMENTAL JURISDICTION AND THE CHOICE OF LAW PROVISION OF THE AGREEMENT BETWEEN THE PARTIES………..28**

CONCLUSION...................................................................................30

## **PRELIMINARY STATEMENT**

Defendant, Borough of Emerson, submits this Brief in support of its Motion for Summary Judgement, which seeks to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 56. Co-defendant, Emerson Mayor Danielle DiPaolo, has filed her own Motion for Summary Judgement. The Borough of Emerson joins in this Motion, and adopts the arguments set forth by counsel for Mayor DiPaolo.

Plaintiff, Emerson Redevelopers Urban Renewal, LLC ("Plaintiff") filed its original Complaint on April 22, 2020. The defendants filed Motions to Dismiss, and Judge Madeline Cox Arleo, in a written decision dated February 23, 2021 dismissed the Complaint, without prejudice. The Court reasoned as follows:

> The Complaint does not allege improper financial gain on the part of Defendants and does not directly allege racial bias. Instead, the Complaint asserts that DiPaola opposes the Project and redevelopment in general, that 29 of the 147 units in the Project will be earmarked for low- and moderate-income families, and that affordable housing benefits the poor and minorities. See, e.g., Compl. ¶¶ 1, 44-45. Plaintiff then invites the Court to infer from these allegations that DiPaola acted with racial animus. Pl. Opp. to Emerson Mot. 22, ECF No. 19. Such inference is not a reasonable reading of the Complaint as currently pled.

> See Hon. Madeline Cox Arleo, U.S.D.J., Letter Order dated February 23, 2021, ECF Docket# 24, p. 4.

> The Court further determined:

> Drawing all reasonable inferences in Plaintiff's favor, the Complaint depicts, at most, Defendants' resistance to fulfilling Emerson's Mt. Laurel obligation to provide its fair share of affordable housing. See Compl. ¶¶ 44, 50, 52-54, 69. While the Court recognizes the importance of the Mt. Laurel doctrine, land use decisions motivated by a reluctance to comply with state law do not, without more, give rise to an independent substantive due process claim under the Federal Constitution. See Whittaker, 437 F. App'x at 108-09. A contrary holding would effectively federalize all Mt. Laurel-related disputes and create the precise result that the "conscious shocking" requirement seeks to avoid. See Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) ("What is clear is that this test is designed to avoid converting federal courts into super zoning tribunals.").

See Hon. Madeline Cox Arleo, U.S.D.J., Letter Order dated February 23, 2021, ECF Docket# 24, p. 4.

However, the Court did allow the plaintiff an opportunity to cure these Constitutional deficiencies with the filing of an Amended Complaint within thirty days. On cue, plaintiff filed its First Amended Complaint on March 25, 2021, by simply adding the words "race", "racial animus", "minorities", and/or "racial discrimination" to the text of the pleading on over twenty-three occasions.

The defendants again moved to dismiss the First Amended Complaint under Rule 12(b)(6). In its decision denying the defendants' Motions in part, the Court stated:

> Of course, Plaintiff will ultimately need to produce evidence showing that Defendants' land use decisions were motivated by racial animus, as opposed to a mere reluctance to comply with state law or a general dislike of large residential buildings. At the pleading stage, however, the Court is satisfied that Plaintiff's allegations are sufficient to "nudge[ its] claim[ ] across the line from conceivable to plausible." Bell At. Corp., 550 U.S. at 547.

See Hon. Madeline Cox Arleo, U.S.D.J., Order dated November 22, 2021, ECF Docket# 36, p. 4, footnote #6.

It is submitted herein that the plaintiff, despite extensive discovery, has not produced one iota of evidence that the defendants' land use decisions were motivated by racial animus, nor that any custom, policy or practice of the Borough was sufficiently egregious to impose municipal liability under Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 112, 123 (1988).

At its core, the dispute between the parties is a State law breach of contract claim, with plaintiff gratuitously adding Federal civil rights claims in a desperate effort to maintain venue in the Federal Court, and intimidate the defendants with the prospect of monetary damages and fee shifting. In fact, the parties are engaged in State Court matters venued in Bergen County, New Jersey involving the very same/similar issues (In the Matter of the Application of Emerson,

<u>Bergen County, New Jersey For a Declaratory Judgment</u>, Docket No. BER-L-6300-15 and <u>Borough of Emerson v. Emerson Redevelopers Urban Renewal, LLC, et al.</u>, Docket No. BER-L-3359-20. The State Court litigations have resulted in a judicial Order dated March 16, 2021 which appointed a "Mount Laurel Implementation Monitor" to implement the affordable housing settlement and resolve disputes between the parties. (See Judge Padovano's March 16, 2021 Order, annexed to the Certification of Christopher C. Botta as Exhibit D).

It must also be noted that the Redevelopment Agreement between the parties, cited extensively in the First Amended Compliant and a matter of public record, has a Choice of Law provision at Paragraph 14.12, which states, "This Agreement shall be governed by and construed by the laws of the State of New Jersey. *Any legal action filed in this matter shall be heard in Superior Court of New Jersey, Bergen County Vicinage.*" (See Redevelopment Agreement, dated June 14, 2016, annexed to the Certification of Christopher C. Botta as Exhibit E).

## STATEMENT OF FACTS

Plaintiff is the owner of property located in the Borough of Emerson that has been approved for construction of a 147 Unit, four-story mixed-use development (the "Project") that includes 29 low- and moderate-income housing units (See First Amended Complaint, ¶ 1, annexed to the Certification of Christopher C. Botta as Exhibit A). The Plaintiff and the Borough entered into a Redevelopment Agreement on December 20, 2016 (the "Redevelopment Agreement") in connection with the Project, and to guide any disputes and issues relating to the project. (See Redevelopment Agreement, dated June 14, 2016, annexed to the Certification of Christopher C. Botta as Exhibit E)

Plaintiff alleges that the Borough and/or its Mayor, co-defendant Danielle DiPaola, undertook various actions which hindered and delayed construction of the project, and resulted in a breach of the Redevelopment Agreement, due to an alleged racial animus against affordable housing and general opposition to the project. (See First Amended Complaint, ¶ 55, annexed to the Certification of Christopher C. Botta as Exhibit A). Plaintiff additionally claims that these actions and the alleged breach of contract amount to a violation of the plaintiff's Federal and State civil rights, since they interfere with the mandate of the New Jersey Constitution to provide for affordable housing in the State of New Jersey, and for the violation of the plaintiff's Federally protected property rights. (See First Amended Complaint, ¶ 2-3, annexed to the Certification of Christopher C. Botta as Exhibit A).

Plaintiff, in response to the dismissal of its Complaint without prejudice by Judge Madeline Cox Arelo on February 23, 2021, asserted in its First Amended Complaint, in words only with no evidence presented or even inferred, that the Borough, through its interaction with the Plaintiff, had a racial animus and engaged in actions designed to prevent racial integration of the Borough. (See First Amended Complaint, ¶ 5 & ¶ 12, annexed to the Certification of

Christopher C. Botta as Exhibit A). In fact, and incredibly, Plaintiff goes so far as to state that the "ultimate goal" of the entirety of the courses of action between the parties was to prevent racially diverse minorities from moving into Emerson. (See First Amended Complaint, ¶ 12, annexed to the Certification of Christopher C. Botta as Exhibit A). However, nowhere in the First Amended Complaint nor the extensive discovery record is there any factual evidence or overt actions that even remotely connect the legitimate concerns and contractual disputes between the parties to any racial animus.

In an effort to support its position, plaintiff has produced an expert report from Art Bernard, P.P. This report is rife with inaccuracies and baselessly concludes: "I understand that ERUR asserts that the Borough's current leadership has attempted to block this construction. As discussed above, Emerson's exclusionary zoning has, in my opinion, to a reasonable degree of certainty in the field, had a disproportionate impact on African-American and Hispanic households; and delays in the construction of the 29 low and moderate income units at issue in this matter, will continue the exclusionary status quo." (See Report, page 10, annexed to the Certification of Christopher C. Botta as Exhibit B).

It goes without saying, and there is no need for an expert to opine, that any delay in the construction of low- and moderate-income housing stock will delay occupancy of said housing stock, by any residents, no matter their race, religion, gender or financial standing. However, there is no evidence in the record before the Court that any construction delay was or is the result of racial animus by the Borough or its officials.

Importantly, Mr. Bernard's report points to no facts which support his conclusions, nor to any specific instances or examples of racial animus by the Borough or any Borough officials. The *only* document reviewed by Mr. Bernard in preparation of his report was the "2017 - 2021 American Community Survey, published by the United Census Department." See Bernard

Report, page 2. Notwithstanding the obvious fact that this census survey is outdated, the report also inaccurately reports that the Borough has <u>no</u> existing affordable housing developments, which is patently false, as there are a total of 33 existing affordable units in the Borough at present, and the Borough has implemented several zoning regulations to promote the redevelopment of sites within the community with affordable housing.

Defendants have produced an expert planning report, prepared by the Preferred Planning Group, dated November 9, 2023, which cites to various and numerous primary sources with current statistics and projections, and concludes, among other things, that the Borough is making substantial progress in advancing diversity and rental housing opportunity. (See Report entitled "Expert Planning Rebuttal Report Prepared for Defendants," dated November 9, 2023, annexed to the Certification of Christopher C. Botta as Exhibit C). The defense expert planning report further opines and concludes:

> In conclusion, the Bernard Report fails to recognize the substantial number of affordable housing units already built in the community and the fact that the Borough's land use policies comply with the Mt. Laurel doctrine and Fair Housing Act.

> Although a fully developed community, the Borough has effectuated a variety of affordable housing, including supportive living arrangements and rental housing, to continue its upward trajectory on diversity in the racial composition of residents and housing types. Therefore, we see no evidence of Plaintiff's assertion of Defendant's goal "to prevent racially diverse minorities from moving into Emerson, which Defendants connect to Mt. Laurel low-income housing".

> See Preferred Planning Group Report, page 3.

There is no question that the Borough of Emerson has created affordable housing units, for all residents regardless of race, and the opportunity for additional affordable housing units to be constructed in the future, and is in compliance with the Mt. Laurel doctrine and the Fair Housing Act. See Preferred Planning Group Report, page 3.

Yet, this case should not be viewed as a "battle of experts," nor is the Court even required to make a credibility determination between and among the experts. The Bernard Report does not address the central issue of the litigation, to wit, the *motivation* of the Borough in making any decisions. Mr. Bernard simply reports on his perceived notion and conclusion on the *end result* of any such decisions. There is and can be no opinion on the causal connection between the two, since he does not and cannot cite *any* facts supporting racial animus as a motivation for the Borough's actions or inaction. In fact, he does not even try. This does not create a material issue of fact, since even accepting Mr. Bernard's conclusions, he does not provide any factual evidence of racial animus by the Borough.

There is no question that there is *no* evidence of any racial animus or racial motivation for the issues plaguing the development of the plaintiff's property. Whether it is plaintiff's economic condition, the plaintiff's inability to comply with regulations, or other factors, is not material to the determination of this Court. What is material is that there are no facts to support the plaintiff's conclusions that the inability of the plaintiff to construct and complete this development is the result of some racial animus against affordable housing in or by the Borough of Emerson and its officials and professionals.

It must be noted that the issues relating to the plaintiff's inability of the plaintiff to construct and complete this development in Emerson is the subject of pending actions in the New Jersey Superior Court. This is consistent with the Choice of Law provision at Paragraph 14.12 of the Redevelopment Agreement between the parties, which states, "This Agreement shall be governed by and construed by the laws of the State of New Jersey. *Any legal action filed in this matter shall be heard in Superior Court of New Jersey, Bergen County Vicinage."* (See Redevelopment Agreement, dated June 14, 2016, annexed to the Certification of Christopher C. Botta as Exhibit E).

11

In fact, on March 16, 2021, in response to competing Motions to Aid Litigant's Rights by the parties in State Court, New Jersey Superior Court Judge Gregg Padovano, J.S.C. ordered that a "Mt. Laurel Implementation Monitor" be appointed to oversee the issues surrounding the Redevelopment Agreement and the Borough compliance with its Mt. Laurel obligations. (See Judge Padovano's March 16, 2021 Order, annexed to the Certification of Christopher C. Botta as Exhibit D). The entry of the Order, and appointment of the Implementation Monitor, is meant to provide a mechanism for the resolution of any disputes that may arise between the parties to the Redevelopment Agreement, and is the entirely proper venue for the State law issues raised in the plaintiff's First Amended Complaint.

## LEGAL ARGUMENT

### POINT I

### SUMMARY JUDGMENT SHOULD BE GRANTED TO THE DEFENDANTS BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

Under Fed. R. Civ. P. 56(c), the party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact from the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits which under the applicable substantive law entitles the movant to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), *cert. den.* 484 U.S. 1066 (1988).

In Kulak v. City of New York, 88 F.3d 63 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit discussed the standard for summary judgment.

> Summary judgment is mandated when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 91 L.Ed.2d 202, 106 S. Ct. 2505 (986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995), conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment. See Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, L.Ed.2d 538, 106 S. Ct. 1348 (1986). Kulak, 88 F.3d at 78-79.

Accordingly, the United States Court of Appeals for the Second Circuit set forth the burden of the party opposing a summary judgment motion in Gottlieb v. The County of Orange, 84 F.3d 511 (2d Cir. 1996).

13

> In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed. R. Civ. P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on the allegations in his pleading, see Id., or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible, see , e.g. , L & L Started Pullets, Inc. v. Gourdine, 762 F.2d 1, 3-4 (2d Cir. 1985); Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983). The motion "will not be defeated merely . . . on the basis of conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).
> Gottleib, 84 F.3d at 530-531.

In deciding a summary judgment motion, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." Kulak v. The City of New York, 88 F.3d 63, 79 (2d Cir. 1996). See also Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). If the undisputed facts reveal that there is an absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute with respect to other elements becomes immaterial and cannot defeat the motion. Gottleib, 84 F.3d at 531.

Here, it is respectfully submitted that the standards for summary judgment as set forth above have been met with the instant application. Plaintiff has offered no evidence to demonstrate that Defendants violated their constitutional rights and/or violated a duty owed to Plaintiff and therefore they are not entitled to relief. As such, Defendants are entitled to Summary Judgment.

Even giving the benefit of all reasonable inferences to the Plaintiff, it still cannot establish that the Defendants discriminated against and/or violated any Constitutional protections in its dealings with the Plaintiff. Since there are no questions of material fact to be determined by a jury, the Defendants are entitled to summary judgment as a matter of law.

The First Amended Complaint generally alleges that the defendants have violated the plaintiff's civil rights and otherwise breached an agreement between the parties to redevelop certain property within the Borough of Emerson. The First Amended Complaint is tailored, without any substantive evidence, on racial discrimination.

Likewise, the plaintiff's expert Planning Report, prepared by Art Bernard, P.P., is rife with inaccuracies and factual mistakes, and cites no evidence to support the allegations of racial animus by the Brough or its officials. Even assuming as correct its baseless conclusion that any delay in construction of the ERUR development will impact low income African-American and Hispanic households disproportionately, this is an end-result of any delay. Despite the fact that this is not supported by any data, nowhere does Mr. Bernard state the reason or motivation for such delay, and specifically nowhere does he assert that the cause or motivation of any delay was racial animus by the Borough. Mr. Bernard cannot and does not cite to any statements, policies or actions of the defendants which support the plaintiff's contention that delays in construction were caused by racial animus or racial discrimination. Thus, even accepting Mr. Bernard's conclusions, there is no question of material fact to be decided by a jury in connection with any racial animus or motivation of the defendants.

In Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin, 656 F. App'x 1, 7 (3d Cir. 2016), the Third Circuit held that the "mere inclusion of the phrase 'personal and political animus' in the Complaint is clearly insufficient" absent additional supporting facts. Similarly, the words "racial animus" added to the plaintiff's First Amended Complaint, with no substantive supporting facts established throughout extensive discovery, including the exchange of expert reports, is insufficient to raise this State law contractual dispute to a Federal controversy. In sum, the plaintiff, despite extensive discovery, has been unable to nudge its claim across the line from conceivable to plausible. It has utterly failed to back up its baseless allegations of racism with

facts, even from its own expert, and therefore there are no Federal Constitutional questions or causes of action that need be addressed by a Federal jury.

## POINT II

**PLAINTIFF'S CLAIMS FOR VIOLATIONS OF DUE PROCESS BY THE DEFENDANT SHOULD BE DISMISSED**

Plaintiff alleges in the First Amended Complaint that the Borough defendants acted with some undefined "racial animus", and violated their Federal and State Constitutional civil rights. However, plaintiff has utterly failed to produce any facts to support such specific allegations of racial animus which come anywhere close to this high standard. For the purposes of the Motion, however, the benefit of all inferences shall be given to the plaintiff. Nevertheless, plaintiff has failed to show how any actions of the defendants violated their due process rights, or how any of their actions were motivated to exclude minority populations from the Borough. Simply saying an individual or entity is racist is not enough, even in this political climate, and that is all the plaintiff has done in its poorly plead and ill-supported First Amended Complaint. Further, nothing has been presented in either fact or expert discovery which would support such claims.

42 U.S.C. § 1983 provides in pertinent part as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be   liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Our courts have consistently held that 42 U.S.C. § 1983 does not create constitutional rights, but only creates a cause of action to remedy violations of constitutional rights.  Clark v. Buchka, 936 F.Supp. 212, 217 (D.N.J. 1996).  In addition, 42 U.S.C. § 1983 is not a general tort statute.  Skevofilax v. Quigley, 586 F.Supp. 532, 537 (D.N.J. 1984), on rehearing 810 F.2d 378 (3rd Cir. 1987), cert. den. 481 U.S. 1029 (1987).

Generally, to state a claim pursuant to 42 U.S.C. § 1983 a litigant must establish that:  (1) he or she was deprived of a federal right secured by the Constitution; or (2) by a person acting under color of state law.  Kirk v. City of Newark, 109 N.J. 173, 185 (1988); Popow v. City of Margate, 476 F.Supp. 1237, 1240 (3rd Cir. 1970), citing Adickes v. S.H. Kress and Co., 398 U.S. 144, 150 (1970); and Kneipp v. Tedder, 95 F.3d 1199, 1205 (3rd Cir. 1996).

The New Jersey Supreme Court has established the high standards for bringing a §1983 claim to challenge the actions of municipal officials.  In General Motors v. City of Linden, 143 N.J. 336, 350 (1996), cert. denied 519 U.S. 816 (1996) the New Jersey Supreme Court held that there is no basis for courts to award relief pursuant to § 1983 to correct an arbitrary tax assessment because New Jersey law provides an adequate legal remedy.  In Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 357 (1996), cert. denied 519 U.S. 911 (1996), the New Jersey Supreme Court found that "similar principles of federalism lead generally to the same conclusion in the context of land use controls."  The New Jersey Supreme Court held that "absent egregious misconduct that *shocks the conscience* in the sense of violating civilized norms of governance, or invidious discrimination on the part of a board member or board, so long as the State provides a plain, adequate and timely remedy to redress irregularities in the proceedings, a party aggrieved by the determinations of a municipal . . . board does not have a claim for relief under § 1983." Id. at 358.

Shortly after the New Jersey Supreme Court had decided both <u>General Motors</u> and <u>Rivkin</u> the United States Supreme Court similarly held as follows:

> It should not be surprising that the constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm . . . the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.

> <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 848 (1998).

Plaintiff, despite extensive discovery, fails to articulate in any manner how the Borough has violated its rights, acted with a racial animus, or met the above exacting and high standard which would impose liability. Bare allegations of racism sprinkled into the First Amended Complaint, not backed up by any facts in discovery, are not enough to defeat this Motion for Summary Judgment. An application of the standards announced in <u>General Motors</u>, <u>Rivkin,</u> and <u>The County of Sacramento</u> mandate that the Plaintiff's First Amended Complaint now, at the conclusion of discovery, be dismissed with prejudice. "Land use decisions motivated by a reluctance to comply with state law do not, *without more*, give rise to an independent substantive due process claim under the Federal Constitution." <u>Whittaker v. Township of Neshannock</u>, 437 F. App'x, 105, 108-09 (3d Cir. 2011). No *more* has been produced in evidence by the plaintiff in this case.

### A.  **Substantive Due Process Analysis.**

The concept of substantive due process bars certain arbitrary government actions, regardless of the fairness of the procedures used to implement them. <u>Rivkin v. Dover Tp. Rent</u>

Leveling Bd., 143 N.J. 352, 364 (1996), citing Daniels v. Williams, 474 U.S. 327, 337 (1986). The United States Supreme Court "has long hesitated to afford an overly broad reading to the substantive component of the Due Process Clause." Rivkin, supra, 143 N.J. at 365.

Substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Id. at 366. Rather, "substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that "shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity." Id. at 365 (citing Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989)). Our highest Court has also held that "with the exception of certain intrusions on an individual's privacy and bodily integrity, the collective conscience is not easily shocked." Id. at 366. Furthermore, the New Jersey Supreme Court has acknowledged that "official misconduct that deprives one of a proprietary interest may rise to the level of a substantive due process violation in limited instances, as when a government body's actions are motivated by racial animus or political or personal bias. Id. at 367 (citing Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 (1st Cir. 1982)), cert. denied 459 U.S. 989 (1982)).

To maintain a substantive due process claim pursuant to §1983 a plaintiff must establish egregious misconduct that "shocks the conscience" in the sense of violating civilized norms of governance and offending human dignity. Substantive due process violations are reserved only for government abuses that are "too close to the rack and screw to permit of constitutional differentiation." Rivkin, supra, 143 N.J. at 365-366. In fact, the United States Supreme Court has rejected the "lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct," and has held that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the

threshold for constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("In reviewing the conduct of executive officials, only conduct that "shocks the conscience" rises to the level of a substantive due process violation"). Thus, given the behavior necessary to violate a plaintiff's substantive due process rights, it is not surprising that only rarely will the conduct of municipal government give rise to a due process violation. Id. Were it otherwise true, virtually every alleged legal or procedural error of a local planning or zoning board or governing body could be challenged pursuant to § 1983 on the theory that the erroneous application of state law amounted to a due process violation. Id. at 367; and see also United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.2d 392, 401 (3rd Cir. 2003).

Whether conduct shocks the conscience is a question of law for the court to decide. Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004).

In Rivkin v. Dover Tp. Rent Leveling Bd., 143 N.J. 352 (1996) plaintiffs asserted that they had been denied their constitutionally guaranteed substantive due process rights where it was alleged that a Board member had tainted the Rent Leveling Board proceedings by berating an applicant in public and by bringing before the Board facts which were outside the record at a rent proceeding. Ultimately, the New Jersey Supreme Court had concluded that the "conduct of an errant board member who berated an applicant and brought in facts outside the record at a rent proceeding in violation of acceptable board practice does not rise to the level of a substantive due process violation under the New Jersey Supreme Court's standards." Id. at 366.

The holding in Rivkin is even more striking than the matter at bar where the conduct challenged by Plaintiffs is clearly less egregious than the conduct as challenged in Rivkin, even with the addition of baseless and unsupported allegations of racial animus. In the instant action Plaintiffs claims that the Emerson Defendants have violated their civil rights through a series of

administrative actions, inactions and delays amounting to a common law breach of contract, "*all with ultimate goal to deprive minorities of the opportunity to live in Emerson*." If taken to its logical conclusion, it must be believed that every single municipal employee and elected official acted with racist intent to exclude minorities from Emerson.

Yet, despite extensive discovery, Plaintiff is unable to offer any facts which even hint at substantive due process violations based on racial animus. There are no leaked emails, there are no inadvertent open mic recordings, there are no allegations of backroom dirty deals. The discovery is actually all very mundane, highlighted by highly technical disputes between engineers, construction officials and contractors of the parties. Plaintiff has provided no evidence whatsoever, only blanket and unsupported statements over twenty-three times in the First Amended Complaint, to demonstrate that any of the actions of the Borough had been made with any tinge of racial animus, or even political or personal bias.

Plaintiff has produced an expert planning report prepared by Art Bernard, P.P. entitled "Impact of Exclusionary Zoning in Emerson". See Report, annexed to Certification of Christopher C. Botta as Exhibit B. Yet, this report is also unable to assert any facts, statements or documents attributable to the defendants which supported the allegations of racial animus. In fact, the *only* document reviewed by Mr. Bernard in preparation of his report was the outdated "2017 - 2021 American Community Survey, published by the United Census Department." See Bernard Report, page 2. Mr. Bernard *did not* review any discovery in the litigation, *did not* review testimony or statements of any Borough witness, *did not* review testimony or statements of any of plaintiff's witnesses, *did not* review voluminous documents produced in discovery, and *did not* review any zoning ordinances or records of the Borough of Emerson before making his

baseless declaration that Emerson's goal was and is to deny opportunity for affordable housing to minorities.

Instead, the report asserted a blanket conclusion that delays in building housing would delay the ability for low- and moderate-income households, assumed without basis to be minorities, to move into Emerson. The report speaks nothing of the motivation or actions of the Borough or its officials to affirmatively delay housing based on racial animus, and Mr. Bernard concedes he has no knowledge, by admitting, "I understand that ERUR asserts that the Borough's current leadership has attempted to block this construction." See Report, page 10. In fact, one could (and one will) argue that the Bernard report is a net opinion, with bare conclusions unsupported by any relevant factual evidence.

Thus, in the matter at bar it is submitted that Plaintiff cannot demonstrate a prima facie case for violation of its right to substantive due process pursuant to 42 U.S.C. § 1983, as a substantive due process analysis pursuant to Rivkin and County of Sacramento clearly discloses that the actions of the Municipal Defendants did not "shock the conscience," nor were they "offensive to human dignity," nor did they constitute official misconduct based upon "racial animus or political or personal bias." The allegations presented by Plaintiff in its First Amended Complaint and the facts revealed in discovery clearly fall short of that portion of the "tort law's spectrum of culpability" necessary to maintain a substantive due process action. Even assuming as true the "non-racial" allegations of the First Amended Complaint, it is axiomatic that a State official's failure to follow State law does not, by itself, shock the conscience in the absence of additional facts. No such additional facts are presented in this case.

Even if there is a legitimate question as to whether the Borough and its officials are opposed to the scope and scale of the project, or even that they were opposed to redevelopment

in general, this is not enough to vault the case from a State law dispute to a violation of Constitutionally protected due process rights.

Further, in the matter at bar, adequate post-deprivation remedies were and are clearly available to the plaintiffs. The remedies included, but were not limited to, appeal to the Superior Court, an Action in Lieu of Prerogative Writs or a Motion to Enforce Litigant's Rights, and request for appointment of a Special Master/Monitor. In fact, plaintiffs *have* availed themselves of these remedies in State Court, and with the appointment by Judge Padovano of a Mt. Laurel Implementation Monitor, whose role is and has been to mandate compliance with the Redevelopment Agreement between the parties. That fact alone should be enough to disprove that there was a due process violation.

Further, the New Jersey Constitution had preserved the substance of common law Prerogative Writs review by permitting parties to seek "review, hearing and relief" in the Superior Court of all actions of municipal agencies. N.J. Const. Art. VI, § 5, ¶ 4. New Jersey Court Rule 4:69 implements this constitutional provision. A court may set aside a municipal decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law. Id. at 378; and see Reid v. Township of Hazlet, 198 N.J. Super. 229 (App. Div.), cert. denied 101 N.J. 262 (1985); and Green Acres of Verona v. Verona, 146 N.J. Super. 468, 470 (App. Div. 1977).

Plaintiff may contend that filing only an action in lieu of Prerogative Writs is not an adequate remedy because it does not enable Plaintiff to recover monetary damages, attorney's fees, or costs. In Parratt v. Taylor, 451 U.S. 527 (1981), however, the United States Supreme Court had concluded that "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not

23

mean that the state remedies are not adequate to satisfy the requirements of due process." <u>Parratt</u>, <u>supra</u>, 451 <u>U.S.</u> at 544. Further, Judge Padovano's Order provided that Plaintiff shall be entitled to reasonable fees and costs for any violations by the Borough.

Likewise, the entry of the Judge Padovano's Order in State Court is consistent with the Choice of Law provision at Paragraph 14.12 of the Redevelopment Agreement between the parties, which states, "This Agreement shall be governed by and construed by the laws of the State of New Jersey. *Any legal action filed in this matter shall be heard in Superior Court of New Jersey, Bergen County Vicinage."* The entry of the Order, and appointment of the Monitor, has provided a proper and adequate mechanism for the resolution of disputes that have arisen between the parties to the Redevelopment Agreement. (See Redevelopment Agreement, dated June 14, 2016, annexed to the Certification of Christopher C. Botta as Exhibit E).

The Borough respectfully requests that this Court grant this Motion for Summary Judgement to Dismiss Plaintiff's claim for damages pursuant to 42 <u>U.S.C.</u> § 1983, since the allegations and facts revealed in discovery, when viewed in the light most favorable to Plaintiff, establish that the Borough Defendants' conduct did not "shock the conscience" as a matter of law, and is not rooted in racial animus, as would be required to impose liability pursuant to 42 <u>U.S.C.</u> § 1983. Moreover, the Municipal Defendants cannot be held liable for a violation of Plaintiffs' right to procedural due process since Plaintiff's procedural due process claim was fully capable of being remedied through other means, and plaintiff has in fact pursued those pathways.

## POINT III

**PLAINTIFF'S CLAIMS AGAINST THE BOROUGH OF EMERSON SHOULD BE DISMISSED BECAUSE IT CANNOT BE HELD LIABLE UNDER RESPONDENT SUPERIOR OR VICARIOUS LIABILITY.**

It is well settled that the Borough of Emerson cannot be held liable to the Plaintiff on a theory of *respondeat superior* or *vicarious liability*. Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 691, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978); see also Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). Further, a local governmental entity cannot be held liable pursuant to supervisor liability for the conduct of its employees. Green v. City of Paterson, 971 F.Supp. 891, 912 (D.N.J. 1997).

42 U.S.C. §1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The specific language of §1983 "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. Thus, municipal liability will only arise when a constitutional deprivation results from an official custom or policy. Montgomery, 159 F.3d at 126.

A plaintiff bringing suit under §1983 must identify a challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Thus, for the plaintiff to prevail he

must show that municipal policy or custom was the "moving force of the constitutional violation." Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed. 2d 509 (1981). It is only when execution of a government's policy or custom, whether by its lawmakers or by those with whose edicts or acts may fairly be said to represent official policy, inflicts injury that a government as an entity is responsible under §1983. Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 694, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).

Here, assuming arguendo that Plaintiff *could* demonstrate constitutional violations, specifically racial animus, Plaintiff's claims against the Borough still fail. Plaintiff has not alleged and cannot prove that the Borough of Emerson allowed constitutional deprivations by their officials to occur as an official custom or policy of the Municipality. As stated, even plaintiff's own planning expert, Art Bernard, P.P., cannot point to any actions of the defendants which amount to official acts or customs. He simply concludes that the delay in building low- and moderate-income housing is a negative, without backing this up with any facts or any official custom or policy of the Borough defendants that led to or was causally related to any delays.

In fact, defendant's planning expert, Preferred Planning Group, highlights several areas where official custom and policy of the Borough has in fact encouraged low- and moderate-income housing development. For example, the Borough's existing stock of affordable housing, including supportive living arrangements and rental housing, its continued compliance with the Mt. Laurel doctrine and Fair Housing Act, and its adoption of inclusionary zoning overlay districts to encourage additional low- and moderate-income housing. (See Report entitled "Expert Planning Rebuttal Report Prepared for Defendants", dated November 9, 2023, annexed to the Certification of Christopher C. Botta as Exhibit C).

Despite plaintiff's desperate efforts, it is clear that any alleged actions, deeds or misdeeds, which are specifically denied by the defendants, relate only to allegations of breach of the Redevelopment Agreement. Plaintiff has also failed to show that any action or inaction by the Borough could be interpreted as encouraging unconstitutional behavior, including racial discrimination.

Based upon the clearly defined case law, and the lack of any evidence of any unreasonable behavior, much less an official custom or policy designed to deprive Plaintiff of constitutional rights, including the right to be free from racial discrimination, Plaintiff cannot prevail on this theory and this Court should dismiss all Federal claims against the Borough of Emerson.

**Point IV**

**DEFENDANT IS ENTITLED TO A DISMISSAL OF PLAINTIFF'S STATE LAW CONSTITUTIONAL CLAIMS**

Plaintiff brings State law claims under the New Jersey Civil Rights Act in the Sixth Count of the First Amended Complaint.

Article I, paragraph 1 of the New Jersey State Constitution states: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, or acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." A person may bring a private cause of action for damages based upon a violation of his constitutional rights solely under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2c, which, in relevant part, applies only when a person has been deprived of any substantive due process, equal protection of rights, or whose exercise or enjoyment of those substantive rights, privileges or immunities have been interfered

27

with..." <u>See Tumpson v. Farina</u>, 2018 N.J. 450, 473 (2014) (holding that a claim under the NJCRA must rise or fall on whether plaintiffs were deprived of a substantive constitutional right).

The New Jersey Civil Rights Act has been interpreted analogously with similar claims under Section 1983. Id. at 474 (holding, "[t]he interpretation given to parallel provisions of Section 1983 may provide guidance in construing our Civil Rights Act); and see <u>Citta v. Borough of Seaside Park</u>, 2010 <u>WL</u> 3862561, *10, n. 3 (D.N.J. Sept. 27, 2010) (analyzing the same civil rights claim under both constitutions together). As previously argued, plaintiff's claims against the Borough under U.S.C.A. Section 1983 must fail. Thus, as a matter of law, Plaintiff's First Amended Complaint fails to state a claim for a substantive due process violation under the analogous Article I, paragraph 1 of the New Jersey State Constitution, and the Sixth Count of the First Amended Complaint should be dismissed.

**Point V**

**PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED DUE TO THE LACK OF SUPPLEMENTAL JURISDICTION AND THE CHOICE OF LAW PROVISION OF THE AGREEMENT BETWEEN THE PARTIES**

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) in, among other reasons, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) *see also* <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966)

("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

This Court may elect to retain supplemental jurisdiction provided that "judicial economy, convenience and fairness to litigants" require it. Gibbs, 383 U.S. at 726; *see also* Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284 (3d Cir. 1993) (citing same for the proposition that "in making its determination [to decline to exercise jurisdiction pursuant to § 1367(c)(3)], the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants"). However, "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." Gibbs, 383 U.S. at 726. The Third Circuit has held that unless these factors "provide an *affirmative justification* for doing so, a district court must decline to decide the pendent state claims if the claim over which the district court has original jurisdiction is dismissed before trial[.]" Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). In short, the presumptive rule is that the state law claims shall be dismissed, unless reasons of economy and fairness dictate otherwise.

Dismissal of plaintiff's Federal civil rights claims asserted in the First Amended Complaint also mandates dismissal of its State law claims in the remainder of the First Amended Complaint for breach of contract and breach of the implied covenant of good faith and fair dealing. These claims could easily be consolidated with the State Court actions, and subject to overview and enforcement by the State Court appointed Mt. Laurel Implementation Monitor.

In fact, the Redevelopment Agreement between the parties, cited extensively in the First Amended Compliant and a matter of public record, has a Choice of Law provision at Paragraph 14.12, which states, "This Agreement shall be governed by and construed by the laws of the State of New Jersey. *Any legal action filed in this matter shall be heard in Superior Court of New*

*Jersey, Bergen County Vicinage."* The express language of the Agreement between the parties anticipates and acknowledges that these State law claims should be addressed exclusively in the State courts, giving ample basis for this Court to dismiss the plaintiff's State law claims at this time.

## **CONCLUSION**

For all the reasons set forth above, it is respectfully submitted that the First Amended Complaint filed by plaintiff herein should be dismissed pursuant to F.R.C.P. 56.

Respectfully submitted,

**BOTTA ANGELI, L.LC.**
Attorneys for Defendant,
Borough of Emerson

/s/ *Christopher C. Botta*
_____
Christopher C. Botta

Dated: September 19, 2024