# *Art Bernard and Associates, L.L.C.*

Housing and Land Use Planning

# IMPACT OF EXCLUSIONARY ZONING IN EMERSON

JUNE 2023

PREPARED FOR EMERSON REDEVELOPERS URBAN RENEWAL, LLC

PREPARED BY

ART BERNARD, P.P.

77 North Union Street, Lambertville, New Jersey 08530 Phone (609) 397-8070
E-mail: yuckygolfer@gmail.com

This report provides my professional opinion regarding the relationship between the municipal housing stock and the ability of the low and moderate income population to afford housing in the community. Since the low and moderate income population, in New Jersey, includes a disproportionate share of African-American and Hispanic Households, municipal exclusionary zoning practices have a disproportionate impact on these two minority populations. I have been retained by Emerson Redevelopers Urban Renewal LLC (ERUR) to prepare this report.

## CREDENTIALS

I am the managing member of my own firm. I have a Masters in City and Regional Planning (MCRP) from Rutgers University. I am a licensed professional planner with 45+ years of experience in land use planning and affordable housing. I served the New Jersey Council on Affordable Housing (COAH) from March of 1986 to October of 1994 as its Deputy and Executive Directors. During that time, I developed and supervised COAH's entire work program and was responsible for working directly with the COAH Board on all of its rules and motion decisions. I prepared the First and Second Round rules that have been upheld by the Appellate Division, which include, but are not limited to, the fair share methodology, COAH's vacant land adjustment process, COAH's durational adjustment process and municipal compliance issues.

Since leaving COAH in 1994, I have worked for 27 municipalities in various capacities. I have worked with private sector clients before local boards and in Superior Court. I have testified as an expert witness in most of the State's vicinages and I have served the Superior Court as a Special Master.

I have also consulted for the New Jersey Builders Association (NJBA) as to affordable housing matters and I wrote the expert reports that NJBA submitted in its successful appeals of COAH's 2004 and 2008 rule adoptions. Pursuant to the Appellate Division's 2010 order for COAH to develop third Round rules based on COAH's first and second Round methodologies, I developed 1999-2023 fair share calculations. I also wrote an

expert report for NJBA challenging COAH's 2014 rule proposal that the COAH Board failed to adopt.

I have served as an expert witness in the fair share trials in Middlesex and Mercer Counties. I have testified in many other court proceedings involving affordable housing issues.

Since the Supreme Court established the declaratory judgment process, I have participated in about 70 matters as a professional planner for municipalities and private sector clients as well as a Special Master for the court. These matters involve municipalities from all over the State. I have attached my curriculum vitae as Exhibit 1.

## *DOCUMENTS REVIEWED*

This report is based on the most recent data available, the 2017 - 2021 American Community Survey, published by the United Census Department.

## *BACKGROUND*

Segregation in the United States persists for a variety of reasons[1] not the least of which rests with land use controls, e.g. exclusionary zoning laws. Researchers examining the effect of exclusionary zoning on segregation have found correlations. Rolf Pendall (2000) looked at the affect of zoning practices using Census data and a mail survey of over 1,100 localities in the Nation's 25 largest metro areas. His findings indicate that low density zoning works to reduce rental housing supplies which in turn reduces the number of minority residents in an area, or stated in other words: higher density housing works toward providing greater options for lower income and minority families, "[a] healthy supply of multifamily housing is particularly important to minority residents because it tends to be rented, and when owner-occupied it tends to cost less than detached houses."[2] Pendall concluded that "[f]our important housing market conditions promote inclusion of African

---

[1] The literature suggests numerous factors for segregations' persistence in the US including institutions discrimination, racial discrimination in real estate sales, household preferences, and predatory lending practices to name a few.

[2] Rolf Pendall. "Local Land Use Regulation and the Chain of Exclusion" *APA Journal.* Spring 2000, Vol. 66, No. 2, p. 127.

2

Americans and Hispanics: new housing supply, multifamily housing supply, rental housing supply, and affordable rental housing."[3]

Similarly, a discussion paper prepared for the Brookings Institute (2002) on issues of land use policy and housing affordability concluded:

> In the end, both traditional zoning practices and growth management policies can increase home prices, but they do so in different ways. Traditional zoning and other planning and land use controls limit the supply and accessibility of affordable housing, thereby raising home prices by excluding lower income households. Evidence shows that certain growth control and land use policies actually reduce jurisdictions' housing supply and the affordability of their housing. Such policies, already widespread in the U.S., include requirements for low-density-only, minimum housing size, or bans against attached or cluster homes. Such policies are, in fact, specifically intended to make housing more expensive and thereby exclude lower income families, who are often people of color. This "chain of exclusion" is a powerful reality for limiting the affordability of housing in certain jurisdictions. [4]

The New Jersey Supreme Court has determined that New Jersey municipalities have a constitutional obligation to provide low and moderate income housing opportunities through use of the zoning power. The New Jersey Legislature established the Council on Affordable Housing (COAH) with the responsibility of quantifying each municipal low and moderate income housing obligation, establishing criteria for the review of municipal compliance plans and conducting a review of municipal compliance plans. COAH successfully adopted 1987-1999 regulations that included fair share calculations for each municipality. COAH allocated a 1987-1999 allocation of 74 units to Emerson.

In 2015, the Supreme Court found that COAH was no longer a functioning agency and determined that the New Jersey courts must provide some of COAH functions. The

---

[3] Rolf Pendall, "Local Land Use Regulation and the Chain of Exclusion." *APA Journal*. Spring 2000, Vol. 66, No. 2, P. 139.
[4] Arthur C. Nelson, Rolf Pendall, Casey J. Dawkins, and Gerrit J. Knaap, "A Discussion Paper Prepared for The Brookings Institution Center on Urban and Metropolitan Policy." February 2002.

Supreme Court directed the courts to utilize COAH's 1987 – 1999 housing allocations and prepare 1999 – 2015 housing allocations using, for the most part, COAH's prior round methodologies.[5]

COAH allocated Emerson a 1987 – 1999 housing allocation of 74 units. There have been 1999 – 2025 fair share trials in Middlesex County (Judge Wolfson) and Mercer County (Judge Jacobson). Neither decision is binding on this court; however, most parties and courts have gravitated to the Jacobson methodology based on her March 8, 2018 Decision. The methodology results in a 1999-2025 housing allocation of 238 units for Emerson Borough. The results of the Jacobson methodology have generally been used, at least as a point of departure, for many court settlements between municipalities and Fair Share Housing Center (FSHC) throughout New Jersey. Thus, Emerson Borough has a cumulative 1987 – 2025 housing obligation of 312 low and moderate income housing units. However, I understand that Emerson is subject to a Consent Judgment, based on a settlement with FSHC which provides for a realistic development potential (RDP) of fewer units, the majority of which is satisfied by affordable housing provided by ERUR's Bock 419 community.

In stark contrast, the "New Jersey Guide to Affordable Housing," updated by the New Jersey Department of Community Affairs in 2022, indicates that there are no deed-restricted affordable housing units in Emerson.

### *THE IMPACT OF EXCLUSIONARY ZONING IN EMERSON*

My review of the 2017 – 2021 ACS data reveals that Emerson has a very homogenous housing stock. It is much less diverse than the housing stock for New Jersey. I should emphasize that New Jersey's affordable housing obligation is a share of a regional obligation, In the case of Emerson, the share is based on a housing region, including: Bergen County, Hudson County, Passaic County and Sussex County. Thus, only 13.1 percent of Emerson's housing stock involves some form of attached housing. In contrast,

---

[5] The direction was less explicit regarding the 1999 – 2015 portion of the 1999 – 2025 housing allocation.

46.9 percent of the State's housing stock is in some form of attached housing and 62 percent of the Region's housing stock is in the form of attached housing.

| Units in Structure | | | |
|---|---|---|---|
| Housing Type | New Jersey | Housing Region 1 | Emerson |
| 1 unit, detached | 53.1% | 38.0% | 86.9% |
| 1 unit, attached | 9.7% | 5.6% | 0.0% |
| 2 units | 8.9% | 17.1% | 4.7% |
| 3 to 4 units | 6.3% | 8.8% | 3.6% |
| 5 to 9 units | 4.7% | 6.3% | 0.5% |
| 10 to 19 units | 4.8% | 5.1% | 1.1% |
| 20 to 49 units | 4.1% | 6.1% | 2.1% |
| 50 or more units | 7.5% | 12.7% | 1.1% |
| Mobile home | 0.9% | 0.3% | 0.0% |
| Boat, RV, van, etc. | 0.0% | 0.0% | 0.0% |
| Source: 2017-2021 ACS | | | |

Typically, single family homes are the most expensive type of housing and the least likely to be rented. Low and moderate income households require less expensive housing; and, since many cannot qualify for a mortgage or find it difficult to afford the taxes and long term expenses associated with home ownership, many low and moderate income households require rental housing.

Indeed, when one examines, the rentals available in Emerson, one finds that the percentage of rentals is approximately one-third to one-quarter the percentage of rentals available in New Jersey and the Housing Region respectively.

| Percentage of Housing Units by Tenure ||||
|---|---|---|---|
| Tenure Type | New Jersey | Housing Region 1 | Emerson |
| Owner-Occupied | 64.9% | 52.9% | 87.2% |
| Renter-Occupied | 35.1% | 47.1% | 12.8% |
| Source: 2017-2021 ACS ||||

As discussed earlier, the Housing Region includes Bergen, Passaic, Hudson and Sussex Counties. The data below indicates that the median income of Emerson is much higher than New Jersey's median income and the median incomes of any County within the Housing Region. I would expect Emerson, with an homogenous housing stock and very few rentals, to have a much higher median income than the State or any county within the Housing Region.

| Median Household Income by Geography ||
|---|---|
| New Jersey | $89,703 |
| Bergen County | $109,497 |
| Hudson County | $79,795 |
| Passaic County | $78,386 |
| Sussex County | $101,645 |
| Emerson | $135,396 |
| Source: 2017-2021 ACS ||

The impact of exclusionary zoning on low and moderate income households is apparent when one examines the percentage of households with lower incomes living in New Jersey,

6

the Housing Region and Emerson. The precise income limits for very low, low and moderate income households vary by household size and housing region. The Census publication of households by income does not neatly correspond to low and moderate income households by household size as calculated by HUD or the State of New Jersey. However, in reviewing the table below, it is useful to examine the percentage of households earning less than $75,000 per year.

The reason I point the court at the percentage of households earning less than $75,000 is that that it approximates the income of many low and moderate income two and three person households in various housing regions in New Jersey. Since the median household size in New Jersey is roughly 2.6 people, it is my opinion, to a reasonable degree of certainty in the context of affordable housing planning, that the percentage of households earning $75,000 in various locations is useful in discussing the impact of exclusionary zoning on low and moderate income households.

| *Percentage of Households by Income* | | | |
|---|---|---|---|
| *Income Level* | *New Jersey* | *Housing Region 1* | *Emerson* |
| Less than $25,000 | 13.7% | 13.9% | 5.0% |
| $25,000 - $49,999 | 14.9% | 14.6% | 8.9% |
| $50,000 - $74,999 | 13.9% | 13.2% | 8.3% |
| $75,000 - $99,999 | 12.1% | 11.5% | 13.5% |
| $100,000 - $149,999 | 17.9% | 17.7% | 23.5% |
| $150,000 or more | 27.4% | 29.0% | 40.8% |
| | | | *Source: 2017-2021 ACS* |

Low and moderate income households earn 80 percent of median income within the housing region. Since median income means that half the households earn more and half the households earn less, one would expect that low and moderate income households represent approximately 40 percent (80 percent of 50 percent) of the State and Regional population. Indeed, when one examines the percentage of households earing less than $75,000 in New Jersey, one finds that 42.5 percent of all households earned less than $75,000. In the Housing Region, 41.7 percent of all households earned less than $75,000.

7

In Emerson, only 22.2 percent of households earned less than $75,000. <u>In Emerson, the percentage of households earning less than $75,000 is approximately half the percentage of the State and Housing Region.</u>

Median household income varies by race/ethnicity. The median income for the White and Asian population is much higher than the median income for African-Americans and Hispanics.

| Median Household Income by Race and Ethnicity | | | |
|---|---|---|---|
| Race/Ethnicity | New Jersey | Bergen County | Emerson |
| White | $100,584 | $110,654 | $132,008 |
| Black | $59,207 | $79,349 | Too few households[1] |
| Hispanic | $63,608 | $81,641 | $149,271 |
| Asian | $135,043 | $130,850 | $140,750 |

Source: 2017-2021 ACS

[1] The Census Bureau does not publicly provide data for median income by race when there are too few respondents of a particular race in a given geography. The Census Bureau does this for reasons of accuracy and privacy.

As a result, the African-American and Hispanic population rely more on rental housing than Whites and Asians. African-American and Hispanic households rent over twice as often as white households. For example, in New Jersey 23.5 percent of white households rent; whereas, 60.8 percent of African-Americans and 61.3 percent of Hispanics. In the Housing Region, 32.2 percent of white's rent; while 68.4 percent of African-Americans and 68.1 percent of Hispanics rent.

8

| Tenure by Race and Ethnicity | | | | | | |
|---|---|---|---|---|---|---|
| | New Jersey | | Housing Region 1 | | Emerson | |
| Race and Ethnicity | Owner-Occupied | Renter-Occupied | Owner-Occupied | Renter-Occupied | Owner-Occupied | Renter-Occupied |
| White | 76.5% | 23.5% | 67.8% | 32.2% | 88.6% | 11.4% |
| Black | 39.2% | 60.8% | 31.6% | 68.4% | 47.8% | 52.2% |
| Hispanic | 38.7% | 61.3% | 31.9% | 68.1% | 76.1% | 23.9% |
| Asian | 63.6% | 36.4% | 52.6% | 47.4% | 85.2% | 14.8% |
| Other Race | 34.2% | 65.8% | 28.3% | 71.7% | 100.0% | 0.0% |
| Two or More Races | 48.4% | 51.6% | 37.6% | 62.4% | 100.0% | 0.0% |

Source: 2017-2021 ACS

As discussed above, Emerson is a municipality with a housing stock that is much more homogenous than found in New Jersey and other areas of the Emerson Housing Region. Emerson is a community with few rentals. As a result, Emerson is a community in which the residents that live in the Borough have much higher incomes than New Jersey and other parts of the Housing Region.

The data reveal that low and moderate income households represent approximately 40 percent of all households in New Jersey and the Housing Region; and Emerson has about half the households earning less than $75,000 than New Jersey and the Housing Region.

The data reveal that African-Americans and Hispanics have lower incomes than Whites and Asians and generally must rent more than Whites and Asians. Thus, it is not surprising that the percentage of African-Americans and Hispanics living in Emerson is much less than in New Jersey and the Housing Region.

| Percentage of Population by Race and Ethnicity ||||
|---|---|---|---|
| Race or Ethnicity | New Jersey | Housing Region 1 | Emerson |
| White | 51.9% | 44.3% | 73.1% |
| Black | 12.4% | 7.5% | 1.5% |
| Hispanic | 21.6% | 31.3% | 13.0% |
| Asian | 10.2% | 13.4% | 9.7% |
| Other Race Alone | 0.9% | 1.0% | 0.3% |
| Two or More Races | 3.1% | 2.5% | 2.4% |
| | | | Source: 2017-2021 ACS |

In Emerson, 14.5 percent of the population is African-American or Hispanic. In New Jersey, 34 percent are African-American or Hispanic; and 38.8 percent of the Housing Region's population is African-American or Hispanic. The Emerson percentage is between one-half to one-third the equivalent percentage in the State and/or Housing Region.

It is clear, to a reasonable degree of certainty in the context of affordable housing planning, that African-Americans and Hispanics have been disproportionately impacted by Emerson's exclusionary zoning. The New Jersey Guide to Affordable Housing has no record of any affordable housing within the Borough.

## ERUR'S COMMUNITY

ERUR's contract with Emerson Borough requires ERUR to construct a community with 29 units of low and moderate income housing. I understand that ERUR asserts that the Borough's current leadership has attempted to block this construction. As discussed above, Emerson's exclusionary zoning has, in my opinion, to a reasonable degree of certainty in the field, had a disproportionate impact on African-American and Hispanic households; and delays in the construction of the 29 low and moderate income units, at issue in this matter, will continue the exclusionary status quo.

10

When Emerson does create some deed-restricted affordable housing including, as required by the Order within the Block 419 community, *as much of the State has long since done*, the housing will be affirmatively marketed throughout the housing region. The affirmative marketing effort will include employment centers, houses of worship, various government agencies, non-profits etc. The goal of that affirmative marketing effort will be to target those who have been excluded from Emerson and other communities in the past. For the reasons set forth above, in my opinion, to a reasonable degree of certainty in the field, the affordable housing, including the affordable housing contemplated in the Block 4l9 community, and its future Emerson residents will be much more diverse, in terms of race and ethnicity, than the Borough's current housing stock and population. It is my opinion that, with a reasonable degree of certainty in the field of affordable housing planning, the percentage of African-Americans and Hispanics occupying the affordable units within the ERUR community will be much more representative of the percentage of these minority populations currently living in the housing region than the very low percentage of African-Americans and Hispanics currently living in Emerson.