REDEVELOPMENT AGREEMENT

BY AND BETWEEN

THE BOROUGH OF EMERSON

AND

EMERSON REDEVELOPERS URBAN RENEWAL, LLC

Dated: June __14__, 2016

**THIS REDEVELOPMENT AGREEMENT** (the "Agreement") made this ___ day of June 2016 by and between

**THE BOROUGH OF EMERSON**, Bergen County, New Jersey, a municipal corporation with offices located at 146 Linwood Avenue, Emerson, New Jersey 07630 (hereinafter referred to as "Borough");

AND

**EMERSON REDEVELOPERS URBAN RENEWAL, LLC,** a limited liability corporation of the State of New Jersey, having an office at 80 S. Jefferson Road, Suite 202, Whippany, NJ 07981 (hereinafter referred to as the "EMRED" or "Redeveloper")

## WITNESSETH

**WHEREAS,** capitalized terms used herein shall have the meaning given to them above, below or in Section 1.01; and

**WHEREAS,** all Block and Lot references used in this Agreement shall refer to Blocks and Lots appearing on the official tax maps of the Borough; and

**WHEREAS,** the Borough Governing Body authorized the Planning Board to conduct a preliminary investigation pursuant to N.J.S.A. 40A:12A-6 of the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1, et seq., (the "Act") to determine whether certain parcels of land in the Borough and located in the Borough constituted areas in need of redevelopment; and

**WHEREAS,** the Planning Board undertook said investigation and conducted a public hearing, all in accordance with N.J.S.A. 40A:12A-6; and

**WHEREAS,** thereafter the Planning Board found that, among others, the property described in the attached **Exhibit A** (the "Property" or "Properties") satisfied certain statutory criteria and thus constituted an area in need of redevelopment in accordance with N.J.S.A 40A:12A-5 and N.J.S.A. 40A:12-6; and

**WHEREAS,** on September 7, 2004, the Borough Governing Body adopted Resolution No. 199-04, accepting the findings of the Planning Board and designating the Property as an area in need of redevelopment (the "Central Business District Redevelopment Area ", as defined herein); and

**WHEREAS,** on April 3, 2006, the Borough adopted Ordinance No. 1305-06, adopting a Redevelopment Plan for the Central Business District Redevelopment Area; and

**WHEREAS,** the Borough Council is the Redevelopment Entity for the Central Business District Redevelopment Area; and

**WHEREAS,** on January 8, 2016, the Borough solicited proposals from redeveloper's to redevelop the Central Business District Redevelopment Area;

**WHEREAS,** EMRED together with other redeveloper's responded and submitted proposals to redevelop the Central Business District Redevelopment Area;

**WHEREAS,** JMF Properties responded (and ultimately formed EMRED to be the redevelopment entity) and other potential redevelopers made presentations to the Mayor and Council (the designated Redevelopment Agency) over the course of several meetings and the Mayor and Council selected EMRED with whom to negotiate a potential Redeveloper's Agreement;

**WHEREAS,** EMRED proposes to design, develop, finance and construct the Project as defined herein on the Property; and

**WHEREAS,** the Redeveloper agrees that the Property was legally and lawfully designated as an area in need of redevelopment in accordance with <u>N.J.S.A.</u> 40A:12A-1 et. seq., and such designation is unappealable and that the Property meets the statutory criteria as an area in need of redevelopment; and

**WHEREAS,** in furtherance of the Redeveloper's agreement that the designation of the area in need of redevelopment is legally valid and enforceable, and Redeveloper's waiver of the aforementioned notice, the Redeveloper has submitted to the Borough the Borough's form of application and executed a Funding Agreement with the Borough to pay the Borough's application fee and reimburse the Borough for its professional fees, costs and expenses associated with reviewing and assisting the Borough in connection with the proposed development of the Property, including but not limited, fees for legal services (including but not limited to negotiating the Redevelopment Agreement), professional planning services, engineering services, and financial advisory services and the Borough has designated the Redeveloper as the redeveloper for purposes of redeveloping the Property in accordance with the proposed concept plan attached hereto as **Exhibit B**; and

**WHEREAS,** in order to implement the development, financing, construction, operation and management of the Project, the Borough has determined to enter into this redevelopment agreement with the Redeveloper (the "<u>Redevelopment Agreement</u>");

**WHEREAS,** JMF Properties has agreed to guaranty EMRED's financial obligations under this Redevelopment Agreement.

3

**NOW, THEREFORE,** in consideration of the promises and mutual covenants herein contained, the parties hereto do hereby covenant and agree, each with the other, as follows:

## ARTICLE 1.

### DEFINITIONS

**1.01. Definitions.** As used in this Agreement the following terms set forth in this Article shall have the meanings ascribed to such terms below. Terms listed below in the singular form shall include the plural and words listed in the plural shall include the singular. Whenever the context may require, any pronoun that is used in this Agreement shall include the corresponding masculine, feminine and neuter. Unless otherwise noted, the words "include," "includes" and "including" when used in this Agreement shall be deemed to be followed by the phrase "without limitation". The words "agree," "agreements," "approval" and "consent" when used in this Agreement shall be deemed to be followed by the phrase "which shall not be unreasonably withheld or unduly delayed," except or unless the context may otherwise specify or dictate. All references to Sections, Articles or Exhibits shall refer to Sections, Articles or Exhibits in this Agreement.

**"Act"** shall mean the New Jersey Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-l *et seq.*

**"Affiliate"** shall mean, with respect to any Person, any other Person directly or indirectly controlling or controlled by, or under direct common Control with such Person. For purposes of this definition the term "Control", as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management, operations and policies of such Person, whether through the ownership of voting securities or by contract.

**"Affordable Housing Requirements"** shall mean the fair share housing requirement for the Project as established pursuant to the requirements of the Fair Housing Act (N.J.S.A. 52:27D-301 et seq.) and all other applicable laws, and regulations promulgated by the Council on Affordable Housing and local ordinances that may be applicable to the Project. The maximum obligation shall be 20% set aside and may be built on and/or offsite.

**"Borough"** shall mean the Borough of Emerson.

**"Borough Costs"** shall means the reasonable out of pocket expenses incurred by the Borough for the fees and costs of any outside professional consultant, attorney, contractor or vendor retained by the Borough in connection with the Project which are

4

identified by the Funding Agreement executed by the Parties simultaneous to the execution of this Agreement.

**"Agreement"** shall mean this Redevelopment Agreement between the Borough and the Redeveloper.

**"Applicable Laws"** shall mean any and all federal, state and local laws, ordinances, approvals, rules, regulations and requirements including, but not limited to, the Act, the Municipal Land Use Law, the Redevelopment Plan, regulations promulgated by the Council on Affordable Housing, ("COAH"), construction codes including construction codes governing access for people with disabilities, fire codes, zoning codes, health or sanitary codes, pollution and environmental laws, rules and regulations applicable to the Project, Property and/or Project Plan or any aspect thereof.

**"Building Permit"** shall mean a building permit issued by or on behalf of the Borough pursuant to applicable Law.

**"Certificate of Completion"** shall mean a certificate from the Borough in recordable form issued, at the request of the Redeveloper, acknowledging that the Redeveloper has performed all of its duties and obligations under this Agreement, and has completed construction of the Project in accordance with the requirements of this Agreement.

**"Certificate of Occupancy"** shall mean the written certificate issued by the Borough of Emerson in accordance with N.J.S.A. 52:27D-133 relative to a unit of residential space constructed as part of the Project indicating that the subject unit of residential space has been completed in accordance with the construction permit, the Uniform Construction Code and all other Applicable Laws.

**"Commencement of Construction"** or **"Commence Construction"** shall mean the undertaking by the Redeveloper of any actual physical construction of any new structure, Improvements, Public Improvements and other infrastructure included as a component of any phase of the Project other than any activities related to the preparation of the site for such construction, or any activities related to the environmental remediation, mitigation or clean up of same.

**"Commencement Date"** shall mean the date on which the construction force and machinery is mobilized for construction on the Project as further set forth in Sections 5.04 and 5.09.

**"Completion Date"** or **"Completion of Construction"** shall mean the earlier of: (i) the date on which the Redeveloper receives a Certificate of Completion as provided for in Section 5.08 of this Agreement or 24 months from the Commencement Date, whichever is sooner.

**"Construction Period"** shall mean the period beginning on the Commencement Date and ending on the Completion Date.

**"Construction Plan"** shall mean the architectural and engineering plans prepared by the Redeveloper in conformance with the approved Final Site Plan, which plans shall be prepared in accordance with Applicable Laws and are to be submitted to the Borough for review and approval prior to the issuance of the necessary permits for Commencement of Construction.

**"Control" (also referred to as "Controlled by" and "under common Control with")** shall be used with respect to any Person, and shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

**"Days"** shall mean calendar days when such term is used to denote time.

**"Declaration of Restrictions"** shall be a recordable document which includes (a) the provisions of Sections 3.02 to 3.05 inclusive and (b) the prohibition against transfers as set forth in Article 6 and (c) the Borough's remedies as set forth in Article 8.

**"Deeds"** shall mean any deed of conveyance from the Borough or any third Party to the Redeveloper conveying any parcel(s) of property owned or acquired by the Borough or such third party, pursuant to the terms and conditions of this Agreement.

**"Effective Date"** shall mean the date this Agreement is last executed by either the authorized officer of the Borough or by the authorized representative of the Redeveloper.

**"Emergency Municipal Services Building Project"** shall mean the new building the Borough will develop to relocate the volunteer ambulance corp as well as the police department facilities

**"Escrow Account"** shall be as defined in Section 4.02 and include amounts deposited by Redeveloper to cover the Borough's Costs.

**"Event of Default"** shall be as set forth in Article 8 hereof.

**"Final Site Plan"** shall mean the plan submitted to the Planning Board for Final Site Plan approval in accordance with the Redevelopment Plan and Applicable Law.

**"Financial Institution"** shall mean a bank, savings bank, savings and loan association, mortgage lender or insurance company, pension fund, real estate investment trust, investment bank, mutual fund or similarly recognized reputable source of construction and permanent financing for the Project, chartered under the laws of the United States of America, or any State thereof.

6

**"Force Majeure" (also "Event of Force Majeure")** as used throughout this Agreement this term applies to all time limitations and other obligations and shall mean any acts of God, fire, volcano, earthquake, hurricane, blizzard, infectious disease, technological disaster, catastrophe, large scale infestation of any type, tremors, flood, explosion, release of nuclear radiation, release of biotoxic or of biochemical agents, the elements, war, blockade, riots, mob violence or civil disturbance, any act or acts of terrorism or terroristic threat, an inability to procure goods or services or a general shortage of labor, equipment, facilities, energy, materials or supplies in the open market, failure of transportation, strikes, walkouts, actions of labor unions, governmentally imposed moratoriums, court orders, laws, rules, regulations or other orders of governmental or public agencies, bodies and authorities or any other similar cause not within the reasonable control of the Parties including legal inability to comply resulting from a change of law including municipal laws regulating land use and construction, any legal requirements under any applicable environmental laws, as well as all known and unknown rules and regulations of the Federal Environmental Protection Agency and the NJDEP, clearances, approvals or permits typical of the development process, any legal proceedings, decisions or decrees that adversely affect the Parties' ability to reasonably perform the obligations of and/or benefit from the terms of this Agreement, any economic conditions that may adversely affect the real estate market or may affect the Redevelopment Area, the Project or any of the individual phase(s) of this Project as demonstrated by an independent market study prepared by a qualified financial consultant selected by the Party seeking the benefit of Force Majeure provided that the qualified financial consultant is approved by the non-benefiting party using its reasonable judgment, in advance of the preparation of the independent market study, or any unreasonable delay in the Redeveloper's receipt of any necessary Governmental Approvals not within the Redeveloper's control.

**"Funding Agreement"** shall mean that agreement required by Borough Ordinance which obligates the Redeveloper to fund and pay for any and all professional fees the Borough may incur in order to complete this Project, a copy of which is attached hereto as **Exhibit E.**

**"Governmental Agency"** shall mean any federal, state, county or municipal legislative, administrative, executive or governing body, office, agency, department, commission, authority, court, or tribunal and any successor thereto, exercising executive, legislative, judicial, advisory or administrative functions of or pertaining to government, including, without limitation, the Borough of Emerson, the County of Bergen, the State of New Jersey and/or the United States of America.

**"Governmental Applications"** shall mean any and all submissions, plans, drawings, diagrams, supporting documentation or other proofs or presentations that are transmitted to any Governmental Agency for the purpose of obtaining any and all Governmental Approvals required to complete the Project.

**"Governmental Approvals"** shall mean any and all authorizations, permits, licenses or certificates issued by any Governmental Agency or quasi–governmental entity

(including outside agencies) as a result of the submission of a Governmental Application required in order to implement the Project or any aspect thereof in accordance with this Agreement and the Redevelopment Plan, for the construction of the Project including, without limitation: the Site Plan Approval with respect to the Building Permit; environmental approvals; sewerage capacity approvals and any and all other necessary permits, licenses, consents and approvals required for construction and operation of the Project under Applicable Law. No approval shall be final until the time for appeal shall have run without the filing of an appeal, or, in the event an appeal is filed, until such appeal is resolved fully in favor of Redeveloper and the time for further appeals shall have run without the filing of any further appeal. No Governmental Approval shall contain any condition which would materially and adversely affect the development, construction or operation of the Project or the finances thereof.

**"Governing Body"** shall mean the Borough Council of the Borough of Emerson, together with any successor(s) thereto.

**"Impositions"** shall mean all taxes, assessments (including, without limitation, all assessments for public improvements or benefits), water, sewer or other rents, rates and charges, license fees, permit fees, inspection fees and other authorization fees and charges, in each case, whether general or special, which are levied upon any portion of the Project or on any of the improvements constructed thereon.

**"Improvements"** shall mean all buildings, appurtenances, structures physically within or upon the Property, together with any work on site or off-site, reasonably on-site and, if any, off-site improvements, constructed on or installed in connection with the construction of the Project in accordance with the Concept Plans attached hereto as **Exhibit B,** including but not limited to grading site drainage, walkways, hook-ups and service laterals from buildings to curbs for water, sewer, storm water and other utilities, parking, lighting within parking areas, landscaping and fire hydrants, all constructed in accordance with the Redevelopment Plan, Governmental Approvals and Applicable Laws.

**"Mortgagee"** shall mean an Institution that holds a Mortgage on the Property.

**"Municipal Land Use Law" or "MLUL"** shall mean the Municipal Land Use Law *N.J.S.A.* 40:55D-1, *et seq.*

**"NJDEP"** shall mean the State of New Jersey Department of Environmental Protection, together with any successor(s) in interest thereto.

**"Offsite/OnSite Improvement Share"** shall mean the amount Redeveloper shall pay for the Offsite and Onsite improvements that the Borough or other third parties shall make which will benefit Redeveloper as well as on site improvements which will benefit other property owners, all as fully set forth in **Exhibit F.**

**Party/Parties:** Shall mean individually, the Borough, the Redeveloper or a

Person as defined herein and shall mean collectively, the Borough and Redeveloper.

**"Person(s)"**    shall mean any individual, sole proprietorship, corporation, partnership, joint venture, limited liability company or corporation, trust, unincorporated association, institution, public or governmental body, or any other entity.

**"PILOT"** shall mean a long term exemption pursuant to N.J.S.A. 40A:20-1 et seq.

**"Planning Board"** shall mean the Land Use Board of the Borough, pursuant to *N.J.S.A.* 40:55D-23.

**"Project"** shall mean the development, design, financing and construction of the Improvements and the Public Improvements by Redeveloper on the Property.

**"Project Costs"** shall be as defined in Section 4.01.

**"Project Milestones"**    shall mean the date(s) or deadline(s) established for Project tasks to be completed by the Redeveloper in a timely manner as set forth in the Redevelopment Project Schedule attached hereto as **Exhibit C**.

**"Project Schedule"** shall mean the schedules set forth in the Redevelopment Project Schedule attached hereto as **Exhibit C**, that contain the Project Milestones for the development, construction and completion of the Project, as applicable.

**"Property"** or **"Properties"** shall mean the Blocks and Lots as located on Borough tax maps, as listed in **Exhibit A**, subject to a subdivision of the land for the construction of the Facility as referenced in this Agreement.

**"Plan"** or **"Redevelopment Plan"** shall mean the Redevelopment Plan adopted by Borough Ordinance on April 3, 2006, or any subsequent Redevelopment Plan as same may be amended from time to time.

**"Project Plan"** shall mean the concept plan annexed hereto as **Exhibit B** for the Project.
**"Public Improvements"** shall include but not be limited to all such improvements that benefit the public, including by way of example, roadways, sanitary sewers, stormwater facilities, water mains, fire hydrants, utilities poles, piping and conduits (such as telephone, fiber optic, electric, and natural gas), curbs, sidewalks, retaining walls, conservation easement areas, and retention or detention basins but shall exclude parking decks, and other private improvements.

**"Redeveloper"** shall mean Emerson Redevelopers, LLC having its corporate offices at 80 S. Jefferson Road, Suite 202, Whippany, NJ  07981.  The members of Redeveloper are listed in **Exhibit D**.

9

**"Redevelopment Area"** shall mean the area designated by the Borough Council as the Central Business District Redevelopment Area pursuant to a Borough Resolution No. 199-04 adopted on September 7, 2004.

**"Redevelopment Project Schedule"** shall mean the Project Schedule and Reporting Requirements which sets forth the respective tasks and completion dates of various phase-related activities, which is attached hereto as **Exhibit C.**

**"State"** shall mean the State of New Jersey.

**"Survey"** shall mean the standard process by which a qualified land surveyor licensed to perform such services within the State of New Jersey prepares location measurements of a parcel or parcels of property in order to ascertain the size of same and its location and relationship to adjoining parcels and to locate all structures, improvements, easements, and restrictions on the properties.

**"Tolling Event"** shall mean: (i) an act or omission by one Party or a third Party that has a material and adverse effect on the other Party's ability to perform any obligation, requirement, commitment, or responsibility prescribed under this Agreement; or (ii) any extension granted by either Party to the other Party, to extend any proposed date to perform in this Agreement; or (iii) any reasonable request by one Party to the other to extend the time for performance of any obligation, requirement, commitment or responsibility arising pursuant to this Agreement.

**"Borough"** shall mean the Borough of Emerson, Bergen County, New Jersey.

**"Borough Council"** shall mean the governing body of the Borough of Emerson.

**"Transfers"** shall be as defined in Section 6.03.

**"Transferee"** shall mean any Third-Party (other than unit purchasers in the ordinary course of business) to whom an interest in the Project Premises, the Improvements or rights in or under this Agreement is conveyed, transferred, leased, encumbered, acquired or assigned, by sale, merger, consolidation, reorganization, foreclosure or otherwise, including a trustee in bankruptcy or assignee for the benefit of creditors.

## ARTICLE 2.

## REPRESENTATIONS AND WARRANTIES

**2.01 Representations and Warranties by the Redeveloper.** The Redeveloper hereby makes the following representations and warranties to the Borough for the purpose of inducing the Borough to enter into this Agreement and to consummate the transactions contemplated hereby, all of which shall be true, to the best of its knowledge, as of the date hereof:

(1) Redeveloper has the legal capacity to enter into this Agreement and perform each of the undertakings set forth herein and in the Redevelopment Project Schedule as of the date of this Agreement.

(2) Redeveloper is duly organized and a validly existing legal entity under the laws of the State of New Jersey and all necessary consents have been duly adopted to authorize the execution and delivery of this Agreement and to authorize and direct the persons executing this Agreement to do so for and on the Redeveloper's behalf.

(3) Redeveloper represents that the Project will create economic development on blighted property, in the form of job creation, increased real estate tax ratables, improvements to the Property, and an increase in the quality of life of the surrounding properties through the implementation of the Improvements.

(4) Redeveloper represents that it has the technical and financial expertise and ability to complete the Project in accordance with the Project Schedule established in **Exhibit C.**

(5) No receiver, liquidator, custodian or trustee of Redeveloper shall have been appointed as of the effective Date, and no petition to reorganize Redeveloper pursuant to the United States Bankruptcy Code or any similar statute that is applicable to the Redeveloper shall have been filed as of the effective Date.

(6) No adjudication of Bankruptcy of the Redeveloper or a filing for voluntary bankruptcy by Redeveloper under the provisions of the United States Bankruptcy Code or any other similar statue that is applicable to the Redeveloper shall have been filed.

(7) No indictment has been returned against Redeveloper or any official, principal or member of Redeveloper.

(8) There is no action, proceeding or investigation now pending, nor any basis therefore, known or believed to exist which questions the authority of the Redeveloper to

enter into the Agreement or any action or act taken or to be taken by the Redeveloper pursuant to this Agreement.

(9) Redeveloper's execution and delivery of this Agreement and its performance hereunder will not constitute a violation of any operating, partnership and/or stockholder agreement of Redeveloper or of any agreement, mortgage, indenture, instrument or judgment, to which Redeveloper is a party.

(10) Redeveloper shall make its good faith efforts to award contracts and/or subcontracts wherever reasonably feasible to local business enterprises, where competitive bids and prices are offered by such enterprises, which may have a limited record of such activity, but which, in the judgment of Redeveloper, can competently provide the goods and services required by redeveloper. Redeveloper shall further make its best efforts to utilize local employees on the Project, and shall ensure that contractors and subcontractors retained by the Redeveloper make similar efforts, including cooperation with the Borough as set forth in subsection (10) immediately below.

(11) Redeveloper shall cooperate fully with the Borough in efforts by the Borough or its designees to recruit, screen, train, and refer qualified local and/or minority employees and subcontractors to Redeveloper and its general contractor or contractors, including providing information to the Borough or its designee with respect to the disposition of applicants for employment or subcontracts referred by the Borough or its designee to Redeveloper.

(12) All materials and documentation submitted by the Redeveloper and its agents to the Borough and its agents were, at the time of submission, and as of the Effective Date, materially accurate, and the Redeveloper shall continue to inform the Borough of any material or adverse changes in the documentation submitted. The Redeveloper acknowledges that the facts and representations contained in the information submitted by the Redeveloper are a material factor in the decision of the Borough to enter into this Agreement.

(13) Redeveloper and the resources available to it through its principal are financially and technically capable of developing, designing, financing and constructing the Project.

(14) There is no pending, or to the best of the Redeveloper's knowledge, threatened litigation, action or proceeding that would (i) prevent or delay the Redeveloper from performing its duties and obligations hereunder and/or (ii) question the validity of this Agreement or any essential element upon which this Agreement depends.

(15) Redeveloper acknowledges that it has had the opportunity to review all official documents contained in the public record relating to the Borough's designation of the Property as "an area in need of redevelopment", and the Borough's selection of the Redeveloper to undertake the redevelopment of the Property, all in accordance with

N.J.S.A. 40A:12A-1 et seq., (collectively the "Official Acts"). The Redeveloper hereby waives any and all causes of action it may have, or seek to prosecute against the Borough and the Borough Planning Board, in the event that the Redeveloper's rights as set forth in this Agreement are affected by any determination of a court of competent jurisdiction that one or more of the Official Acts, or any portion thereof, is invalid. Further, Redeveloper hereby waives any and all causes of action it may have to challenge the "Official Acts", including, by way of example and not limitation, any challenge Redeveloper may have regarding notice (pursuant to Harrison Redevelopment Agency vs. De Rose) and/or the Local Redevelopment and Housing Law. These waivers shall survive any termination of this agreement.

(16) Notwithstanding the foregoing, the Borough and Redeveloper may determine that it is in the interest of the Project to re-study the Central Business District Redevelopment Area or particular properties located within the Central Business District Redevelopment Area to confirm that they continue to be blighted and otherwise meet the criteria pursuant to N.J.S.A. 40A:12A-1 *et seq.* Redeveloper shall reimburse the Borough for such costs associated with this work as set forth in Section 4.01.

**2.02. Representations and Warranties by the Borough.** The Borough hereby makes the following representations and warranties for the purpose of inducing the Redeveloper to enter into this Agreement and to consummate the transactions contemplated hereby, all of which shall be true as of the date hereof:

(1) The Borough has the legal power, right and authority to enter into this Redevelopment Agreement and the instruments and documents referenced herein to which the Borough is a party, to consummate the transactions contemplated hereby, to take any steps or actions contemplated hereby, and to perform its obligations hereunder.

(2) With the exception of the items or tasks which shall be a condition precedent to the Effective Date of this Agreement, upon the approval by the Governing Body of this Agreement, all requisite action has been taken by the Borough and all requisite consents have been obtained in connection with the entering into this Redevelopment Agreement and the instruments and documents referenced herein to which the Borough is party, and the consummation of the transaction contemplated hereby, and to the best of the Borough's knowledge and belief are authorized by all Applicable Laws. To the best knowledge of the Borough there are no writs, injunctions, orders or decrees of any court or governmental body that would be violated by the Borough entering into or performing its obligations under this Redevelopment Agreement.

(3) This Redevelopment Agreement is duly executed by the Borough, and is valid and legally binding upon the Borough and enforceable in accordance with its terms on the basis of laws presently in effect and the execution and delivery thereof shall not, with due notice or the passage of time, constitute a default under or violate the terms of any indenture, agreement or other instrument to which the Borough is a party.

(4)      There is no action, proceeding or investigation now pending, nor any basis known or believed to exist which questions the validity of this Agreement or the authority of the Borough to enter into the Agreement or any action or act taken or to be taken by the Borough pursuant to this Agreement.

(5)      The Borough agrees to support any applications for Governmental Approvals that are consistent with the terms of the Redevelopment Plan and this Agreement, and to execute any documents required to obtain such approvals and otherwise to cooperate with the Redeveloper with respect to the Governmental Approvals, provided that nothing contained in this Article 2.02 of this Agreement shall be deemed: (i) to constitute an approval of all or any portion of the Project for which Governmental Applications have been submitted or are required or approval of any Governmental Application seeking a financial incentive including but not limited to, the PILOT, (ii) a waiver of the ability of the Planning Board, or any other governmental or administrative entity, from exercising its statutorily authorized responsibilities with respect to the Governmental Applications or Governmental Approvals.  Notwithstanding the foregoing, this Agreement shall not be deemed to be in full force and effect until such time as Redeveloper receives an approved PILOT agreement, mutually satifisfactory to both parties.

(6)  No official or employee of the Borough has any personal interest, direct or indirect, in this Agreement.

(7)      Nothing exists that would prevent Governmental Applications from being deemed complete. Including without limitation taxes.

**2.03. Mutual Representations.**

(1) The Borough and Redeveloper agree that the Project as defined herein does not constitute a "Public Works Contract" as defined in N.J.S.A. 10:5-31 and the completion of the  Project does not constitute a "Public Work" as defined in N.J.S.A. 34:11-56.26 (the "Prevailing Wage Law").

(2)  In the event that any contractual provisions that are required by Applicable Laws have been omitted, then the Borough and Redeveloper agree that this Agreement shall be deemed to incorporate all such clauses by reference and such requirements shall become a part of this Agreement.  If such incorporation occurs and results in a change in the obligations or benefits of one of the parties, the Borough and Redeveloper agree to act in good faith to mitigate such changes in position.

## ARTICLE 3.

## COVENANTS AND RESTRICTIONS

**3.01. Covenants and Restrictions**. Redeveloper agrees to record the Declaration of Covenants and Restrictions on the Property in the office of the Bergen County Clerk within thirty (30) days of the fulfillment of all contingencies set forth in Article 12.

**3.02. Description of Covenants**. The Declaration of Covenants and Restrictions shall also state that the Redeveloper and its successors and assigns shall:

(a)     Devote the Property to the uses specified in the Redevelopment Plan and shall not devote the Property to any other uses without the approval of the Borough;

(b)     To the extent provided for by the Applicable Laws to not discriminate upon the basis of age, race, color, creed, religion, ancestry, national origin, sex or marital status in the sale, lease, use or occupancy of the Property or any Improvements, buildings or structures erected or to be erected thereon, or any portion thereof;

(c)     To the extent provided for by the Applicable Laws, in the sale, lease or occupancy of the Property or any portion thereof, not effectuate or execute any covenant, lease agreement, conveyance or other instrument whereby the land or any Improvement, building or structure erected or to be erected thereon is restricted upon the basis of age, race, color, creed, religion, ancestry, national origin, sex or marital status, and the Redeveloper, its successors and Transferee(s) shall comply with all State and local laws prohibiting discrimination or segregation by reason of age, race, color, creed, religion, ancestry, national origin, sex or marital status; and

(d)     That the Redeveloper and its Transferee(s) shall not sell, lease or otherwise Transfer the Property, or any portion thereof, without the written consent of the Borough not to be unreasonably withheld, as set forth in Article 6 hereof other than those Transfers deemed to be the Permitted Transfers pursuant to Article 6 hereof.

**3.03. Effect and Duration of Covenants**. It is intended and agreed that the agreements and covenants set forth in Section 3.02 shall be covenants running with the land and that they shall, in any event, and without regard to technical classification or designation, legal or otherwise, and except only as otherwise specifically provided in this Agreement, be binding, to the fullest extent permitted by law and equity, for the benefit and in favor of, and enforceable by, the Borough, its successors and assigns, against the Redeveloper, its successors and assigns and every successor in interest therein, and any party in possession or occupancy of the Project or any part thereof until a Certificate of Completion has been issued.   However, such agreements and covenants shall be binding on the Redeveloper itself, each successor in interest to the Redeveloper and each party in possession or occupancy, respectively, but only for such period as the Redeveloper or such successor or party shall be a lessee or be in possession or occupancy of the Property, the buildings and structures thereon or any part thereof.

**3.04. Enforcement by the Parties.** Both Parties shall have the right, in the event of any breach of any of the aforesaid covenants or of any of the other terms and conditions of this Agreement, to exercise all the rights and remedies and to maintain any actions or suits at law or in equity or other proper proceedings to enforce the curing of such breach of agreement or covenant, to which they or any other beneficiaries of such agreement or covenant may be entitled. In the event a party is successful in enforcing any of its rights hereunder, such unsuccessful party shall pay and reimburse the successful party for all of its reasonable attorneys fees together with any costs and expense incurred by the successful party in enforcing its rights hereunder.

**3.05. Redevelopment Area Upon Completion.** Upon issuance of a Certificate of Completion, the conditions that were found and determined to exist at the time the Property was determined to be in need of redevelopment shall be deemed to no longer exist, the Property shall no longer be subject to eminent domain as a result of such determinations conditions and the requirements of N.J.S.A. 40A:12A-9 shall be deemed to have been satisfied with respect to the Property. The Borough shall release the recorded documents and designations on a Phase by Phase basis provided that the Redeveloper has subdivided the Property to facilitate the Phase by Phase release of same.

# ARTICLE 4.

## COSTS ASSOCIATED WITH THE PROJECT

**4.01. Project Costs.** All costs of implementing and Completing the Project, including but not limited to the cost of obtaining all Governmental Approvals, the cost of the acquisition of the Property, any Remediation costs (including the costs of operation, maintenance, reporting and monitoring that may be associated with any engineering controls and institutional controls), the cost of designing and constructing the Project (including the costs of any construction observation services) all Improvements, all financing costs, all marketing and leasing costs for the Project and the Borough Costs as limited by the Funding Agreement, (collectively, the "Project Costs") shall be borne by Redeveloper. Except if otherwise specifically set forth herein, the Borough shall not be responsible for any costs associated with the Project. The Project Costs are estimated to be Thirty Million Dollars ($30,000,000.00). Detailed breakdowns of the hard and soft cost of this Project shall be provided by the Redeveloper to the Borough no later than the issuance of a building permit for the Phase 1 Project.

**4.01.1 Offsite/Onsite Improvement Share.** Redeveloper shall pay for the Offsite and Onsite improvements that the Borough or other third parties shall construct or install which will benefit Redeveloper as well as on site improvements which will benefit other property owners, all as fully set forth in **Exhibit F**, which may be amended or adjusted from time to time based on the actual costs of construction and a final determination by the Borough Engineer of this Redeveloper's Offsite/Onsite Improvement Share.

**4.02. Borough Costs and Application Fees.** Redeveloper has executed a Funding Agreement with the Borough that addresses the timing and payment of the Borough Costs which is attached hereto and incorporated herein as **Exhibit E.**

**4.03. Affordable Housing Requirement**. The Parties recognize and acknowledge that the Project will generate a fair share housing requirement for Redeveloper pursuant to the Affordable Housing Requirements established by the State of New Jersey and the Council on Affordable Housing.  Redeveloper and the Borough agree that Redeveloper shall satisfy the affordable housing obligations resulting from Redeveloper's development of the Project in accordance with the State's Affordable Housing Requirements.   The obligation shall be fixed as of the start of each of the Phases of the Project.  The presumptive percentage of set aside units to be built shall be twenty percent (20%). However, the Redeveloper may request that the Borough seek a determination from either the courts or COAH to determine the definitive affordable housing set aside for the Project. If the Redeveloper elects to have the Borough seek a determination from either the courts or COAH, the Redeveloper shall pay for all of the Borough's professional fees associated with seeking such determination, including but not limited to legal fees (together with costs and expenses), as well as the fees, costs and expenses of planners, engineers, financial advisers, COAH experts, and any other professional or advisory services required to obtain the determination (collectively the "Professional Fees"). The payment or reimbursement for such Professional Fees shall be made pursuant to the Funding Agreement the Redeveloper has previously executed. The Escrow established pursuant to such Funding Agreement shall be replenished as necessary and as required pursuant to the terms of the Funding Agreement and the Funding Agreement is deemed amended and supplemented to include the provisions of this Section 4.03 as if fully set forth within the Funding Agreement.

**4.03.1 Alternate COAH Location**. The Redeveloper and the Borough shall explore alternative sites to accommodate all of the Low and Moderate Housing obligations associated with this Project at another location in the Borough, subject to any necessary court approval and such court approval to be funded by Redeveloper as set forth in **Section 4.03** hereinabove.

**4.04.   Emergency Municipal Services Building.** The Borough has dedicated and shall transfer Block 419Lot 7 to Redeveloper for the Project ("Dedicated Lot") which is currently utilized by the Borough Ambulance Corp and has a fair market value of $500,000. In consideration therefore the Redeveloper shall construct at its sole cost and expense an Emergency Municipal Services Building as defined hereinabove. The Borough shall provide the Redeveloper the property as well as all of the site plans, architectural and engineering plans at the Borough's sole cost and expense and upon the completion of the building the Borough shall pay and reimburse Redeveloper all of the costs associated with the construction of the Emergency Municipal Services Building, less the direct and allocatable costs associated with Ambulance portion of the building as the parties may agree, which in no case shall exceed the fair market value of the Dedicated Lot. In the event the parties cannot agree on such reimbursable costs to the

Redeveloper, the party's attorneys shall select a retired Judge from Bergen County to mediate and definitively determine such costs to be reimbursed to the Redeveloper and such costs for such mediator shall be shared by the parties equally.

## ARTICLE 5.

## THE PROJECT

**5.01. Property.** The Property is located in the Borough and presently identified in the Borough tax maps on the Blocks and Lots described in **Exhibit A**, subject to any necessary subdivision. The Project is depicted in the Concept Plan for the Project attached hereto as **Exhibit B** and shall be constructed in accordance with the Redevelopment Project Schedule set forth in **Exhibit C**. The Redeveloper and Borough each covenant and agree to perform the obligations set forth in the Redevelopment Project Schedule set forth in **Exhibit C**. The Redeveloper covenants and agrees that it will construct the Project in accordance with the Redevelopment Plan. All Improvements to be situated upon the Property (i.e., sidewalks, utilities and site lighting, off street parking, roadways, pilings, foundations, footings, open space, walkways, landscaping, etc.) and other construction identified as Improvements shall be installed by the Redeveloper at its sole cost and expense as the Project requires. The Redeveloper shall negotiate for the purchase of any properties set forth in **Exhibit A** that it does not currently own or control at its sole cost and expense. In the event the Redeveloper is not able to purchase any property set forth in **Exhibit A** the Redeveloper shall request that the Borough assist it in purchasing such or acquiring such properties as permitted under N.J.S.A. 40A:12A-8(c). The Redeveloper shall pay and reimburse the Borough for any and all costs it may incur in assisting the Redeveloper in purchasing or acquiring such properties. The Borough shall adopt the necessary Ordinances to vacate Kenneth Avenue within sixty (60) days from the date the Redeveloper obtains Governmental Approvals.

**5.02. Governmental Approvals.** The Redeveloper shall make all Governmental Applications and receive all Governmental Approvals required under Applicable Laws in order to construct the Project in accordance with the Redevelopment Project Schedule. Issuance of a Building Permit shall be conclusively presumed to be in compliance with all Governmental Applications and Governmental Approvals that are perquisites to the issuance of such Building Permit.

**5.03. Site Work.** The Redeveloper at its sole expense shall install upon or in the Property all necessary site preparation, including pilings and , filling and all on-site infrastructure. Notwithstanding anything contained herein, the Borough shall not be responsible for any costs associated with any Improvements necessary for the development and construction of the Project. The costs of developing the Project and Facilities, and of constructing all Improvements thereon, including, but not limited to, all required Public Improvements, shall be borne entirely by the Redeveloper; provided, however, that Redeveloper's contributions for offsite improvements may be subject to pro-ration in accordance with Applicable Laws. Notwithstanding the foregoing, the Borough shall not be responsible for any costs associated with any Improvements necessary for the development and construction of the Project

**5.04.   Commencement and Completion Schedule.**  The Redeveloper agrees to commence construction of the proocet within 120 days of Government Approvals and thereafter diligently prosecute the Project to completion in accordance with the Redevelopment Project Schedule set forth in **Exhibit C** and this Article but in no case later than 24 months from the Commencement Date. Redeveloper understands that the Borough will require strict compliance with the Project Milestones, deadlines and time periods for the various activities and actions to be taken by the Redeveloper hereunder, as set forth in **Exhibit C**, subject to the occurrence of a Force Majeure Event. The Borough agrees to cooperate fully with Redeveloper regarding all Governmental Approvals. Redeveloper acknowledges that a failure to meet a Project Milestone shall be a material breach of this Agreement that will subject the Redeveloper to Termination of this Agreement as permitted in Articles 8 & 9.  The Parties acknowledge and agree that the Redeveloper may need to modify the Redevelopment Project Schedule.  The Borough shall, upon the written request of the Redeveloper, consider modifications of the dates set forth in the Redevelopment Project Schedule. The Borough agrees to consider and render a decision with respect to any such modification, within a period of sixty (60) days following receipt of a written request by the Redeveloper.  Failure to diligently prosecute the Project to Completion may cause the Borough to notify the Redeveloper that it is in default of its obligations hereunder, and to pursue all lawful remedies against the Redeveloper.  Similarly, the Borough agrees to commence and diligently prosecute its obligations as set forth in the Redevelopment Project Schedule.

**5.05.   Progress Reports.**  For so long as this Redevelopment Agreement shall remain in effect, Redeveloper shall make quarterly reports to the Borough as to the actual progress of Redeveloper with respect to development, planning and construction of both the Project, and such other matters as the Borough shall reasonably request be addressed in such reports, including but not limited to the reporting requirements set forth in **Exhibit C**.

**5.06.   Public Improvements and Utility Relocation.**  The Borough and the Redeveloper hereby agree that the Redeveloper will make the Public Improvements consistent with the Plan which shall include, but shall not be limited to installation of concrete curbing, sidewalks, roadway base/surface, sewers, drainage, grading, street lighting, street furniture, signage, utilities, plantings and appropriate traffic control signals as may be required by the Governmental Approvals or Applicable Laws. Notwithstanding anything contained herein to the contrary, Borough shall not be responsible for any costs associated with any Public Improvements necessary for the development and construction of the Project.  The costs of developing the Project and all Public Improvements thereon, including, but not limited to, all required Public Improvements or utility relocations, shall be borne entirely by the Redeveloper.     In addition, Redeveloper shall install at its sole cost and expense the Storm Water Pipe as more fully described and set forth in **Exhibit G**.

**5.07. Performance Bond**. If the Planning Board does not require that the Redeveloper post a Bond for the Public Improvements as a condition of the site plan approval issued by the Planning Board, then prior to the Commencement of Construction, Redeveloper shall provide the Borough with a bond (the "Bond") the "Performance Guaranty"), in an amount equal to the cost of Public Improvements  The Bond must be issued by an insurance or surety company authorized to conduct business in the State of New Jersey, rated A+ or better by A.M. Best and listed in the most current U.S. Treasury Circular 570. The Bond must name the Borough as an obligee, and Redeveloper shall deliver a copy of the Bond to the Borough on or before the Commencement Date.  If an Event of Default occurs, the Borough will use the Performance Guaranty to complete construction of the Public Improvements or to remove any structure on the Property, in its sole discretion, subject to the right to cure of the mortgagee as set forth in Article 9.03. Redeveloper shall receive a credit against the Bond for any bond required to be posted in satisfaction of the requirements of the Land Use Law, in the event that the Bond required by the Planning Board does not completely encompass the Public Improvements contemplated by this Redevelopment Agreement.

**5.08. Certificates of Occupancy and Certificate of Completion**.  Upon completion of construction in accordance with the Governmental Approvals and Applicable Laws, the Redeveloper shall apply to the appropriate governmental officer or body for a Certificate of Occupancy for the Project or a portion thereof. The Certificate of Occupancy, when issued, shall constitute evidence that Redeveloper has fully performed its obligations under Governmental Approvals as to the Project or a portion thereof. Following the issuance of the Certificate of Occupancy and the satisfaction of the terms and conditions of this Agreement, the Borough agrees to issue a Certificate of Completion, in proper form for recording, which shall acknowledge that the Redeveloper has performed all of its duties and obligations under this Agreement and has completed construction of the Project or a portion thereof in accordance with the requirements of this Agreement. The Certificate of Completion shall constitute a recordable, conclusive determination of the satisfaction and termination of the agreements and covenants in this Agreement and the Redevelopment Plan with respect to the obligations of the Redeveloper to construct the Project or a portion thereof within the dates for the completion of same. Within 30 days after written request by the Redeveloper, the Borough shall provide the Redeveloper with the Certificate of Completion or a written statement setting forth in detail the reasons why it believes that Redeveloper has failed to complete the Project or a portion thereof in accordance with the provisions of this Agreement or is otherwise in default under this or any other applicable agreement and what reasonable measures or acts will be necessary in the opinion of the Borough in order for the Redeveloper to be entitled to the Certificate of Completion.

**5.09 Project Schedule**.  With respect to the Project, Redeveloper shall meet the deadlines and timeframes for the completion set forth in the Redevelopment Project Schedule set forth in **Exhibit C**. Redeveloper shall construct the Project using all commercially reasonable methods to prosecute the uninterrupted construction of the Project. Failure to prosecute the uninterrupted construction of the Project shall constitute an Event of Default.  It shall be an Event of Default for Redeveloper to fail to complete

Construction of the Project such that a Certificate of Completion is not issued by the Borough in accordance with the Redevelopment Project Schedule set forth in **Exhibit C.**

**5.10    Project Modifications.**    The Redeveloper hereby acknowledges and agrees that the development and construction of the Project shall be in accordance with the Project Schedule set forth in **Exhibit C.** The Redeveloper may not modify, alter or amend the approved Final Site Plan at any time without the express prior written approval of the Borough which shall not be unreasonably withheld, conditioned or delayed, subject to the provisions of the Applicable Laws; provided, however, that the Redeveloper may make those modifications, alterations and amendments to the Final Site Plan or Construction Plans, as the case may be, that are "minor" in nature. The Borough reserves its right to contest any material modifications that may potentially arise in the course of the construction of the Project.

**5.11 Suspension of Construction.**    If the Redeveloper shall abandon or substantially suspend construction activities on the Project for a period of 120 consecutive days, the rights and remedies of the Parties shall be governed by the provisions of Article 8 of this Agreement.

**5.12    Insurance.** The Redeveloper shall maintain or cause to be maintained at its own cost and expense, with responsible insurers, the following kinds and the following amounts of insurance with such variations as shall reasonably be required to conform to customary insurance practice and in no case less than the amounts indicated below and certificates, or full copies of policies must be furnished as noted below:

(a)    Builder's Risk Insurance for the benefit of the Redeveloper and the Borough, as its respective interests may appear, during the term of construction which will protect against loss or damage resulting from "ALL Risk" or "Special Form" f The limits of liability will be equal to One Hundred (100%) percent of the insurable replacement cost value of the Project (comments on this may follow), including items of labor and materials connected therewith, whether in or adjacent to the structure insured, and materials in place or to be used as part of the permanent construction. Is this meant so say replacement cost endorsement Is loss of use an issue for the borough?

(b) COMPREHENSIVE GENERAL LIABILITY LIMITS $1,000,000/2,000,000 combined single limit "CSL" covering Bodily injury, Property damage and Personal Injury -including explosion, collapse, underground utilities, contractual, independent contractors, and Products/Completed Operations coverage for all premises and work to be completed under the redevelopment agreement.

(c)    Worker's Compensation Insurance coverage in the amount of:
          Coverage A - New Jersey Statutory
          Coverage B – 500,000/500,000/500,000
the full statutory liability of the Redeveloper;

(d)     ENVIRONMENTAL INSURANCE (Pollution Liability)- $5,000,000/$5,000,000- covering Bodily Injury, Property Damage, pollution or environmental harm including cleanup cost arising out of the work to be performed under this contract. The policy must contain a separation of insureds clause and include the Borough of Emerson as an **additional Named Insured**.

(e)     Requirement that contractor's sub-contractors hired by redeveloper maintain certain insurance and name the Borough as additional insured.

(f)     Railroad Protective-Insurance- Requirements Equal to that required by the Railroad if applicable.

(g)     Such other insurance, in such amounts and against such risks, as is customarily maintained by the Redeveloper with respect to other similar properties owned or leased by it, including automobile insurance.

**The before mentioned policies listed in B,C,D & E above shall name the Borough of Emerson**, it's elected officials, agents, employees, officers, affiliates, directors, members, partners, consultants, and subcontractors of each and any of all such as **additional insureds**, and the insurance afforded to these additional insureds shall be primary coverage and noncontributory for all claims covered thereby

The Redeveloper shall file with the Owner before commencing with the redevelopment work under this Agreement, original Certificates of Insurance, or policies where required, which certificates shall bear the following information:
1. Name and address of the insured.
2. Title and Location of the operations to which the insurance applies
3. The number of the policy and the type or types of insurance in force thereunder on the date borne by such Certificate.
4. The expiration date of policy and the limit or limits of liability thereunder on the date borne by such certificate.
5. A statement that the insurance of the type afforded by the policy applies to all of the operation on and at the site of the project which are undertaken by the insured during the performance of his contract.
6. Indication of Insured, additional insured and Co-insured Parties.
7. A statement as to the exclusions of the policy, if any.
8. A statement showing the method of cancellations provided for by the policy. If cancellations may be affected by the giving of notice to the insured by the insurer, the policy shall provide for the lapse of such number of days following the giving of such notice that in the ordinary course of transmission the insured will have actually received such notice at least thirty (30) days before the cancellation becomes effective. Notice of cancellation shall also be delivered to Owner not less than thirty (30) days prior to such lapse or termination.

**5.13  Indemnification and Defense.** (a)  The  Redeveloper  agrees  to indemnify and hold harmless the Borough against, and the Redeveloper shall pay for, any and all liability, loss, cost, damage, claims, judgments, legal fees and costs or expenses, of any and all kinds or nature and however arising, imposed by law, which the Borough may sustain, be subject to or be caused to incur by reason of any claim, suit or action based upon personal injury, death, or damage to property, whether real, personal or mixed, resulting from the Redeveloper's activities in constructing the Project or the Redeveloper's actual breach of contracts entered into by the Redeveloper which directly relate to the construction of the Project, or resulting solely from the Redeveloper's ownership of the Property, or resulting from the acquisition, construction or installation of the Project. Further, said indemnification shall include but not be limited to any and all claims by workmen, employees and agents of the Redeveloper and unrelated third parties, which claims result from the construction of the Project, the maintenance and functioning of the Improvements and Public Improvements or any other activities of the Redeveloper within the Property during the construction of the Project. Neither the Borough or its Council Members, commissioners, officers, agents, servants or employees shall be liable in any event for any action performed under this Agreement, except for any claim or suit arising from negligent, intentional or willful acts of the Borough, its Council Members, commissioners, officers, agents, servants or employees.

(b)  The Redeveloper, at its own cost and expense, shall defend any and all such claims, suits and actions, as described in and for which indemnification is required by this Section 5.13, which may be brought or asserted against the Borough, its Council Members, commissioners, officers, agents, servants or employees; but this provision shall not be deemed to relieve any insurance company which has issued a policy of insurance as may be provided for in this Agreement from its obligation to defend the Redeveloper, the Borough and any other insured identified in such policy of insurance in connection with claims, suits or actions covered by such policy. Any cost for reasonable attorneys' fees in situations where it is necessary for the Borough to engage its own attorneys, reasonable experts' testimony costs and all reasonable costs to defend the Borough or any of its Council Members, commissioners, officers, agents, servants, or employees shall be reimbursed to it by the Redeveloper in connection with such indemnification claim. The Borough shall give the Redeveloper notice of any such claim for which indemnification under this Agreement is sought (together with copies of any documents received) within Fifteen (15) Days of the Borough's receipt of same.

**5.14  Project Signage.**  Redeveloper shall work with the Borough to place signage on the Property within 30 days of obtaining Governmental Approvals that contains a rendering or renderings of the finished Project, and indicates that the Project is made possible in the community as a result of the efforts of the Redeveloper and Borough.  The Borough will provide the Redeveloper with the exact specifications and locations for any signage produced in accordance with the Article.

**5.15  Project Renderings.** Redeveloper shall make renderings of the finished Project available to the Borough for use at public presentations, and to further market the Borough for economic development.

## ARTICLE 6.

## PROHIBITIONS

6.01. **Prohibition Against Transfers of Interests in Redeveloper**. Prior to completion of the Project as evidenced by the issuance of a Certificate of Completion, and without the prior written approval of the Borough, which approval shall not be unreasonably withheld, Redeveloper agrees for itself and any successor in interest that:

(1)  There shall be no transfer by any owner of any equity interest in Redeveloper, or by any successor in interest to such owner, of any interest in Redeveloper.

(2)  Nor shall any such owner or successor in interest suffer any such transfer to be made, except due to death, but excluding transfers among existing members;

(3)  Nor shall such owner or successor in interest make, or suffer to be made, any other change in the ownership of any equity interest in Redeveloper except as hereinabove provided, or with respect to the identity of the parties in control of Redeveloper or the relative degrees of their control, by any other method or means, whether by increased capitalization, merger with another corporate, partnership or limited liability entity, or otherwise. With respect to this provision, Redeveloper and the party(ies) signing the Agreement on behalf of Redeveloper represent that each party has authority of all its owners to agree to this provision on their behalf and to bind them with respect thereto. For the purpose of this Agreement, the term "owners" is defined to include the general partners of a partnership, the stockholders of a corporation or the members of a limited liability company.

(4)  If approval of the Borough is sought for a transfer, Redeveloper will pay an administrative fee equivalent to One Thousand Dollars ($1,000.00), and shall pay in addition thereto, any Borough Costs associated obtaining the Borough's approval.

The following transfers of interests in the Redeveloper shall be deemed to be approved without any approval by the Borough: (a) assignments among the principals of Redeveloper and their immediate family members; and (b) assignments by the principals of Redeveloper for estate planning and tax purposes.

6.02. **Transfer of Redevelopment Agreement**. Redeveloper further agrees for itself, its successors and assigns, that prior to the completion of the Project or any portion thereof, as evidenced by the issuance of a Certificate of Completion it will not make or create, or suffer to be made or created, any sale, assignment, conveyance, lease or transfer in any other mode or form (collectively, the "Transfers") of its interests in the Project or its interest in this Agreement, without the prior written approval of the Borough, except as provided below, which consent shall not be unreasonably withheld.

24

In the event that the Borough consents to a Transfer, the Transferor shall be released from the obligations of this Agreement only to the extent or limit of the authorized Transfer.

**6.03. Exemption from Prohibited Transfers**. Notwithstanding the foregoing, and with the consent of the Borough, it shall not constitute a prohibited transfer, for purposes of Section 6.02 if after Final Site Plan Approval has been obtained, Redeveloper assigns its rights under this Agreement upon the following conditions: (i) the assignee of Redeveloper must be an entity controlling, controlled by, or under common control of Redeveloper including but not limited to an urban renewal entity formed by Redeveloper pursuant to N.J.S.A. 40A:20-4; (ii) the assignee of Redeveloper shall assume all of the obligations of Redeveloper hereunder, but Redeveloper shall remain primarily liable for the performance of Redeveloper's obligations, (iii) a copy of the fully executed written assignment and assumption agreement shall be promptly delivered to the Borough, and (iv) such assignment does not violate any of the Government Approvals.

In addition, nothing contained in this Agreement shall prohibit, nor require the consent of the Borough, to transfer individual condominium units to the ultimate purchaser of such units.

**6.04. Consent to Permitted Transfers**. The Borough hereby consents, without the necessity of further approvals or payment of the administrative fee set forth in Section 6.01(4) from any entity, to the following Transfers: (i) a Mortgage or related security granted by Redeveloper to a Mortgagee for the purpose of obtaining the financing necessary to enable Redeveloper to perform its obligations under this Agreement with respect to Completion of the Project and any other purpose authorized by this Agreement and (ii) any Mortgage or Mortgages and other liens and encumbrances granted by Redeveloper to a Mortgagee for the purpose of financing costs associated with the development, construction, and marketing of the Project. With respect to any of the Transfers listed in this Section 6.04, Redeveloper shall provide to the Borough written notice of at least fifteen (15) days prior to such Transfer, including a description of the nature of such Transfer, and the name(s) and address(es) of the transferee and any parties, individuals and/or entities comprising such Transfers.

**6.05. Prohibition Against Speculative Development**. Because of the importance of the development of the Property to the general welfare of the community, Redeveloper represents and agrees that Redeveloper's undertakings pursuant to this Agreement are, and will be used, for the purpose of the redevelopment of the Property as provided herein and not for speculation in land holding.

**6.06 Conditions of Transfer**. In the event that the Redeveloper requests the Borough's prior written approval for a transfer of interest the Borough shall be entitled to require, as a condition of approval of any transfer that (i) the proposed Transferee will have qualifications and financial responsibility necessary and adequate to fulfill the obligations undertaken in this Agreement with respect to the transferred portion of the Project and other obligations pursuant to Governmental Approvals or any part of such obligations that may pertain to the transferred interest or the transferred portion of the

Project, as determined from (1) Audited financial statements indicating (a) net worth or (b) unencumbered lines of credit; or evidence of loan commitments sufficient to carry out the relevant aspect of the Project; and (2) Submission of letters of recommendation from reputable Parties for whom the prospective transferee has undertaken a comparable development, stating that the proposed transferee of the relevant aspect of the Project possesses the competence and integrity to undertake same; and (ii) any proposed transferee, by instrument in writing reasonably acceptable to the Borough, will, for itself and its Transferees, and expressly for the benefit of the Borough, have expressly assumed all of the relevant obligations of the Redeveloper under this Agreement with respect to the Project and agrees to be subject to all the Covenants and Restrictions to which the Redeveloper is subject; and (iii) the Transferee will comply with such other reasonable conditions as the Borough may find necessary in order to achieve and safeguard the purposes of the Redevelopment Plan.

**6.07 Transfers in Violation of this Agreement.**  Any Transfer in violation of this Agreement shall be deemed to be an Event of Default and shall be null and void *ab initio.*  The occurrence of such Event of Default shall entitle the Borough to seek all available remedies under the terms of this Agreement, including the right to terminate this Agreement, and all other remedies available under the Applicable Law(s).

## ARTICLE 7.

## PROJECT AND MORTGAGE FINANCING

**7.00    Submission of Financial Package.**  In the event that the Redeveloper intends to seek financing for the Project the Redeveloper represents that it shall use its best efforts to obtain sufficient financing for all costs associated with the Project.  The Redeveloper represents that such financing may be a combination of debt financing, equity financing and an equity contribution of the Redeveloper and may be obtained in coordination with the phased development of the Project.  On or prior to the earlier to occur of (i) ninety (90) days after the Redeveloper has obtained all Governmental Approvals with respect to the applicable phase of the Project, or (ii) ninety (90) days prior to Commencement of Construction on such phase of the Project, the Redeveloper shall submit a financial package that the Redeveloper believes to be complete that describes the anticipated sources of funding for that phase of the Project, including, but not limited to, commitments to construction financing required for that Phase of the Project and a representation regarding any equity capital necessary for the Commencement of Construction of the relevant phase of the Project.

**7.01.  Mortgage.**  Except as to financing conducted through recognized chartered banks and/or licensed insurance lenders or by an Affiliate of the Redeveloper, the Redeveloper shall request authority from the Borough (which shall not be unreasonably withheld) in writing in advance of any proposed financing secured by a mortgage or other similar lien instrument, which it proposes to enter into with respect to the Project, or any part thereof, and in any event Redeveloper shall promptly notify the Borough of any encumbrance or lien that has been created on or attached to the Project in

connection with any financing of the Project obtained by Redeveloper; or, by involuntary act of the Redeveloper or others, upon obtaining knowledge or notice of same.

**7.02.   Obligations of Mortgagee**.  Notwithstanding any of the provisions of this Agreement, including but not limited to those which are or are intended to be covenants running with the land, the holder of any mortgage authorized by this Agreement, including any such holder who obtains title to the Property or any part thereof as a result of foreclosure proceedings, or action in lieu thereof, but not including (a) any other party who thereafter obtains title to the Property or such part from or through any such holder or (b) any other purchaser at foreclosure sale (other than the holder of the mortgage itself) shall in no way be obligated by the provisions of this Agreement to construct or complete the Project or to guarantee such construction or completion; provided that nothing in this Article or any other Article or provision of this Agreement shall be deemed or construed to permit or authorize any such holder to devote the Property or any part thereof to any uses, or to construct any Project thereon, other than those uses provided or permitted under the Redevelopment Plan, Governmental Approvals and Applicable Law.

**7.03.   Notice of Default to Mortgagee and Right to Cure**.  Whenever the Borough shall deliver any notice or demand to the Redeveloper with respect to any breach or default by the Redeveloper under this Redevelopment Agreement, the Borough shall at the same time deliver to each lender (or equity participant in Redeveloper) a copy of such notice or demand, provided that the Redeveloper has delivered to the Borough a written notice of the name and address of such lender and equity participant. Each such lender shall (insofar as the rights of the Borough are concerned) have the right at its option within ninety (90) days after the receipt of such notice, to cure or remedy, or to commence to cure or remedy, any such default with respect to that portion of the Project which is being financed by such lender and which is subject to being cured and to add the cost thereof to the debt and the lien which it holds, or to the obligations of the lessees under any lease-back or of the guarantor under any other conveyance for financing.

Notwithstanding the foregoing, in the event of any breach or default with respect to the deadlines for commencement and completion of construction of the Project set forth in Section 5.08, the Borough agrees that any notice to a Mortgagee will not be served simultaneously with the notice to the Redeveloper, but instead will be served forty five (45) days after notice of breach or default to Redeveloper if Redeveloper has not cured the breach or default.

**7.04.   Estoppel Certificate**.  Within forty five (45) days following written request therefore by the Redeveloper, or of any lender, purchaser, tenant or other party having an interest in the Project, the Borough shall issue a signed estoppel certificate either stating this Redevelopment Agreement is in full force and effect and that there is no default or breach under this Redevelopment Agreement, or stating the nature of the default or breach or event, if any.  In the event the estoppel certificate discloses such a default, breach or event, it shall also state the manner in which such default, breach and/or event may be cured. No more than a reasonable number of estoppel certificates may be requested per year.

# ARTICLE 8.

## EVENTS OF DEFAULT

**8.01.   Events of Default**. Any one or more of the following shall constitute an Event of Default hereunder, subject to Force Majeure and tolling as provided elsewhere in this Agreement:

(1)     Failure of Redeveloper or the Borough to observe and perform any covenant, condition, representation, warranty or agreement hereunder, and continuance of such failure for a period of thirty  (30) days, after receipt by the defaulting party of written notice from the non-defaulting party specifying the nature of such failure and requesting that such failure be remedied, unless such delay is the direct cause of a governmental entity relating to an issue over which the Redeveloper has no control, or is not otherwise responsible for such governmental entities actions concerning the default or delay.

(2)     (i) Redeveloper shall have applied for or consented to the appointment of a custodian, receiver, trustee or liquidator of all or a substantial part of its assets; (ii) a custodian shall have been legally appointed with or without consent of Redeveloper; (iii) Redeveloper, (A) has made a general assignment for the benefit of creditors, or (B) has filed a voluntary petition in bankruptcy or a petition or an answer seeking an arrangement with creditors or has taken advantage of any insolvency law; (iv) Redeveloper has filed an answer admitting the material allegations of a petition in any bankruptcy or insolvency proceeding; or (v) Redeveloper shall take any action for the purpose of effecting any of the foregoing; (vi) a petition in bankruptcy shall have been filed against Redeveloper, and shall not have been dismissed for a period of ninety (90) consecutive days; (vii) an Order for Relief shall have been entered with respect to or for the benefit of Redeveloper, under the Bankruptcy Code; (viii) an Order, judgment or decree shall have been entered, without the application, approval or consent of Redeveloper, by any court of competent jurisdiction appointing a receiver, trustee, custodian or liquidator of Redeveloper, or a substantial part of its assets and such order, judgment or decree shall have continued unstayed and in effect for any period of ninety (90) consecutive days; (ix) Redeveloper shall have suspended the transaction of its usual business.

(3)     Redeveloper shall default in or violate its obligations with respect to the construction of the Project in accordance with this Agreement, the Redevelopment Plan, the Redevelopment Project Schedule, Governmental Approvals or Applicable Laws or including but not limited to failure to comply with the Commencement of Construction and Completion of Construction, shall abandon or substantially suspend construction work and any such default, violation, abandonment or suspension shall not be cured, ended, or remedied within thirty (30) days after written demand by the Borough to do so (provided that it shall not be an event of default if Redeveloper is proceeding with due diligence to remedy the same as soon as practicable).

(4)    The Project shall not be complete, as evidenced by the issuance of a Certificate of Completion on the Completion Date.

(5)    Redeveloper, its successor or assigns shall fail to pay any application or permit fees in furtherance of any Governmental Approvals, or connection fees resulting therefrom, or real estate taxes, assessments, or PILOTs (as defined herein) on the Property or any part thereof when due, shall fail to pay any payments required under this Agreement, or shall place on the Property any encumbrance or lien unauthorized by this Redevelopment Agreement, or shall suffer any levy or attachment to be made, or any materialmen's or mechanics' lien, or any other unauthorized encumbrance or lien to attach and such real estate taxes or assessments shall not have been paid, or the encumbrance or lien removed or discharged or provision satisfactory to the Borough made for such payment, removal, or discharge, within thirty (30) days after written demand by the Borough to do so..

(6)    There is, in violation of this Redevelopment Agreement, a transfer or assignment as prohibited in Article 6.

(7)    The Redeveloper fails to make a payment of any sums payable to the Borough, as same shall become due and payable, and such failure to pay shall have continued for a period of (30) days after Redeveloper's receipt of written notice specifying its failure to make such payment.

**8.02.    Remedies of Borough Upon Event of Default**.  Whenever any Event of Default of Redeveloper shall have occurred and be continuing after the expiration of any applicable cure period, the Borough may seek to terminate this Agreement.  Upon termination of this Agreement the Borough shall have the right to specific performance, injunction or any other remedy available at law or in equity and the right to use the Performance Bond to complete construction of any Public Improvements.    The Borough's remedies are not limited to those set forth in this Agreement; the Borough retains at all times its delegated governmental powers to undertake enforcement action to stop, abate and ameliorate any issue or circumstance affecting the public health, public safety and public welfare of its residents.

**8.03.    Remedies of Redeveloper Upon Event of Default.**  Whenever any Event of Default of the Borough shall have occurred and be continuing, the Redeveloper may seek specific performance, injunction or any other remedy available at law or in equity.

**8.04.    Restoration of Status**.    In case the Borough or Redeveloper, as applicable, shall have proceeded to enforce its rights under this Redevelopment Agreement and such proceedings shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Borough or Redeveloper, as applicable, then and in every such case, Redeveloper and the Borough shall be restored respectively to their several positions and rights hereunder, and all rights, remedies and

powers of Redeveloper and the Borough shall continue as though no such proceedings had been taken.

**8.05.    Failure or Delay by Either Party**.    Except as otherwise expressly provided in this Redevelopment Agreement or the Project Milestones attached hereto as **Exhibit B**, any failure or delay by either party in asserting any of its rights or remedies as to any default, shall not operate as a waiver of any default, or any such rights or remedies, or deprive either such party of its right to institute and maintain any actions or proceedings which it may deem necessary to protect, assert or enforce any such rights or remedies.

**8.06.    Remedies Cumulative**.    No remedy conferred by any of the provisions of this Redevelopment Agreement is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise. The election of any one or more remedies shall not constitute a waiver of the right to pursue other available remedies.

**8.07    Certificate of No Default**.    The Redeveloper shall deliver to the Borough on each anniversary of the Effective Date, a certificate signed by its authorized representative to the effect that (a) the Redeveloper is not aware of any condition, event or act which constitutes a violation of this Agreement or which would constitute an Event of Default, and (b) no condition, event or act exists which, with notice or lapse of time, or both, would constitute an Event of Default; or (c) if any such condition, event or act exists, specifying same.

## ARTICLE 9.

## TERMINATION RIGHTS

**9.01    Additional Termination Rights of Borough**    In the event that the Redeveloper substantially abandons or suspends construction of the Project  for a period in excess of One Hundred Eighty (180) Days as a result of a Tolling Event not caused by the act or omission of the Borough hereunder or a period in excess of One Hundred Twenty (120) Days not resulting from the occurrence of Event of Force Majeure or other Tolling Event, then, whether or not an Event of Default by the Redeveloper has been declared by the Borough, the Borough shall have the right to terminate this Agreement.

Nothing in this Section 9.01 shall prevent the Borough from declaring that an Event of Default by the Redeveloper hereunder has occurred or from pursuing any of its other remedies hereunder.

## ARTICLE 10.

## INTENTIONALLY OMITTED

## ARTICLE 11.

## DELAYS

**11.01. Force Majeure**. For the purposes of any of the provisions of this Agreement, neither the Borough nor Redeveloper, as the case may be, nor any successor in interest, shall be considered in breach of, or in default with respect to its obligations hereunder because of any delay in the performance of such obligations arising from an Event of Force Majeure as defined herein. It is the purpose and intent of this provision that in the event of the occurrence of any such enforced delay, the time or times for performance of the obligations of the Borough or Redeveloper shall be extended for the period of the delay.

**11.02  Notice of Event of Force Majeure.**  The Party who seeks the benefit of the above described modification/extension shall, within Thirty (30) Days after that Party's actual discovery of any such Event of Force Majeure or other Tolling Event, notify the other Party in writing of the Event of Force Majeure or the Tolling Event, and of the cause(s) thereof, and therein a modification/extension of the term and an extension for the period of the enforced delay. The performance or non-performance by the Parties or either of them of any obligation, requirement, commitment or responsibility set forth in this Agreement shall not be deemed to be the Event of Default pursuant to this Agreement where such performance, failure of performance or delay in performance is/are the result of an Event of Force Majeure or other Tolling Event; provided, however, that the Event of Force Majeure or other Tolling Event was not the result of any unlawful action or non-action of the Party relying on such Event of Force Majeure or other Tolling Event as justification for the non-performance, failure of performance or delay in performance of the subject obligation, requirement, commitment or responsibility. Where either Party alleges that as a result of an Event of Force Majeure or a Tolling Event the aggrieved Party is unable to perform or not perform any aspect of this Agreement, the aggrieved Party shall send proper written notice to the other identifying the Event of Force Majeure or Tolling Event alleged to have occurred.

## ARTICLE 12.

## CONTINGENCIES

**12.01  Governmental Approvals Contingency.**  In addition to the terms and conditions concerning the Redeveloper's obligation to obtain Governmental Approvals:

(1)    Redeveloper agrees to proceed in good faith and at its own cost and expense to obtain all Governmental Approvals to develop and construct the Project in accordance with the Redevelopment Project Schedule. Redeveloper agrees that it shall not seek any use variances pursuant to N.J.S.A. 40:55D-70(d) in connection with its applications for the Governmental Approvals.

(2) No Governmental Approval shall be deemed "final" until (i) the time for all appeals has run without the filing of an such appeal or (ii) in the event an appeal is filed, all such appeals have been resolved fully in favor of Redeveloper and the time for filling any further appeals has expired without the filling of any such appeals.

(3) In the Event that Redeveloper's application for any Governmental Approval is denied, Redeveloper shall have the option, in its sole discretion, to appeal that denial at Redeveloper's sole cost and expense.

(4) In the event that any application by Redeveloper for a Governmental Approval is denied and either (i) the time for appeal has expired without Redeveloper filing an appeal from such denial or (ii) Redeveloper has filed an appeal from such denial and said appeal has been resolved against Redeveloper, either party shall have the option to terminate this Agreement by providing notice to the other party to that effect.

(5) In the event the Borough is unable to purchase and/or acquire properties Redeveloper could not purchase, Redeveloper shall have the right to terminate this Agreement.

## ARTICLE 13.

## COOPERATION AND COMPLIANCE

**13.01. Implementation of Agreement and Redevelopment Plan.** The parties hereto agree to cooperate with each other and to provide all necessary and reasonable documentation, certificates and consents in order to satisfy the terms and conditions hereof and the terms and conditions of the Plan. The Borough further agrees to cooperate as may be reasonably requested by any mortgagee of the Redeveloper in connection with obtaining financing for the Project; provided, however, that all Borough Costs associated with such action shall be borne by the Redeveloper.

## ARTICLE 14.

## MISCELLANEOUS

**14.01. Conflict of Interest.** No member, official or employee of the Borough shall have any direct or indirect interest in this Redevelopment Agreement, nor participate in any decision relating to the Agreement that is prohibited by law.

**14.02. No Consideration For Agreement.** The Redeveloper warrants it has not paid or given, and will not pay or give, any third person any money or other consideration for obtaining this Redevelopment Agreement, other than normal costs of conducting business and costs of professional services such as architects, engineers, financial consultants and attorneys. The Redeveloper further warrants it has not paid or incurred

any obligation to pay any officer or official of the Borough, any money or other consideration for or in connection with this Redevelopment Agreement.

**14.03. Non-Liability of Officials and Employees of the Borough.** No member, official or employee of the Borough shall be personally liable to the Redeveloper, or any successor in interest, in the event of any default or breach by the Borough, or for any amount which may become due to the Redeveloper or its successor, or on any obligation under the terms of this Redevelopment Agreement.

**14.04. Non-Liability of Officials and Employees of the Redeveloper.** No member, officer, shareholders, director, partner or employee of the Redeveloper, and no member, officer, shareholders, director, partner or employee of the members of the Redeveloper or the members of the Redeveloper shall be personally liable to the Borough, or any successor in interest, in the event of any default or breach by the Redeveloper or for any amount which may become due to the Borough, or their successors, on any obligation under the terms of this Redevelopment Agreement.

**14.05. Inspection of Books and Records.**

(1) The Borough shall have the right at all reasonable times to inspect the books and records of the Redeveloper pertinent to the purposes of this Redevelopment Agreement, including but not limited to construction contracts, books and records, leases, insurance policies, and agreements.

(2) The Redeveloper shall have the right at all reasonable times to inspect the books and records of the Borough pertinent to the purposes of this Redevelopment Agreement.

(3) Such inspections must be performed at a time and in a manner as to not unreasonably interfere with the business operations of the party whose books and records are being inspected and be for a legitimate business purpose affecting the material interest of the party seeking the inspection.

**14.06. Approvals by the Borough and the Redeveloper.** Wherever this Redevelopment Agreement requires the approval or consent of the Borough or the Redeveloper, or any officers, agents or employees of either the Borough or the Redeveloper, such approval shall not be unreasonably withheld or conditioned, and approval or disapproval shall be given within the time set forth in this Agreement, or, if no time is given, within fifteen (15) days, unless formal action of the Governing Body is required, in which case, within forty five (45) days.

**14.07. Modification of Agreement.** No modification, waiver, amendment, discharge, or change of this Redevelopment Agreement shall be valid unless the same is in writing, duly authorized, and signed by the Redeveloper and the Borough.

**14.08. Notices and Demands.** A notice, demand or other communication under this Agreement by any party to the other shall be sufficiently given or delivered if dispatched by United States Registered or Certified Mail, postage prepaid and return receipt requested, or delivered by overnight courier or delivered personally (and receipt acknowledged) to the parties at their respective addresses set forth herein, or at such other address or addresses with respect to the parties or their counsel as any party may, from time to time, designate in writing and forward to the others as provided in this Section 14.08. Notice shall be effective upon the earlier of receipt or refusal.

**BOROUGH OF EMERSON AGENCY**
Robert Hoffmann, Borough Administrator
Municipal Building
146 Linwood Avenue
Emerson, New Jersey 07630

With a copy to:

Douglas F. Doyle
DeCotiis, Fitzpatrick, & Cole, LLP
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666
Facsimile Number 201-928-0588

And

Emerson Redevelopers, LLC and JMF Properties
c/o JMF Properties
80 S. Jefferson,
Whippany, NJ 07981

With a copy to:

Carl Kemph
6 Hampshire Court
Springfield, NJ 07081

**14.9    Title of Articles and Sections.** The titles of the several Articles and Sections of this Agreement, as set forth in the Table of Contents or at the heads of said Articles and Sections, are inserted for convenience of reference only and shall be disregarded in construing or interpreting any of its provisions.

**1410.    Severability.** The validity of any Articles, clause or provision of this Agreement shall not affect the validity of the remaining Articles, clauses or provisions hereof.

**14.11. Successors Bound**. This Agreement shall be binding upon the respective parties hereto and their successors and assigns provided however, that this Agreement may not be assigned by either party during the Construction Period.

**14.12. Governing Law**. This Agreement shall be governed by and construed by the laws of the State of New Jersey. Any legal action filed in this matter shall be heard in Superior Court of New Jersey, Bergen County Vicinage.

**14.13. Borough Approvals**. All approvals or disapprovals required by the Borough shall, unless otherwise stated herein, be valid if given in writing by the Mayor or his designee.

**14.14. Counterparts**. This Agreement may be executed in counterparts. All such counterparts shall be deemed to be originals and together shall constitute but one and the same instrument.

**14.15. Exhibits**. Any and all Exhibits annexed to this Agreement are hereby made a part of this Agreement by this reference thereto.

**14.16. Reporting**. Notwithstanding anything contained herein to the contrary, Redeveloper's reporting requirement as to progress of construction shall be the reports required in **Exhibit C**.

**14.17. Entire Agreement**. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior oral and written agreements between the parties with respect to the subject matter hereof.

**14.18. Effective Date**. Anything herein contained to the contrary notwithstanding, the effective date of this Agreement shall be the date this Agreement has been last executed by either the Redeveloper or Borough whichever party shall execute last.

**14.19. Review by Counsel**. This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey without regard to or any presumption or other rule requiring construction against the party drawing or causing this Agreement to be drawn since counsel for both the Redeveloper and the Borough have combined in their review and approval of same.

**14.20. Eminent Domain** The Borough agrees that it will not exercise any powers of eminent domain against the Property that is owned or controlled by EMRED or its transferee, unless EMRED breaches this Agreement or is otherwise in default, in which case, EMRED waives its right to object to or challenge the Borough's right to acquire EMRED's property through eminent domain.

**14.21. First Source Employment**. Until the issuance of the Certificate of Completion Redeveloper shall make good faith efforts to employ, and shall provide in its

contracts with its General Contractors that they must make good faith efforts to employ qualified residents of the Borough in the construction of the Project. Redeveloper's good faith efforts will include without limitation cooperating with the Borough in job fairs and similar endeavors and giving adequate consideration to potential employees and businesses as referred by the Borough. In addition, consistent with market wages and to the extent it is commercially feasible, Redeveloper shall make good faith efforts that qualified residents of the Borough and businesses located in the Borough are afforded a fair opportunity to be employed in the operation of the Project. Inclusion of the requirements of this section in Redeveloper's general contract agreements shall fully satisfy this obligation of Redeveloper under this section. Redeveloper, in its sole discretion, shall determine if, and the extent to which, it shall employ qualified residents of, or businesses located in, the Borough, and the extent, if at all, to which Redeveloper shall use union labor for the construction of the Project.

**14.22. Equal Employment Opportunity.** The Redeveloper agrees that during the construction of the Improvements:

(a)    To the extent required by Applicable Law, the Redeveloper will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Redeveloper will take affirmative action to insure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer, recruitment or recruitment advertising, layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Redeveloper agrees to post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this nondiscrimination clause and any such notices provided by the Borough which are consistent therewith.

(b)    To the extent required by Applicable Law, the Redeveloper will, in all solicitations or advertisements for employees placed by or on behalf of the Redeveloper state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

(c)    To the extent required by Applicable Law, subcontractors and suppliers to the Project shall to the extent that it is commercially feasible include qualified and certified minority enterprises.

(d)    To the extent required by the Applicable Law, the obligations in this Section shall be binding on all contractors and subcontractors to the extent that any work is done by any contractor or subcontractor, and any contract entered into by the Redeveloper shall so provide.

**14.23 Drafting Ambiguities; Interpretation.** In interpreting any provision of this Agreement, no weight shall be given to, nor shall any construction or interpretation be influenced by, the fact that counsel for one of the Parties drafted this Agreement, each

Party acknowledging that it and its counsel have had an opportunity to review this Agreement and have contributed to the final form of same.

**14.24 Withholding of Approvals.** All approvals, consents and acceptances required to be given or made by any Person or party, shall not be unreasonably withheld or delayed.

**14.25 Recitals Incorporated; Definitions Incorporated.** The Recitals to this Agreement and the Definitions contained in this Agreement are incorporated by reference into this Agreement, as if set forth at length herein.

**14.26 Limitation on Liability.** Notwithstanding anything to the contrary in this Agreement, any liability(ies), commitments, obligations and/or responsibility or responsibilities of any type or kind whatsoever (whether actual, contingent, consequential or otherwise) (hereinafter referred to collectively as "Liability") of the Redeveloper in, resulting from, or relating in any way to this Agreement shall be those of the Redeveloper only. Nothing in this Agreement, arising out of, or related in any way to this Agreement or to the Project or any aspect thereof shall, in any way, give the Borough or any other Person recourse to, or be construed to impose, directly or indirectly, any Liability on any Person other than the Redeveloper.

The foregoing limitation on Liability shall apply to, but is not limited to, (i) any Affiliate of the Redeveloper or of the Redeveloper's members, (ii) any member, shareholder, manager, officer, director, partner, managing member, vendor, venturer, trustee, employee, agent, and/or other representative (hereinafter collectively referred to as the "Agent") of the Redeveloper or of the Redeveloper's members, (iii) any Agent of any Affiliate of the Redeveloper or of the Redeveloper's members, (iv) any Affiliate of any Agent of the Redeveloper or of the Redeveloper's members, (v) any Agent of any Agent of the Redeveloper or of the Redeveloper's members, (vi) any Person directly or indirectly holding, controlling and/or owning any interest in the Redeveloper or in the Redeveloper's members, in any Agent or Affiliate of the Redeveloper or of the Redeveloper's members, in any Agent of any Affiliate of the Redeveloper or of the Redeveloper's members, and/or in any Affiliate of any Agent of the Redeveloper or of the Redeveloper's members, and/or (vii) any successors and/or assigns of any of the Parties referenced in subsections (i) through (vi), above unless the Parties have assumed an interest in the Project in accordance with a Permitted Transfer and Article 6 hereof.

The Borough understands and acknowledges that its respective acceptance of the Limitation on Liability set forth in this Section is a condition precedent to the Redeveloper's execution of this Agreement and constitutes specifically bargained-for consideration. The terms of this Section shall in no way limit the indemnification of the Borough as provided for in Article 5 hereof.

**14.27 Borough's Limitation on Liability.** Any liabilities, obligations or responsibilities of any type or kind (contingent or otherwise) herein are solely those of the Borough. No member, director, employee, officer, representative or agent of the

Borough shall be liable to the Redeveloper or any other Person for any matter arising out of or related to the payment or performance of any such liabilities, obligations or responsibilities of the Borough in this Agreement.

**14.28   Limitation on Third Parties.** Nothing in this Agreement is intended to nor shall create any rights for or confer any benefits on any third person or party.

**14.29   No Brokerage Commissions.** The Borough and the Redeveloper each represent one to the other that no real estate broker initiated, assisted, negotiated or consummated this Agreement as broker, agent, or otherwise acting on behalf of either the Borough or the Redeveloper, and the Borough and the Redeveloper shall indemnify each other with respect to any claims made by any person, firm or organization claiming to have been so employed by the indemnifying party.

**14.30   Maintenance.** The Redeveloper shall be responsible for the maintenance and security of each parcel of property contained within the Property subject to the terms of this Agreement subsequent to its acquisition of title to each such parcel of property and until such time as the Redeveloper no longer owns or leases the Property or any portions thereof.

**14.31   Lender Changes.** If the Redeveloper's Financial Institution(s) requires modifications of the terms of this Agreement, the Borough shall reasonably cooperate with the Redeveloper in approving such modifications, so long as such modifications, do not materially and substantially change the rights or obligations of the Borough as set forth in this Agreement and, in the reasonable opinion of the Borough, do not materially impair the objectives and interest of the Borough or render the completion of the Project or any Phase thereof in jeopardy.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be properly executed and their corporate seals affixed and attested as of the date first written above.

BOROUGH OF EMERSON

By: _____
Name:  Louis Lamatina
Title:  Mayor

REDEVELOPER
EMERSON REDEVELOPERS URBAN RENEWAL, LLC

By: _____
Name:  Joseph Forgione
Title:  Managing Member

38

**EXHIBIT A**
**Property Description**

| Property Owner | Block | Lots | Property Address |
|---|---|---|---|
| Angelo and Jane Giambona | 419 | 1 | 19 Lincoln Blvd. |
| 214 Kinderkamack, LLC | 419 | 2 | 15 Lincoln Blvd. |
| 214 Kinderkamack, LLC | 419 | 3 | 9 Lincoln Blvd. |
| 214 Kinderkamack, LLC | 419 | 4 | 214 Kinderkamack |
| Borough of Emerson | 419 | 7 | |
| Dolores, Della Volpe Trste | 419 | 6.01 | 190 Kinderkamack |
| Yaghoob Pousty | 419 | 6.02 | 184 Kinderkamack |
| 182 Emerson, LLC | 419 | 8 | 182 Kinderkamack |
| 182 Emerson, LLC | 419 | 10 | 78 Linwood |

**Exhibit B**

**Concept Plan**







**Exhibit C**

**Project Schedule and Reporting Requirements**

**<u>Project Schedule</u>**

By Redeveloper - Attached

**<u>Reporting Requirements:</u>**

Based on the attached Project Schedule, in addition, on or before the first day of each month after the Commencement Date, redeveloper shall provide report for the prior month to date identifying the following:

1.  Status of property acquisition (if still applicable).
2.  Status of application to Land Use Board (if still applicable);
3.  Status of posting bonds and schedule for Commencement Date (if applicable);
4.  Public Improvements performed to date;
5.  Other private improvements performed to date;
6.  Schedule for Public Improvements and non-public work to be performed in the following month;
7.  Anticipated Completion Date and any explanation of revisions to the Anticipated Completion date from previous Monthly Reports;



EMERSON MIXED USED DEVELOPMENT
KINDERKAMACK ROAD, EMERSON, NEW JERSEY
PRELIMINARY CONSTRUCTION SCHEDULE

**Exhibit D**

**Members of Redeveloper**

| | |
|---|---|
| Giuseppe Forgione | 50% |
| Steven Kalafer | 50% |

**Exhibit E**

**Funding Agreement**

## FUNDING AGREEMENT

**THIS FUNDING AGREEMENT** is dated this ___6___ day of ~~April~~ May 2016 among the **BOROUGH OF EMERSON,** a municipal corporation with offices at 146 Linwood Ave., Emerson, NJ 07630 (the "Borough") and **EMERSON REDEVELOPERS, LLC,** with offices located at 80 S. Jefferson Road, Suite 202, Whippany, NJ 07981 (hereinafter referred to as "ERD");

## W-I-T-N-E-S-S-E-T-H:

**WHEREAS,** ERD seeks to redevelop the following property located in the Borough of Emerson identified on the Tax Maps of the ~~Township~~ Borough as Block ___419___; Lots 1,2,3,4,6.01, 6.02, 8, +10 (the "Property"); and

**WHEREAS,** the Borough wishes to designate a redeveloper for the Redevelopment Area encompassing the Property; and

**WHEREAS,** ERD proposes to design, develop, finance and construct 134 units and 13,000 square feet of retail space ("the Project") and accordingly has requested the Borough consider appointing ERD as redeveloper for the Property; and

**WHEREAS,** ERD has agreed to pay the Application Fee as set forth herein and bear the costs for the Borough's professionals to assist the Borough in reviewing, among other things, whether ERD should be designated redeveloper for the Property, and in connection therewith has agreed to establish an escrow fund with the Borough to provide for the payment of professional fees, costs and expenses related thereto incurred by the Borough (the "Interim Costs");

**NOW, THEREFORE,** for and in consideration of the mutual promises, representations, covenants and agreements contained herein and the undertakings of each Party to the other and such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound hereby and to bind its successors and assigns, do mutually promise, covenant and agree as follows:

1. **Payment of Interim Costs.**

Immediately upon the execution of this Funding Agreement, ERD shall pay Ten Thousand Dollars ($10,000) (the "Escrow") to the Borough and the Borough shall deposit such funds into an escrow account established by it for the payment of the Interim Costs. Prior to the Borough's withdrawal of funds from the Escrow for the payment of the Interim Costs, the Borough shall provide ERD with a copy of each invoice reflecting Interim Costs to be paid. Unless ERD promptly (within fifteen (15) days of its receipt of any such copy) provides a written objection to any invoiced item as not being an Interim Cost, the Borough shall be free to withdraw funds from the Escrow for the payment of such invoiced services. If, when and as

1908805

often as may occur that the Escrow is drawn down to or below Three Thousand Five Hundred Dollars $3,500 then ERD, upon the Borough's request, shall immediately provide to the Borough for deposit an additional amount sufficient to replenish the escrow to Ten Thousand Dollars ($10,000) for use in accordance with these terms.

Interim Costs, for the purposes of this Funding Agreement, shall include the reasonably incurred out-of-pocket fees, costs and expenses incurred by the Borough (both before and after execution hereof) in reviewing the proposed development of the Property, including, but not limited to, fees for legal, engineering, planning and financial advisory services, including subsequent investigations and studies as may be reasonably determined and agreed to by the parties.

2.    **Application Fee** – Prior to the execution of a formal Redeveloper's Agreement the Borough shall imposes a non-refundable fee in an amount to be determined based on the final concept plan, with any adjustment to the fee to be paid, if appropriate, when the Redevelopment Agreement is executed.

3.    **Notice.**  Any notice provided to the Borough hereunder shall be submitted in writing to:

    Jane Dietsche, RMC, Borough Clerk
    146 Linwood Ave.
    Emerson, NJ 07630

    with copies to:

    Douglas F. Doyle
    Decotiis, Fitzpatrick & Cole, LLP
    Glenpointe Centre West
    500 Frank W. Burr Blvd, Suite 31
    Teaneck, NJ 07666

Notices to ERD shall be submitted in writing to:

    Emerson ReDevelopers, LLC
    Attn: Kevin X. Codey, Vice President of Land Acquisitions
    80 South Jefferson Road, Suite 202
    Whippany, NJ 07981

    with copies to:

    Carleton R. Kemph, Esq.
    6 Hampshire Court
    Springfield, NJ 07081

1908805

4.    <u>General</u>.- This Funding Agreement embodies the entire agreement between the parties and supersedes all prior agreements and understandings between the parties. This Funding Agreement may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Funding Agreement to be executed, all as of the date first above written.

**BOROUGH OF EMERSON**

BY: _____
Louis J. Lamatina, Mayor

Witness:

By: _____
Jane Dietsche, RMC, Borough Clerk

**AND**

**EMERSON REDEVELOPERS, LLC**

BY: _____
Name: GIUSEPPI FORGIONE
Title: MANAGING MEMBER

1908805

**Exhibit F**
**Offsite/Onsite Improvement Share**

DEVELOPER ESTIMATE

**BOROUGH OF EMERSON, KINDERKAMACK ROAD PROJECT**

**ROAD CONSTRUCTION COSTS ON NORTHWEST CORNER, REQUIRED BY BERGEN COUNTY**

1. Cost share estimate items, # 1-25,  portion of the 30 % costs borne by Borough  = $13,200
2. Roadway widening & excavation, 3 feet wide X 900 feet frontage, 2,700 SF = 300 SY X $100/ SY
= $30,000
3. Milling, centerline to existing curbline, 15 feet wide X 900 feet frontage, 13,500 SF / 9
    = 1,500 SQ X $4 SY =                                                                          = $ 6,000
4. Paving, centerline to existing curbline, 15 feet wide X 900 feet frontage, 13,500 SF / 70
    = 195 Tons X $75 / Ton =                                                                 = $14,625
5. Concrete curb with excavation, 900 LF X $25/ LF                            = $22,500
6. Concrete sidewalk with excavation. 4 FT X 900 LF= 3,600 SF = 400 SY X $60/ SY
= $24,000
7. Drainage changes for road widening, 3 X $6,000                            = $18,000
8. Traffic control during construction, signs, barricades & police         = $33,000
9. Traffic Signs                                                                                       = $ 1,000
10. Pavement striping, markings and eradication                                = $10,000
11. Relocate traffic signal pole and foundation at Linwood Ave.        = $20,000
12. Topsoil and seeding, between curb and  sidewalk                         = $ 5,000
13. Linwood Ave railroad crossing contribution, ( portion of $410,000 NJ Transit Estimate)
= $61,500

                                                   *Bergen County Total*          =*$258,825*

                                                   10% Contingency                 *Say $285,000*

**CONSTRUCTION COSTS ON NORTHWEST CORNER, REQUIRED BY EMERSON**

1. 42 Inch drainage line from Linwood Ave to Lincoln Blvd, 650 LF X $225/ LF     = $146,250
2. Lincoln Ave drainage work, upsize pipes                                        = $ 10,000
3. 3 New drainage chambers, 42 inch pipe, 3 X $7,000                       = $ 21,000
                                                   STREETSCAPE ITEMS
4. Expand Paver Sidewalks, 6 FT Add. X 900 FT = 5,400 SF= 600 SY X $120/ SY     = $ 72,000
5. Streetscape Lighting, 9 Lights and wiring at $7,000/ each              = $ 63,000
6. Street trees, 5 X $ 500                                                                    = $   2,500
7. Amenities, benches, trash receptacles                                          = $ 10,000
                                                   *Emerson Total*                  *= $ 324,750*
                                                   10 % Contingency        Say   $ 357,000

                                                   *Total Estimate*              *$ 642,000*

Soft Costs, Including surveying, engineering, attorney fees, property acquisition, utility layout, test pits, etc.
                                                                                                  $   75,000
                                                   *TOTAL*                          *$ 717,000*

**Exhibit G**
**Storm Water Pipe**

1. 42 Inch drainage line from Linwood Ave to Lincoln Blvd, 650 LF
2. Lincoln Ave drainage work, upsize pipes
3. 3 New drainage chambers, 42 inch pipe

Agenda No. 13

**BOROUGH OF EMERSON**
**COUNTY OF BERGEN, NEW JERSEY**
**RESOLUTION**          **No: 173-16**

.................................................................................................................

*Subject:*  **Approval of Execution of Redevelopment Agreement**

**WHEREAS,** at the April 5, 2016 meeting of the Governing Body, Resolution 129-16 was unanimously approved, authorizing the Borough to enter into a Redevelopment Agreement with JMF Properties; and

**WHEREAS,** the Redevelopment Counsel designated Redevelopment Subcommittee and other appropriate officials including the Administrator and Engineer were authorized to negotiate the terms and conditions of a Redevelopment Agreement; and

**WHEREAS,** the Redevelopment Subcommittee recommends that the terms and conditions negotiated for the Redevelopment Agreement be approved by the Governing Body;

**NOW, THEREFORE BE IT RESOLVED,** that the Governing Body of the Borough of Emerson authorizes the Mayor to execute the Redeveloper Agreement in a form approved by the Borough's Redevelopment Counsel.

| COUNCIL | MOVED | SECONDED | AYES | NAYES | ABSENT | ABSTAIN |
|---------|-------|----------|------|-------|--------|---------|
| DiPaola |  |  |  |  |  | X |
| Lazar | X |  | X |  |  |  |
| Downing |  |  | X |  |  |  |
| Knoller |  | X | X |  |  |  |
| Tripodi |  |  |  |  | X |  |
| Worthington |  |  | X |  |  |  |

*I hereby certify that the above Resolution was duly adopted by the Borough of Emerson at a meeting held on June 14, 2016.*

*Attest:*  *Jane Sielich*
          *Municipal Clerk*