Exhibit 52

**N**

# NEGLIA
## ENGINEERING ASSOCIATES

34 Park Avenue – PO Box 426
LYNDHURST, NEW JERSEY 07071
Tel: 201.939.8805 • Fax: 201.939.0846

1119 Raritan Road – Suite 2
CLARK, NEW JERSEY 07066
Tel: 201.939.8805 • Fax: 732.943.7249

**Via E-Mail & Hand Delivery**

July 12, 2019

Mayor and Council
Borough of Emerson
One Municipal Plaza
Emerson, NJ 07630

Attn.:   Jane Dietsche, R.M.C., Borough Clerk

RE:   **Resolution Compliance / Engineering Review**
  **Preliminary & Final Major Site Plan, Emerson Redevelopers Urban Renewal, LLC**
  Block 419, Lots 1-4, 6.01, 6.02 and 7-10
  Borough of Emerson
  Bergen County, New Jersey
  NEA No.: EMERSPL19.029

Dear Honorable Mayor and Council:

Neglia Engineering Associates ("NEA") has received and reviewed the following documents, submitted in support of the above-referenced application:

- Site plan review letter prepared by Gary M. Ascolese, P.E., of Boswell Engineering, dated December 6, 2018;

- Borough of Emerson Land Use Board Resolution approving the above-referenced application with conditions, dated December 28, 2018;

- Site Plan Set consisting of seventeen (17) sheets, entitled "Preliminary and Final Site Plan for Emerson Station, Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10, Borough of Emerson, Bergen County, New Jersey, Tax Map Sheet 4," prepared by Eric L. Keller, P.E., of Bowman Consulting, dated November 15, 2018, revised through June 20, 2019;

- Architectural Plan Set consisting of seven (7) sheets, entitled "Emerson Station, Emerson Redevelopers Urban Renewal, LLC," prepared by Angela Kostelecky, R.A., of Devereaux & Associates, dated May 1, 2019;

- Building Colors and Materials Exhibit prepared by Accurate Builders & Developers and Devereaux & Associates, undated;

- Stormwater Conveyance Calculations prepared by Bowman Consulting, dated June 20, 2019;

- Traffic and Parking Assessment Report prepared by Charles D. Olivo, P.E., P.P., P.T.O.E. and Matthew Seckler, P.E., P.P., P.T.O.E., of Stonefield Engineering and Design, dated March 22, 2019; and

- Comment Response Letter prepared by William H. Hamilton, P.P., A.I.C.P., L.L.A., LEED A.P., of Bowman Consulting, dated June 19, 2019.

## 1.   General Information

The subject property is located on Block 419, Lots 1-4, 6.01, 6.02 and 7-10. The site is bound to the north by Lincoln Boulevard, to the south by Linwood Avenue, to the east by Kinderkamack Road (Bergen County Route 503), and to the west by a New Jersey Transit commuter rail line right-of-way. Properties to the north and east, across Lincoln Boulevard and Kinderkamack Road, respectively, consist primarily of commercial properties, the

---

Civil Engineering • Municipal Engineering • Landscape Architecture • Traffic Engineering • Planning • Land Surveying • Construction Management



**NEGLIA**
ENGINEERING ASSOCIATES

property to the south, across Linwood Avenue, consists of the Borough of Emerson New Jersey Transit commuter rail line station, and the properties to the west, across the New Jersey Transit commuter rail line right-of-way, consist of residential uses. The subject parcels are currently occupied by a variety uses including retail, restaurant, personal-service and residential. The existing two (2) story masonry building within Block 419, Lot 5 consists of a martial arts / fitness studio with office space and is not included within this application. The subject property is located within the CBD-10 Zone and is designated as an area in need of redevelopment.

The Applicant is proposing to demolish all existing buildings and improvements within the subject parcels for the purpose of constructing a four (4) story multi-use building consisting of residential and retail uses, along with four (4) parking garage levels and rooftop parking. Overall, the development will consists of 14,700 square feet of retail space fronting Kinderkamack Road on the ground floor of the building along with 147 residential units. Additional site improvements include stormwater management facilities, utility, landscape, lighting and streetscape improvements.

2. <u>Variances / Deviations / Waivers</u>

NEA defers to the Borough of Emerson Land Use Board Planner and Attorney with respect to required variances, deviations and waivers from applicable requirements established within the Borough of Emerson Zoning Code. However, the following is noted with respect to the proposed building height:

2.1.    In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290-69, the maximum allowable building height (in feet) for the CBD-10 Zone is 42 feet along public right-of-ways and 50 feet along railroad right-of-ways. Furthermore, in accordance with note 5 provided under the aforementioned Table A, *"additional height is permitted in accordance with §290-70.A(3) and shall only be permitted on development parcels which are two (2) acres or greater. Further, the fifty (50) foot building height will only be permitted set back from the front building façade by a minimum of five (5) feet in depth on buildings facing Lincoln Boulevard and Kinderkamack Road."* Based on the above, it is NEA interpretation that the maximum allowable building height along Lincoln Boulevard, Kinderkamack Road and the subject railroad right-of-way to the west, when incorporating the requirements established within the above-referenced note and §290-70.A(3), is 50 feet. Likewise, it appears that the maximum allowable height along Linwood Avenue is 47 feet. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, the building height is defined as *"the vertical distance measured from the curb level, as defined, to the extreme high point of the building, exclusive of a chimney, weather vane or similar structure."* Furthermore, the curb level is defined as *"the permanently established natural grade at the midpoint of the front building line."* The Applicant has provided top of curb and top of roof profiles for the building façades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way. Irrespective of the above required plan revisions, it appears that the Applicant is proposing a building height that exceeds 47 feet along Linwood Avenue. Therefore, based on the above definitions and requirements, it is NEA's opinion that the Applicant does not comply with the building height requirements for the CBD-10 Zone along Linwood Avenue. However, we defer to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same.

2.2.    In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290-69 of the Borough of Emerson Zoning Code, the maximum allowable building height (in stories) for the CBD-10 Zone is four (4) stories. The Applicant is currently proposing to construct a four (4) story building with an additional parking level located on the roof. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, a building story is defined as *"That part of a building between a floor*

**NEGLIA**
ENGINEERING ASSOCIATES

*and the floor above or, in its absence, the ceiling or roof above..."* Based on this definition, it does not appear that the additional rooftop parking qualifies as a building story since the rooftop parking will not have a roof or ceiling enclosing the same. However, NEA defers to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same.

3. **Parking Requirements**

| Regulation | Ordinance Section | Required | Required | Proposed | Status |
|---|---|---|---|---|---|
| Retail Use | §290-71.A (Table C) | One (1) space per 250 square feet of gross floor area | (1.0 spaces / 250 S.F.) x 14,700 S.F.= 58.8 spaces | | |
| Residential (within Mixed-Use) | §290-71.A (Table C)[1] | One-Bedroom / Studio: 1.8 spaces per unit[1] | (1.8 spaces / unit) x 120 units = 216 spaces[1] | 308 spaces (this value includes 55 spaces dedicated to commuters) | Conforming |
| | | Two-Bedroom: 2.0 spaces per unit[1] | (2.0 spaces / unit) x 21 units = 42 spaces[1] | | |
| | NJAC §5:21-4.14 (Table 4.4) (RSIS)[1] | Three-Bedroom: 2.1 spaces per unit[1] | (2.1 spaces / unit) x 6 units = 12.6 spaces[1] | | |
| | | Total Number of Required Parking Spaces | 329.4 spaces | | |
| | | Total Required Parking with Allowable 25% Reduction per §290-71.A (note a) and §290-71.B(7)[2] | 329.4 x 75% = 247.05 spaces = 247 required parking spaces[2] | | |

(1)    Table C within Chapter §290-71.A of the Borough of Emerson Zoning Code, does not include parking requirements for three-bedroom apartment units. As such, since the requirements for one- and two-bedroom units are in accordance with the parking requirements established within NJAC §5:21-4.14 (Residential Site Improvements Standards), the parking requirement established within NJAC §5:21-4.14 for three-bedroom units was utilized for the above calculation.

(2)    In accordance with Note (a) under Table C within Chapter §290-71.A of the Borough of Emerson Zoning Code, and as similarly established within §290-71.B(7), *"if a project contains retail on the first floor with residential above, the parking requirement may be reduced to a maximum of up to 25% to account for shared parking, subject to and conditioned upon: (i) the receipt of testimony provided by the Applicant's traffic/parking expert supporting such reduction: and, (ii) the Land Use Board retaining a traffic/parking consultant to support and confirm such determination, which shall be paid for by the Applicant. If a development is constructed with the parking reduction then medical office space shall be a prohibited use. For the purpose of this section, 'medical office' shall include walk-in and urgent-care clinics, other medical, dental, treatment and therapy-related facilities."*

4. **Engineering Comments from Boswell Engineering Review Letter dated December 6, 2018 (NEA's responses to these comments are shown in bold):**

*Site Plan*

4.1.    *"The proposed site plan consolidates numerous lots within this block. The Applicant should provide testimony how the street addresses will be determined and how the lot configurations would be achieved, and if multiple lots are to remain. This may require a major subdivision of the consolidated parcels."* **The**



**NEGLIA**
ENGINEERING ASSOCIATES

__Applicant has indicated by way of the submitted comment response letter that the subject parcels will be consolidated into one (1) lot under single ownership. All documentation related to the same shall be submitted for review.__

4.2. *"Section 236-6.B.2(f) requires the locations, names, and existing widths of adjacent streets, rights-of-way, and curblines. This information is not plotted on the site plan set nor the survey set submitted."* This comment has been addressed. No further action is required.

4.3. *"Section 236-6.B.2(j) requires existing zoning of the property and all adjacent lands. The zoning for Block 419, Lot 5 is not indicated on the plans."* This comment has been addressed. No further action is required.

4.4. *"Section 236-6.B.4(a) requires the location of uses and outlines of structures drawn to scale on and within 200 feet of the property, including the setback. This information is not included on the plans."* This comment has been addressed. No further action is required.

4.5. *"Section 236-6.B.4(c) requires locations, dimensions, grades and flow direction of existing sewers. This information is not included on the plans."* This comment has been addressed. No further action is required.

4.6. *"The plans should provide the location and datum where the building height is to be measured. The Emerson Code, Section 290-6 – DEFINITIONS – BUILDING HEIGHT states the building height is to be determined as the vertical distance measured from the curb level, as defined, to the extreme high point of the building exclusive of a chimney, weather vane or similar structure. The curbline datum references for each structure at the existing curblines shall be determined and shown on the plans so the height of the building can be determined in the field."* __The Applicant has provided top of curb and top of roof profiles for the building façades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way.__

4.7. *"During the construction of the Kinderkamack Road project, there were monitoring wells located on the Lot 5 and Lot 9 parcels. These monitoring well locations should be provided on the site plans for assessments and review."* This comment has been addressed. No further action is required.

4.8. *"Lincoln Boulevard has experienced significant flooding during major storm events, with water accumulating to a depth of over 3 feet at times in the vicinity of the double "B" catch basins on Lincoln Boulevard. The proposed installation of the 42-inch drainage line should significantly increase the carrying capacity of the drainage system in this area. The Applicant should review the drainage calculations for the site and for the Lincoln Boulevard frontage to determine the best design elevations for the proposed parking garage entrance and residential units along Lincoln Boulevard."* The proposed first floor elevations along Lincoln Boulevard are situated approximately 6 to 8 inches above the roadway curb line. The Applicant is proposing to construct a 42-inch reinforced concrete pipe that will convey stormwater runoff from the Lincoln Boulevard right-of-way, including from the aforementioned type 'B' inlets, to the municipal conveyance system within the Linwood Avenue right-of-way. It is NEA's understanding, that the purpose of this improvement is to alleviated the occurrence of the above-mentioned flooding incidences within Lincoln Boulevard. Based on the same, NEA takes no objection to the proposed first floor and garage entrance elevations along Lincoln Boulevard. No further action is required.

# N
## NEGLIA
### ENGINEERING ASSOCIATES

4.9. *"The Borough of Emerson may require the proposed 42-inch drainage line to remain the responsibility of the developer so a drainage easement may not be required. The proposed 42-inch RCP will require the existing storm drain manhole on Lincoln Boulevard to be reconstructed to provide enough wall surface to make the connection. The existing catch basin chamber on the north side of Linwood Avenue was constructed to accept a sleeve for the 42-inch RCP on the northeast corner of the chamber. The Applicant shall verify the elevation of the invert and demonstrate the proposed slope of the drainage line and connection to be Lincoln Boulevard drainage system."* <u>The Applicant has provided stormwater conveyance calculations for the 25-year storm event. However, the Applicant shall submit a stormwater management report, inclusive of existing and proposed peak flow rates, along with the associated hydrographs, to confirm the impact to the aforementioned conveyance system.</u>

4.10. *"The southwest corner of Kinderkamack Road and Lincoln Boulevard intersection presently has too small a curb return to effectively pass larger vehicles using the intersection. The existing building has recently been struck by a truck making a right turn onto Kinderkamack Road. The County of Bergen and Borough of Emerson will likely require the increase of the corner radius to 20-25 feet to better accommodate these turns."* This comment has been addressed. No further action is required.

4.11. *"Kinderkamack Road is a County road. Therefore, the Applicant will require a Bergen County Planning Board Approval. The Applicant shall provide testimony as to where they are in the Bergen County Planning Board review/approval process and further discuss all the County requirements."* <u>This application has been approved by the Borough of Emerson Land Use Board. As such, the above requested testimony is no longer applicable. However, the Applicant shall submit all correspondence and approvals from the Bergen County Planning Board for review.</u>

4.12. *"The Applicant shall provide testimony with regard to traffic site circulation and the operation method of the gated entrance and exit to the parking garage, as well as who will be permitted to access this structure. Testimony should also be given to determine how the surface parking spaces will be utilized."* This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, the Applicant has indicated within the submitted comment response letter that a parking control arm will restrict access to parking levels 2 through 5 for residential uses only. In addition, information addressing traffic circulation within the development is provided within the submitted Traffic and Parking Assessment Report. No further action is required.

4.13. *"The Applicant should provide testimony how residents from the complex will access the NJ Transit train platform. Will crosswalks be provided in the parking lot areas? Will there be pedestrian access other than along Linwood Avenue and Lincoln Boulevard?"* <u>This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, it is noted within the submitted comment response letter that the Applicant will assist with the Borough's efforts to create pedestrian routes between the proposed development and the Borough's New Jersey Transit train station located. As such, this comment remains applicable.</u>

4.14. *"The Borough's Police and Fire Departments shall review and comment with regard to emergency access, firefighting ability, site circulation and the like. It does not appear that the Applicant provided any type of fire truck area striping. The Applicant shall provide testimony with regard to this matter."* <u>This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, this comment remains applicable until the Applicant has acquired plan review letters from the Borough of Emerson Police and Fire Departments.</u>

4.15. *"According to the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), the number of Barrier Free Parking spaces required for parking lots containing between 301 and 400 total parking*



**NEGLIA**
**ENGINEERING ASSOCIATES**

spaces is seven (7) accessible parking spaces plus one (1) additional space to be van accessible. Therefore, the Applicant has satisfied this condition. Boswell takes no exception to this matter. The Applicant shall coordinate the location of these parking spaces with the Borough's Construction Official." **This comment remains applicable until the Applicant has confirmed the location of the required ADA-accessible parking spaces within the Borough Construction Official.**

4.16.   "There doesn't appear to be any place for trash to be stored and picked up. The Applicant shall provide testimony with regard to the location, frequency and time of garbage pickup. If garbage pickup is encountered during peak operational times, a backup into the site could occur not allowing the entering vehicles to access the angular parking stalls." **The Architectural Plan Set has been revised to illustrate the location of a proposed dumpster enclosure in the vicinity of the interior building trash room. In addition, the Applicant has indicated within the submitted comment response letter that trash removal operations will be conducted through a private hauler during off-peak hours. Overall, NEA takes no exception to overall trash removal operations. However, the Applicant shall revise the Site Plan Set to illustrate the location of the proposed trash enclosure location, as per the Architectural Plan Set.**

*Architecture*

4.17.   "The Applicant should present testimony regarding the proposed exterior façade of the various buildings, including materials and colors, overhangs, facades, setbacks, railings, roofing styles, etc. Architectural renderings in 2D and 3D and in color should be provided to the Land Use Board to demonstrate how the redevelopment site will look from all four (4) sides of the property. Substantial, additional information will be required. The building designs shall be in conformance with Chapter 290 Article XIII, CBD-10 Central Business District Zones of the Emerson Zoning Code." **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, based on NEA's review of the proposed building façade design and articulation, it appears that the Applicant complies with the standards established within Chapter §290-70.A (Architectural Guidelines) of the Borough of Emerson Zoning Code, NEA defers to the Borough's Land Use Board Planner for a final determination with respect to the proposed building façade components and compliance with applicable sections of the Borough of Emerson Zoning Code.**

4.18.   "The architectural plan shows a cut away section view A-A on the northwest corner of Kinderkamack Road and Linwood Avenue with an overall height in excess of 50 feet. This is contrary to the maximum permitted building height for the redevelopment area. The Applicant shall explain this design feature, and if it complies with Chapter 290-69 of the Zoning Code." **See previous comments addressing the proposed building height.**

4.19.   "The architectural plan shows a cut away section view B-B on the southwest corner of Kinderkamack Road and Linwood Avenue with a set of stairs leading to the ground floor of the complex. The Applicant is to provide testimony of guiderail protection for an errant vehicle leaving the road and travelling down the steps is required." **The plans have been revised to include bollards along the main entrance stairway. This comment has been addressed. No further action is required.**

4.20.   "The Building Unit Mix Chart on Sheet 1 of the architectural plans prepared by Devereance & Associates and dated 11/15/2018 shows an error for the total of studio apartments units in the complex. It shows a total of one studio unit on each of the three floors, but a total of 6 units. This discrepancy should be corrected." **This comment has been addressed. No further action is required.**

4.21.   "The COAH Dwelling Units chart on the same sheet indicates a COAH ratio of 15% of the unit totals, but the calculation indicates 25% of 127 units, not 15% of 147 units. The calculations appear to be incorrect. The Applicant shall provide testimony regarding this requirement. Also, the COAH calculation shows 3-



**NEGLIA**
ENGINEERING ASSOCIATES

*bedroom units, but no 3-bedroom units appear in the Building Unit Mix Chart."* **This comment has been addressed. No further action is required.**

4.22.    *"No information has been provided concerning any retail, store signage that may be required or anticipated for the site. All proposed advertising and site signage shall be shown on a supplemental plan and submitted to the Borough Planner and Borough Engineer for approval prior to construction, and meet the latest requirements of the Emerson Code for signage restrictions."* **This comment remains applicable and shall be addressed prior to construction.**

*Traffic*

4.23.    *"The Applicant's design has eliminated all driveways from Kinderkamack Road into the site in order to permit less operational conflicts for the Kinderkamack Road corridor between intersections, and has located their new driveways as far from Kinderkamack Road as possible to improve stacking. Access to the site will be provided from the signalized intersections recently completed by the Borough of Emerson and Bergen County improvements, and maintained by Bergen County. Road widening and actuated turning lanes have been installed to permit safe access to the site. Boswell Engineering does not anticipate the need for any additional pavement widening or improvements along Kinderkamack Road, which will be subject to the review and approval of Bergen County."* **No action required.**

4.24.    *"The Applicant should provide testimony concerning how they anticipated the shared parking spaced between commuter spaces and retail spaces to operate, and the hours reserved for this designation. The Applicant should provide testimony regarding how many parking spaces will be reserved for commuter parking, where these spaces will be designated, and the fee, if any for parking."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, the Site Plan Set has been revised to illustrate the locations of proposed signs indicating the locations, as well as associated time restrictions, of commuter parking spaces. The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station.**

4.25.    *"Testimony should be provided as to how many vehicles trips are expected to be generated during peak hours for the parking garage and the impacts on surrounding streets, particularly concerning the close proximity to the railroad grade crossing on Lincoln Boulevard."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, NEA has provided comments addressing the Traffic and Parking Assessment Report in Section 5 (Neglia Engineering Associates Technical Review Comments) below.**

4.26.    *"The Applicant shall provide information with regard to the traffic site circulation and the operation method of the gated entrance and exit to the parking garage, as well as who will be permitted to access this structure. Testimony should also be given to determine how the surface parking spaces will be utilized."* **As is noted elsewhere in this letter, the Applicant has indicated within the submitted comment response letter that a parking control arm will restrict access to parking levels 2 through 5 for residential uses only. In addition, the Applicant has submitted a Traffic and Parking Assessment Report which addresses traffic circulation associated with the site. This comment has been addressed. No further action is required.**

4.27.    *"The Applicant should present information and testimony as to how many vehicles can be queued for the Lincoln Boulevard entrance to the parking garage before they could affect vehicle flow along Lincoln Boulevard."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, NEA has provided comments addressing the Traffic and Parking Assessment Report in Section 5 (Neglia Engineering Associates Technical Review Comments) below.**



**NEGLIA**
ENGINEERING ASSOCIATES

4.28.   *"The Applicant should provide testimony with regard to the days and hours of operation of the parking garage, the fees to the charges for visitors, the method of payment, a discussion concerning whether the fee is collected while entering or exiting the structure, whether a tow truck can be accommodated to service disabled vehicles, etc. Will the drive aisle from Lincoln Boulevard provide access to the surface parking lot without going through a gate?. How would emergency vehicles enter the surface parking lot from Lincoln Boulevard?"* **As per the submitted Site Plan Set and Architectural Plan Set, as well as the Applicant's comment response letter, there will be no access restrictions to the site via the driveways located along Lincoln Boulevard and Linwood Avenue. However, access to parking levels 2 through 5 will be restricted via a parking gate for residents only. NEA defers to the Borough of Emerson Police and Fire Departments for comments regarding access to the site for emergency vehicles.**

4.29.   *"The parking spaces for the surface plot and in the parking garage should be striped in a hairpin striping style to ensure the parked vehicles are centered in the spaces."* **This comment has not been addressed. The Site Plan Set and Architectural Plan Set shall be revised to illustrate hairpin striping within the parking lots.**

4.30.   *"All signs that regulate or control traffic movements and restrictions shall meet the requirements of the current Manual on Uniform Traffic Control Devices published by the Federal Highway Administration."* **This comment has been addressed through notation within the Site Plan Set. No further action is required.**

*Stormwater Management*

4.31.   *"It appears that the Applicant is proposing that a stormwater management facility be constructed along the southerly portion of the site along with three (3) proposed catch basins connected to said facility via piping to the proposed 42-inch drainage line. The site shall be graded so that runoff from the pavement will be collected in these basins, conveyed to the 42-inch drainage line, and then enter the existing drainage system in Kinderkamack Road at Linwood Avenue."* **This comment has been addressed. No further action is required.**

4.32.   *"No runoff from this site shall affect any adjacent site both during and subsequent to construction. Should a drainage issue persist, the Applicant shall remedy the matter at his/her own cost."* **Notation indicating the same has been provided on the Site Plan Set. However, this comment remains applicable for the duration of construction.**

*Site Lighting*

4.33.   *"A site lighting plan has not been provided for the redevelopment area. A site lighting plan is required to be designed in accordance with the Emerson Code, and site lighting at all property lines to other properties shall not exceed one (1) Fc. Glare cannot exceed one (1) Fc along with westerly property line. The proposed lighting should be shielded to reduce this intensity."* **The Applicant has revised the Site Plan Set to include a lighting plan. However, in accordance with Chapter §290-70.E(1)(c) of the Borough of Emerson Zoning Code, the maximum allowable illumination along the property line is 0.5 foot-candles. Based on the lighting plan, it appears that lighting levels along the westerly property line will exceed 0.5 foot-candles. In addition, in accordance with Chapter §290-70.E(1)(c) of the Borough of Emerson Zoning Code, access driveways are required to have a minimum illumination level of 1.0 foot-candle and an overall average illumination level of 2.0 foot-candles. Illumination levels at the driveways along Lincoln Boulevard and Linwood Avenue do not comply with these requirements. The Applicant shall revise the plan to comply with the above requirements or new variances from the Borough of Emerson Zoning Code will be required.**



**NEGLIA**
ENGINEERING ASSOCIATES

4.34. *"The Applicant should provide testimony if the site lighting will be in conformance with Borough Standards (§290-48.B and §290-54)."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable.**

4.35. *"The Board shall consider having the Applicant agree to a six (6) month period from the time of receiving the Certificate of Occupancy that site light is monitored and should there be a problem, the Applicant shall correct said problem at his or her own cost. Lights shall be shielded to prevent light from escaping this site and affecting adjacent properties."* **Notation indicating the same has been provided on the Site Plan Set. However, this comment remains applicable and shall addressed within the six (6) month period following the completion of construction.**

*Soil Movement*

4.36. *"The Applicant shall provide soil movement calculations from a licensed professional engineer in the State of New Jersey and file a Soil Moving Permit application all in accordance with §244 of the Emerson Code."* **This comment has not been addressed.**

4.37. *"The Applicant shall obtain a Bergen County Soil Moving Permit and provide the Borough and this office* [Neglia Engineering Associates] *with a copy for our files."* **This comment remains applicable until the Applicant has obtained approval from the Bergen County Soil Conservation District. This comment shall be addressed prior to construction.**

*Landscaping*

4.38. *"Boswell is in the process of reviewing the site landscaping. We will submit our comments under separate cover. Boswell takes no exception to have the review and approval of site landscaping to be stated in the resolution as a condition of approval should be Board so desire."* **NEA has reviewed the proposed landscaping and has provided comments below in Section 5 (Neglia Engineering Associates Technical Review Comments).**

*General Comments and Jurisdictional Approvals*

4.39. *"All ADA pedestrian facilities constructed on site and within public rights-of-way or easements must be constructed in accordance with Federal ADA Standards. This includes ramps located at intersections as well as driveways. Compliant Design and Construction Certifications for Pedestrian Facilities within Public Rights-of-Way must be completed and submitted to the Municipal Engineer."* **This comment remains applicable.**

4.40. *"All recently constructed sidewalk areas surrounding the redevelopment area will need to be removed and reconstructed in accordance with the streetscape design approved by the Borough of Emerson and prepared by Burgis Associates in 2005. It stall include street lighting pedestals and fixtures designed in conformance with the other street lighting in the downtown area. The reconstruction should include the area in front of Lot 5, to the extent possible, so the sidewalk and streetscape design is consistent along Kinderkamack Road."* **This comment still applies. In addition, the Applicant shall submit shop drawings for all streetscape elements (i.e. lighting, benches, trash receptacles, etc.) for review and approval prior to construction.**

4.41. *"The Emerson Zoning Code Section 290-70.B.1(b) requires that buildings set back 17 feet from the curbface are required to have a minimum sidewalk width of 12 feet, inclusive of a four-foot minimum landscaped planter separating two four-foot-wide sidewalks, one of which is adjacent to the building and the other adjacent to the curb. The Applicant shall provide a plan and cross-section view of the proposed sidewalk area and provide testimony that this requirement is satisfied."* **This comment has been addressed. No further action is required.**



**NEGLIA**
ENGINEERING ASSOCIATES

4.42.    *"A complete set of construction plans will be required for submittal and approval of the Borough Engineer and Borough Planner prior to the start of any construction in the redevelopment area."* **This comment remains applicable and shall be addressed prior to construction.**

4.43.    *"ADA Compliance Construction Certification must be submitted by the Project Engineer of record and must be submitted with the as-built drawings(s) after the ramp(s) have been inspected. The Certification Forms for construction must be obtained from the Municipal Engineer."* **This comment remains applicable.**

4.44.    *"The Applicant should obtain approvals and/or waivers from the following agencies:*

      *a.    The Bergen County Planning Board,*
      *b.    The Bergen County Soil Conservation District,*
      *c.    Borough of Emerson Police Department (regarding site circulation and emergency access...)*
      *d.    Borough of Emerson Fire Department (Emergency Access, Fire Lanes, Ability to fight fires...)*
      *e.    All other Agencies having jurisdiction."*

      **This comment remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review.**

5.    **Neglia Engineering Associates Technical Review Comments:**

5.1.    The Applicant proposes to provide a total of 120 parking spaces on the ground floor parking garage level and the exterior parking area along the rear of the building. In accordance with the ADA Standards for Accessible Design provided by the Department of Justice, latest revised, parking facilities with 101 to 150 parking stalls are required to provide five (5) ADA accessible parking spaces. The Applicant is currently proposing a total of four (4) ADA accessible parking spaces within the ground floor parking garage level and exterior parking area along the rear of the building. The Applicant shall provide an additional ADA accessible parking space within the rear exterior parking area as a means of achieving compliance with the ADA Standards for Accessible Design provided by the Department of Justice, latest revised. NEA recommends that this additional required space be located within the southernmost portion of the parking lot to provide an ADA-accessible parking space for commuters utilizing the Borough of Emerson New Jersey Transit train station across Linwood Avenue. **This comment has not been addressed.**

5.2.    The Applicant shall provide parking stall and drive aisle dimensions for the parking garage levels. **This comment has not been addressed.**

5.3.    As per the submitted Architectural Plan Set, the Applicant is proposing to construct a trash enclosure structure within a curb island located along a 14-foot service access lane. The location of the same shall be illustrated within the Site Plan Set and associated construction details shall be provided for review. In addition, the location of the proposed trash enclosure conflicts with proposed landscaping. The landscaping plan within the Site Plan Set shall be revised accordingly. **This comment has not been addressed.**

5.4.    The Applicant shall provide construction details for the proposed bollards at the front building entrance at the Lincoln Boulevard and Kinderkamack Road intersection. **This comment has not been addressed.**

5.5.    The Applicant shall revise the grading plan within the Site Plan Set to include additional bottom of curb elevations along Lincoln Boulevard, Kinderkamack Road and Linwood Avenue. **This comment has not been addressed.**

5.6.    The proposed site improvements classify the project as a "Major Development" as defined under the Stormwater Management Adopted New Rule: N.J.A.C. 7:8 by disturbing more than an acre of land. As per the submitted Site Plan Set, under the proposed conditions, it appears that stormwater runoff generated within the site drains to the existing municipal conveyance systems within the Lincoln Boulevard,

**N**

**NEGLIA**

ENGINEERING ASSOCIATES

Kinderkamack Road and Linwood Avenue right-of-ways via overland sheet flow, shallow concentrate flow and pipe conveyance. Under the proposed conditions, the Applicant intends to construct a 42-inch reinforced concrete pipe (RCP) that conveys stormwater runoff from the municipal conveyance system within Lincoln Boulevard to the conveyance system within Linwood Avenue. Stormwater runoff generated within the proposed exterior parking area will be directed to inlets that drain to the aforementioned 42-inch reinforced concrete pipe (RCP). The Applicant shall submit a stormwater management report, inclusive of existing and proposed peak runoff rates along with the associated hydrographs, demonstrating compliance with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8. **This comment has not been addressed.**

5.7.     As per the Stormwater Management Adopted New Rule: N.J.A.C. 7:8-5.5, stormwater management measures shall be designed to reduce the post construction load of total suspended solid (TSS) in stormwater runoff generated from the water quality design storm by 80 percent of the anticipated load from the developed site for developments that increase the impervious coverage by one-quarter acre. Based on the submitted Site Plan Set, it does not appear that the development will result in an increase in the overall impervious coverage by one-quarter acre or more. As such, the Applicant is exempt from this requirement. **No action required.**

5.8.     As per the Stormwater Management Adopted New Rule: N.J.A.C. 7:8-5.4 (a)(2), 100 percent of the sites average annual pre-developed recharge volume must be maintained after development. As per the State of New Jersey Smart Growth Area Plan, the Borough of Emerson is designated as a Metropolitan Planning Area. The project is exempt from groundwater recharge requirements as per N.J.A.C. 7:8 5.4 (a)(2)ii. **No action required.**

5.9.     The Applicant shall submit a stormwater maintenance manual for review. **This comment has not been addressed.**

5.10.    The Applicant shall revise the Site Plan Set to clearly illustrate how stormwater runoff generated by the building roof areas and parking levels will drain to the on-site stormwater conveyance system. **This comment has not been addressed.**

5.11.    The Applicant shall be responsible for ensuring that any and all soils imported to the site are certified clean soils in accordance with current NJDEP Standards, with a copy of the said certification provided to the Borough of Emerson and NEA prior to the import of any material by a professional. Recycled material or demolished materials are not permitted for the purposes of backfilling a vacated excavation area. The Site Plan Set shall be revised to include notation indicating the same. **This comment remains applicable for the duration of the construction period.**

5.12.    The Applicant shall ensure that all disturbed work areas are stabilized. The Applicant shall topsoil, seed, hay, and straw mulch to ensure lawn growth, where appropriate. **This comment remains applicable for the duration of the construction period.**

5.13.    A Soil Evaluation Report shall be prepared and submitted by a licensed professional engineer in the State of New Jersey, prior to any construction. This report shall include the following content at a minimum:

- Soil boring or test pit logs and location map;

- Detailed procedures and methods used to conduct any soil test;

- Weather conditions at the time of any testing, including time, temperature, and the amount of precipitation within the preceding 48-hour period;

- Identification of the seasonal groundwater elevation;

- Field observations; data collected during any on-site test; derived/calculated infiltration rate(s), if applicable;



**NEGLIA**
**ENGINEERING ASSOCIATES**

- A statement of certification signed and sealed by an appropriate professional attesting that the field and conditions observed are either suitable or unsuitable for construction of the approved stormwater management system. If unsuitable conditions are encountered, the Applicant shall include a proposed revised stormwater management plan. The revised plan must result in the equivalent runoff rate and volume as the originally approved plan; and

- NEA shall be notified 48 hours in advance of this testing so that a representative of our office may be present for this testing.

**This comment has not been addressed. The required Soil Evaluation Report shall be provided prior to commencement of construction.**

5.14.    The Applicant shall provide a final certification memorandum, prepared, signed, and sealed by a licensed engineer in the State of New Jersey before a recommendation to issue a final certificate of occupancy can be made. This certification shall contain the following content at a minimum:

- A chronological log of site visits that include the date, time, weather and the nature of stormwater management-related work;

- Signed and sealed certification of a licensed professional in the State of New Jersey attesting to the following:

   o  He/She was on-site and observed key phases of active construction;

   o  He/She evaluated the as-built condition and that all aspects of the stormwater management system conforms to the approved plan or justify any exceptions thereto; and

   o  He/She is of the professional opinion that the stormwater management system is expected to operate in accordance with the approved plan.

**This comment remains applicable and shall be addressed prior to issuance of a final certificate of occupancy.**

5.15.    The Applicant shall provide water usage and sanitary sewer calculations signed and sealed by a Professional Engineer licensed in the State of New Jersey to ensure that the existing systems provides sufficient capacities for the proposed development. The Applicant shall submit a set of plans to the Borough of Emerson DPW for review. **This comment has not been addressed.**

5.16.    The Applicant shall perform a comprehensive thirty (30) day meter study for the existing sanitary sewers system within the Kinderkamack Road right-of-way to ensure that adequate capacity is provided within the existing systems to service the proposed improvements. **This comment has not been addressed.**

5.17.    The Applicant shall acquire an NJDEP Treatment Works Approval and an NJDEP water extension permit for the proposed development. Copies of the same shall be provided to the Borough of Emerson and NEA, if necessary. **This comment has not been addressed.**

5.18.    All rooftop equipment shall be sufficiently screened and baffled to satisfy all applicable noise ordinances. Notation indicating the same shall be provided within the Site Plan Set. **This comment has not been addressed.**

5.19.    The Applicant shall illustrate the locations of all meters, transformers, generators, or other external equipment associated with the proposed building addition. All meters and transformers shall be screened and not visible from public view. Notation indicating the same shall be provided. **This comment has not been addressed.**



**NEGLIA**
ENGINEERING ASSOCIATES

5.20.   The Applicant is proposing to relocate overhead electric utility lines and poles. The Applicant shall provide associated documentation and approvals from the electric utility purveyor confirming the proposed overhead electric utility line and pole relocations. **This comment has not been addressed.**

5.21.   Based on the lighting plan provided within the Site Plan Set, no illumination will be provided along the Lincoln Boulevard sidewalk areas. NEA recommends that the Applicant provide lighting improvements along this area. **This comment has not been addressed.**

5.22.   The Site Plan Set and/or Architectural Plan Set shall be revised to include lighting iso-contours and a point-to-point lighting analysis for the parking garage levels, including the roof parking level. **This comment has not been addressed.**

5.23.   The Applicant shall provide an irrigation system to ensure that the proposed landscaping improvements thrive. Notation indicating the same shall be provided within the Site Plan Set. **This comment has not been addressed.**

5.24.   All street trees shall be limbed up to seven (7) feet at the time of planting. Notation indicating the same shall be provided within the Site Plan Set. **This comment has not been addressed.**

5.25.   NEA has reviewed the Applicant's submitted Traffic and Parking Assessment Report. The Applicant provided trip generations for the proposed mixed-used development with 147 residential units and 17,300 square feet of retail based on the ITE's *'Trip Generation'*, 10th Edition. This report is inclusive of trip generation data related to the proposed residential development. The residential development will generate approximately 53 new trips during weekday morning peak hours and 65 new trips during the weekday evening hour. The proposed trip generation for the retail development is anticipated to be more than the proposed trip generation stated by the Applicant. The Applicant shall address why the proposed trip generation for retail is not approximate to ITE's *'Trip Generation'*, 10th Edition Land Use 820. In addition, based on the most recent Architectural Plan Set submission, the Applicant is proposing 14,700 square feet of retail space. The Traffic and Parking Assessment Report shall be revised accordingly. **This comment has not been addressed.**

6.   **Resolution Compliance:**

*Stipulations made by the Applicant:*

6.1.   Applicant shall comply with all landscaping comments regarding the application, which are to be submitted by the Board Engineer's office or the Board Planner's office, one or the other which shall be completed to the satisfaction of the Board Engineer and/or Board Planner. **See landscaping comments above.**

6.2.   Applicant will meet with the Land Use Board Planner and a subcommittee of the Governing Boady for the Borough and the Land Use Board to discuss and address the Board's and the Borough's concerns and comments regarding the final architectural design and details of the project and all other aspects of the project. Applicant agrees to use all good faith efforts to satisfactorily address the Board's and Governing Body's concerns and comments through the subcommittee. The sample materials that were submitted as hearing evidence shall be the ones utilized during construction unless otherwise approved by the Borough. **This resolution condition remains applicable.**

6.3.   Applicant shall dedicate at least fifty-five (55) of the seventy-three (73) surface parking spaces on the Property for the exclusive use by New Jersey Transit (Emerson Borough) train station users during the hours of 7:00 AM and 6:00 PM, Monday through Friday. The signage and permitting for these 55 commuter spaces shall be agreed upon between the Borough and Applicant. **The Applicant has revised the Site Plan Set to designate fifty-five (55) parking spaces for commuter use via proposed signage.**



**NEGLIA**
**ENGINEERING ASSOCIATES**

**The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station.**

6.4.  Insofar as the proposed development is constructed with the parking reduction set forth in Section §290-71.A(a) of the Borough Code: medical office space – which shall include walk-in and urgent-care clinics and other medical, dental, treatment and therapy-related facilities – shall be a prohibited use in the proposed development. **The Applicant has provided notation within the Site Plan Set noting the above prohibited uses. However, the Applicant is advised that this resolution condition remains applicable.**

6.5.  Applicant shall provide turning templates for garbage trucks and emergency vehicles accessing the property, for the review and approval of the Board Engineer and/or Board Planner. **The required vehicle turning exhibits have been provided. Overall, NEA takes no exception to the same. This resolution condition has been addressed. No further action is required.**

6.6.  Applicant shall provide drainage calculations for the proposed development for the review and approval of the Board Engineer. **This resolution condition has not been addressed. As stated above, the Applicant has submitted conveyance calculations associated with the proposed stormwater conveyance system. However, the Applicant shall submit an accompanying stormwater management report demonstrating that the development will comply with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8.**

6.7.  The Applicant shall provide any off-tract improvements required by the application consistent with the MLUL and the Redevelopment Agreement. **This resolution condition remains applicable, as required.**

6.8.  There shall be a review after six (6) months to address any lighting concerns, and adjustments are to be made at the direction and approval of the Board Engineer. **This resolution condition remains applicable and shall be addressed six (6) months after the completion of construction.**

6.9.  Deliveries shall not be made from Kinderkamack Road and shall only be made in the rear of the building(s) of the proposed development. **The Applicant has provided notation within the Site Plan Set noting the above. However, the Applicant is advised that this resolution condition remains applicable.**

6.10.  Applicant will reasonably assist the Borough efforts to create pedestrian connections to and from the Property and the Borough's New Jersey Transit train station. **This resolution condition remains applicable.**

6.11.  All standing snow of 2 inches or more, from one or multiple snow events, shall be removed from the Property by the Applicant at the Applicant's sole cost and expense. **The Applicant has provided notation within the Site Plan Set indicating that snow accumulation of 4-6 inches or more, from one or multiple snow events, shall be removed from the property, at the Applicant's sole cost and expense. However, the Applicant is advised that this resolution condition remains applicable.**

6.12.  Subject to obtaining the permission of the owner of Block 419, Lot 5 ("Lot 5"), and provided same does not encroach onto Lot 5, the Applicant shall continue the streetscape for the proposed development across the frontage of Lot 5. **This resolution condition has not been addressed to date.**

6.13.  Applicant shall revise the architectural plans to be to scale and to provide dimensions to confirm compliance with all Borough Code requirements, including but not limited to, the design standards set forth in the Redevelopment Plan, and the Applicant shall provide elevations of all four sides of the proposed development for review and approval by the Board Engineer and/or the Board Engineer. **The Applicant has provided to-scale architectural drawings for review. However, the Architectural Plan Set shall be revised to include additional dimensions associated with each of the building elevations. NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the design standards set forth in the Redevelopment Plan. However, please note NEA's**



**NEGLIA**
ENGINEERING ASSOCIATES

<u>comments regarding the building height, as stated in Section 2 (Variances / Deviations / Waivers)</u>
<u>above.</u>

6.14. Applicant shall comply with all applicable requirements of the Redevelopment Agreement, the Settlement Agreement and UHAC with respect to the affordable housing proposed as part of the development. **This resolution condition remains applicable.**

6.15. Applicant shall design the HVAC units to be shielded from public view and shall provide some HVAC and vents for units suitable for future restaurant uses within the development to the approval of the Board Engineer. **This resolution condition remains applicable. All documents related to the same shall be submitted for review.**

6.16. Applicant shall provide a point-to-point lighting plan for the review and approval of the Board Engineer. **This resolution condition remains applicable. The Applicant has provided a point-to-point lighting plan. However, see the comments in Section 5 (Neglia Engineering Associates Technical Review Comments) above for additional required lighting information.**

6.17. Applicant shall submit a directional sign package for the review and approval of the Board Engineer and/or Board Planner. **This resolution condition has not been addressed.**

*Conditions Specific to this Application:*

6.18. Applicant shall abide by all of the stipulations set forth at length above. **This resolution conditions remains applicable. See our responses above to the said stipulations.**

6.19. The Applicant shall submit revised site plan and architectural plan sets incorporating any and all applicable conditions set forth herein, and conditions of all engineering reports and reports of the Land Use Board's professionals, and the subcommittee of the Board and the Governing Body, for the review and approval of the Board Engineer and/or Board Planner. **This resolution conditions remains applicable.**

6.20. The Applicant shall obtain the appropriate approvals, permits and/or letter for the Application from all applicable local, county, state and federal bodies and agencies, including, but not limited to, the following:

a.  Bergen County Planning Board;
b.  Bergen County Soil Conservation District;
c.  Borough of Emerson Police Department;
d.  Borough of Emerson Fire Department; and
e.  New Jersey Department of Environmental Protection.

**This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review.**

6.21 If any material changes to the site plan as approved by this Resolution of the Board are required by any other governmental body or agency, said changes are to be brought by the Applicant on a forthwith basis before the Board, which retains jurisdiction over the application. **This resolution conditions remains applicable.**

6.22 The Applicant shall at all times comply with all applicable rules, regulations, ordinances and statutes of the Borough of Emerson, County of Bergen, State of New Jersey and the federal government with regard to the development, including but not limited to, the Americans with Disabilities Act. **This resolution conditions remains applicable.**

6.23 The Applicant agrees that the work to be performed consistent with this resolution will be consistent with Emerson's Redevelopment Plan. **This resolution conditions remains applicable.**

\\Nea-file01\WDOX$\MUNI\EMER\EMERSPL19029\CORRESP\00150445.DOCX



**NEGLIA**
ENGINEERING ASSOCIATES

6.24    Nothing herein grants the Applicant an approval of any material changes to this application as set forth in detail in this resolution. Any such changes or amendments will require amended site plan and/or variance approval from this Board, as applicable. **This resolution conditions remains applicable, as required.**

6.25    The Applicant shall comply with the following comments set forth in the Boswell Engineering review letter dated December 6, 2018 ("Engineering Review Letter") and the Brigette Bogart Planning & Design Professionals, LLC review letter dated December 10, 2018 ("Planning Review Letter"):

a.    Engineering Review Letter Comments. **See outstanding comments above.**

b.    Planning Review Letter Comments. **NEA defers to the Land Use Board Planner with respect outstanding Planning Review Letter comments.**

6.26    The Applicant shall comply with the following final site plan checklist items:

a.    *Final Site Plan Checklist Item 2:* Original tracings with signature lines. **This item remains applicable.**

b.    *Final Site Plan Checklist Item 3:* Proof of execution of developer's agreement. **This item remains applicable.**

c.    *Final Site Plan Checklist Item 4:* Proof of posting of performance and/or maintenance bonds. **This item remains applicable.**

d.    *Final Site Plan Checklist Item 5:* Copies of recorded easements, rights-of-way or conveyances of open space or public easements, if required. **This item remains applicable, as required.**

e.    *Final Site Plan Checklist Item 6:* Deposit of escrow funds for engineering inspections, and any other items required by the Borough. **This item remains applicable.**

f.    *Final Site Plan Checklist Item 7:* Bergen County Planning Board approval. **This item remains applicable. All related documentation and approvals shall be submitted for review.**

g.    *Final Site Plan Checklist Item 9:* Bergen County Soil Erosion and Sediment Control Plan approval, where required. **This item remains applicable. All related documentation and approvals shall be submitted for review.**

6.27    The Settlement Agreement requires twenty-nine (29) affordable units, seven (7) of which may be provided off-site. The project will have 147 residential units including twenty-two (22) COAH or affordable units on-site and the Applicant will comply with the requirement of providing seven (7) off-site affordable units. The residential units will be on the ground floor along Lincoln Boulevard and on the ground floor in the rear parking lot. There will be residential units above that on the second, third and fourth floors. There are three access points: primary access points at the corner and one in the rear area. There will also be 14,700 square feet of retail space. **This resolution condition remains applicable.**

6.28    The following construction drawings and site plan items are required to be submitted and approved by the subcommittee review team of the Emerson Land Use Board and Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer:

a.    Provide building elevation drawings for all four (4) sides of the redevelopment area with dimensions for each floor, balconies, reliefs, overhangs, parapets, cornices, and any other requested items. **The Applicant has provided building elevation drawings for each of the building façades. However, as is noted elsewhere in this report, the Applicant shall provide additional dimensions on the said building elevation drawings.**

b.    Provide building elevation grades for the highest points for each façade section. **This resolution condition has been addressed. No further action is required.**





**NEGLIA**
ENGINEERING ASSOCIATES

c.  Provide building elevation views for the side of the complex to face the existing building on Lot 5. **This resolution condition has not been addressed. The Applicant shall provide additional building elevation drawings illustrating the proposed northerly and southerly building façades facing the existing building on Lot 5.**

d.  Provide datum elevations and locations from where all height measurements will be made for field verification. **As is stated elsewhere in this report, the Applicant has provided top of curb and top of roof profiles for the building façades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet. The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the railroad right-of-way.**

e.  The low point along Lincoln Boulevard may be the same as the final first floor elevation on the northeast corner of the building. Design area to drain properly to reduce possible flooding of recessed stair entrance on the northeast corner of the building. **This item has not been addressed. The Applicant shall revise the Site Plan Set to illustrate a means of ensuring that stormwater does not accumulate in the vicinity the recessed stair entrance at the northeast corner of the building.**

f.  Provide top of curb profile of Lincoln Boulevard and roof profile. **This item has been partially addressed. See the comment associated with Item d above for additional required information.**

g.  Provide top of curb profile of Kinderkamack Road and roof profile. **This item has been partially addressed. See the comment associated with Item d above for additional required information.**

h.  Provide top of curb profile of Linwood Avenue and roof profile. **This item has been partially addressed. See the comment associated with Item d above for additional required information.**

i.  Provide typical construction details for all curbs, parking lots, sidewalks, drainage, sanitary sewers, electrical connections, and any other items requested. **See Section 5 (Neglia Engineering Associates Technical Review Comments) above for any outstanding required construction details.**

j.  Provide construction staging concepts, where work will commence, and construction staging schedules. **This item has not been addressed.**

k.  Provide plan and details of fences along the railroad property. **The Applicant has revised the Site Plan Set to illustrate the location of fencing along the railroad property, along with an associated construction detail. However, NEA recommends that the proposed fence include additional screening measures.**

l.  Provide the location of the PSE&G 230 KV underground electrical line located along the west side of the redevelopment property. **This item has not been addressed.**

m.  Provide cross-sections, slopes and access controls for parking garage operation. **The Applicant has proposed proposed slopes for the parking garage ramps. However, the Site Plan Set and/or Architectural Plan Set shall be revised to include proposed contours and spot elevations for the parking garage levels.**

n.  Provide inverts and slopes for proposed drainage system throughout the site. **This item has been partially addressed. The Site Plan Set indicates the proposed inverts and slopes for the proposed drainage conveyance system. However, the Site Plan Set shall be revised to illustrate how stormwater runoff from the roof area will drain to the on-site conveyance system.**



**NEGLIA**
**ENGINEERING ASSOCIATES**

o. Provide a grading plan for site, with spot grades plotted every 50 feet. **This item has been addressed. No further action is required.**

p. Provide a soil erosion and sediment control plan with details. **This item has been addressed. No further action is required.**

q. Provide a site lighting plan with intensities plotted throughout site. **This item has been partially addressed. See additional comments provided in Section 5 (Neglia Engineering Associates Technical Review Comments) above for outstanding required lighting plan information.**

r. Provide a streetscape lighting electrical plan to match county project lighting recently completed. **This item has not been addressed.**

s. Provide a construction plan and cross-sections for new curb line along Lincoln Boulevard. **This item has not been addressed.**

t. Provide demolition plans and stone mat requirements for trucking operations. **This item has been addressed. No further action is required.**

u. Provide quantity receipts for all recycled asphalt, concrete, contaminated soil, and steel removed from the site and presented to the Borough Superintendent of Public Works for municipal recycling credits. **This item remains applicable and shall be enforced during construction.**

v. Provide traffic control plans for construction phases that will interfere with traffic flow on Kinderkamack Road, Lincoln Boulevard, and Linwood Avenue, to the satisfaction of the Borough Chief of Police. **This item has not been addressed.**

w. Provide documentation that all NJDEP requirements regarding the underground monitoring wells on the site have been satisfied for the redevelopment. **This item has not been addressed.**

x. Supply, relocate and modify the traffic signal equipment on the southwest corner of the Kinderkamack Road and Lincoln Boulevard intersection to the satisfaction of Bergen County. **This item remains applicable. The Applicant shall provide documentation confirming that the aforementioned traffic signal equipment is to be supplied, relocated and modified to the satisfaction of Bergen County prior to construction.**

y. Review and upsize the existing drainage line, as needed, along the south side of Lincoln Boulevard to provide additional flow capacity, once reviewed. **This item remains applicable. NEA will review the same upon receipt of the required stormwater management report, as stated above in Section 5 (Neglia Engineering Associates Technical Review Comments).**

z. Provide information and the location of loading zones on-site for deliveries to the back of the proposed stores. **This item has been addressed. No further action is required.**

aa. Provide the locations, parking signs, and pavement markings for the commuter parking and retail parking spaces for the site of the construction plans. **This item has been addressed. No further action is required.**

bb. Provide a minimum of a 9.5-foot wide streetscape sidewalk design around the perimeter of the redevelopment zone, including along Linwood Avenue and Lincoln Boulevard. **The Applicant proposes to construct streetscape improvements along Kinderkamack Road. However, no streetscape improvements are proposed along Linwood Avenue or Lincoln Boulevard. Based on the configuration of the proposed building, 9.5-foot wide sidewalk areas for streetscape are not provided along Lincoln Boulevard or Linwood Avenue. NEA defers to the Borough's Land Use Board Planner with respect to the streetscape requirements along Lincoln Boulevard and Linwood Avenue.**



**NEGLIA**
ENGINEERING ASSOCIATES

cc.  Provide all necessary road widening easements, with parcel descriptions and parcel maps, to the County of Bergen and Borough of Emerson. **This item has not been addressed.**

dd.  Provide a cost estimate for all curbing, sidewalk, drainage paving, streetscape lighting, traffic signs, pavement markings, traffic signal relocation, regulatory and warnings signs, and utility relocation. This estimate will be submitted for review and be the basis for the performance bond requirements. **This item remains applicable and shall be addressed prior to construction.**

ee.  Provide the date when the commuter parking spaces are required to be vacated for the start of construction. **This item has not been addressed.**

ff.  Provide truck turning radii on a plan showing how a truck will access the trash areas for service. **The Applicant has provided a truck turning exhibit illustrating how trash removal vehicles will access the site. This item has been addressed. No further action is required.**

gg.  Provide a note on the plans indicating where snow would be stockpiled during heavy snow events, with snow to be removed from the site for snow events over 2 inches in depth. **The Applicant has provided notation within the Site Plan Set indicating that snow accumulation of 4-6 inches or more, from one or multiple snow events, shall be removed from the property, at the Applicant's sole cost and expense. This item has been addressed. No further action is required.**

hh.  Provide a written traffic report to support the traffic testimony presented at the December 10, 2018 Land Use Board meeting. **The Applicant has submitted a Traffic and Parking Assessment Report, as requested. However, see the comments with respect to the same provided in Section 5 (Neglia Engineering Associates Technical Review Comments).**

ii.  Provide an ADA compliance letter from a licensed New Jersey Professional Engineer to verify all ADA requirements have been installed in accordance with current requirements. **This item has not been addressed.**

jj.  Developer to agree to a six (6) month lookback regarding site lighting to resolve any and all complaints regarding non-complaint site lighting. **This item remains applicable.**

kk.  Developer to abide by the noise ordinances for the Borough of Emerson. **This item remains applicable.**

ll.  Developer to abide by all New Jersey Transit and Federal Railroad Administration requirements regarding construction techniques and operations near the New Jersey Transit rail line and crossings. **This item remains applicable.**

mm.  Developer to abide by all New Jersey Department of Transportation and County of Bergen construction materials and methods of construction for work within the public right of way. **This item remains applicable.**

nn.  Developer to abide by all Bergen County Planning Board requirements. **This item remains applicable.**

oo.  Developer to abide by all Bergen County Soil Conservation District requirements. **This item remains applicable.**

6.29  Applicant shall schedule a pre-construction meeting with the Board Engineer, Borough Engineer & Board Planner prior to construction. **This resolution condition remains applicable and shall be addressed prior to construction.**

6.30  The parking garage structure shall not exceed the height requirements in the CBD-10 zone and levels and ramps of the garage are to be spaced at a height that is consistent with the requirements in the zone and to the satisfaction of the Board and Borough Engineer. **This resolution condition remains applicable. NEA**



**NEGLIA**
**ENGINEERING ASSOCIATES**

has provided comments regarding the proposed building height in Section 2 (Variances / Deviations / Waivers) above. However, NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the height requirements established for the CBD-10 zone.

6.31    Applicant shall enter into the appropriate Developer's Agreement with the Borough and Land Use Board and shall post all necessary fees, escrows, and performance guarantees and payment of off-site improvements in the future. The Developer's Agreement shall be drawn by the applicant and submitted to the Borough and Planning Board Attorneys for review and approval. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

*General Conditions*

6.32    Applicant shall adhere to the Borough of Emerson's storm water management requirements with regard to groundwater recharge for a major development as required in by the Borough Ordinance. **This resolution condition remains applicable. See comments above in Section 5 (Neglia Engineering Associates Technical Review Comments)**

6.33    Applicant or any successor in interest shall address all recommendations and requirements of the Borough Police Department, Fire Department and Department of Public Works. **This resolution condition remains applicable.**

6.34    No certificate of occupancy will be granted unless all conditions imposed by this Land Use Board, and Land Use Board's professionals, Board Attorney, Planner, Engineer and the Borough's Attorney, Engineer and Planner have been satisfied in full. **This resolution condition remains applicable. See all outstanding engineering comments above.**

Applicant shall be responsible for obtaining any other approvals or permits from other governmental agencies as may be required by law, including, but not limited to, the Bergen County Soil Conservation District, and the New Jersey Department of Environmental Protection and Applicant shall comply with any requirements or conditions for such approvals or permits. **This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review, as required.**

6.35    Applicant is responsible for any environmental clean-up and/or environmental conditions as to the site as required by federal, state, county and local governmental agencies and officials, which must be complied with to the satisfaction of each of the aforementioned agencies and officials. **This item remains applicable and shall be addressed, as required. All documentation related to the same shall be submitted for review, as required.**

6.36    Applicant agrees to comply with any and all conditions and requirements of the Borough Engineer and/or Board Engineer with regard to Soil Movement, including but not limited to truck routes and hours of operation, and will comply with the Borough Engineer's requirements as to any and all soil movement, in conjunction with the Emerson Police Department. **This resolution condition remains applicable. See comments below with respect to specific conditions related to the Soil Movement Permit approval.**

6.37    Applicant shall submit revised plans, as necessary, with correct revision dates on all sheets. **This resolution condition remains applicable.**

6.38    Applicant will comply with any and all requirements of the Property's water company. **This resolution condition remains applicable. All documentation related to the same shall be submitted for review, as required.**



**NEGLIA**
**ENGINEERING ASSOCIATES**

6.39    All construction shall be completed in accordance with all ordinances and building requirements of the Borough of Emerson, the Uniform Construction Code of the State of New Jersey and in accordance with the instructions of the Construction Official of the Borough of Emerson, the Borough Engineer and in accordance with the requirements of all other departments of the Borough. **This resolution condition remains applicable.**

6.40    Applicant is required to obtain a building permit, post all necessary fees and costs with the Borough of Emerson prior to any construction. This approval is subject to Applicant obtaining a building permit and any other State, County or Borough approvals if required. **This resolution condition remains applicable.**

6.41    Applicant shall pay all fees, costs, bonds and escrows when due or becoming due and shall post all performance guarantees in connection with the review of this application prior and subsequent to the approval of this application. Any monies are to be paid within twenty (20) days of said request by the Borough's Chief Financial Officer. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

6.42    If an application before the Bergen County Planning Board is required and any material or substantial changes are required by the Bergen County Planning Board to the site plan as approved by this Resolution, then the Emerson Land Use Board retains jurisdiction over this application and reserves its right to amend or withdraw its approval of this application. **This resolution condition remains applicable.**

6.43    Applicant shall file, as applicable, a deed restriction regarding any and all affordable units constructed pursuant to the approval granted herein, as same is required by N.J.A.C. §5:93-9.2(e). **This resolution condition remains applicable.**

6.44    Applicant shall apply with all affordable housing requirements of the Borough of Emerson Code as well as the Uniform Housing Affordability Control Rules, N.J.A.C. §5.80-26.1 et seq., including, but not limited to, administration of units, marketing, rent pricing and stratification, qualification and selection of households, and any other items. Documentation demonstrating such compliance is required as an ongoing condition of this approval. **This resolution condition remains applicable.**

6.45    All representations and stipulations made by Applicant or its agents shall be deemed conditions of this approval and any misrepresentations by Applicant contrary to the representations and stipulations made before the Land Use Board shall be deemed a violation of this approval. **This resolution condition remains applicable.**

6.46    The action of the Land Use Board in approving this application shall not relieve Applicant of responsibility for any damages caused by this project, nor does the Land Use Board of the Borough of Emerson, or it reviewing professionals and agencies, accept any responsibility of design of the proposed improvement or for any damages that may be caused by this development. **This resolution condition remains applicable.**

6.47    Any and all conditions imposed upon Applicant in connection with the approval granted herein shall apply to any successor in interest to Applicant. **This resolution condition remains applicable.**

6.48    All easements, deeds, subdivision maps and deed restrictions as may be required hereunder must be reviewed and approved by the Borough of Emerson and recorded by Applicant before any permit is issued by the Borough. **This resolution condition remains applicable.**

*Soil Moving Permit Conditions*

6.49    Prior to the commencement of any soil operations (fill or cut), the Applicant agrees to develop trucking routes for the hauling of soil to the site which shall be submitted to the Borough for review and approval.



**NEGLIA**
ENGINEERING ASSOCIATES

The review will include the Borough's Police Department and engineering professionals. **This resolution condition has not been addressed.**

6.50    The Applicant agrees to comply with any and all conditions and requirements rendered by the Borough and/or Board Engineer with regard to soil movement, including but not limited to truck routes and hours of operations. **This resolution condition remains applicable.**

6.51    The Applicant will provide motor vehicle and general liability insurance for all necessary vehicles and parties involved in the soil movement in sums and form deemed appropriate by the Borough Attorney. **NEA defers to the Borough Attorney with respect to this resolution condition.**

6.52    The Applicant agrees to comply with the Borough Police Department Traffic Control Officers in order to provide a safe means for moving soil as deemed required by the Borough Engineer or his designees. **This resolution condition remains applicable.**

6.53    The Applicant shall comply with any and all other applicable Borough regulations, ordinances and directives pertaining to soil movement. **This resolution condition remains applicable, as required.**

6.54    The Applicant shall obtain all other necessary governmental approvals and permits, and shall perform all acts of compliance which may be required under the applicable Federal, State, County and local statutes, regulations and ordinances. The Applicant shall submit to the Board copies of all permits or approvals, or in the alternative, written verification that no permits or approvals are required. **This resolution condition remains applicable.**

6.55    The Board reserves the right to require further review of this permit request in the event that another governmental entity requires "substantial modifications or revisions" to the plan as approved. **This resolution condition remains applicable.**

We trust that you will find the above in order. Should you have any questions or require additional information, please do not hesitate to contact the undersigned.

Very truly yours,
Neglia Engineering Associates

David Atkinson, P.E., P.P., C.M.E.
For the Borough Engineer
Borough of Emerson

cc:    Land Use Board *(via Land Use Board Secretary)*
       Jeff Bischoff, Land Use Board Chairman *(via e-mail)*
       Richard J. Sheola, Borough Administrator *(via e-mail)*
       Perry Solimando, Superintendent, Department of Public Works *(via e-mail)*
       Michael Sartori, Construction Official *(via e-mail)*
       Marie Shust, Land Use Board Secretary *(via e-mail)*
       Christopher Martin, Esq., Land Use Board Attorney *(via e-mail)*
       Caroline Reiter, P.P., Land Use Board Planner *(via e-mail)*
       Emerson Redevelopers Urban Renewal, LLC, Applicant *(via regular)*
       Joseph A. Paparo, Esq. Applicant's Attorney, Porzio, Bromberg & Newman, P.C. *(via regular mail)*
       Eric L. Keller, P.E., Applicant's Engineer, Bowman Consulting *(via regular mail)*
       Angela Kostelecky, R.A., Applicant's Architect, Devereaux & Associates *(via regular mail)*
       Charles D. Olivo, P.E., P.P. P.T.O.E., Applicant's Traffic Engineer, Stonefield Engineering *(via e-mail)*

Exhibit 53



# PORZIO
### BROMBERG&NEWMAN P.C.

ATTORNEYS AT LAW     MORRISTOWN NJ • NEW YORK NY • PRINCETON NJ • WASHINGTON DC • WESTBOROUGH MA

JOSEPH A. PAPARO
MEMBER, NJ AND NY BARS
DIRECT DIAL NO.: 973-889-4042
E-MAIL ADDRESS: JAPAPARO@PBNLAW.COM

July 15, 2019

**VIA E-MAIL AND FIRST CLASS MAIL**

John McCann, Esq.
The Law Office of John McCann
13 Ponds Way
Oakland, NJ 07436

> Re: *Emerson Redevelopers Urban Renewal, LLC*
> *Block 419 Redevelopment*
> Our File No.:     021331.012610

Dear Mr. McCann:

As you are aware, this office represents Emerson Redevelopers Urban Renewal, LLC, the designated redeveloper for the Block 419 redevelopment project. I am writing to express significant concerns and the frustration of my client regarding the Borough's consistent pattern of inaction regarding all aspects of this redevelopment project.

First, we have the matter of the lawsuit filed by a tenant on the subject site, *Tanveer A. Hassan v. Borough of Emerson Docket No. BER-L-002577-19*. Despite your representation to me in your May 13, 2019 email that the Borough would be filing an Answer to the Complaint, no Answer was ever filed by you on behalf of the Borough. The Borough took no steps to defend the Central Business District Redevelopment Plan or the Land Use Board's approval of this redevelopment project. It is perplexing that you would allow a lawsuit against your client, the Borough of Emerson, to proceed without filing any response to the Court whatsoever. Such inaction is inexcusable and can only be interpreted as acquiescence by the Borough in the hopes that the Plaintiff would succeed in its attempt to undermine this project.

With absolutely no assistance or cooperation from the Borough, my client successfully intervened in the lawsuit and had the case dismissed with prejudice. We have, however, just learned that the Plaintiff has filed a Notice of Appeal to the Appellate Division. We fully expect and require the Borough to honor its obligations pursuant to Article 13.01 of the Redevelopment Agreement and actively participate and cooperate with the redeveloper to defeat the lawsuit challenging the Redevelopment Plan and threatening this project.

Secondly, the redeveloper is in the process of disconnecting utilities associated with the demolition of buildings on the site and will be submitting for demolition permits imminently. My client, like any property owner, has the absolute right to demolish structures on its property irrespective of the status of project

100 SOUTHGATE PARKWAY, P.O. BOX 1997
MORRISTOWN, NJ 07962-1997
TELEPHONE (973) 538-4006
FAX (973) 538-5146
www.pbnlaw.com

4223407



**PORZIO**
BROMBERG&NEWMAN P.C.

ATTORNEYS AT LAW

John McCann, Esq.
July 15, 2019
Page 2

approvals and construction. We expect full cooperation from the Borough's Construction and Fire Departments in reviewing and issuing the demolition permits in a timely manner pursuant to Article 2.02 (5) of the Redevelopment Agreement.

Finally, we have kept both you and Mr. Jovishoff informed of our diligent efforts and progress in negotiating surrender agreements with the various tenants on the property. We are happy to report that those negotiations have resulted in surrender agreements with all of the former tenants on the site with the exception of three businesses, one of which is the Cork & Keg liquor store. Despite our good faith negotiations with the prior attorney for the Cork & Keg, the owners of this business have decided to change attorneys and have now hired Mr. DeAngelis. As you may or may not be aware, Mr. DeAngelis was the attorney that previously sued the Borough on behalf of two former property owners challenging the redevelopment actions of the Borough pertaining to this project. We interpret this change in counsel to suggest an unwillingness on the part of this tenant to continue negotiations and evidence of the tenant's preparation for litigation.

Our office will be making one final good faith offer to the Cork & Keg to enter into a surrender agreement as doing so is in the best interest of all parties involved, including the Borough, however, in the event that offer is rejected like the prior offers, we will have no choice but to instruct the Borough to begin condemnation proceedings concerning the leasehold as it is obligated to do under Article 5.01 of the Redevelopment Agreement. We are well aware of the Mayor's desire to avoid condemnation, therefore, it is incumbent upon the Borough to assist us in our efforts to reach an agreement with the Cork & Keg. One simple way it can do so is for the Borough to stand behind this project publicly and to stop advising tenants such as the Cork & Keg or other members of the public that this project is not moving forward. We have brought this issue to the Borough's attention on prior occasions including at a Borough Council meeting yet we are still hearing from members of the public, including tenants, that certain Borough officials are advising them that the project isn't happening. Such actions are not only counterproductive to our efforts in advancing this project but also demonstrate a total disregard by the Borough of its obligations under both the Redevelopment Agreement with my client and the Settlement Agreement concerning the Borough's affordable housing obligations.

Please be guiding accordingly.

Regards,

Joseph A. Paparo

cc: Richard Sheola, Borough Administrator (via email & certified/RRR)
Mayor Danielle DiPaola (via first class mail)
Richard Malagiere, Esq. (via email only)
Christopher Martin, Esq. (via email only)
Michael Jovishoff, PP (via email only)

4223407

Exhibit 54

Thursday, April 7, 2022 at 09:43:14 Eastern Daylight Time

| | |
|---|---|
| **Subject:** | RE: Fwd: Remove meter from fire line |
| **Date:** | Monday, July 15, 2019 at 8:07:07 AM Eastern Daylight Time |
| **From:** | Mike Sartori |
| **To:** | Mendy Tendler |
| **CC:** | fireofficial@emersonnj.org, 'Patty Rusch', constructionofficial@emersonnj.org |
| **Attachments:** | image001.jpg |

Mendy:
The Building Department will be issuing the letter once your approvals are in place, such as Bergen County
Soil, Land Use Board Approval, etc.
The Borough would not want the building to be vacant. Once all the utilities are disconnected, we can revisit
the termination of the water service for the Fire Sprinkler protection.
Michael Sartori, Construction Official
Borough of Emerson, Building Department
1 Municipal Place
Emerson, NJ 07630
(201) 262-6086 x 1502
Fax (201) 599-6333
Constructionofficial@emersonnj.org
Web site: www.emersonnj.org
**From:** fireofficial@emersonnj.org [mailto:fireofficial@emersonnj.org]
**Sent:** Wednesday, July 10, 2019 3:22 PM
**To:** Sartori Mike
**Subject:** FW: Fwd: Remove meter from fire line
Mike,
I know your short timer but is the letter requested below something I can draft.
Let me know.
Thanks
Tommy

-----Original Message-----
From: "Fire Chief" <firechief@emersonnj.org>
Sent: Tuesday, July 9, 2019 12:50pm
To: fireofficial@emersonnj.org
Subject: Fwd: Remove meter from fire line

Tom I think this email for you?

Chief Thomas Carlos
Emerson Fire Department
201- 376-1572

---------- Forwarded message ----------
From: **"Mendy Tendler"** <mendy@accuratenj.com>
Date: Tue, Jul 9, 2019 at 10:07 AM -0400
Subject: Remove meter from fire line
To: "firechief@emersonnj.org" <firechief@emersonnj.org>


Hi

We are beginning to disconnect service from our properties which we will be demolishing, and
Suez informed us that 214 kinderkamack Rd. has a fire line which in order to remove the
meter we need a letter from the fire marshal approving its removal.
How do we go about getting approval to remove this meter and disconnect service.
Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

Thomas Monahan, Fire Official
Borough of Emerson, Fire Prevention
1 Municipal Place
Emerson, NJ 07630
Cell: 201-927-3262
Email: fireofficial@emersonnj.org
Web site: www.emersonnj.org

**Page 2 of 2**

Exhibit 55

# CHRISTOPHER P. STATILE, P.A.

PROFESSIONAL ENGINEERS AND PLANNERS
DESIGN CONSULTANTS

CPSTATILE@AOL.COM

3 FIR COURT
OAKLAND, NJ 07436
TELEPHONE (201) 337-7470
FAX (201) 337-7599

NEW YORK

**Memorandum**

**To:**   Danielle DiPaola, Mayor, Borough of Emerson
Richard Sheola, Administrator, Borough of Emerson
Jane Dietsche, Clerk, Borough of Emerson

**From:** Caroline Reiter, P.P., AICP/ Planning Consultant

**Date:** July 18, 2019

**Regarding:**   **Emerson Station: Consistency with Land Use Board Resolution**
**Preliminary & Final Major Site Plan**
**Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9, 10**
**Kinderkamack Road between Lincoln Boulevard & Linwood Ave.**

The applicant has submitted revised engineering and architectural plans and other materials to the Borough on June 24, 2019 for resolution conformance. The Land Use Board approved the above application as memorialized on December 28, 2019.

The revised engineering plans are prepared by Bowman Consulting and consist of seventeen sheets dated November 15, 2018 and revised to June 20, 2019 as follows:

- Sheet 1 of 17, "Cover Sheet."

- Sheet 2 of 17, "Key Map."

- Sheet 3 of 17, "Site Preparation Plan."

- Sheet 4 of 17, "Layout and Dimensioning Plan."

- Sheet 5 of 17, "Grading Plan."

- Sheet 6 of 17, "Curb and Roof Profiles."

- Sheet 7 of 17, "Curb and Roof Profiles."

- Sheet 8 of 17, "Lincoln Boulevard Cross Sections."

- Sheet 9 of 17, "Utility Plan."

- Sheet 10 of 17, "Landscape and Lighting Plan."

- Sheet 11 of 17, "Soil Erosion & Sediment Control Plan."

- Sheet 12 of 17, "Sanitary Profiles."

# CPS

CONSULTING ENGINEERS AND PLANNERS

- Sheet 13 of 17, "Construction Details."

- Sheet 14 of 17, "Construction Details."

- Sheet 15 of 17, "Construction Details."

- Sheet 16 of 17, "Construction Details."

- Sheet 17 of 17, "Construction Details."

The applicant also submitted the following revised materials:

- A Truck Turning Exhibit consisting of two sheets prepared by Bowman Consulting and dated November 15, 2018 and revised to June 20, 2019.

- Revised architectural plans consist of seven sheets prepared by Devereaux Architects, dated May 1, 2019.

- Emerson Station Proposed Colors & Materials Board.

- Traffic and Parking Assessment Report prepared by Stonefield Engineering dated March 22, 2019.

- Stormwater Management prepared by Bowman Engineering.

- A cover letter prepared by Bowman Consulting dated June 19, 2019 (referred to as the Bowman letter.)

## Background

The subject properties are located in a CBD-10/Central Business District and are designated as an Area in Need of Redevelopment. In December 2018, the Land Use Board approved a four-story, 147 unit inclusionary residential development with a parking garage, ground floor retail, amenities and other associated improvements. The 147 residential units will be rental units; of the total, 22 will be affordable to low and moderate income households. The remaining 125 units will be market rate units. In addition, seven affordable units are to be provided off-site.

The subject development and resulting affordable units are included as a compliance mechanism in the Borough's Housing Element and Third Round Fair Share Plan that was adopted on December 6, 2018. The property is also included in Emerson's Settlement Agreement with the Fair Share Housing Center that was executed on November 28, 2017.

Statile_284

**CPS**

CONSULTING ENGINEERS AND PLANNERS

---

### Conformance with Resolution

We have reviewed the submitted materials and the Land Use Board Resolution approving the application. We offer the following comments.

*Conformance with December 10, 2018 Bogart Planning & Design Professionals Memo:*

The Land Use Board resolution required conformance with Comments C1-C13 of the Bogart Planning Memo. We offer the following comments on items from the Bogart Planning memo that have not been addressed by the applicant's submission.

1. C1 – addresses parking requirements for retail and residential units. The Bowman letter includes a parking analysis with three-bedroom residential units. However, the parking analysis on Sheet 2 of the engineering plans does not include three-bedroom residential units and should be revised. In addition, the parking analysis in the Bowman letter uses a parking requirement of 1 space/250 SF for retail, but the engineering plans indicate 1 space/200 SF for retail use. The parking analysis should be revised accordingly.

2. C2 – addresses affordable housing requirements. The Bowman letter confirms that the U.H.A.C. bedroom distribution will be met, and that all of the affordable units will be family rental units. The applicant needs to confirm the breakdown of moderate, low and very low income units. Also, the applicant did not address the remaining seven affordable units that need to be built off-site and how it will fulfill this requirement. This missing information should be provided. Finally, the architectural floor plans should be revised to clearly identify which units are affordable.

3. C3 – addresses ADA compliance. The Bowman letter states that two ADA compliant parking spaces are located in the surface parking area, with another 10 spaces located in the parking structure (total of 12 ADA compliant spaces). However, only eight accessible spaces are shown in the parking structure. Item "e" on Page 6 of the resolution states that the site will include 10 accessible parking spaces. The applicant should clarify this item.

4. C5 – addresses streetscape design. The applicant should respond to the Bogart Planning comment on the plans lacking space for outdoor cafes.

5. C6 – addresses architectural standards. More detailed plans are needed to confirm conformance with Section 290-70 of the Zoning Ordinance. Additional information is provided under the "General Conformance with the Resolution" section of this report (below).

6. C7 – addresses landscape plantings. We defer to the engineer's review of the Landscape Plan; however plantings along Lincoln Blvd. are recommended. The submitted plans do not show proposed trees or plantings on Lincoln Blvd. Landscaping would help to soften the visual appearance of the proposed four-story building at the property line. Finally, the applicant has confirmed that irrigation will be used in all planting beds.

3

**Statile_285**



**CPS**

CONSULTING ENGINEERS AND PLANNERS

7.  C8 – addresses materials and colors. The Redevelopment Committee will review the material and color board and provide comments. The applicant should provide actual paint chips and brick and aluminum samples for the committee's review as a printed board's appearance can vary. Finally, additional information is provided under the "General Conformance with the Resolution" section of this report (below).

8.  C9 – addresses signage. The Bowman letter indicates that signage details would be provided prior to the start of construction. Signage review should be done simultaneously with the professionals' and committee's review of the entire development. The Borough's Redevelopment Plan calls for signage to be, "an integral building element," and to "promote consistency and complimentary design throughout the CBD." The plan also states that signage should help establish an identifiable cohesive district image. Therefore, signage should be reviewed now to confirm conformance with the plan requirements.

9.  C10 – addresses vehicle circulation. We defer to the Engineer's review of the truck turning exhibit.

10. C13 – The Bowman letter does not address HVAC equipment as referenced in the Bogart planning memo.

*General Conformance with the Resolution*

We offer the following general comments on conformance with the Land Use Board resolution.

1.  Item 9e, Page 9 of the resolution – An update is needed on the discussions with the Borough of Emerson and New Jersey Transit on moving the crossway station further north.

2.  Item J, Page 12 of the resolution – An update is needed on the applicant's assisting the Borough's efforts to create pedestrian connections to and from the property and the NJ Transit train station.

3.  Item K, Page 12 of the resolution – requires that all standing snow of 2 or more inches be removed from the property by the applicant at applicant's cost and expense. The Bowman letter indicates that based on discussions with Borough staff, the snow removal figure has been revised to 4-6 inches. The applicant should provide written confirmation of this discussion with Borough staff. However, it is our opinion that such a change cannot be made by Borough staff and would require Land Use Board approval to revise the resolution.

4.  Item Q, Page 13 of the resolution – requires a directional sign package. Again, signage review is recommended at this time.

5.  Building Height: Building height is measured in both feet and number of stories. The following comments are offered on building height.

    •  The Borough Engineer has requested additional information to confirm the building height calculations in terms of feet; we concur with these requests.

4

**CPS**

CONSULTING ENGINEERS AND PLANNERS

- Based on the submitted plans, it appears that the section of the building that fronts along Linwood Ave. is exceeding the maximum permitted building height of 47 ft. The plans should be revised to show conformance with permitted building height in this area. In the alternative, if the applicant does not revise the plans to show conformance with building height, the applicant must return to the Board for consideration of a building height variance request.

- It appears that the building height requirement for number of stories is met. The definition of story does not prohibit parking on the top story; nor does parking on the top level result in an additional story or half-story under the definition in the Zoning Ordinance.

6. Architectural Standards: We offer the following comments on architectural standards

- Calculations should be provided to confirm conformance with Façade Design, Horizontal and Vertical Articulation, 290-70A(1)(a) and (b).

- Architectural cross-sections of the building are also needed to confirm conformance with 290-70A(1)(b).

- Calculations should be provided to confirm conformance with Fenestration, 290-70A(1)(c).

- Calculations should be provided to confirm conformance with Materials, 290-70A(2).

- Calculations should be provided to confirm conformance with Rooflines, 290-70A(3).

- Colorized plans showing brick and other material selection are recommended to assist with the review.

We trust these comments will assist the Redevelopment Committee in their review of the submitted plans. We will provide additional comments upon submission of revised plans and materials.

CZR/5741

5

Statile_287

Exhibit 56

**Jane Dietsche**

| | |
|---|---|
| **From:** | David R. Atkinson <datkinson@negliaengineering.com> |
| **Sent:** | Friday, July 19, 2019 5:33 PM |
| **To:** | mmcanlaw@comcast.net |
| **Cc:** | Danielle DiPaola (mayor@emersonnj.org); Rich Sheola; Jane Dietsche |
| **Subject:** | Emerson STation Revised Plans |

Mr. McCann,

Please be advised that the most recent plans that the borough received at the last mayor and council meeting are not complete in nature for the building department to perform their review. The plans as submitted include full site engineering plans and architectural plans that include the floor plan and elevation views of the structure. For the building department to perform there review they will require details related to the mechanical, electrical and plumbing of the building along with structural elements of the building. To my knowledge this has not been submitted.

As submitted it would be fair to say that if the building official was to review them he would reject the application.

David R. Atkinson, P.E., P.P., C.M.E.
NEGLIA ENGINEERING ASSOCIATES
1119 Raritan Road, Suite 2
Clark, New Jersey 07066
Office: (201) 939-8805 Ext. 173
Mobile: (201) 953-4409
Fax: (732) 943-7249
Email: datkinson@negliaengineering.com

Engineering • Traffic • Surveying • GIS • Construction Management • Planning • Landscape Architecture

Exhibit 57

**Redevelopment Sub-Committee**

**July 24, 2019**

**Agenda**

✓ Brief Intro's

✓ Understanding Status of Project with respect to LUB Approval

✓ Review of Engineer & Planner Reports

✓ Issues

✓ Next Steps

7/24/19    Redevelopment    Subcommittee
6:30pm - 8:20pm

Danielle DiPaola

David ATKINSON — Neglia

— Statile

Caroline Reiter

RICHARD SHEOCA    I.B.A.

Kenneth Hoffman

Brian Gordon

Jeffon Bull
Don Pierro

7/24/19
6:30

REDEVELOPMENT

DD overview of why here

RS suggested DA & CR give 30,000 ft review of their reports.

DA - from LUB resolution - if presentation was approved by LUB is what they show; can discuss/negotiate to a point.

DP - discussion/question on building height - how to measure - resolved - CR read ordinance definition

CR - report overview; highlight 7 offsite COAH units.

DA - need to modify/supply traffic report to justify 25% reduction in parking.

[redacted]

→ GB - review architect.

REDEV - 2

MS - what is required for demo permit?

10 day notice

8 20

Exhibit 58

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

August 2, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Richard P. De Angelis, Esq.
McKirdy, Riskin, Olson & DellaPelle, P.C.
136 South Street
P.O. Box 2379
Morristown, New Jersey 07962-2379

> *Re: "Notice to Borough of Emerson to Cease & Desist" dated July 29, 2019*
> *188-190 Kinderkamack Road, Emerson, New Jersey*

Dear Mr. De Angelis:

As you are aware, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"), which is the fee simple owner and duly designated redeveloper of the property located at 188-190 Kinderkamack Road and designated on the Borough of Emerson ("Borough") tax maps as Lot 6.01 in Block 419 ("Property"). As you are also aware, when Redeveloper acquired the Property on March 22, 2019, it assumed the lease of your client, Scalco, Inc. ("Cork & Keg"), becoming its landlord.

Because the Borough has failed to promptly respond to your July 29th "cease & desist" letter challenging the Borough's redevelopment ordinances and agreements, Redeveloper has elected to do so with this letter.

First, your "cease and desist" letter wrongly assumes that the Borough is currently taking action against the Cork & Keg in furtherance of its Block 419 redevelopment efforts. Although Redeveloper maintains that it clearly has the right – under Section 5.01 the redevelopment agreement between Redeveloper and Borough dated June 27, 2016, last amended December 31, 2018 ("Redevelopment Agreement") – to request that the Borough condemn Cork & Keg's leasehold interest in the Property, Redeveloper has not yet made such a formal request to the Borough. As you and I both know, the Borough also has not yet begun any condemnation proceedings against Cork & Keg's leasehold interest.

In fact, Redeveloper was surprised when Cork & Keg suddenly switched representation to your firm in June, 2019. Redeveloper had been negotiating in good faith with Cork & Keg regarding business relocation expenses when Cork & Keg was being represented by its prior legal counsel. By the end of May, 2019, the parties were very close to reaching an agreement regarding these expenses. The abrupt change in legal counsel and the move to such an adversarial position with your "cease and desist" letter suggests bad faith on the part of Cork & Keg. In addition, at no time did Redeveloper's counsel "threaten" Cork & Keg with condemnation, and your letter mischaracterizes the recent discussions between the parties.

R. De Angelis
August 2, 2019
Page 2

Second, Redeveloper denies each and every allegation by Cork & Keg that the Borough's redevelopment actions have been unlawful, that the Borough did not have the authority to enter into the Redevelopment Agreement, or that the Borough cannot exercise its power of eminent domain over Cork & Keg's leasehold interest. Redeveloper maintains that all redevelopment actions by the Borough, including, but not limited to, the Block 419 redevelopment area designations, the Block 419 redevelopment plan adoptions, and the Redevelopment Agreement, have been duly and lawfully promulgated in accordance with the Local Redevelopment and Housing Law, N.J.S.A. 40A:20-1 et seq. ("Redevelopment Law"), and they remain valid and in full force and effect. For example, the Borough's 2006 redevelopment plan, which you allege was adopted without an ordinance as required by the Redevelopment Law, was adopted by the Borough Council pursuant to Ordinance No. 1305-06, on July 11, 2006. In addition, the Borough subsequently amended this redevelopment plan in 2010, pursuant to Ordinance No. 1394-10, and in 2016, pursuant to Ordinance No. 1535-16. Ordinance No. 1535-16 identifies all Block 419 properties, including the Property, as subject to condemnation "if required."

Please note also that when you represented several property owners, including the prior owner of the Property, in the Borough's declaratory judgment action regarding affordable housing compliance, you did not raise any of these issues. Judge Padovano's fairness hearing order in that action, filed on June 29, 2018, indicates that the Property, as well as the other Block 419 properties, are "'necessary or useful'" to the Borough in "meeting its Affordable Housing obligations as agreed to in the Settlement Agreement with Fair Share Housing Center and as recommended in the Special Master's Report, testimony and recommendation."

Third, Redeveloper denies that it has waived any rights under the Redevelopment Agreement with respect to the issues raised in your letter. Redeveloper also denies your allegation that it "knowingly and willingly" accepted the "consequences" of the Borough's purported failure to adhere to the requirements of the Redevelopment Law.

Finally, Redeveloper denies that it does not have the right to obtain demolition permits for the Block 419 properties. Certainly, Redeveloper will not seek a demolition permit for the Property until its dispute with Cork & Keg is resolved (either amicably or through an eminent domain action), but Redeveloper has the right to obtain demolition permits for any other vacated Block 419 property. In addition, the Borough Land Use Board's resolution of memorialization for Redeveloper's site plan approval adopted on December 28, 2018, does not prevent Redeveloper from obtaining demolition permits for the Block 419 properties prior to the subcommittee review team or the Land Use Board's professionals approving the revised site plans.

Moreover, Redeveloper is incredulous that Cork & Keg is so brazen as to issue a "cease and desist" letter regarding the demolition of other Block 419 properties in which Cork & Keg has no interest. As long as Cork & Keg's leasehold interest is not demolished, Cork & Keg has no right to interfere with Redeveloper's ability to demolish other vacated buildings and structures that Redeveloper owns.

[A027-0002/519186/1]

R. De Angelis
August 2, 2019
Page 3

To the extent that Cork & Keg continues to interfere with Redeveloper's efforts to procure demolition permits for these other Block 419, or to interfere with any of Redeveloper's redevelopment efforts that do not affect Cork & Keg's leasehold interest in the Property, Redeveloper shall deem such actions as tortious interference. Redeveloper reserves its rights to take any and all actions at law and equity against Cork & Keg, including, but not limited to, litigation. Please be guided accordingly.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba

cc:     Hon. Danielle DiPaola, Mayor
        Richard J. Sheola, Interim Borough Administrator
        Jane Dietsche, Borough Clerk
        Michael Sartori, Borough Construction Official
        John J. McMann, Esq., Borough Attorney
        Marie Schust, Borough Land Use Board Secretary
        Christopher Martin, Esq., Land Use Board Attorney
        Joseph Paparo, Esq.
        Peter M. Flannery, Esq.
        Emerson Redevelopers Urban Renewal, LLC (via e-mail)

[A027-0002/519186/1]

Exhibit 59

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

August 2, 2019

## VIA E-MAIL AND OVERNIGHT DELIVERY
John J. McCann, Esq.
The Law Office of John J. McCann, Esq.
13 Ponds Way
Oakland, New Jersey 07436

> *Re: "Notice to Borough of Emerson to Cease & Desist" dated July 29, 2019*
> *188-190 Kinderkamack Road, Emerson, New Jersey*

Dear Mr. McCann:

This firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"), which is the fee simple owner and designated redeveloper of the Block 419 redevelopment area pursuant to the redevelopment agreement between Redeveloper and the Borough of Emerson ("Emerson") dated June 27, 2016 and last amended December 31, 2018 ("Redevelopment Agreement").

As you know, on July 29, 2019, Richard P. De Angelis, Esq., of McKirdy, Riskin, Olson & DellaPelle, issued a "cease & desist" letter ("Cease & Desist Letter") to Emerson on behalf of his client, Scalco, Inc. ("Cork & Keg"). Cork & Keg is the tenant of one of the Block 419 redevelopment area properties located at 188-190 Kinderkamack Road and designated on the Emerson tax maps as Lot 6.01 in Block 419 ("Property"). When Redeveloper acquired the Property on March 22, 2019, it assumed Cork & Keg's lease and became its landlord. Redeveloper had been engaged in good faith negotiations with Cork & Keg regarding the relocation of its business from the Property until sometime in June, 2019, when Cork & Keg switched legal counsel and took an adversarial position against Redeveloper.

The Cease & Desist Letter (which is enclosed) contains a host of spurious allegations against Emerson, including allegations that the redevelopment plan was never properly adopted in accordance with the Local Redevelopment and Housing Law, N.J.S.A. 40A:20-1 et seq. ("Redevelopment Law") and that the Redevelopment Agreement is unlawful. It also alleges that Emerson does not have the power to condemn Cork & Keg's leasehold interest in the Property, contrary to the provisions of Section 5.01 of the Redevelopment Agreement.

Redeveloper has prepared and sent a response letter to this Cease & Desist Letter (which is also enclosed), but Redeveloper is unaware of Emerson having prepared its own written response.

Given the great importance of the Block 419 redevelopment to Emerson, it is paramount that Emerson provide a swift written response to the Cease & Desist Letter, unequivocally confirming that all redevelopment actions by Emerson – including, but not limited to, the Block 419 redevelopment area designations, the Block 419 redevelopment plan adoptions, and the Redevelopment Agreement – have been duly and lawfully promulgated in accordance Redevelopment Law, and that they remain valid and in full force and effect. Not only has Emerson

John McCann, Esq.
August 2, 2019
Page 2

been planning the redevelopment of the Block 419 redevelopment area for the past fifteen (15) years, but the inclusionary development Redeveloper proposes to construct thereon is a critical component of Emerson's master plan housing element and fair share plan. It is also the primary reason why Emerson was able to settle its Mount Laurel declaratory judgment lawsuit with the Fair Share Housing Center.

Therefore, Redeveloper respectfully requests that Emerson respond to Cork & Keg's letter in writing as soon as possible, confirming that Emerson's redevelopment actions are valid and that it has the power to condemn Cork & Keg's leasehold interest in the Property, in accordance with Section 5.01 of the Redevelopment Agreement.

Thank you in advance for your cooperation with this matter and please feel free to contact me to discuss further.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba

Enclosures

cc:    Jane Dietsche, Clerk, Borough of Emerson
       Brian T. Giblin, Sr., Esq.
       Mary Beth Lonergan, PP/AICP, Special Master
       Adam Gordon, Esq.
       Joseph Paparo, Esq.
       Peter M. Flannery, Esq.
       Emerson Redevelopers Urban Renewal, LLC



McKIRDY
RISKIN
OLSON
DELLAPELLE
ATTORNEYS AT LAW

July 29, 2019

*Via Email & Lawyers Service*
Jane Dietsche, Clerk
Borough of Emerson
1 Municipal Place
Emerson, New Jersey 07630

### RE:  NOTICE TO BOROUGH OF EMERSON TO CEASE & DESIST

Dear Ms. Dietsche:

We represent Scalco Inc., a tenant at 188 Kinderkamack Road where it operates its business, Cork & Keg Liquors. This property is located within Block 419 which has been targeted by the Borough of Emerson for redevelopment. The Borough has proceeded in this regard claiming authority under the Local Redevelopment and Housing Law ("LRHL").

Emerson Redevelopers Urban Renewal, LLC ("ERUR") acquired the subject property in March 2019 subject to Scalco's lease. ERUR was selected by the Borough to redevelop Block 419 to implement a 2006 redevelopment plan (the "Project"). Both ERUR and the Borough (under the prior administration) claimed that the Borough has the power to acquire property within Block 419 by eminent domain to facilitate the Project. During discussions between a former Borough attorney and Scalco's former attorney in or about November 2018 (after the property was under contract) regarding the requested relocation of the Cork & Keg, Scalco was advised that the failure to reach an agreement would result in the Borough moving to condemn Scalco's leasehold estate. More recently, ERUR's counsel also threatened that it would demand the Borough take the leasehold estate by eminent domain.

This firm was retained by Scalco in June and after a comprehensive review of the record we have concluded that the Borough is not only without necessary authority to acquire the Scalco leasehold, but that *all actions taken by the Borough in furtherance of its 2006 redevelopment plan have been unlawful as the Borough has never adopted said plan by ordinance as required under the LRHL. Without a duly adopted plan, a municipality may not undertake a project, enter agreements or exercise the power of eminent domain.* As an aside, the 2006 plan does not identify the subject property or Scalco's leasehold for acquisition. *The LHRL requires a redevelopment plan to identify any property proposed to be acquired to implement a project. The Borough's plan identifies only three parcels in Block 419 and does not include the subject property nor any leaseholds.* It is worth noting that the Borough's plan also sought to reduce the number of property acquisitions and the amount of relocations, as well as to provide for continued business operations during construction. Thus, proceeding against Scalco as suggested by ERUR is not only unlawful because there was no duly adopted plan, but such action is not permitted under the plan and is contrary to the express purposes of said plan.

As such, *the Borough must immediately cease and desist from taking any further action in furtherance of the Block 419 Project.*



MCKIRDY
RISKIN
OLSON
DELLAPELLE
ATTORNEYS AT LAW

Jane Dietsche, Clerk
July 29, 2019
2

Upon further review by the Borough's new legal counsel and consideration by the Governing Body we trust you will agree that the redevelopment effort was fundamentally flawed from inception. ERUR will likely disagree and may press its claimed rights under its Redevelopment Agreement with the Borough (entered based on the authority alleged to exist under the 2006 redevelopment plan). *But ERUR acknowledged in that Agreement that it reviewed the underlying redevelopment documents and the acts of the Borough regarding same and waived any claims against the Borough related thereto.* ERUR entered the Redevelopment Agreement without recognizing – or perhaps, not appreciating the significance of – the failure of the Borough's prior administrations to adhere to the requirements of the LRHL. ERUR knowingly and willingly accepted the consequences of that failure.

We understand that ERUR appeared before the Borough's Governing Body on July 16, 2019 and advised that it intends to request permits for the demolition of buildings on Block 419. While ERUR suggests that such permits do not require final plans and as the property owner it has the right to demolish the structures, there is no question that the permits are sought for purposes of the planned redevelopment and, as such, should be denied based on the foregoing.

Regarding ERUR's request for demolition permits, it is worth noting the obligations imposed under the December 28, 2018 Resolution by the Borough Land Use Board that approved ERUR's site plan application. ERUR's application was filed "in order to demolish the existing structures on the Property and construct thereon [the proposed project]." The Resolution established a subcommittee review team of the Board and Governing Body and as a condition of the approval, ERUR is required to submit certain plans for approval by the subcommittee review team before ERUR may proceed. Such plans include construction staging concepts, demolition plans and schedules. We understand that these conditions have not been satisfied.

As such, the Borough is without lawful authority to take any action in furtherance of the Project, including the issuance of any permits to ERUR. Should the Borough disregard this notice and proceed in any way that threatens Scalco's interests, we will file an appropriate legal challenge.

Very truly yours,

MCKIRDY, RISKIN, OLSON
& DELLAPELLE, P.C.

RICHARD P. DE ANGELIS

C: John J. McCann, Esq., Borough Attorney
Michael Sartori, Borough Construction Official
Marie Schust, Borough Land Use Board Secretary
Christopher Martin, Esq., Land Use Board Attorney
Carmen Andrade, Esq. & Joseph Poparo, Esq., ERUR Attorneys
Peter M. Flannery, Esq., ERUR Attorney
*(All by Email or Fax and Lawyers Service)*

# BISGAIER HOFF

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

**Attorneys At Law** A Limited Liability Company

August 2, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Richard P. De Angelis, Esq.
McKirdy, Riskin, Olson & DellaPelle, P.C.
136 South Street
P.O. Box 2379
Morristown, New Jersey 07962-2379

> **Re:** *"Notice to Borough of Emerson to Cease & Desist" dated July 29, 2019*
> *188-190 Kinderkamack Road, Emerson, New Jersey*

Dear Mr. De Angelis:

As you are aware, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"), which is the fee simple owner and duly designated redeveloper of the property located at 188-190 Kinderkamack Road and designated on the Borough of Emerson ("Borough") tax maps as Lot 6.01 in Block 419 ("Property"). As you are also aware, when Redeveloper acquired the Property on March 22, 2019, it assumed the lease of your client, Scalco, Inc. ("Cork & Keg"), becoming its landlord.

Because the Borough has failed to promptly respond to your July 29th "cease & desist" letter challenging the Borough's redevelopment ordinances and agreements, Redeveloper has elected to do so with this letter.

First, your "cease and desist" letter wrongly assumes that the Borough is currently taking action against the Cork & Keg in furtherance of its Block 419 redevelopment efforts. Although Redeveloper maintains that it clearly has the right – under Section 5.01 the redevelopment agreement between Redeveloper and Borough dated June 27, 2016, last amended December 31, 2018 ("Redevelopment Agreement") – to request that the Borough condemn Cork & Keg's leasehold interest in the Property, Redeveloper has not yet made such a formal request to the Borough. As you and I both know, the Borough also has not yet begun any condemnation proceedings against Cork & Keg's leasehold interest.

In fact, Redeveloper was surprised when Cork & Keg suddenly switched representation to your firm in June, 2019. Redeveloper had been negotiating in good faith with Cork & Keg regarding business relocation expenses when Cork & Keg was being represented by its prior legal counsel. By the end of May, 2019, the parties were very close to reaching an agreement regarding these expenses. The abrupt change in legal counsel and the move to such an adversarial position with your "cease and desist" letter suggests bad faith on the part of Cork & Keg. In addition, at no time did Redeveloper's counsel "threaten" Cork & Keg with condemnation, and your letter mischaracterizes the recent discussions between the parties.

R. De Angelis
August 2, 2019
Page 2

Second, Redeveloper denies each and every allegation by Cork & Keg that the Borough's redevelopment actions have been unlawful, that the Borough did not have the authority to enter into the Redevelopment Agreement, or that the Borough cannot exercise its power of eminent domain over Cork & Keg's leasehold interest. Redeveloper maintains that all redevelopment actions by the Borough, including, but not limited to, the Block 419 redevelopment area designations, the Block 419 redevelopment plan adoptions, and the Redevelopment Agreement, have been duly and lawfully promulgated in accordance with the Local Redevelopment and Housing Law, N.J.S.A. 40A:20-1 et seq. ("Redevelopment Law"), and they remain valid and in full force and effect. For example, the Borough's 2006 redevelopment plan, which you allege was adopted without an ordinance as required by the Redevelopment Law, was adopted by the Borough Council pursuant to Ordinance No. 1305-06, on July 11, 2006. In addition, the Borough subsequently amended this redevelopment plan in 2010, pursuant to Ordinance No. 1394-10, and in 2016, pursuant to Ordinance No. 1535-16. Ordinance No. 1535-16 identifies all Block 419 properties, including the Property, as subject to condemnation "if required."

Please note also that when you represented several property owners, including the prior owner of the Property, in the Borough's declaratory judgment action regarding affordable housing compliance, you did not raise any of these issues. Judge Padovano's fairness hearing order in that action, filed on June 29, 2018, indicates that the Property, as well as the other Block 419 properties, are "'necessary or useful'" to the Borough in "meeting its Affordable Housing obligations as agreed to in the Settlement Agreement with Fair Share Housing Center and as recommended in the Special Master's Report, testimony and recommendation."

Third, Redeveloper denies that it has waived any rights under the Redevelopment Agreement with respect to the issues raised in your letter. Redeveloper also denies your allegation that it "knowingly and willingly" accepted the "consequences" of the Borough's purported failure to adhere to the requirements of the Redevelopment Law.

Finally, Redeveloper denies that it does not have the right to obtain demolition permits for the Block 419 properties. Certainly, Redeveloper will not seek a demolition permit for the Property until its dispute with Cork & Keg is resolved (either amicably or through an eminent domain action), but Redeveloper has the right to obtain demolition permits for any other vacated Block 419 property. In addition, the Borough Land Use Board's resolution of memorialization for Redeveloper's site plan approval adopted on December 28, 2018, does not prevent Redeveloper from obtaining demolition permits for the Block 419 properties prior to the subcommittee review team or the Land Use Board's professionals approving the revised site plans.

Moreover, Redeveloper is incredulous that Cork & Keg is so brazen as to issue a "cease and desist" letter regarding the demolition of other Block 419 properties in which Cork & Keg has no interest. As long as Cork & Keg's leasehold interest is not demolished, Cork & Keg has no right to interfere with Redeveloper's ability to demolish other vacated buildings and structures that Redeveloper owns.

[A027-0002/519186/1]

R. De Angelis
August 2, 2019
Page 3

To the extent that Cork & Keg continues to interfere with Redeveloper's efforts to procure demolition permits for these other Block 419, or to interfere with any of Redeveloper's redevelopment efforts that do not affect Cork & Keg's leasehold interest in the Property, Redeveloper shall deem such actions as tortious interference. Redeveloper reserves its rights to take any and all actions at law and equity against Cork & Keg, including, but not limited to, litigation. Please be guided accordingly.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba

cc:  Hon. Danielle DiPaola, Mayor
Richard J. Sheola, Interim Borough Administrator
Jane Dietsche, Borough Clerk
Michael Sartori, Borough Construction Official
John J. McMann, Esq., Borough Attorney
Marie Schust, Borough Land Use Board Secretary
Christopher Martin, Esq., Land Use Board Attorney
Joseph Paparo, Esq.
Peter M. Flannery, Esq.
Emerson Redevelopers Urban Renewal, LLC (via e-mail)

Exhibit 60

**Jane Dietsche**

| | |
|---|---|
| **From:** | McLeod, Allison <Allison.McLeod@dep.nj.gov> |
| **Sent:** | Monday, August 5, 2019 12:57 PM |
| **To:** | Jane Dietsche |
| **Cc:** | Danielle DiPaola (mayor@emersonnj.org); Pflugh, Kerry; Rich Sheola; Haller, Olivia |
| **Subject:** | RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment |

Hello Jane,

We will speak with our site remediation program. Thank you, Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

**Connect with us:**



*NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.*

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Monday, August 5, 2019 12:52 PM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Allison,

We do not have any records here about this property. However, the redeveloper had alerted us to AOC's back in January of this year.

Are you aware of that information and would you be able to tell us how we could obtain that?

Thank you in advance for your assistance.

1

Best regards,

Jane

**From:** Jane Dietsche
**Sent:** Monday, August 5, 2019 8:23 AM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Allison,

Thank you for following up on our email. I will check on this with the appropriate staff and get back to you.

Best regards,

Jane

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Monday, August 5, 2019 8:02 AM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>; Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Jane and all,

Jane, because there was never a discharge reported at 190 Kinderkamack Road, the former dry cleaner site, DEP does not have any additional information on this site. Because there is no active remediation on the site, the LSRP has not been retained for this site. Does the Borough have any information that there was ever a discharge at this site? If so, that should be reported to the WARN DEP hotline. Please advise.

Thank you,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Sent:** Friday, August 2, 2019 4:59 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>; McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Subject:** Re: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Jane, you are most welcome.  We will look into it for you. Best regards, kerry

Sent via the Samsung Galaxy S®6 active, an AT&T 4G LTE smartphone

-------- Original message --------
**From:** Jane Dietsche <clerk@emersonnj.org>
**Date:** 8/2/19 4:07 PM (GMT-05:00)
**To:** "Pflugh, Kerry" <Kerry.Pflugh@dep.nj.gov>
**Cc:** "Danielle DiPaola (mayor@emersonnj.org)" <mayor@emersonnj.org>, Rich Sheola <rsheola@emersonnj.org>, "Haller, Olivia" <Olivia.Haller@dep.nj.gov>, "McLeod, Allison" <Allison.McLeod@dep.nj.gov>
**Subject:** [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Kerry,

Thank you for your response to our inquiry. Mayor DiPaola is currently on vacation and has asked me to follow up with you on her behalf.

We found the information you provided very interesting and were wondering if any additional information on Ranch Cleaners, 190 Kinderkamack Road will be forthcoming. Our concern is related to the fact that this property is about to become the site of a redevelopment which will include housing and commercial use. Would the LSRP have any additional information they could share with us?

We appreciate all your assistance with this matter. Enjoy your weekend!

Best regards,

Jane

Jane Dietsche, RMC

3

Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org


**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov> **On Behalf Of** Pflugh, Kerry
**Sent:** Wednesday, July 31, 2019 2:07 PM
**To:** Jane Dietsche <clerk@emersonnj.org>; Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Cc:** Haller, Olivia <Olivia.Haller@dep.nj.gov>; McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Mayor and Jane,

Since our meeting and your recent call with my staff, we've been researching the sites mentioned on Kinderkamack Road.

The Licensed Site Remediation Professional for 200 Kinderkamack Road, Emerson Auto Repair, is Joachim Karger, jkarger@aesj.com, 908-814-4630. The remedial investigation was completed for this site. The next statutory deadline is the remedial action, due May 6, 2021. The remedial action describes what actions were taken on site to remediate the property. For the most current information, you can contact the LSRP. Under our regulations, the LSRP has an obligation to protect public health and the environment and must consider how the property is being used. Generally, if there is residential housing on a site, controls must be put in place to ensure there is no exposure pathway for those on the site. Please contact the LSRP for site-specific questions. Our site remediation program spoke with Mr. Karger and let him know you may contact him.

For cases not under the jurisdiction of the Industrial Site Recovery Act (ISRA), DEP cannot require environmental investigation due to a real estate transaction or redevelopment. To trigger DEP site remediation regulations, a discharge must be reported to the DEP hotline, 1-877-WARN-DEP. DEP has not received report of a discharge at 190 Kinderkamack Road, the former dry cleaner site. If a discharge is reported on a property, the responsible parties must initiate remediation. Under the Spill Act, the current and past property owners may be responsible for the remediation. For this reason, DEP recommends that potential exercises exercise due diligence during real estate transactions.

During the investigation for 200 Kinderkamack Road, PCE/TCE were detected in a monitoring well downgradient from the autobody shop, in the vicinity of 199 Kinderkamack Road. This was reported to the WARN DEP hotline as incident number 15-05-22-1021-24. In a conversation with DEP, the LSRP indicated that the source is not the auto repair facility. DEP may do an initial receptor evaluation to confirm receptors are not being affected. In a receptor evaluation, DEP inspects a radius around the well to verify if there are any people in occupied buildings that may be affected.

As mentioned above, the LSRP will be able to provide you with additional information. Thank you.

Regards,

Kerry Kirk Pflugh
Director
Office of Local Government Assistance
New Jersey Department of Environmental Protection
401 E. State Street
P.O. Box 402
Trenton, NJ 08625-0402
Office: 609-633-7700
Cell: 609-575-3806
Email: kerry.pflugh@dep.nj.gov

http://www.nj.gov/dep/lga/

NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, Deliberative Process or under the New Jersey Open Public Records Act.   If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Friday, July 26, 2019 2:49 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Mayor and Jane,

Thank you both for speaking with me and explaining the situation.

I will reach out to site remediation for details on the active case at 200 Kinderkamack, Emerson Auto Repair, understanding there is a tae kwon do business with residential housing on the property.

Additionally, we will circle back with them on 190 Kinderkamack Road, Block 419 Lot 6.01, to discuss planned residential housing on the former dry cleaner site and associated concerns (testing for contamination, concerns re: development, etc.).

Thank you again, and have a wonderful weekend.

Best,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to

*the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.*

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Friday, July 26, 2019 2:33 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Hello Jane,

Thanks for the email. Can you let me know what kind of information you are looking for? That will help me direct it to the appropriate program. When we originally researched the Bill's Tire and Auto property, we did mention the dry cleaner site. As per site remediation, we have record of two cases on Kinderkamack in Emerson:

Program Interest 003698, 176 Kinderkamack
Bills tire and auto
Not active

Program Interest 000535, 200 Kinderkamack
Emerson Auto Repair
Active case

I believe our understanding was the concern was proximity of the Bill's Tire and Auto site to the dry cleaner site, and that removal of the dry cleaner could affect the remediation of Bill's Tire and Auto. That's why the previous email chain discussed unrestricted cleanups – there is no cap or similar on the site that could be disturbed by adjacent work.

However, from your email it sounds like I misunderstood the ask – my apologies. What specific information can we provide with regards to the dry cleaner site?

Thank you and have a wonderful weekend.

Best,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Friday, July 26, 2019 2:19 PM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Subject:** [EXTERNAL] FW: Ranch Cleaners - Emerson Redevelopment

Good afternoon Allison,

Please see email below as a follow up to our conversation this afternoon.

Thank you in advance for your assistance.

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

**From:** Jane Dietsche
**Sent:** Friday, July 19, 2019 1:15 PM
**To:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Cc:** mayor@emersonnj.org; Rich Sheola <rsheola@emersonnj.org>; mccannlaw@comcast.net; Richard Malagiere Esq. (rm@malagierelaw.com) <rm@malagierelaw.com>
**Subject:** Ranch Cleaners - Emerson Redevelopment

Good afternoon Kerry,

I hope this message finds you well. Mayor DiPaola has asked me to follow up with you with information about the site of the former Ranch Cleaners:

- Address: 190 Kinderkamack Road, Block 419 Lot 6.01.

- Current owner: Emerson Redevelopers Urban Renewal LLC

- Previous owner information may be found at this link: http://njparcels.com/sales/0214_419_6.01

Please let me know if you have any questions. Thank you in advance for your assistance.

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

Exhibit 61

**Borough of Emerson**
**Bergen County**

**Midpoint Review Report**

### *Purpose*

The Borough of Emerson is required to comply with the statutory midpoint review requirements of the Fair Housing Act ("FHA") and specifically N.J.S.A. 52:27D-313, which provides in relevant part: "[t]he Council shall establish procedures for a realistic opportunity review at the midpoint of the certification period and shall provide for notice to the public." Pursuant to the Settlement Agreement between Fair Share Housing Center ("FSHC") and the Borough (hereinafter the "FSHC Settlement Agreement"), that review requires the Borough to post on its website on July 1, 2020, with a copy to FSHC, and an opportunity for comment, a status report regarding its compliance mechanisms and whether or not unbuilt sites/unfulfilled mechanisms continue to present a realistic opportunity.

### *Relevant Background*

In July of 2015, the Borough filed a declaratory judgment action, seeking a determination of its Round Three affordable housing obligations and approval of its proposed Housing Element and Fair Share Plan to satisfy such obligations and, thereby, obtain a Judgment of Compliance and Repose from the Court, pursuant to the March 2015 New Jersey Supreme Court decision, In the Matter of the Adoption of N.J.A.C. 5:96 and 5:97 by the New Jersey Council on Affordable Housing, 221 N.J. 1 (2015) ("Mount Laurel IV"). The Court appointed a Special Master, Mary Beth Lonergan as is customary in Mount Laurel matters. The Special Master assisted the Borough in reaching a settlement agreement with FSHC, a non-profit organization dedicated to protecting the rights of low and moderate income households in New Jersey. The FSHC Settlement Agreement with the Borough was entered into on November 21, 2017. In addition, the Borough has reached settlement with an intervening party, which is incorporated into the settlement agreement with FSHC. A fairness hearing was held before the Honorable Gregg A. Padovano, J.S.C., on December 21, 2018, wherein the Court determined that the Settlement Agreement presented a realistic opportunity for affordable housing development and was fair, equitable and protected the interests of low and moderate income families. An order to this effect was entered into by the Court and filed on January 25, 2019. The Borough has retained immunity from builder remedy suits throughout the process and has continued immunity pursuant to the Court order.

The FSHC Settlement Agreement, established the Borough's Third Round Fair Share obligations as follows:

- Rehabilitation Obligation: 20 units

- Prior Round Obligation (1987-1999): 74 units

- Third Round Gap and Prospective Need Obligation (1999-2025): 234 units

1

## *Status*

Pursuant to the settlement agreement, the Borough adopted all of the required compliance documents and received a Judgment of compliance and repose issued by the Honorable Gregg A. Padovano, J.S.C. on January 25, 2019.

The Borough has, pursuant to the Court's Order:

- Produced a rehabilitation manual, with guidelines for rehabilitating owner-occupied housing and renter-occupied housing;
- Executed an Agreement with Community Action Services;
- Provided the date of payment and amount paid to Ridgefield as part of the Prior Round Regional Contribution Agreement (RCA);
- Provided supporting documentation indicating that the proposed Block 419 redevelopment is to be comprised of family rental units, including affordable units; and,
- Adopted a Mandatory Affordable Set-Aside Ordinance.

As of July 1, 2020, no affordable housing units have been physically rehabilitated or constructed within the Borough. It is noteworthy however, that the most significant project, as contemplated by the Borough's housing plan, has received site plan approval by the Borough and will presumably proceed to construction in the near future.

The site of the project, known as Block 419, has been partially demolished but buildings remain that also need to be demolished. The Borough is currently assisting the Redeveloper by seeking Court intervention to remove one of the lessees of the property which continues to occupy an area required for the project.

The Borough continues to believe that the present plan represents a realistic opportunity for the development of affordable housing in the community.

## *Comments*

Comments from interested parties are welcome and may be submitted to the Borough by contacting the Borough Administrator, Robert Hermansen at Borough Hall, 1 Municipal Place, Emerson, New Jersey, or by email at: RHermansen@emersonnj.org

Exhibit 62

**Jane Dietsche**

| From: | Jane Dietsche |
|---|---|
| Sent: | Monday, August 5, 2019 9:36 AM |
| To: | firechief@emersonnj.org; Tom Carlos ██████████ |
| Cc: | Danielle DiPaola (mayor@emersonnj.org); Richard Sheola (administrator@emersonnj.org) |
| Subject: | FW: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment |

Good morning Tom,

Do you have any records of any hazardous waste discharge at 188/190 Kinderkamack Road? Do you know if there is anyone else here who might have knowledge if such an event had occurred?

Thanks,

Jane

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Monday, August 5, 2019 8:02 AM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>; Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Jane and all,

Jane, because there was never a discharge reported at 190 Kinderkamack Road, the former dry cleaner site, DEP does not have any additional information on this site. Because there is no active remediation on the site, the LSRP has not been retained for this site. Does the Borough have any information that there was ever a discharge at this site? If so, that should be reported to the WARN DEP hotline. Please advise.

Thank you,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

**Connect with us:**



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Sent:** Friday, August 2, 2019 4:59 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>; McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Subject:** Re: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Jane, you are most welcome. We will look into it for you. Best regards, kerry

Sent via the Samsung Galaxy S®6 active, an AT&T 4G LTE smartphone

-------- Original message --------
**From:** Jane Dietsche <clerk@emersonnj.org>
**Date:** 8/2/19 4:07 PM (GMT-05:00)
**To:** "Pflugh, Kerry" <Kerry.Pflugh@dep.nj.gov>
**Cc:** "Danielle DiPaola (mayor@emersonnj.org)" <mayor@emersonnj.org>, Rich Sheola <rsheola@emersonnj.org>, "Haller, Olivia" <Olivia.Haller@dep.nj.gov>, "McLeod, Allison" <Allison.McLeod@dep.nj.gov>
**Subject:** [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Kerry,

Thank you for your response to our inquiry. Mayor DiPaola is currently on vacation and has asked me to follow up with you on her behalf.

We found the information you provided very interesting and were wondering if any additional information on Ranch Cleaners, 190 Kinderkamack Road will be forthcoming. Our concern is related to the fact that this property is about to become the site of a redevelopment which will include housing and commercial use. Would the LSRP have any additional information they could share with us?

We appreciate all your assistance with this matter. Enjoy your weekend!

Best regards,

Jane

Jane Dietsche, RMC

Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov> **On Behalf Of** Pflugh, Kerry
**Sent:** Wednesday, July 31, 2019 2:07 PM
**To:** Jane Dietsche <clerk@emersonnj.org>; Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Cc:** Haller, Olivia <Olivia.Haller@dep.nj.gov>; McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Mayor and Jane,

Since our meeting and your recent call with my staff, we've been researching the sites mentioned on Kinderkamack Road.

The Licensed Site Remediation Professional for 200 Kinderkamack Road, Emerson Auto Repair, is Joachim Karger, jkarger@aesj.com, 908-814-4630. The remedial investigation was completed for this site. The next statutory deadline is the remedial action, due May 6, 2021. The remedial action describes what actions were taken on site to remediate the property. For the most current information, you can contact the LSRP. Under our regulations, the LSRP has an obligation to protect public health and the environment and must consider how the property is being used. Generally, if there is residential housing on a site, controls must be put in place to ensure there is no exposure pathway for those on the site. Please contact the LSRP for site-specific questions. Our site remediation program spoke with Mr. Karger and let him know you may contact him.

For cases not under the jurisdiction of the Industrial Site Recovery Act (ISRA), DEP cannot require environmental investigation due to a real estate transaction or redevelopment. To trigger DEP site remediation regulations, a discharge must be reported to the DEP hotline, 1-877-WARN-DEP. DEP has not received report of a discharge at 190 Kinderkamack Road, the former dry cleaner site. If a discharge is reported on a property, the responsible parties must initiate remediation. Under the Spill Act, the current and past property owners may be responsible for the remediation. For this reason, DEP recommends that potential exercises exercise due diligence during real estate transactions.

During the investigation for 200 Kinderkamack Road, PCE/TCE were detected in a monitoring well downgradient from the autobody shop, in the vicinity of 199 Kinderkamack Road. This was reported to the WARN DEP hotline as incident number 15-05-22-1021-24. In a conversation with DEP, the LSRP indicated the source is not the auto repair facility. DEP may do an initial receptor evaluation to confirm receptors are not being affected. In a receptor evaluation, DEP inspects a radius around the well to verify if there are any people in occupied buildings that may be affected.

As mentioned above, the LSRP will be able to provide you with additional information. Thank you.

Regards,

Kerry Kirk Pflugh
Director
Office of Local Government Assistance
New Jersey Department of Environmental Protection
401 E. State Street
P.O. Box 402
Trenton, NJ 08625-0402
Office: 609-633-7700
Cell: 609-575-3806
Email: kerry.pflugh@dep.nj.gov

http://www.nj.gov/dep/lga/

NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents may be Privileged & Confidential due to the Attorney -Client Privilege, Attorney Work Product, Deliberative Process or under the New Jersey Open Public Records Act.   If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Friday, July 26, 2019 2:49 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Mayor and Jane,

Thank you both for speaking with me and explaining the situation.

I will reach out to site remediation for details on the active case at 200 Kinderkamack, Emerson Auto Repair, understanding there is a tae kwon do business with residential housing on the property.

Additionally, we will circle back with them on 190 Kinderkamack Road, Block 419 Lot 6.01, to discuss planned residential housing on the former dry cleaner site and associated concerns (testing for contamination, concerns re: development, etc.).

Thank you again, and have a wonderful weekend.

Best,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**
**Connect with us:**



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to

the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Friday, July 26, 2019 2:33 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Hello Jane,

Thanks for the email. Can you let me know what kind of information you are looking for? That will help me direct it to the appropriate program. When we originally researched the Bill's Tire and Auto property, we did mention the dry cleaner site. As per site remediation, we have record of two cases on Kinderkamack in Emerson:

Program Interest 003698, 176 Kinderkamack
Bills tire and auto
Not active

Program Interest 000535, 200 Kinderkamack
Emerson Auto Repair
Active case

I believe our understanding was the concern was proximity of the Bill's Tire and Auto site to the dry cleaner site, and that removal of the dry cleaner could affect the remediation of Bill's Tire and Auto. That's why the previous email chain discussed unrestricted cleanups – there is no cap or similar on the site that could be disturbed by adjacent work.

However, from your email it sounds like I misunderstood the ask – my apologies. What specific information can we provide with regards to the dry cleaner site?

Thank you and have a wonderful weekend.

Best,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Friday, July 26, 2019 2:19 PM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Subject:** [EXTERNAL] FW: Ranch Cleaners - Emerson Redevelopment

Good afternoon Allison,

Please see email below as a follow up to our conversation this afternoon.

Thank you in advance for your assistance.

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

**From:** Jane Dietsche
**Sent:** Friday, July 19, 2019 1:15 PM
**To:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Cc:** mayor@emersonnj.org; Rich Sheola <rsheola@emersonnj.org>; mccannlaw@comcast.net; Richard Malagiere Esq. (rm@malagierelaw.com) <rm@malagierelaw.com>
**Subject:** Ranch Cleaners - Emerson Redevelopment

Good afternoon Kerry,

I hope this message finds you well. Mayor DiPaola has asked me to follow up with you with information about the site of the former Ranch Cleaners:

- Address: 190 Kinderkamack Road, Block 419 Lot 6.01.

- Current owner: Emerson Redevelopers Urban Renewal LLC

- Previous owner information may be found at this link: http://njparcels.com/sales/0214_419_6.01

Please let me know if you have any questions. Thank you in advance for your assistance.

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

Exhibit 63

**Jane Dietsche**

| | |
|---|---|
| **From:** | Mayor Danielle DiPaola <mayor@emersonnj.org> |
| **Sent:** | Tuesday, August 6, 2019 5:55 PM |
| **To:** | mccannlaw@comcast.net; Richard Malagiere |
| **Subject:** | Fwd: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment |

Danielle DiPaola, Mayor
Emerson Borough

Begin forwarded message:

> **From:** "McLeod, Allison" <Allison.McLeod@dep.nj.gov>
> **Date:** August 6, 2019 at 2:34:02 PM EDT
> **To:** Jane Dietsche <clerk@emersonnj.org>
> **Cc:** "Danielle DiPaola (mayor@emersonnj.org)" <mayor@emersonnj.org>, Rich Sheola
> <rsheola@emersonnj.org>, "Pflugh, Kerry" <Kerry.Pflugh@dep.nj.gov>, "Haller, Olivia"
> <Olivia.Haller@dep.nj.gov>, "Qureshi, Sana" <Sana.Qureshi@dep.nj.gov>
> **Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment
>
> Good afternoon Jane and Mayor,
>
> Do you have contact information for the developer and/or the Licensed Site Remediation Professional
> they stated they retained? After speaking with our site remediation program, they would like to reach
> out to them.
>
> Thank you,
>
> Allison
>
> **NJDEP Government Relations**
> **Office of Local Government Assistance**
> **Program Manager**
> Office: (609) 633-7700
> Direct: (609) 984-0828
> Mobile: (609) 775-1716
> allison.mcleod@dep.nj.gov
> https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Tuesday, August 6, 2019 11:24 AM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Hi Jane,

I'm sorry I couldn't reach you by phone. Please feel free to call with questions. I wanted to clarify, as there are multiple sites in the redevelopment zone. The 'areas of concern' could have referred to one of the previous sites we discussed – potentially the 200 Kinderkamack Road, Emerson Auto Repair, as described below. The Licensed Site Remediation Professional's contact information is also below, should you wish to reach out to him directly.

DEP's site remediation does not have record of discharge at 190 Kinderkamack Road. Again, if there was a known discharge on site, pursuant to the Spill Act the responsible party must report it to DEP. However, anyone is able to report a discharge.

Thank you,

Allison

NJDEP Government Relations
Office of Local Government Assistance
Program Manager
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



## New Jersey
# DEPARTMENT of
# ENVIRONMENTAL
# PROTECTION

**Connect with us:**



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Tuesday, August 6, 2019 10:40 AM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Hi Allison,

Sorry - I should have been more specific. The redevelopment zone consists of the following lots on Block 419: 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 and 10.

419/1 – 19 Lincoln Boulevard
419/2 – 15 Lincoln Boulevard
419/3 – 9 Lincoln Boulevard
419/4 – 214 Kinderkamack Road
419/6.01 – 190 Kinderkamack Road
419/6.02 – 184 Kinderkamack Road
419/7 – 9 Kenneth Avenue
419/8 – 182 Kinderkamack Road
419/9 – 176 Kinderkamack road
419/10 – 78 Linwood Avenue

I hope this helps but please let me know if you need anything further.

Best regards,

Jane

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Tuesday, August 6, 2019 9:36 AM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Jane,

In the paragraph referenced, which is the specific "site"? If they are referring to 190 Kinderkamack Road, DEP does not have any reports or information to share. If it was an adjacent site – for example, 200 Kinderkamack Road, discussed previously – that might be where some of the confusion came from. I just want to make sure we're all talking about the same site.

Thank you for your patience – I appreciate your time and efforts to clarify for me.

Best, Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Tuesday, August 6, 2019 9:34 AM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Allison,

At the March 19, 2019 meeting of the Governing Body, Mr. Joseph Paparo, an attorney for the redeveloper, spoke during the public comment portion of the meeting. Here is an excerpt from the minutes with information about AOCs highlighted:

> *Joseph Paparo, Esq., of Porzio, Bromberg and Newman, an attorney for the redeveloper, Accurate Builders and Developers, thanked Mayor DiPaola, Councilman Knoller, Mr. Sheola and Mr. McCann for their participation in a productive meeting. He said the redeveloper's primary goal was to put out good information and noted that they valued transparency. He looked forward to*

*working with the Redevelopment Subcommittee. He noted that the architectural plans were being finalized and would be forwarded to the Borough Clerk for distribution upon completion. The Redevelopment Subcommittee would then have 30 days to meet and review them.*

*Mayor DiPaola asked about environmental concerns at the site and inquired about the process for determining whether the area was clean enough to build on. Mr. Paparo said that this was part of their due diligence; they had hired licensed environmental consultants and identified areas of concern. They could not move forward without NJDEP approval. Issues would have to be addressed, reviewed and approved by the NJDEP as meeting the standards for residential project development. The redeveloper was not permitted to show the reports to the public at the current time due to confidentiality issues.*

There was no information given at the meeting about a specific address/business or a known discharge. Are the reports that Mr. Paparo referenced available to the Borough at this time?

Please let me know if you have any questions.

Best regards,

Jane

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Tuesday, August 6, 2019 7:49 AM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Jane,

We discussed this site at length yesterday with our site remediation program. What information did the developer provide? Under the Spill Act, anyone is able to report knowledge of a discharge on a property, but pursuant to the Act, the property owner is required to report a known discharge. What specific areas of concern (AOCs) did they mention? If they are aware of a previous discharge on the site, this should be reported to the WARN DEP hotline. To date, we have not received any reports.

Best, Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



**New Jersey**
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

**Connect with us:**



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged
& Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If
you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Monday, August 5, 2019 12:52 PM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry
<Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia
<Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Allison,

We do not have any records here about this property. However, the redeveloper had alerted us to
AOC's back in January of this year.

Are you aware of that information and would you be able to tell us how we could obtain that?

Thank you in advance for your assistance.

Best regards,

Jane


**From:** Jane Dietsche
**Sent:** Monday, August 5, 2019 8:23 AM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry
<Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia
<Olivia.Haller@dep.nj.gov>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Allison,

Thank you for following up on our email. I will check on this with the appropriate staff and get back to
you.

Best regards,

Jane

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Monday, August 5, 2019 8:02 AM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>; Rich Sheola <rsheola@emersonnj.org>; Haller, Olivia
<Olivia.Haller@dep.nj.gov>; Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Subject:** RE: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good morning Jane and all,

Jane, because there was never a discharge reported at 190 Kinderkamack Road, the former dry cleaner
site, DEP does not have any additional information on this site. Because there is no active remediation
on the site, the LSRP has not been retained for this site. Does the Borough have any information that
there was ever a discharge at this site? If so, that should be reported to the WARN DEP hotline. Please
advise.

Thank you,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/

---



New Jersey
**DEPARTMENT of**
**ENVIRONMENTAL**
**PROTECTION**

Connect with us:



*NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged
& Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If
you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.*

**From:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Sent:** Friday, August 2, 2019 4:59 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Rich Sheola
<rsheola@emersonnj.org>; Haller, Olivia <Olivia.Haller@dep.nj.gov>; McLeod, Allison
<Allison.McLeod@dep.nj.gov>
**Subject:** Re: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Jane, you are most welcome. We will look into it for you. Best regards, kerry

Sent via the Samsung Galaxy S®6 active, an AT&T 4G LTE smartphone

-------- Original message --------
From: Jane Dietsche <clerk@emersonnj.org>
Date: 8/2/19 4:07 PM (GMT-05:00)
To: "Pflugh, Kerry" <Kerry.Pflugh@dep.nj.gov>
Cc: "Danielle DiPaola (mayor@emersonnj.org)" <mayor@emersonnj.org>, Rich Sheola
<rsheola@emersonnj.org>, "Haller, Olivia" <Olivia.Haller@dep.nj.gov>, "McLeod, Allison"
<Allison.McLeod@dep.nj.gov>
Subject: [EXTERNAL] RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Kerry,

Thank you for your response to our inquiry. Mayor DiPaola is currently on vacation and has asked me to
follow up with you on her behalf.

We found the information you provided very interesting and were wondering if any additional
information on Ranch Cleaners, 190 Kinderkamack Road will be forthcoming. Our concern is related to
the fact that this property is about to become the site of a redevelopment which will include housing
and commercial use. Would the LSRP have any additional information they could share with us?

We appreciate all your assistance with this matter. Enjoy your weekend!

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org


**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov> **On Behalf Of** Pflugh, Kerry
**Sent:** Wednesday, July 31, 2019 2:07 PM
**To:** Jane Dietsche <clerk@emersonnj.org>; Danielle DiPaola (mayor@emersonnj.org)
<mayor@emersonnj.org>
**Cc:** Haller, Olivia <Olivia.Haller@dep.nj.gov>; McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Good afternoon Mayor and Jane,

Since our meeting and your recent call with my staff, we've been researching the sites mentioned on
Kinderkamack Road.

The Licensed Site Remediation Professional for 200 Kinderkamack Road, Emerson Auto Repair, is
Joachim Karger, jkarger@aesj.com, 908-814-4630. The remedial investigation was completed for this
site. The next statutory deadline is the remedial action, due May 6, 2021. The remedial action describes
what actions were taken on site to remediate the property. For the most current information, you can

contact the LSRP. Under our regulations, the LSRP has an obligation to protect public health and the environment and must consider how the property is being used. Generally, if there is residential housing on a site, controls must be put in place to ensure there is no exposure pathway for those on the site. Please contact the LSRP for site-specific questions. Our site remediation program spoke with Mr. Karger and let him know you may contact him.

For cases not under the jurisdiction of the Industrial Site Recovery Act (ISRA), DEP cannot require environmental investigation due to a real estate transaction or redevelopment. To trigger DEP site remediation regulations, a discharge must be reported to the DEP hotline, 1-877-WARN-DEP. DEP has not received report of a discharge at 190 Kinderkamack Road, the former dry cleaner site. If a discharge is reported on a property, the responsible parties must initiate remediation. Under the Spill Act, the current and past property owners may be responsible for the remediation. For this reason, DEP recommends that potential exercises exercise due diligence during real estate transactions.

During the investigation for 200 Kinderkamack Road, PCE/TCE were detected in a monitoring well downgradient from the autobody shop, in the vicinity of 199 Kinderkamack Road. This was reported to the WARN DEP hotline as incident number 15-05-22-1021-24. In a conversation with DEP, the LSRP indicated that the source is not the auto repair facility. DEP may do an initial receptor evaluation to confirm receptors are not being affected. In a receptor evaluation, DEP inspects a radius around the well to verify if there are any people in occupied buildings that may be affected.

As mentioned above, the LSRP will be able to provide you with additional information. Thank you.

Regards,

Kerry Kirk Pflugh
Director
Office of Local Government Assistance
New Jersey Department of Environmental Protection
401 E. State Street
P.O. Box 402
Trenton, NJ 08625-0402
Office: 609-633-7700
Cell: 609-575-3806
Email: kerry.pflugh@dep.nj.gov

http://www.nj.gov/dep/lga/

NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents may be Privileged & Confidential due to the Attorney -Client Privilege, Attorney Work Product, Deliberative Process or under the New Jersey Open Public Records Act.   If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

From: McLeod, Allison <Allison.McLeod@dep.nj.gov>
Sent: Friday, July 26, 2019 2:49 PM
To: Jane Dietsche <clerk@emersonnj.org>
Cc: Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
Subject: RE: Ranch Cleaners - Emerson Redevelopment

Mayor and Jane,

Thank you both for speaking with me and explaining the situation.

I will reach out to site remediation for details on the active case at 200 Kinderkamack, Emerson Auto Repair, understanding there is a tae kwon do business with residential housing on the property.

Additionally, we will circle back with them on 190 Kinderkamack Road, Block 419 Lot 6.01, to discuss planned residential housing on the former dry cleaner site and associated concerns (testing for contamination, concerns re: development, etc.).

Thank you again, and have a wonderful weekend.

Best,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/







*NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.*

**From:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Sent:** Friday, July 26, 2019 2:33 PM
**To:** Jane Dietsche <clerk@emersonnj.org>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>; Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Subject:** RE: Ranch Cleaners - Emerson Redevelopment

Hello Jane,

Thanks for the email. Can you let me know what kind of information you are looking for? That will help me direct it to the appropriate program. When we originally researched the Bill's Tire and Auto property, we did mention the dry cleaner site. As per site remediation, we have record of two cases on Kinderkamack in Emerson:

Program Interest 003698, 176 Kinderkamack
Bills tire and auto
Not active

Program Interest 000535, 200 Kinderkamack
Emerson Auto Repair
Active case

I believe our understanding was the concern was proximity of the Bill's Tire and Auto site to the dry cleaner site, and that removal of the dry cleaner could affect the remediation of Bill's Tire and Auto. That's why the previous email chain discussed unrestricted cleanups – there is no cap or similar on the site that could be disturbed by adjacent work.

However, from your email it sounds like I misunderstood the ask – my apologies. What specific information can we provide with regards to the dry cleaner site?

Thank you and have a wonderful weekend.

Best,

Allison

**NJDEP Government Relations**
**Office of Local Government Assistance**
**Program Manager**
Office: (609) 633-7700
Direct: (609) 984-0828
Mobile: (609) 775-1716
allison.mcleod@dep.nj.gov
https://www.nj.gov/dep/lga/



Connect with us:



NOTE: This E-mail is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This E-Mail and its contents, may be Privileged & Confidential due to the Attorney-Client Privilege, Attorney Work Product, and Deliberative Process or under the New Jersey Open Public Records Act. If you are not the intended recipient of this e-mail, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute it.

**From:** Jane Dietsche <clerk@emersonnj.org>
**Sent:** Friday, July 26, 2019 2:19 PM
**To:** McLeod, Allison <Allison.McLeod@dep.nj.gov>
**Cc:** Danielle DiPaola (mayor@emersonnj.org) <mayor@emersonnj.org>
**Subject:** [EXTERNAL] FW: Ranch Cleaners - Emerson Redevelopment

Good afternoon Allison,

Please see email below as a follow up to our conversation this afternoon.

Thank you in advance for your assistance.

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

**From:** Jane Dietsche
**Sent:** Friday, July 19, 2019 1:15 PM
**To:** Pflugh, Kerry <Kerry.Pflugh@dep.nj.gov>
**Cc:** mayor@emersonnj.org; Rich Sheola <rsheola@emersonnj.org>; mccannlaw@comcast.net; Richard
Malagiere Esq. (rm@malagierelaw.com) <rm@malagierelaw.com>
**Subject:** Ranch Cleaners - Emerson Redevelopment

Good afternoon Kerry,

I hope this message finds you well. Mayor DiPaola has asked me to follow up with you with information
about the site of the former Ranch Cleaners:

- Address: 190 Kinderkamack Road, Block 419 Lot 6.01.

- Current owner: Emerson Redevelopers Urban Renewal LLC

- Previous owner information may be found at this link:
  http://njparcels.com/sales/0214_419_6.01

Please let me know if you have any questions. Thank you in advance for your assistance.

Best regards,

Jane

Jane Dietsche, RMC
Emerson Borough Clerk
201-262-6086 x1200
clerk@emersonnj.org

Exhibit 64

CONFIDENTIAL

**REGULAR MEETING OF SEPTEMBER 3, 2019**
**CLOSED EXECUTIVE SESSION MEETING MINUTES**

**CLOSED EXECUTIVE SESSION - Resolution No. 227-19**

☞ **Motion** to go into an executive session to discuss matters exempt from the public as duly
noticed by Resolution No. 227-19 was **moved** by Councilman Hoffman, **seconded** by Council
President Falotico and carried by a roll call vote of 6-0:
**RC: Council members:**
**YES: Bayley, Hoffman, McGuire, Falotico, Knoller, Gordon**

| | | |
|---|---|---|
| 19-9/3-34 | Potential Litigation – Axis Architectural Group | N.J.S.A. 10:4-7 |
| 19-9/3-35 | Potential Litigation - Update on Redevelopment | N.J.S.A. 10:4-7 |

Also present were Interim Borough Administrator Rich Sheola, Borough Attorney John McCann
and Borough Clerk Jane Dietsche.

**19-9/3-34     Potential Litigation – Axis Architectural Group     N.J.S.A. 10:4-7**

Mr. McCann referenced a letter sent to the Borough by Axis Architectural Group and noted that
he had asked them to send information supporting their position. He had received a response but
no supporting documents. He would respond to their letter and ask them to have their attorney
contact him.

**19-9/3-35     Potential Litigation - Update on Redevelopment     N.J.S.A. 10:4-7**

The Governing Body and Mr. McCann discussed the timeline for the Ambulance Corps leaving
their building on Kenneth Avenue. The Borough had not received plans from the redeveloper yet.
In addition, they needed to provide all DEP information. Governing Body consensus was to
return to open session and make a motion to demand all environmental information in the
redeveloper's possession on the Block 419 properties.

Exhibit 65

<u>Accurate</u>  9/5/19

12:00
1:20

19 Lincoln
214 K'nock
184 K'nock       } Vacant — demolition now
176 K'nock
78 & 76 Lincoln )
   Evac on 9/13

188 → 182 Steel Core tenants

<u>RTS</u> — forcing Cus to be open p existing businesses

fire sprinkler still in place @ restaurant. (2A K'nock)
          need Fire Officials & CCO approval first.

need: asbestos reports whether pos or neg
      soil movement permits (this week)

<u>AW</u>  DEP not involved
    not submitted bonds to county

    traffic — officers on K'nock ding demo

Kenneth will remain open ding demo.

demo w/in 3 weeks / say 4 weeks

ACCURATE BUILDERS          SEPT 5, 2019

RICHARD SHELLA          INTERIM ADMINISTRATOR
PERRY Solimando         DPW Superintendent
Rich SILVIA             BUILDING DEPT CONST OFFICIAL
MIKE McDermott          EMERSON POLICE
Thomas Carlos           Emerson Fire
Ann Landau              Accur Builders
Mendy Tendler           Accurate Builders

Exhibit 66

**Jane Dietsche**

| | |
|---|---|
| **From:** | boardsec@emersonnj.org |
| **Sent:** | Friday, September 13, 2019 9:07 PM |
| **To:** | Jeff Bischoff; Jeff Bischoff |
| **Subject:** | FW: Emerson: |
| **Attachments:** | Letter to Emerson Mayor re commuter spaces 9-13-2019.pdf; Sept. 19  LUB Agenda.docx; Sept. 5, 2019 LUB minutes.docx |

Jeff,

I received this letter today.   Do you want to bring it up at the meeting on Thursday?    Should it be listed in the Agenda, or wait until we have scheduled a hearing with the applicant.   I see Chris got a copy,  should I send a copy to the members?

Questions Questions, Questions.

As long as I am emailing,  attached are the minutes of Sept 5 and proposed agenda for Sept 19.

Let me know if ok,  so I can post and distribute.

Have a great weekend.

Marie

-----Original Message-----
From: "Amy DeCaro" <ADeCaro@bisgaierhoff.com>
Sent: Friday, September 13, 2019 11:20am
To: "mayor@emersonnj.org" <mayor@emersonnj.org>, "clerk@emersonnj.org"
<clerk@emersonnj.org>, "johnjmccann@optonline.net" <johnjmccann@optonline.net>,
"boardsec@emersonnj.org" <boardsec@emersonnj.org>,
"CMartin@morrisonmahoney.com" <CMartin@morrisonmahoney.com>
Cc: "Robert Kasuba" <RKasuba@bisgaierhoff.com>, "Peter Flannery"
<pflannery@bisgaierhoff.com>
Subject: Emerson:

Attached is a copy of our letter in the above matter.  Thank you.

**AMY DECARO, PARALEGAL | BISGAIER HOFF, LLC**
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2800| Fax: 856.795.0312
adecaro@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

September 13, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Hon. Danielle DiPaolo, Mayor
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

   *Re: Emerson Commuter Parking Spaces*
     *Block 419 Redevelopment*

Dear Mayor DiPaolo:

  This firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the above matter.

  As you know, Redeveloper proposes to redevelop the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps as a 4-story, 147-unit inclusionary residential development with parking garage, ground floor retail, amenities and other site improvements ("Project"). On December 10, 2018, Redeveloper obtained preliminary and final major site plan approval for the Project from the Borough Land Use Board ("Board"). The Board memorialized this approval through the adoption of a resolution ("Resolution") on December 28, 2018.

  In accordance with Condition 11)EE. of the Resolution, Redeveloper is required to "[p]rovide the date when the commuter parking spaces are required to be vacated for the start of construction." This date is to be "approved by the subcommittee review team of the Emerson Land Use Board and the Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer."

  By this letter, Redeveloper hereby submits for approval by the Borough, Board and their professionals a date of December 1, 2019 for the removal of the commuter parking spaces on the Property. Redeveloper is now the fee simple owner of all the parcels comprising the Property and Redeveloper is actively pursuing the relocation of the three remaining tenants on the Property. Redeveloper is also in the process of obtaining permits to demolish all the vacated buildings and to construct security fencing around the Property. Although the Redeveloper is not yet in a position to pull building permits for the Project, Redeveloper is hopeful that it will be in a position to do so shortly.

Redeveloper respectfully requests that the subcommittee review team of the Board and Borough Governing Body convene in the near future to discuss this proposed date of December 1, 2019 for the removal of the commuter parking spaces on the Property. Redeveloper will also make

Hon. Danielle DiPaolo
September 13, 2019
Page 2

itself available to attend this meeting to discuss the issue in greater detail with the subcommittee review team.

Thank you in advance for your cooperation with this matter and I look forward to hearing from the Borough regarding this issue.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

cc:    Jane Dietsche, Clerk, Borough of Emerson
       John J. McCann, Esq., Borough of Emerson Attorney
       Marie Shust, Secretary, Borough of Emerson Land Use Board
       Christopher Martin, Esq., Borough of Emerson Land Use Board Attorney
       Emerson Redevelopers Urban Renewal, LLC

[A027-0002/525016/1]

Exhibit 67

Tue, Sep 17, 7:23 AM

Nicole Argenzia

Danielle  Someone asked me last night if the lawyer we have for town view appointed and I think it did so I told them I would check because they want to make sure the town's best interests is being look out for and that he is guiding you in the correct way about redevelopment.



Of course he is, we have 3 lawyers that are involved

Nicole Argenzia



Lol..he asked.

   

 Lol...he asked.

Who

?

Nicole Argenzia

 Zeller

 He knows his shit

People don't want to believe we're stuck with it but all the contracts are layered with loop holes in favor of the developer.

Nicole Argenzia

 I told him that

  

Exhibit 68



**BOROUGH OF EMERSON**

# ZONING PERMIT

Date issued 9·17·19

Permit # 219-279

**IDENTIFICATION:** Block 416 Lot 6.01-6.02

**Work Site Location:** Kinder Kamack Rd

**Owner in Fee:** Accurate builders

**Address:** 32 Cross St Ste 301

Lakewood NJ

Telephone: _____

**DESCRIPTION OF WORK:** Fence

| PAYMENTS | (OFFICE USE ONLY) |
|---|---|
| Check No. | 625 |
| Cash | |
| Collected by | PD |

Zoning Official

9/19/19

Date



**Building Department**
1 Municipal Place, Emerson, New Jersey 07630
(Tel) 201.262.6086 x 1214    (Fax) 201.599.6333
www.emersonnj.org    zoningofficial@emersonnj.org

## Application for ZONING REVIEW (Fee: $40)

SEP - 5 2019

Pd ck 4495 40⁰⁰
219-262

1-5
6.01

Owner/Applicant __Accurate Builders + Developers__    Property Address __Emerson, NJ__    Zone _____    Block __416__    Lot __6.02__
                                                                                                                                        7-10

**IMPORTANT:** Property survey required showing all *current* structures (shed, deck, detached garage, driveway, patio, in-ground pool (topographical survey required), as well as proposed **new** construction. Include square foot calculations of new construction, as well as front, side and rear setback measurements where applicable.

Signature (Owner/Applicant/Architect/Contractor) _____    Phone: __732-941-0300__

*CHECK ALL ITEMS THAT APPLY:*    Email: __carol@accurateng.com__

____ New Construction:  Single Family Home_____    Commercial_____    Other_____
____ Add-a-Level _____ Dormer _____
____ Addition: Front ____ Rear ____ Side ____ 2ⁿᵈ Story ____ **(complete zoning table on reverse)**
____ Steps: (Front ____ Rear ____ Side ____ )
____ Deck
____ Patio
____ Pool:  Above-Ground ____ In-Ground* ____ Semi In-Ground* ____ **(*Soil permit required)**
____ Porch ____ Portico ____
____ Hot Tub ____ Portable Spa ____
____ Garage ____ Car Port ____
____ Generator (specify location, provide setback measurements & clearance requirements-*see handout)
____ Shed: (Size ____ ft x ____ ft Height: _____ ft) *Only one shed permitted – Max. 144 sq. ft.
____ Retaining Wall: (Specify Max. Height _____    **NOTE:** if higher than 48" at any point, a UCC permit is required
____ Signs & Awnings:  (permanent ____ temporary ____ banner ____ )
_X_ Fence: (Maximum Height: Rear Yard: 6 Ft; Front Yard: 3 Ft
         (Specify: height __6 ft__ style _____ material __chain link__ (pool on property? Yes ___ No _X_ )
____ Driveway: (If cutting curb, contact DPW *prior* to pouring concrete 201-262-8199)
         *Max. width: 22 ft. – show existing or proposed width; driveways may not be located closer than 3 ft. from property line
         (If cutting curb, contact DPW *prior* to pouring concrete 201-262-8199)
____ Central AC: (Specify condenser location: *Note: equipment not permitted on façade or in front yard)
____ Commercial Space **(Requires Letter of Intent & Valid Driver's License):** Purchase ____ Lease ____ Rent ____
____ Other: _____

**COMMENTS:** __This is for temporary use. Appox. 18 months__

*IMPORTANT!  Rubbish-Construction containers require a permit before placement on property ($25).*
*Note: The DPW is not responsible for the removal of any construction related debris.*

## ZONING OFFICIAL USE ONLY

| Approved 9/10/19 | Denied | Ordinance | Section |
|---|---|---|---|
| "Keep Fence OFF Public Right of Way" | | | |



Exhibit 69

Please feel free to contact me or Rob to discuss this issue further.

Thank you,

Peter


PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that
is privileged at law. It is not intended for transmission to, or receipt by, any
unauthorized persons. Unless you are the addressee (or authorized to receive for the
addressee), you may not use, copy or disclose to anyone the message or any
information contained in the message. If you have received the message in error, please
advise the sender by reply e-mail, and delete or destroy the message. Thank you.




-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Tuesday, September 17, 2019 10:27 PM
To: Robert Kasuba <RKasuba@bisgaierhoff.com>
Subject: Emerson: Computer parking

Mr. Kasuba:
As per your letter dated September 13, 2019 the borough will consider your request to
vacate the computer lot of December 1, 2019. Today we had an unfortunate incident in
the borough involving your client. Residents parked in the computer parking lot found
"no parking" flyers placed on their vehicles sometime during the day. Needless to say
this is not consistent with our agreement as your letter clearly states. This has
unnecessarily caused a great deal of stress and anxiety for a number of people of
Emerson.

The Mayor and Council has asked me to obtain an explanation as to why this bizarre
occurrence happed. Please provide me with an explanation. Thank you for your
cooperation.

JM.


JM
<IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>

Exhibit 70

**Christine A. Principe**

| | |
|---|---|
| **From:** | John McCann <johnjmccann@optonline.net> |
| **Sent:** | Thursday, September 19, 2019 11:57 AM |
| **To:** | Peter Flannery |
| **Cc:** | Mayor |
| **Subject:** | Re: Emerson: Computer parking |

Peter, thank you for your response. There seems to be a misunderstanding as to what is involved here that needs further investigation. In the future, as we have agreed, all requests and communication for any action to be taken by your client should be first brought to the Borough's Administrator. Also, I am awaiting your client's response to bringing on a project manager. Thank you.

JM

> On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:
>
> Mr. McCann:
>
> In response to your e-mail, please be advised that my client applied
> for and obtained fence permits from the Borough to fence off all the
> parking spaces (and associated buildings) located within the Block 419
> Redevelopment Area that are not commuter spaces or parking
> spaces/buildings associated with the three remaining commercial
> tenants.  The existing commuter spaces - which are the parking spaces
> referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
> consist of the approximately 20 spaces located along the railroad
> tracks on (vacated) Kenneth Avenue.  Please see the attached fence permits and map, which shows the proposed
fenced-in areas in pink.
>
> I can confirm that my client did distribute flyers on vehicles parked
> in the affected parking spaces within Block 419 Redevelopment Area in
> an effort to inform the public that these spaces would soon be fenced
> off, consistent with the Borough-issued permits.  To my knowledge,
> however, my client did not distribute any such flyers on the vehicles
> located in the commuter parking spaces.
>
> Please feel free to contact me or Rob to discuss this issue further.
>
> Thank you,
>
> Peter
>
>
> PETER M. FLANNERY | BISGAIER HOFF, LLC
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>

> This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

>

>

>

>

> -----Original Message-----
> From: John McCann [mailto:johnjmccann@optonline.net]
> Sent: Tuesday, September 17, 2019 10:27 PM
> To: Robert Kasuba <RKasuba@bisgaierhoff.com>
> Subject: Emerson: Computer parking
>
> Mr. Kasuba:
> As per your letter dated September 13, 2019 the borough will consider your request to vacate the computer lot of December 1, 2019.  Today we had an unfortunate incident in the borough involving your client. Residents parked in the computer parking lot found "no parking" flyers placed on their vehicles sometime during the day. Needless to say this is not consistent with our agreement as your letter clearly states.  This has unnecessarily caused a great deal of stress and anxiety for a number of people of Emerson.
>
> The Mayor and Council has asked me to obtain an explanation as to why this bizarre occurrence happed. Please provide me with an explanation. Thank you for your cooperation.
>
> JM.
>
>
> JM
> <IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>

Exhibit 71

**Christine A. Principe**

| | |
|---|---|
| **From:** | John McCann <johnjmccann@optonline.net> |
| **Sent:** | Thursday, September 19, 2019 12:19 PM |
| **To:** | Peter Flannery |
| **Cc:** | Mayor; Rich Sheola; zoingofficial@emersonnj.org; Mike Sartori |
| **Subject:** | Re: Emerson: Computer parking |

Peter, I spoke with our zoning official and he indicated that you client represented to him that all 54 spots where going to be provided. We need a meeting to get this clarified as the map and previous representations are not clear.  Please have your client come to Brough hall tomorrow, this is an emergent situation.  We need to resolve this before any fencing is installed;  please don't install any fencing until this is resolved. If you proceed to fence if will displace, without any reasonable notice numerous resident commuters.  My phone number is (201) 803-0530. Thank you.

JM

> On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:
>
> Mr. McCann:
>
> In response to your e-mail, please be advised that my client applied
> for and obtained fence permits from the Borough to fence off all the
> parking spaces (and associated buildings) located within the Block 419
> Redevelopment Area that are not commuter spaces or parking
> spaces/buildings associated with the three remaining commercial
> tenants.  The existing commuter spaces - which are the parking spaces
> referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
> consist of the approximately 20 spaces located along the railroad
> tracks on (vacated) Kenneth Avenue.  Please see the attached fence permits and map, which shows the proposed fenced-in areas in pink.
>
> I can confirm that my client did distribute flyers on vehicles parked
> in the affected parking spaces within Block 419 Redevelopment Area in
> an effort to inform the public that these spaces would soon be fenced
> off, consistent with the Borough-issued permits.  To my knowledge,
> however, my client did not distribute any such flyers on the vehicles
> located in the commuter parking spaces.
>
> Please feel free to contact me or Rob to discuss this issue further.
>
> Thank you,
>
> Peter
>
>
> PETER M. FLANNERY | BISGAIER HOFF, LLC
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>

1

> This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

>

>

>

>

> -----Original Message-----

> From: John McCann [mailto:johnjmccann@optonline.net]

> Sent: Tuesday, September 17, 2019 10:27 PM

> To: Robert Kasuba <RKasuba@bisgaierhoff.com>

> Subject: Emerson: Computer parking

>

> Mr. Kasuba:

> As per your letter dated September 13, 2019 the borough will consider your request to vacate the computer lot of December 1, 2019.  Today we had an unfortunate incident in the borough involving your client. Residents parked in the computer parking lot found "no parking" flyers placed on their vehicles sometime during the day. Needless to say this is not consistent with our agreement as your letter clearly states.  This has unnecessarily caused a great deal of stress and anxiety for a number of people of Emerson.

>

> The Mayor and Council has asked me to obtain an explanation as to why this bizarre occurrence happed. Please provide me with an explanation. Thank you for your cooperation.

>

> JM.

>

>

> JM

> <IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>

Exhibit 72

**Christine A. Principe**

| | |
|---|---|
| **From:** | Peter Flannery |
| **Sent:** | Friday, September 20, 2019 2:40 PM |
| **To:** | John McCann |
| **Cc:** | Robert Kasuba |
| **Subject:** | RE: Emerson: Computer parking |
| **Attachments:** | 20190920114007.pdf |

Mr. McCann:

There appears to have been a misunderstanding with the zoning officer because at no time did my client represent that it would be retaining 54 commuter parking spaces on the site in conjunction with the fencing installation.  It is possible that someone may have mentioned the 55 commuter parking spaces that are required to be provided as part of the proposed inclusionary development, but these 55 spaces are to be provided in the future (when the development is completed) and certainly do not exist on the site today.

In fact, at the December 10, 2018 Land Use Board hearing for the project, my client's civil engineer, Wayne Corsey, P.E., testified that the existing commuter spaces on the site are limited to those spaces located on Kenneth Avenue (please see the attached hearing transcript excerpt - page 16).

That being said, however, my client is willing to temporarily hold off on the installation of the fencing to discuss this matter further with the Borough.  Please advise as to your availability early next week for a conference call (in lieu of an in-person meeting) to discuss this issue.

Thank you,

Peter


PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.


-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Thursday, September 19, 2019 12:19 PM
To: Peter Flannery <pflannery@bisgaierhoff.com>
Cc: Mayor <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; zoingofficial@emersonnj.org; Mike Sartori <constructionofficial@emersonnj.org>
Subject: Re: Emerson: Computer parking

Peter, I spoke with our zoning official and he indicated that you client represented to him that all 54 spots where going to be provided. We need a meeting to get this clarified as the map and previous representations are not clear.  Please have your client come to Brough hall tomorrow, this is an emergent situation.  We need to resolve this before any fencing is installed;  please don't install any fencing until this is resolved. If you proceed to fence if will displace, without any reasonable notice numerous resident commuters.  My phone number is (201) 803-0530. Thank you.

JM

> On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:
>
> Mr. McCann:
>
> In response to your e-mail, please be advised that my client applied
> for and obtained fence permits from the Borough to fence off all the
> parking spaces (and associated buildings) located within the Block 419
> Redevelopment Area that are not commuter spaces or parking
> spaces/buildings associated with the three remaining commercial
> tenants.  The existing commuter spaces - which are the parking spaces
> referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
> consist of the approximately 20 spaces located along the railroad
> tracks on (vacated) Kenneth Avenue.  Please see the attached fence permits and map, which shows the proposed
fenced-in areas in pink.
>
> I can confirm that my client did distribute flyers on vehicles parked
> in the affected parking spaces within Block 419 Redevelopment Area in
> an effort to inform the public that these spaces would soon be fenced
> off, consistent with the Borough-issued permits.  To my knowledge,
> however, my client did not distribute any such flyers on the vehicles
> located in the commuter parking spaces.
>
> Please feel free to contact me or Rob to discuss this issue further.
>
> Thank you,
>
> Peter
>
>
> PETER M. FLANNERY | BISGAIER HOFF, LLC
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>
> This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.
>
>
>
>

> -----Original Message-----
> From: John McCann [mailto:johnjmccann@optonline.net]
> Sent: Tuesday, September 17, 2019 10:27 PM
> To: Robert Kasuba <RKasuba@bisgaierhoff.com>
> Subject: Emerson: Computer parking
>
> Mr. Kasuba:
> As per your letter dated September 13, 2019 the borough will consider your request to vacate the computer lot of December 1, 2019.  Today we had an unfortunate incident in the borough involving your client. Residents parked in the computer parking lot found "no parking" flyers placed on their vehicles sometime during the day. Needless to say this is not consistent with our agreement as your letter clearly states.  This has unnecessarily caused a great deal of stress and anxiety for a number of people of Emerson.
>
> The Mayor and Council has asked me to obtain an explanation as to why this bizarre occurrence happed. Please provide me with an explanation. Thank you for your cooperation.
>
> JM.
>
>
> JM
> <IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>

3

# In The Matter Of:

*Emerson Redevelopers Urban Renewal*

*Transcript of Proceedings*
*December 10, 2018*



RIZMAN**RAPPAPORT**
CERTIFIED COURT REPORTERS

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
T (973)992-7650 F (973)992-0666
www.rizmanrappaport.com
reporters@rizmanrappaport.com

*Min-U-Script® with Word Index*

Emerson Redevelopers Urban Renewal

---

Page 1

```
1              BOROUGH OF EMERSON
                 LAND USE BOARD
2

3   - - - - - - - - - - - - - x
    SPECIAL MEETING       :    STENOGRAPHIC
4   Application of        :    TRANSCRIPT
    EMERSON REDEVELOPERS URBAN :       OF
5   RENEWAL, LLC;         :    PUBLIC HEARING
    Block 419, Lots 1, 2, 3,  :
6   4, 6.01-6.02, 7, 8, 9 & 10 :
7   - - - - - - - - - - - - - x

8                          Municipal Building
                           146 Linwood Avenue
9                          Emerson, New Jersey
                           Monday, December 10, 2018
10                         Commencing 7:25 p.m.

11  B E F O R E :
    MR. GARY SCHWINDER, Chairperson
12  MR. LOUIS J. LAMATINA, Mayor
    MR. GERALD FALOTICO, Councilman
13  MR. STEVEN MALONE, Member
    MR. MICHAEL DeORIO, Member
14  MR. MICHAEL CIMINO, Member
    MR. DOUG McKENDRY, Member
15  MR. NORM REIGER, Member
    MR. ALBAN BRESA, Member
16  MR. THOMAS SUDANO, Member

17
    ALSO IN ATTENDANCE:
18  MS. M. MARIE SHUST, Secretary
    MR. GARY M. ASCOLESE, PE, Engineer
19  MS. BRIGETTE BOGART, PP, AICP CGW, Planner

20
    A P P E A R A N C E S :
21
    MORRISON MAHONEY, LLP
22  BY:  CHRISTOPHER E. MARTIN, ESQ.
    Attorney for the Board
23
    BISGAIER, HOFF, LLC
24  BY:  PETER M. FLANNERY, ESQ.
    Attorneys for Applicant
25
```

---

Page 2

```
1             I N D E X
2   WITNESS        EXAMINATION  DIRECT   CROSS
    QUESTIONING
3   WAYNE A. CORSEY, PE, PP
4      By Mr. Martin        12
       By Mr. Flannery             13
5      By the Board                         97
6   CHARLES OLIVO, PE
7      By Mr. Martin        41
       By Mr. Flannery             44
8      By the Board                         60
9   ANGELA KOSTELECKY, RA
10     By Mr. Martin        66
       By Mr. Flannery             82
11     By the Board                         83
12  WILLIAM J. DEVEREAUX, JR., RA
13     By Mr. Martin        68
       By Mr. Flannery             70
14     By the Board                         109
15  BY THE PUBLIC
    Mayor-Elect Danielle DiPaolo      136,199
16  Jeff Bischoff                     140
    Mike Meyers                       150,171
17  Corey Melillo                     153,175
    Loraine McQueeney                 156
18  Joseph Polvere                    159
    Councilman-Elect Kenneth Hoffman  161
19  Billy Price                   164,193,206
    Michael Esqueu                    167
20  Don Pietro on behalf of Phyllis Rooney  168
    Paul Hulburt                      173
21  Michael Casey                     174
    Kathleen Viola                    176
22  Laura Litchult                    180
    Jill McGuire                      183
23  Lina Ballas                       186
    Bob Petrow                        188
24  Annette Scala                     195
    Doug Doyle, Esq.                  196
25  Jack Klugman                      202
```

---

Page 3

```
1              E X H I B I T S
    EXHIBIT        DESCRIPTION           PAGE
2
3   A-1    Affidavit of Service            7
4   A-2    Rendering of Aerial photograph  14
5   A-3    Colorized rendering of          19
           Landscape Plan
6   A-4    Revised Sheet A-1.10, revision  70
           date 12/10/18
7
8   A-5    Revised Sheet A-1.20, revision  71
           dated 12/10/18
9   A-6    Sheet A-2.10 dated 11/15/18     76
10  A-7    Colorized rendering of          78
           Kinderkamack Road elevation
11
12  A-8    Color Sample Board, Exterior    81
           Finishes
13

14

15

16

17

18

19

20

21

22

23

24

25
```

---

Page 4

```
1    CHAIRPERSON SCHWINDER: Good
2  evening.  The meeting is starting at 7:25.  This
3  meeting of the Emerson Municipal Land Use Board
4  is being held in compliance with the Open Public
5  Meetings Act.  The Borough clerk has notified The
6  Record and The Ridgewood News of this meeting and
7  notice has been posted in the Municipal office.
8    In the unlikely event of fire or
9  emergency, follow the fire exit signs above the
10 council chamber doors to your right or left and
11 please exit calmly.
12    This meeting is a judicial
13 proceeding.  Any questions or comments must be
14 limited to issues that are relevant to what the
15 board may legally consider in reaching a
16 decision, and decorum appropriate to a judicial
17 hearing must be maintained at all times.
18    Mr. Bresa, pledge, please.
19    (Pledge of Allegiance taken.)
20    CHAIRPERSON SCHWINDER: Roll call.
21    SECRETARY SHUST: Okay.  Mr. Bresa?
22    MR. BRESA: Present.
23    SECRETARY SHUST: Mr. Adams?
24    MR. ADAMS: Here.
25    SECRETARY SHUST: Mr. Carlos?
```

---

Emerson Redevelopers Urban Renewal

Corsey, PE, PP, Wayne A. - direct - Mr. Flannery                    Page 13

1  And I have testified before Montvale, Oradell,
2  Hackensack, Morristown, Cedar Knolls and multiple
3  other towns.
4      MR. MARTIN: And are you licensed
5  anywhere else besides New Jersey?
6      THE WITNESS: Just New Jersey.
7      MR. MARTIN: And is your license in
8  good standing now?
9      THE WITNESS: It is, yes.
10     MR. MARTIN: And has it ever been
11 revoked for any reason or suspended?
12     THE WITNESS: No.
13     MR. MARTIN: And you're being
14 offered tonight as a professional engineer?
15     MR. FLANNERY: Yes, site civil.
16     MR. MARTIN: And in terms of civil
17 engineering, you're qualified tonight as the
18 same. Okay. Thank you.
19     MR. FLANNERY: Thank you.
20     THE WITNESS: Thank you, Mr. Martin.
21
22     DIRECT EXAMINATION BY MR. FLANNERY:
23 Q.  Mr. Corsey, I just want to go
24 through the existing conditions of the property.
25 A.  Okay.  What we have before you

Corsey, PE, PP, Wayne A. - direct - Mr. Flannery                    Page 14

1  tonight is a aerial rendering of the site, site
2  being located in the central portion. This is
3  taken from the New Jersey N-J -- NJIN database.
4  So it's an aerial photograph. The one thing I
5  will note right off the bat is that it doesn't
6  include the most recent improvements on
7  Kinderkamack, Linwood, because to my knowledge
8  there's not a aerial available up to date.
9      MR. MARTIN: I'll mark that A-2.
10     MR. FLANNERY: A-2. Thank you.
11     (Exhibit A-2 is received and marked
12 for identification at this time.)
13 A.  So the property as we discussed, as
14 our attorney has discussed is a conglomerate of
15 multiple lots from Block 419 Lots 1 through 10
16 with the exception of Lots 5, which is the center
17 portion. So again the site is located in the
18 central portion of the site, has frontage on
19 Kinderkamack Road, has 432 feet of frontage along
20 Kinderkamack Road with the exception of 87 feet
21 for Lot 5. It has 294 feet of frontage on
22 Lincoln Boulevard and it has 105 feet of frontage
23 on Linwood Avenue. Additionally, it has 550 feet
24 of frontage along the Conrail/New Jersey Transit
25 right-of-way.

Corsey, PE, PP, Wayne A. - direct - Mr. Flannery                    Page 15

1      The site is, consists of a mix of
2  uses from restaurants, office, retail and
3  single-family residence. There's a single-family
4  residence here, restaurant here. Lot 5 is a
5  two-story masonry building that is not part of
6  this application.
7      Additionally, there's a liquor store
8  here, a hair weaving store, and a second-story
9  retail and a restaurant there as well.
10     The site is predominantly, as you
11 can see from the aerial, the site predominantly
12 either covered by buildings or blacktop parking
13 spaces. There's a small area in the north,
14 northwest corner that is actually part of the
15 single-family residential. One thing I did
16 neglect to mention is there is also the Kennedy
17 Avenue right-of-way is in this upper right corner
18 adjacent to the railroad tracks. That's a
19 Borough right-of-way.
20     The uses around the site are across
21 the street there's an office building on, on
22 Lincoln Boulevard. There is a commercial
23 contractor yard over here. There's the church is
24 over here. A mixed retail use here, another
25 mixed retail use here. Boston market's on the

Corsey, PE, PP, Wayne A. - direct - Mr. Flannery                    Page 16

1  corner. The train station is across Linwood
2  Avenue and then there's residential and
3  commercial properties to the rear of the
4  property. There's also a first aid squad, which
5  is located in the central portion of the site.
6      This site additionally has a commuter
7  parking lot, which I believe includes the portion
8  of Kennedy Boulevard or Kennedy Avenue and also
9  the --
10     CHAIRPERSON SCHWINDER: Kenneth,
11 Kenneth.
12     MR. FLANNERY: Kenneth Avenue.
13     THE WITNESS: I'm sorry, my
14 apologies.
15 A.  Kenneth, and then the first aid
16 squad is located in the center portion there.
17     The property, the high point of the
18 property is this intersection over here where the
19 restaurant is, and it slopes down towards Lincoln
20 Boulevard to the west and along Kinderkamack to
21 the south at Linwood.
22     The site drains. There is some
23 onsite drainage on the site, small inlets that
24 will collect stormwater on-site and discharge to
25 the railroad, come down the railroad and connect

Exhibit 73



Exhibit 74

## Christine A. Principe

| | |
|---|---|
| **From:** | Peter Flannery |
| **Sent:** | Tuesday, September 24, 2019 11:49 AM |
| **To:** | John McCann |
| **Subject:** | RE: Emerson: Computer parking |
| **Attachments:** | 20190924100125.pdf |
| **Importance:** | High |

John-

Attached please find the revised map of the proposed fencing (in pink), consistent with our discussions yesterday. Please confirm that the attached is acceptable and that we can proceed with installing the fencing.

Thanks,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: Peter Flannery
Sent: Monday, September 23, 2019 10:51 AM
To: 'John McCann' <johnjmccann@optonline.net>
Subject: RE: Emerson: Computer parking
Importance: High

John-

Please give me a call in the office as soon as you can - 856-375-2804.  I have a potential solution for this issue.

Thanks,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC

25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Thursday, September 19, 2019 12:19 PM
To: Peter Flannery <pflannery@bisgaierhoff.com>
Cc: Mayor <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; zoingofficial@emersonnj.org; Mike Sartori <constructionofficial@emersonnj.org>
Subject: Re: Emerson: Computer parking

Peter, I spoke with our zoning official and he indicated that you client represented to him that all 54 spots where going to be provided. We need a meeting to get this clarified as the map and previous representations are not clear.  Please have your client come to Brough hall tomorrow, this is an emergent situation.  We need to resolve this before any fencing is installed;  please don't install any fencing until this is resolved. If you proceed to fence if will displace, without any reasonable notice numerous resident commuters.  My phone number is (201) 803-0530. Thank you.

JM

> On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:
>
> Mr. McCann:
>
> In response to your e-mail, please be advised that my client applied
> for and obtained fence permits from the Borough to fence off all the
> parking spaces (and associated buildings) located within the Block 419
> Redevelopment Area that are not commuter spaces or parking
> spaces/buildings associated with the three remaining commercial
> tenants.  The existing commuter spaces - which are the parking spaces
> referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
> consist of the approximately 20 spaces located along the railroad
> tracks on (vacated) Kenneth Avenue.  Please see the attached fence permits and map, which shows the proposed
> fenced-in areas in pink.
>
> I can confirm that my client did distribute flyers on vehicles parked
> in the affected parking spaces within Block 419 Redevelopment Area in
> an effort to inform the public that these spaces would soon be fenced
> off, consistent with the Borough-issued permits.  To my knowledge,
> however, my client did not distribute any such flyers on the vehicles
> located in the commuter parking spaces.
>
> Please feel free to contact me or Rob to discuss this issue further.
>

> Thank you,
>
> Peter
>
>
> PETER M. FLANNERY | BISGAIER HOFF, LLC
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>
> This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.
>
>
>
>
> -----Original Message-----
> From: John McCann [mailto:johnjmccann@optonline.net]
> Sent: Tuesday, September 17, 2019 10:27 PM
> To: Robert Kasuba <RKasuba@bisgaierhoff.com>
> Subject: Emerson: Computer parking
>
> Mr. Kasuba:
> As per your letter dated September 13, 2019 the borough will consider your request to vacate the computer lot of December 1, 2019.  Today we had an unfortunate incident in the borough involving your client. Residents parked in the computer parking lot found "no parking" flyers placed on their vehicles sometime during the day. Needless to say this is not consistent with our agreement as your letter clearly states.  This has unnecessarily caused a great deal of stress and anxiety for a number of people of Emerson.
>
> The Mayor and Council has asked me to obtain an explanation as to why this bizarre occurrence happed. Please provide me with an explanation. Thank you for your cooperation.
>
> JM.
>
>
> JM
> <IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>



Exhibit 75

**Jane Dietsche**

| | |
|---|---|
| **From:** | John McCann <johnjmccann@optonline.net> |
| **Sent:** | Tuesday, September 24, 2019 12:47 PM |
| **To:** | Mayor; Rich Sheola |
| **Subject:** | Fwd: Emerson: Computer parking |
| **Attachments:** | 20190924100125.pdf; ATT00001.htm |
| | |
| **Importance:** | High |

Please see attached.

Begin forwarded message:

**From: Peter Flannery <pflannery@bisgaierhoff.com>**
**Subject: RE: Emerson: Computer parking**
**Date: September 24, 2019 at 11:48:33 AM EDT**
**To: John McCann <johnjmccann@optonline.net>**

John-

Attached please find the revised map of the proposed fencing (in pink), consistent with our discussions yesterday.  Please confirm that the attached is acceptable and that we can proceed with installing the fencing.

Thanks,

Peter


PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.


-----Original Message-----
From: Peter Flannery
Sent: Monday, September 23, 2019 10:51 AM
To: 'John McCann' <johnjmccann@optonline.net>
Subject: RE: Emerson: Computer parking
Importance: High

1

John-

Please give me a call in the office as soon as you can - 856-375-2804. I have a potential solution for this issue.

Thanks,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Thursday, September 19, 2019 12:19 PM
To: Peter Flannery <pflannery@bisgaierhoff.com>
Cc: Mayor <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; zoingofficial@emersonnj.org; Mike Sartori <constructionofficial@emersonnj.org>
Subject: Re: Emerson: Computer parking

Peter, I spoke with our zoning official and he indicated that you client represented to him that all 54 spots where going to be provided. We need a meeting to get this clarified as the map and previous representations are not clear. Please have your client come to Brough hall tomorrow, this is an emergent situation. We need to resolve this before any fencing is installed; please don't install any fencing until this is resolved. If you proceed to fence if will displace, without any reasonable notice numerous resident commuters. My phone number is (201) 803-0530. Thank you.

JM

On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:

Mr. McCann:

In response to your e-mail, please be advised that my client applied for and obtained fence permits from the Borough to fence off all the parking spaces (and associated buildings) located within the Block 419 Redevelopment Area that are not commuter spaces or parking spaces/buildings associated with the three remaining commercial tenants. The existing commuter spaces - which are the parking spaces

2

referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
consist of the approximately 20 spaces located along the railroad
tracks on (vacated) Kenneth Avenue. Please see the attached fence permits and map,
which shows the proposed fenced-in areas in pink.

I can confirm that my client did distribute flyers on vehicles parked
in the affected parking spaces within Block 419 Redevelopment Area in
an effort to inform the public that these spaces would soon be fenced
off, consistent with the Borough-issued permits. To my knowledge,
however, my client did not distribute any such flyers on the vehicles
located in the commuter parking spaces.

Please feel free to contact me or Rob to discuss this issue further.

Thank you,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that
is privileged at law. It is not intended for transmission to, or receipt by, any
unauthorized persons. Unless you are the addressee (or authorized to receive for the
addressee), you may not use, copy or disclose to anyone the message or any
information contained in the message. If you have received the message in error, please
advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Tuesday, September 17, 2019 10:27 PM
To: Robert Kasuba <RKasuba@bisgaierhoff.com>
Subject: Emerson: Computer parking

Mr. Kasuba:
As per your letter dated September 13, 2019 the borough will consider your request to
vacate the computer lot of December 1, 2019. Today we had an unfortunate incident in
the borough involving your client. Residents parked in the computer parking lot found
"no parking" flyers placed on their vehicles sometime during the day. Needless to say
this is not consistent with our agreement as your letter clearly states. This has
unnecessarily caused a great deal of stress and anxiety for a number of people of
Emerson.

The Mayor and Council has asked me to obtain an explanation as to why this bizarre
occurrence happed. Please provide me with an explanation. Thank you for your
cooperation.

JM.


JM
<IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>



Exhibit 76

Exhibit 77

**Christine A. Principe**

| | |
|---|---|
| **From:** | Peter Flannery |
| **Sent:** | Wednesday, September 25, 2019 4:45 PM |
| **To:** | John McCann |
| **Subject:** | RE: Emerson: Computer parking |
| | |
| **Importance:** | High |

Hi, John - Please let me know regarding this issue as soon as possible so that my client can start installing the fence. Thanks.

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: Peter Flannery
Sent: Tuesday, September 24, 2019 11:49 AM
To: 'John McCann' <johnjmccann@optonline.net>
Subject: RE: Emerson: Computer parking
Importance: High

John-

Attached please find the revised map of the proposed fencing (in pink), consistent with our discussions yesterday. Please confirm that the attached is acceptable and that we can proceed with installing the fencing.

Thanks,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: Peter Flannery
Sent: Monday, September 23, 2019 10:51 AM
To: 'John McCann' <johnjmccann@optonline.net>
Subject: RE: Emerson: Computer parking
Importance: High

John-

Please give me a call in the office as soon as you can - 856-375-2804.  I have a potential solution for this issue.

Thanks,

Peter


PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Thursday, September 19, 2019 12:19 PM
To: Peter Flannery <pflannery@bisgaierhoff.com>
Cc: Mayor <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; zoingofficial@emersonnj.org; Mike Sartori <constructionofficial@emersonnj.org>
Subject: Re: Emerson: Computer parking

Peter, I spoke with our zoning official and he indicated that you client represented to him that all 54 spots where going to be provided. We need a meeting to get this clarified as the map and previous representations are not clear.  Please have your client come to Brough hall tomorrow, this is an emergent situation.  We need to resolve this before any fencing is installed;  please don't install any fencing until this is resolved. If you proceed to fence if will displace, without any reasonable notice numerous resident commuters.  My phone number is (201) 803-0530. Thank you.

JM

> On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:
>
> Mr. McCann:
>
> In response to your e-mail, please be advised that my client applied
> for and obtained fence permits from the Borough to fence off all the
> parking spaces (and associated buildings) located within the Block 419
> Redevelopment Area that are not commuter spaces or parking
> spaces/buildings associated with the three remaining commercial
> tenants.  The existing commuter spaces - which are the parking spaces
> referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
> consist of the approximately 20 spaces located along the railroad
> tracks on (vacated) Kenneth Avenue.  Please see the attached fence permits and map, which shows the proposed fenced-in areas in pink.
>
> I can confirm that my client did distribute flyers on vehicles parked
> in the affected parking spaces within Block 419 Redevelopment Area in
> an effort to inform the public that these spaces would soon be fenced
> off, consistent with the Borough-issued permits.  To my knowledge,
> however, my client did not distribute any such flyers on the vehicles
> located in the commuter parking spaces.
>
> Please feel free to contact me or Rob to discuss this issue further.
>
> Thank you,
>
> Peter
>
>
> PETER M. FLANNERY | BISGAIER HOFF, LLC
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>
> This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.
>
>
>
>
> -----Original Message-----
> From: John McCann [mailto:johnjmccann@optonline.net]
> Sent: Tuesday, September 17, 2019 10:27 PM
> To: Robert Kasuba <RKasuba@bisgaierhoff.com>
> Subject: Emerson: Computer parking
>
> Mr. Kasuba:

3

> As per your letter dated September 13, 2019 the borough will consider your request to vacate the computer lot of December 1, 2019.  Today we had an unfortunate incident in the borough involving your client. Residents parked in the computer parking lot found "no parking" flyers placed on their vehicles sometime during the day. Needless to say this is not consistent with our agreement as your letter clearly states.  This has unnecessarily caused a great deal of stress and anxiety for a number of people of Emerson.
>
> The Mayor and Council has asked me to obtain an explanation as to why this bizarre occurrence happed. Please provide me with an explanation. Thank you for your cooperation.
>
> JM.
>
>
> JM
> <IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>

4

Exhibit 78

**Christine A. Principe**

| | |
|---|---|
| **From:** | Peter Flannery |
| **Sent:** | Friday, September 27, 2019 2:20 PM |
| **To:** | John McCann |
| **Cc:** | Mayor; Rich Sheola; zoingofficial@emersonnj.org; Mike Sartori |
| **Subject:** | RE: Emerson: Computer parking |
| **Attachments:** | 20190924100125.pdf |

All:

Attached please find a revised layout showing the areas within the Block 419 Redevelopment Area (shown in pink and outlined in blue ink) that my client proposes to enclose with fencing.  The attached layout adds approximately 24 more parking spaces for commuters to the "commuter parking lot" and also allows emergency vehicles to access the rear of the 178 Kinderkamack Road building.  The attached layout is also consistent with the fencing layout Mayor DiPaola, Mr. McCann and I agreed to during our conference call held this past Monday, September 23rd.

I had previously forwarded the attached layout to Mr. McCann on Tuesday, September 24th, and, having received no response from Mr. McCann, I assume that the Borough has no concerns regarding same.

Accordingly, my client will move forward with installing the fencing consistent with the attached and pursuant to the previously issued fence permits.

Thank you,

Peter


PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.


-----Original Message-----
From: John McCann [mailto:johnjmccann@optonline.net]
Sent: Thursday, September 19, 2019 12:19 PM
To: Peter Flannery <pflannery@bisgaierhoff.com>
Cc: Mayor <mayor@emersonnj.org>; Rich Sheola <rsheola@emersonnj.org>; zoingofficial@emersonnj.org; Mike Sartori <constructionofficial@emersonnj.org>
Subject: Re: Emerson: Computer parking

Peter, I spoke with our zoning official and he indicated that you client represented to him that all 54 spots where going to be provided. We need a meeting to get this clarified as the map and previous representations are not clear.  Please have your client come to Brough hall tomorrow, this is an emergent situation.  We need to resolve this before any fencing is installed;  please don't install any fencing until this is resolved. If you proceed to fence if will displace, without any reasonable notice numerous resident commuters.  My phone number is (201) 803-0530. Thank you.

JM

> On Sep 19, 2019, at 9:41 AM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:
>
> Mr. McCann:
>
> In response to your e-mail, please be advised that my client applied
> for and obtained fence permits from the Borough to fence off all the
> parking spaces (and associated buildings) located within the Block 419
> Redevelopment Area that are not commuter spaces or parking
> spaces/buildings associated with the three remaining commercial
> tenants.  The existing commuter spaces - which are the parking spaces
> referred to in our letter to Mayor DiPaolo dated September 13, 2019 -
> consist of the approximately 20 spaces located along the railroad
> tracks on (vacated) Kenneth Avenue.  Please see the attached fence permits and map, which shows the proposed
fenced-in areas in pink.
>
> I can confirm that my client did distribute flyers on vehicles parked
> in the affected parking spaces within Block 419 Redevelopment Area in
> an effort to inform the public that these spaces would soon be fenced
> off, consistent with the Borough-issued permits.  To my knowledge,
> however, my client did not distribute any such flyers on the vehicles
> located in the commuter parking spaces.
>
> Please feel free to contact me or Rob to discuss this issue further.
>
> Thank you,
>
> Peter
>
>
> PETER M. FLANNERY | BISGAIER HOFF, LLC
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>
> This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.
>
>
>
>
> -----Original Message-----

> From: John McCann [mailto:johnjmccann@optonline.net]
> Sent: Tuesday, September 17, 2019 10:27 PM
> To: Robert Kasuba <RKasuba@bisgaierhoff.com>
> Subject: Emerson: Computer parking
>
> Mr. Kasuba:
> As per your letter dated September 13, 2019 the borough will consider your request to vacate the computer lot of December 1, 2019.  Today we had an unfortunate incident in the borough involving your client. Residents parked in the computer parking lot found "no parking" flyers placed on their vehicles sometime during the day. Needless to say this is not consistent with our agreement as your letter clearly states.  This has unnecessarily caused a great deal of stress and anxiety for a number of people of Emerson.
>
> The Mayor and Council has asked me to obtain an explanation as to why this bizarre occurrence happed. Please provide me with an explanation. Thank you for your cooperation.
>
> JM.
>
>
> JM
> <IMG-20190905-WA0061.pdf><Scan20190917050459.pdf>

3



Exhibit 79

**Christine A. Principe**

| | |
|---|---|
| **From:** | Peter Flannery |
| **Sent:** | Wednesday, October 2, 2019 2:17 PM |
| **To:** | Jack Klugmann; Rich Sheola; Aaron Weinberg; Jeff Wieboldt |
| **Cc:** | John McCann (mccannlaw@comcast.net); Jane Dietsche; Chief Mazzeo; Rich Silvia; Brian Gordon; Chris Knoller; Danielle DiPaola (ddipaola@emersonnj.org); Gerald Falotico; Jill McGuire; James Bayley; Ken Hoffman; Steve Aisenstark; Robert Kasuba |
| **Subject:** | RE: Emerson: Block 419 |

All:

My firm will provide a letter confirming the installation of the fence.  Thank you for your consideration and please contact me with any questions.

Thanks,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

---

**From:** Jack Klugmann [mailto:jack@accuratebuildersnj.com]
**Sent:** Wednesday, October 02, 2019 2:09 PM
**To:** Rich Sheola <rsheola@emersonnj.org>; Aaron Weinberg <aaron@accuratebuildersnj.com>; Jeff Wieboldt <jeff@accuratebuildersnj.com>
**Cc:** John McCann (mccannlaw@comcast.net) <mccannlaw@comcast.net>; Jane Dietsche <clerk@emersonnj.org>; Chief Mazzeo <mmazzeo@emersonpd.org>; Rich Silvia <buildingdept@emersonnj.org>; Brian Gordon <bgordon@emersonnj.org>; Chris Knoller <cknoller@emersonnj.org>; Danielle DiPaola (ddipaola@emersonnj.org) <ddipaola@emersonnj.org>; Gerald Falotico <gfalotico@emersonnj.org>; Jill McGuire <jmcguire@emersonnj.org>; James Bayley <jbayley@emersonnj.org>; Ken Hoffman <khoffman@emersonnj.org>; Peter Flannery <pflannery@bisgaierhoff.com>; Steve Aisenstark <steve@accuratebuildersnj.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>
**Subject:** Re: Block 419

Absolutely.  As part of our efforts to secure the properties a fence MUST be installed ASAP.  We have been trying to accomplish same but to no avail.  We have repeatedly reached out to the borough to get this fence up

but have heard nothing back. We will place signs and secure the buildings immediately but a fence must be installed to properly secure the properties.

Additionally our insurance requires that the vacant properties MUST be fenced in per their policy.

Please advise.

Jack Klugmann
CEO Accurate Builders & Developers
742 Ocean Ave
Lakewood NJ 08701
D. 732-941-0300
F. 732-730-7322
Accurateofnj.com

-------- Original message --------
From: Rich Sheola <rsheola@emersonnj.org>
Date: 10/1/19 9:33 PM (GMT-05:00)
To: Aaron Weinberg <aaron@accuratebuildersnj.com>, Jeff Wieboldt <jeff@accuratebuildersnj.com>, Jack Klugmann <jack@accuratebuildersnj.com>
Cc: "John McCann (mccannlaw@comcast.net)" <mccannlaw@comcast.net>, Jane Dietsche <clerk@emersonnj.org>, Chief Mazzeo <mmazzeo@emersonpd.org>, Rich Silvia <buildingdept@emersonnj.org>, Brian Gordon <bgordon@emersonnj.org>, Chris Knoller <cknoller@emersonnj.org>, "Danielle DiPaola (ddipaola@emersonnj.org)" <ddipaola@emersonnj.org>, Gerald Falotico <gfalotico@emersonnj.org>, Jill McGuire <jmcguire@emersonnj.org>, James Bayley <jbayley@emersonnj.org>, Ken Hoffman <khoffman@emersonnj.org>
Subject: Block 419

Gentlemen:

Please be advised the following properties are unsecured and need to locked and secured immediately:

- 184 Kinderkamack Road
- 19 Lincoln Blvd
- Former Emerson Volunteer Ambulance Corp on Kenneth Place

There is evidence of possible squatters in 184 Kinderkamack Road, the danger of which I don't believe I need to elaborate. Each building **MUST** be secured by whatever means necessary along with **NO TRESPASSING** signs posted on every corner and doorway of each building by close of business Wednesday, October 4, 2019.

If you have any questions, please contact me via e-mail immediately.

*Richard J. Sheola*
Interim Borough Administrator
Borough of Emerson
201-262-6086  ext 1202
www.emersonnj.org
Office Hours – Tuesday, Wednesday & Thursday

Exhibit 80

**Christine A. Principe**

| | |
|---|---|
| **From:** | Jack Klugmann <jack@accuratebuildersnj.com> |
| **Sent:** | Wednesday, October 2, 2019 2:37 PM |
| **To:** | Rich Sheola; Aaron Weinberg; Jeff Wieboldt |
| **Cc:** | John McCann (mccannlaw@comcast.net); Jane Dietsche; Chief Mazzeo; Rich Silvia; Brian Gordon; Chris Knoller; Danielle DiPaola (ddipaola@emersonnj.org); Gerald Falotico; Jill McGuire; James Bayley; Ken Hoffman; Peter Flannery; Steve Aisenstark; Robert Kasuba |
| **Subject:** | RE: Emerson: Block 419 |

All,

I just met with the fence contractor and they will be starting the installation middle to end of next week.

As well, our Asbestos Removal contractor has been working to remove the asbestos from the buildings and as soon as he is finished we will be submitting for demolition permits

Thank you,



**Jack Klugmann**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 551.206.0341
jack@accuratenj.com
accuratenj.com

---

**From:** Jack Klugmann
**Sent:** Wednesday, October 2, 2019 2:09 PM
**To:** Rich Sheola <rsheola@emersonnj.org>; Aaron Weinberg <aaron@accuratebuildersnj.com>; Jeff Wieboldt <jeff@accuratebuildersnj.com>
**Cc:** John McCann (mccannlaw@comcast.net) <mccannlaw@comcast.net>; Jane Dietsche <clerk@emersonnj.org>; Chief Mazzeo <mmazzeo@emersonpd.org>; Rich Silvia <buildingdept@emersonnj.org>; Brian Gordon <bgordon@emersonnj.org>; Chris Knoller <cknoller@emersonnj.org>; Danielle DiPaola (ddipaola@emersonnj.org) <ddipaola@emersonnj.org>; Gerald Falotico <gfalotico@emersonnj.org>; Jill McGuire <jmcguire@emersonnj.org>; James Bayley <jbayley@emersonnj.org>; Ken Hoffman <khoffman@emersonnj.org>; Peter Flannery <pflannery@bisgaierhoff.com>; Steve Aisenstark <steve@accuratebuildersnj.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>
**Subject:** Re: Block 419

Absolutely.  As part of our efforts to secure the properties a fence MUST be installed ASAP.  We have been trying to accomplish same but to no avail.  We have repeatedly reached out to the borough to get this fence up but have heard nothing back.  We will place signs and secure the buildings immediately but a fence must be installed to properly secure the properties.

Additionally our insurance requires that the vacant properties MUST be fenced in per their policy.

Please advise.

Jack Klugmann
CEO Accurate Builders & Developers
742 Ocean Ave
Lakewood NJ 08701
D. 732-941-0300
F. 732-730-7322
Accurateofnj.com


-------- Original message --------
From: Rich Sheola <rsheola@emersonnj.org>
Date: 10/1/19 9:33 PM (GMT-05:00)
To: Aaron Weinberg <aaron@accuratebuildersnj.com>, Jeff Wieboldt <jeff@accuratebuildersnj.com>, Jack Klugmann <jack@accuratebuildersnj.com>
Cc: "John McCann (mccannlaw@comcast.net)" <mccannlaw@comcast.net>, Jane Dietsche <clerk@emersonnj.org>, Chief Mazzeo <mmazzeo@emersonpd.org>, Rich Silvia <buildingdept@emersonnj.org>, Brian Gordon <bgordon@emersonnj.org>, Chris Knoller <cknoller@emersonnj.org>, "Danielle DiPaola (ddipaola@emersonnj.org)" <ddipaola@emersonnj.org>, Gerald Falotico <gfalotico@emersonnj.org>, Jill McGuire <jmcguire@emersonnj.org>, James Bayley <jbayley@emersonnj.org>, Ken Hoffman <khoffman@emersonnj.org>
Subject: Block 419

Gentlemen:

Please be advised the following properties are unsecured and need to locked and secured immediately:

- 184 Kinderkamack Road
- 19 Lincoln Blvd
- Former Emerson Volunteer Ambulance Corp on Kenneth Place

There is evidence of possible squatters in 184 Kinderkamack Road, the danger of which I don't believe I need to elaborate. Each building **MUST** be secured by whatever means necessary along with **NO TRESPASSING** signs posted on every corner and doorway of each building by close of business Wednesday, October 4, 2019.

If you have any questions, please contact me via e-mail immediately.

*Richard J. Sheola*
Interim Borough Administrator
Borough of Emerson
201-262-6086  ext 1202
www.emersonnj.org
Office Hours – Tuesday, Wednesday & Thursday

Exhibit 81

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

October 3, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Mr. Richard J. Sheola,
Interim Borough Administrator
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

> Re:  *Installation of Fencing*
>      *Block 419 Redevelopment*

Dear Mr. Sheola:

As you know, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the redevelopment of the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps.

Please be advised that Redeveloper is currently in the process of installing fencing on certain areas of the Property and anticipates that this installation will begin by next Friday, October 11, 2019. This fencing will be installed pursuant to the fence permits previously issued by the Borough and in accordance with the enclosed layout ("Layout"), which was previously agreed to by Redeveloper and the Borough.

The Layout depicts the areas on the Property (shown in pink and outlined in blue) which my client will enclose with fencing. Please note also that the Layout provides for approximately 43 commuter parking spaces in the vacated Kenneth Avenue and former Volunteer Ambulance Corps. areas of the Property. These 43 spaces will remain available for use by commuters until December 1, 2019 (per my letter to Mayor DiPaola dated September 13, 2019, which is also enclosed).

In addition, as Mr. Klugmann had indicated in his e-mail message to you dated October 2, 2019, Redeveloper is also in the process of securing the vacant buildings on the Property and posting the appropriate signage for same.

Borough of Emerson
October 3, 2019
Page 2

Thank you for your assistance with this matter and please feel free to contact me with any questions.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

Enclosures

cc:    Hon. Danielle DiPaola, Mayor, Borough of Emerson (via e-mail)
       Mr. Richard Silvia, Construction Official, Borough of Emerson (via e-mail)
       John J. McCann, Esq., Borough of Emerson Attorney (via e-mail)
       Emerson Redevelopers Urban Renewal, LLC

[A027-0002/529574/1]



# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

September 13, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Hon. Danielle DiPaolo, Mayor
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

> *Re:   Emerson Commuter Parking Spaces*
> *Block 419 Redevelopment*

Dear Mayor DiPaolo:

This firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the above matter.

As you know, Redeveloper proposes to redevelop the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps as a 4-story, 147-unit inclusionary residential development with parking garage, ground floor retail, amenities and other site improvements ("Project"). On December 10, 2018, Redeveloper obtained preliminary and final major site plan approval for the Project from the Borough Land Use Board ("Board"). The Board memorialized this approval through the adoption of a resolution ("Resolution") on December 28, 2018.

In accordance with Condition 11)EE. of the Resolution, Redeveloper is required to "[p]rovide the date when the commuter parking spaces are required to be vacated for the start of construction." This date is to be "approved by the subcommittee review team of the Emerson Land Use Board and the Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer."

By this letter, Redeveloper hereby submits for approval by the Borough, Board and their professionals a date of December 1, 2019 for the removal of the commuter parking spaces on the Property. Redeveloper is now the fee simple owner of all the parcels comprising the Property and Redeveloper is actively pursuing the relocation of the three remaining tenants on the Property. Redeveloper is also in the process of obtaining permits to demolish all the vacated buildings and to construct security fencing around the Property. Although the Redeveloper is not yet in a position to pull building permits for the Project, Redeveloper is hopeful that it will be in a position to do so shortly.

Redeveloper respectfully requests that the subcommittee review team of the Board and Borough Governing Body convene in the near future to discuss this proposed date of December 1, 2019 for the removal of the commuter parking spaces on the Property. Redeveloper will also make

Hon. Danielle DiPaolo
September 13, 2019
Page 2

itself available to attend this meeting to discuss the issue in greater detail with the subcommittee review team.

Thank you in advance for your cooperation with this matter and I look forward to hearing from the Borough regarding this issue.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

cc:    Jane Dietsche, Clerk, Borough of Emerson
       John J. McCann, Esq., Borough of Emerson Attorney
       Marie Shust, Secretary, Borough of Emerson Land Use Board
       Christopher Martin, Esq., Borough of Emerson Land Use Board Attorney
       Emerson Redevelopers Urban Renewal, LLC

[A027-0002/525016/1]

Exhibit 82

**Christine A. Principe**

| | |
|---|---|
| **From:** | Peter Flannery |
| **Sent:** | Friday, October 4, 2019 4:18 PM |
| **To:** | Rich Sheola; Robert Kasuba; Jack Klugmann |
| **Cc:** | Jane Dietsche; John McCann (mccannlaw@comcast.net); constructionofficial@emersonnj.org; Brian Gordon; Chris Knoller; Danielle DiPaola (ddipaola@emersonnj.org); Gerald Falotico; Jill McGuire; James Bayley; Ken Hoffman |
| **Subject:** | RE: Emerson: Building Security - 419 Block |

Mr. Sheola:

As I indicated in my letter to you dated October 3rd, my client is in the process of securing these buildings.  I will be sending you a letter on Monday addressing this issue in further detail.

Thank you,

Peter

**PETER M. FLANNERY | BISGAIER HOFF, LLC**
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

---

**From:** Rich Sheola [mailto:rsheola@emersonnj.org]
**Sent:** Friday, October 04, 2019 3:50 PM
**To:** Peter Flannery <pflannery@bisgaierhoff.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>; Jack Klugmann <jack@accuratebuildersnj.com>
**Cc:** Jane Dietsche <clerk@emersonnj.org>; John McCann (mccannlaw@comcast.net) <mccannlaw@comcast.net>; constructionofficial@emersonnj.org; Brian Gordon <bgordon@emersonnj.org>; Chris Knoller <cknoller@emersonnj.org>; Danielle DiPaola (ddipaola@emersonnj.org) <ddipaola@emersonnj.org>; Gerald Falotico <gfalotico@emersonnj.org>; Jill McGuire <jmcguire@emersonnj.org>; James Bayley <jbayley@emersonnj.org>; Ken Hoffman <khoffman@emersonnj.org>
**Subject:** Building Security - 419 Block

All:

Please see attached letter addressing building security.

*Richard J. Sheola*

1

Interim Borough Administrator
Borough of Emerson
201-262-6086  ext 1202
www.emersonnj.org
Office Hours – Tuesday, Wednesday & Thursday

Exhibit 83

**MAYOR**
DANIELLE DIPAOLA

**COUNCIL PRESIDENT**
GERALD FALOTICO

**COUNCIL MEMBERS:**
JIM BAYLEY
BRIAN GORDON
KENNETH HOFFMAN
CHRIS KNOLLER
JILL MCGUIRE

**INTERIM BOROUGH ADMINISTRATOR**
RICHARD J. SHEOLA

1 MUNICIPAL PLACE
EMERSON, NJ 07630

TEL 201-262-6086
FAX 201-262-0938



## BOROUGH OF EMERSON

emersonnj.org

October 4, 2019

Mr. Robert A. Kasuba
Mr. Peter M. Flannery
BISGAIER HOFF
25 Chestnut Street
Suite 3
Haddonfield, NJ 08033
**via email & US Postal Service**

*Re: Block 419 Redevelopment*

Dear Messer's Kasuba & Flannery:

I am in receipt of your letter dated October 3, 2019 relative to the above matter and appreciate the details and timing of the fence installation. However, it does not address the immediate concerns.

In my email of October 1, 2019, I believe it was made abundantly clear all of the buildings need to be secured immediately so to prevent unauthorized persons from occupying them and creating a potential life safety hazard. As of this afternoon, upon inspection, none of the buildings are secure or posted "no trespassing" as requested. This must be accomplished as directed. It is now three (3) days after my request, which is a reasonable amount of time to comply.

Please be assured we will be monitoring the matter very closely and look forward to having the buildings secured and eventually the fencing installed.

Thank you for your anticipated cooperation in this matter of public safety.

Very truly,

Richard J. Sheola
Interim Borough Administrator

cc:     Mayor & Borough Council
        John J. McCann – Borough Attorney
        Richard Silvia – Construction Code Official
        Emerson Redevelopers Urban Renewal, LLC

## "THE FAMILY TOWN"

Exhibit 84

**Christine A. Principe**

| | |
|---|---|
| **From:** | Rich Sheola <rsheola@emersonnj.org> |
| **Sent:** | Friday, October 4, 2019 4:35 PM |
| **To:** | Peter Flannery; Robert Kasuba; Jack Klugmann |
| **Cc:** | Jane Dietsche; John McCann (mccannlaw@comcast.net); constructionofficial@emersonnj.org; Brian Gordon; Chris Knoller; Danielle DiPaola (ddipaola@emersonnj.org); Gerald Falotico; Jill McGuire; James Bayley; Ken Hoffman |
| **Subject:** | RE: Emerson: Building Security - 419 Block |

Mr. Flannery

I look forward to that communication.

*Richard J. Sheola*
Interim Borough Administrator
 (p) 201-262-6086 ext. 1202
www.emersonnj.org
 Office Hours – Tuesday Wednesday & Thursday

---

**From:** Peter Flannery <pflannery@bisgaierhoff.com>
**Sent:** Friday, October 04, 2019 4:18 PM
**To:** Rich Sheola <rsheola@emersonnj.org>; Robert Kasuba <RKasuba@bisgaierhoff.com>; Jack Klugmann <jack@accuratebuildersnj.com>
**Cc:** Jane Dietsche <clerk@emersonnj.org>; John McCann (mccannlaw@comcast.net) <mccannlaw@comcast.net>; constructionofficial@emersonnj.org; Brian Gordon <bgordon@emersonnj.org>; Chris Knoller <cknoller@emersonnj.org>; Danielle DiPaola (ddipaola@emersonnj.org) <ddipaola@emersonnj.org>; Gerald Falotico <gfalotico@emersonnj.org>; Jill McGuire <jmcguire@emersonnj.org>; James Bayley <jbayley@emersonnj.org>; Ken Hoffman <khoffman@emersonnj.org>
**Subject:** RE: Building Security - 419 Block

Mr. Sheola:

As I indicated in my letter to you dated October 3rd, my client is in the process of securing these buildings.  I will be sending you a letter on Monday addressing this issue in further detail.

Thank you,

Peter

PETER M. FLANNERY | BISGAIER HOFF, LLC
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the

message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

---

**From:** Rich Sheola [mailto:rsheola@emersonnj.org]
**Sent:** Friday, October 04, 2019 3:50 PM
**To:** Peter Flannery <pflannery@bisgaierhoff.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>; Jack Klugmann <jack@accuratebuildersnj.com>
**Cc:** Jane Dietsche <clerk@emersonnj.org>; John McCann (mccannlaw@comcast.net) <mccannlaw@comcast.net>; constructionofficial@emersonnj.org; Brian Gordon <bgordon@emersonnj.org>; Chris Knoller <cknoller@emersonnj.org>; Danielle DiPaola (ddipaola@emersonnj.org) <ddipaola@emersonnj.org>; Gerald Falotico <gfalotico@emersonnj.org>; Jill McGuire <jmcguire@emersonnj.org>; James Bayley <jbayley@emersonnj.org>; Ken Hoffman <khoffman@emersonnj.org>
**Subject:** Building Security - 419 Block

All:

Please see attached letter addressing building security.

*Richard J. Sheola*
Interim Borough Administrator
Borough of Emerson
201-262-6086  ext 1202
www.emersonnj.org
Office Hours – Tuesday, Wednesday & Thursday

Exhibit 85

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

October 7, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Mr. Richard J. Sheola,
Interim Borough Administrator
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

     ***Re:  Block 419 Redevelopment***

Dear Mr. Sheola:

As you know, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the redevelopment of the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Emerson Borough ("Borough") tax maps.

I am writing this letter in response to your letter dated October 4, 2019, regarding the securing of vacant buildings on the Property.

As you know, Redeveloper has been attempting to secure and fence the vacated portions of the Property and prepare same for demolition for at least the last five (5) months. Redeveloper also informed you, Mayor DiPaola, Mr. McCann and many other Borough representatives at a meeting held on August 8, 2019, that Redeveloper needed to secure, fence off, and demolish the vacated portions of the Property as soon as possible for health and safety reasons. In response, Redeveloper experienced only delays in trying to secure the necessary utility shut-offs and fencing and demolition permits from the Borough.

When Redeveloper finally obtained zoning permits to install fencing for the Property on September 17, 2019, the Borough requested that Redeveloper hold off on installing any fencing so that the parties could properly identify the location of the commuter parking spaces on the Property (which are to remain accessible to the public until December 1, 2019). There was a misunderstanding over where these commuter parking spaces were located, and Redeveloper believed that they were located only in the vacated Kenneth Avenue area. Redeveloper accommodated this last minute request by the Borough and the parties agreed by telephone conference on September 23, 2019, that the commuter parking spaces constituted not only the parking spaces located in the vacated Kenneth Avenue area, but also the parking spaces located within the former Volunteer Ambulance Corps. property.

Redeveloper promptly prepared a revised fence map incorporating these additional commuter parking spaces and submitted it to the Borough the next morning. Despite daily follow-up, however, Redeveloper did not receive any confirmation from the Borough that the revised fence map was acceptable and that Redeveloper could move forward with the installation of the fencing. Finally, on September 27, 2019, we sent an e-mail to the Borough indicating that Redeveloper

Borough of Emerson
October 7, 2019
Page 2

would proceed with the installation of the fencing based on the revised fence map unless the Borough notified us otherwise.

After we received no response from the Borough other than an inquiry from the Borough Construction Official on September 30, 2019 as to when Redeveloper proposed to install the fencing, you sent an e-mail to Redeveloper – without copying me or anyone from my firm – at 9:33 p.m. on Tuesday, October 1, 2019. In your e-mail, you demanded that Redeveloper immediately install the fencing and secure the vacant buildings on the Property and gave Redeveloper less than twenty-four (24) hours ("by close of business Wednesday") to do so.

In response to your e-mail, Jack Klugmann of the Redeveloper responded the very next morning that Redeveloper was in the process of securing the vacant buildings on the Property and installing the fencing. I also sent you a letter on October 3, 2019, confirming that Redeveloper was going to install the fencing by October 11, 2019, and that Redeveloper was in the process of securing the vacant buildings on the Property.

Despite these prompt responses from Redeveloper, you sent your October 4th letter, accusing Redeveloper of not responding to the Borough's requests to secure the vacant buildings on the Property. You also mischaracterized our letter to you dated October 3rd, claiming that we did not address the issue of securing the Property when we clearly did so. Your letter was particularly galling because it has been the Borough, not Redeveloper, which has been preventing Redeveloper from properly securing the vacant buildings on the Property for months.

As we indicated in our e-mail to you on October 4, 2019, Redeveloper is in the process of securing the vacant buildings on the Property and should have these actions completed shortly. Given the size and number of vacant buildings on the Property, and the schedules of Redeveloper's subcontractors, it simply was not possible for Redeveloper to have satisfactorily secured these buildings by the end of last week (and certainly not within 24 hours of your late night request on October 1st).

Because of the great importance of the Property's redevelopment to the Borough, and to the Borough's Master Plan Housing Element and Fair Share Plan, Redeveloper requests that the Borough make a greater effort to communicate with and appropriately respond to Redeveloper. Moreover, given the Borough's concern regarding "potential life safety hazards" on the Property, as indicated in your letter, Redeveloper requests that the Borough issue the requested demolition permits for the Property as soon as possible after Redeveloper submits its final applications for same.

Thank you for your consideration.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

[A027-0002/530085/1]

Borough of Emerson
October 7, 2019
Page 3


cc:     Hon. Danielle DiPaola, Mayor, Borough of Emerson (via e-mail)
        Mr. Richard Silvia, Construction Official, Borough of Emerson (via e-mail)
        John J. McCann, Esq., Borough of Emerson Attorney (via e-mail)
        Emerson Redevelopers Urban Renewal, LLC

Exhibit 86

**Christine A. Principe**

| | |
|---|---|
| **From:** | Mendy Tendler <mendy@accuratebuildersnj.com> |
| **Sent:** | Wednesday, November 13, 2019 11:17 AM |
| **To:** | Rich Silvia; constructionofficial@emersonnj.org |
| **Cc:** | Jack Klugmann; Steve Aisenstark; Peter Flannery; Robert Kasuba |
| **Subject:** | RE: Emerson: |

Rich,

Will the plumbing permits be released before you receive the items stated, or will they also not be approved and released until you have everything.

Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

**From:** Rich Silvia <buildingdept@emersonnj.org>
**Sent:** Wednesday, November 13, 2019 11:01 AM
**To:** Mendy Tendler <mendy@accuratebuildersnj.com>; constructionofficial@emersonnj.org
**Cc:** Jack Klugmann <jack@accuratebuildersnj.com>; Steve Aisenstark <steve@accuratebuildersnj.com>; 'Peter Flannery' <pflannery@bisgaierhoff.com>; 'Robert Kasuba' <RKasuba@bisgaierhoff.com>
**Subject:** RE:

Mendy,

As I have previously stated to you, we must have a letter from the DEP stating that the entire property is clear and not require any remediation due to the site wells that are on the property. The plumbing official has the permits for the sewer caps, he will handle today. Our Borough Attorney has stated that the new Borough Administrator must review the contract to verify the insurance amount . I am awaiting word from him.
I will keep you posted as I get the information on the above. Once I receive all the items from above I can then and only then issue the demo permits. I hope this clarifies for you the information that I must have.
Thank you for your continued help on these issues.

Richard Silvia, Construction Official
Borough of Emerson, Building Department
1 Municipal Place
Emerson, NJ  07630
(201) 262-6086 x 1502
Fax (201) 599-6333
Constructionofficial@emersonnj.org
Web site: www.emersonnj.org

**From:** Mendy Tendler [mailto:mendy@accuratebuildersnj.com]
**Sent:** Monday, November 11, 2019 12:57 PM
**To:** constructionofficial@emersonnj.org
**Cc:** Jack Klugmann; Steve Aisenstark; Peter Flannery; Robert Kasuba
**Subject:**

Good afternoon Rich,
On Nov 5th we submitted demo applications for the following addresses;
19 Lincoln Blvd.
9 Kenneth St.
214 Kinderkamack Rd.
184 Kinderkamack Rd.
176 Kinderkamack Rd.
76-78 Linwood Ave.
Please can we have the cut and cap permits approved for all the above addresses as well as the complete demo permit approved for all of the addresses besides for 184 Kinderkamack (where the asbestos removal has not been completed).

Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

Exhibit 87

**Christine A. Principe**

| | |
|---|---|
| **From:** | Mendy Tendler <mendy@accuratebuildersnj.com> |
| **Sent:** | Wednesday, November 13, 2019 11:33 AM |
| **To:** | Rich Silvia; constructionofficial@emersonnj.org |
| **Cc:** | Jack Klugmann; Steve Aisenstark; Peter Flannery; Robert Kasuba |
| **Subject:** | RE: Emerson: |

Rich,

Can you please identify which provision in the construction code you are relying on not to issue the permits.

Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

**From:** Rich Silvia <buildingdept@emersonnj.org>
**Sent:** Wednesday, November 13, 2019 11:01 AM
**To:** Mendy Tendler <mendy@accuratebuildersnj.com>; constructionofficial@emersonnj.org
**Cc:** Jack Klugmann <jack@accuratebuildersnj.com>; Steve Aisenstark <steve@accuratebuildersnj.com>; 'Peter Flannery' <pflannery@bisgaierhoff.com>; 'Robert Kasuba' <RKasuba@bisgaierhoff.com>
**Subject:** RE:

Mendy,

As I have previously stated to you, we must have a letter from the DEP stating that the entire property is clear and not require any remediation due to the site wells that are on the property. The plumbing official has the permits for the sewer caps, he will handle today. Our Borough Attorney has stated that the new Borough Administrator must review the contract to verify the insurance amount . I am awaiting word from him.
I will keep you posted as I get the information on the above. Once I receive all the items from above I can then and only then issue the demo permits. I hope this clarifies for you the information that I must have.
Thank you for your continued help on these issues.

Richard Silvia, Construction Official
Borough of Emerson, Building Department
1 Municipal Place
Emerson, NJ  07630
(201) 262-6086 x 1502
Fax (201) 599-6333
Constructionofficial@emersonnj.org
Web site: www.emersonnj.org

**From:** Mendy Tendler [mailto:mendy@accuratebuildersnj.com]
**Sent:** Monday, November 11, 2019 12:57 PM
**To:** constructionofficial@emersonnj.org
**Cc:** Jack Klugmann; Steve Aisenstark; Peter Flannery; Robert Kasuba
**Subject:**

Good afternoon Rich,
On Nov 5th we submitted demo applications for the following addresses;
19 Lincoln Blvd.
9 Kenneth St.
214 Kinderkamack Rd.
184 Kinderkamack Rd.
176 Kinderkamack Rd.
76-78 Linwood Ave.
Please can we have the cut and cap permits approved for all the above addresses as well as the complete demo permit approved for all of the addresses besides for 184 Kinderkamack (where the asbestos removal has not been completed).

Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

2

Exhibit 88

**Christine A. Principe**

| | |
|---|---|
| **From:** | Jack Klugmann <jack@accuratebuildersnj.com> |
| **Sent:** | Thursday, November 14, 2019 4:47 PM |
| **To:** | Rich Silvia; Peter Flannery; Mendy Tendler; Robert Kasuba; constructionofficial@emersonnj.org |
| **Cc:** | Rivky Eisemann |
| **Subject:** | RE: Emerson: |

Well there are other properties that don't have any wells on them and you know that so please give us the permits for those. as well you had told us on the phone yesterday that you would get the plumbing inspector to sign off on the cut and caps for the sewer and water we have not received it yet. Time is of the essence

Thank you,



**Jack Klugmann**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 551.206.0341
jack@accuratenj.com
accuratenj.com

**From:** Rich Silvia <buildingdept@emersonnj.org>
**Sent:** Thursday, November 14, 2019 1:00 PM
**To:** 'Peter Flannery' <pflannery@bisgaierhoff.com>; Mendy Tendler <mendy@accuratebuildersnj.com>; Jack Klugmann <jack@accuratebuildersnj.com>; 'Robert Kasuba' <RKasuba@bisgaierhoff.com>; constructionofficial@emersonnj.org
**Cc:** Rivky Eisemann <rivky@accuratebuildersnj.com>
**Subject:** RE: Emerson:

Gentlemen,

There are three site wells on the property where the old gas station used to be which is now the Café. These are the ones I need to know about and by the way, that is your property Mindy.

Richard Silvia, Construction Official
Borough of Emerson, Building Department
1 Municipal Place
Emerson, NJ 07630
(201) 262-6086 x 1502
Fax (201) 599-6333
Constructionofficial@emersonnj.org
Web site: www.emersonnj.org

**From:** Peter Flannery [mailto:pflannery@bisgaierhoff.com]
**Sent:** Wednesday, November 13, 2019 4:30 PM

**To:** Mendy Tendler; Jack Klugmann; Robert Kasuba; constructionofficial@emersonnj.org
**Cc:** Rivky Eisemann
**Subject:** RE: Emerson:

Thanks for the clarification, Mendy.

---

**From:** Mendy Tendler [mailto:mendy@accuratebuildersnj.com]
**Sent:** Wednesday, November 13, 2019 4:24 PM
**To:** Peter Flannery <pflannery@bisgaierhoff.com>; Jack Klugmann <jack@accuratebuildersnj.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>; constructionofficial@emersonnj.org
**Cc:** Rivky Eisemann <rivky@accuratebuildersnj.com>
**Subject:** RE: Emerson:

Attached is the section of the environmental report that says there are no wells besides for the monitoring wells at 176 Kinderkamack.
The construction official keeps mentioning 3 wells. I reviewed the demo plan and it shows that there is one at 200 Kinderkamack Rd, lot 5, which is not part of our property.

Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

---

**From:** Peter Flannery <pflannery@bisgaierhoff.com>
**Sent:** Wednesday, November 13, 2019 3:29 PM
**To:** Mendy Tendler <mendy@accuratebuildersnj.com>; Jack Klugmann <jack@accuratebuildersnj.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>; constructionofficial@emersonnj.org
**Cc:** Rivky Eisemann <rivky@accuratebuildersnj.com>
**Subject:** RE: Emerson:

Mendy-

Are there monitoring wells on Lot 4 (200-214 Kinderkamack Road) as well, or is 176 Kinderkamack Road the site in question?

Thanks,

Peter

**PETER M. FLANNERY | BISGAIER HOFF, LLC**
25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
Tel: 856.375.2804 | Fax: 856.795.0312
pflannery@bisgaierhoff.com | www.bisgaierhoff.com

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized persons. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

---

**From:** Mendy Tendler [mailto:mendy@accuratebuildersnj.com]
**Sent:** Wednesday, November 13, 2019 12:21 PM
**To:** Jack Klugmann <jack@accuratebuildersnj.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>; constructionofficial@emersonnj.org
**Cc:** Peter Flannery <pflannery@bisgaierhoff.com>; Rivky Eisemann <rivky@accuratebuildersnj.com>
**Subject:** FW:

I just spoke to the Licensed Site Remediation Professional (LSRP) for the site, Moses Alcala. He confirmed that the two (2) remaining wells were properly abandoned following termination of the groundwater CEA in February 2018. He is going to send over copies of the well decommissioning records, which I will forward to you. In the meantime, I've attached a copy of the No further Action determination from the NJDEP in 1996, and the approval for the Groundwater CEA termination which documents that the NJDEP was satisfied that groundwater was clean and no further remediation was necessary at the site.

From our environmental consultant

Thank you,



**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

Exhibit 89

*Devereaux & Associates*

ARCHITECTS INC.

November 14, 2019

**VIA Email**

David Atkinsons, P.E., P.P, C.M.E
For the Borough Engineer
Borough of Emerson
34 Park Avenue
Lyndhurst, NJ 07071

**RE:    Resolution Compliance / Engineering Review**
**Prelim. & final Major Site Plan, Emerson Redevelopers Urban Renewal, LLC**
Block 419, Lots 1-4, 6.01, 6.02, & 7-10
Borough of Emerson
Bergen County, NJ
NEA No: EMERSPL 19.029

Dear David Atkinsons,

Attached please find the following revised plans and additional information in response outstanding items contained in the Approval Resolution for the above referenced project.

- 4 sets of the revised Architectural Floor Plans and Elevations (30" X 42") Sheets 1-8, revised 9.11.19

The following are our itemized responses to required items in the Approval Resolution:

2.1: Devereaux has revised the sections based on the following zoning definitions per Chapter 290-6:

Curb Level: the permanently established natural grade at the midpoint of the front building line.
Building Height: the vertical distance measured from the curb level, as defined, to the extreme height point of the building, exclusive of a chimney, weather vane or similar structure.
Building Line: a line to the front lot line and removed from it by the depth of the minimum front yard distance.

A Curb Level (noted as T.C. in Section A:A & B:B) was provided by the Civil Engineer. The T.C. has been labeled on the corner at Linwood and the corner of Lincoln Blvd at the front building line. The midpoint of these two Curb Levels, have been noted and from that



1477 Chain Bridge Rd, Suite 200
McLean, VA 22101
703.893.0102
www.devereauxarch.com

**Statile_012**

*Devereaux & Associates*

ARCHITECTS INC.

midpoint has been set to 50'-0" max building height.  In addition, based on Ordinance 209-70A(3) Item B; an additional 5'-0" in height for ornamentation, such as a parapet has been labeled/noted on the section.  Per Ordinance 209-70A(3) item C, each portion of the building that provides a cornice within the additional 5'-0". In addition to the sections, the given dimensions and T.C. can be seen on elevations #1, 2, 3, 6, 8, 9 and 10.  The location of the T.C. can be located on the first-floor plan, page #1.  The updated Section A:A and B:B can be reviewed on page #1 and #5.

In response to Linwood Elevation, located on page #5 elevation #7. We can reduce/revise the parapet to be 14" inches at this elevation but we would ask that since we have pulled the 4th floor back 5'-0" similar to the Kinderkamack and Lincoln Elevations.  In addition, we feel that esthetically reducing this parapet just at this location will not provide this building with a cohesive look.

4.6:  See statement on 2.1 for response.

4.17:  Devereaux look forward to response from Borough's Land Use Board Planner for a final determination.

4.18: See statement on 2.1 for response

4.22: Signage is not provided by Architect; Owner will provide signage for approval at Planning meeting per section 6.2.

4.28: Correct, there is no access restriction along Linwood.  There are no access restrictions along Lincoln, except height limitation of 12'-10".  We look forward to the review of the Emerson Police and Fire Department.

5.2: Please see revised Sheet #1, #2 and #3. Stall and drive aisle dimensions have been provided.

5.18: See revised Sheet #3, a photo of a rooftop equipment screen has been provided to represent what is intended; once the rooftop condensers have been provide in working drawings. The screen shall be prefinished to match the roof color.

5.19: The Architect agrees to use all good faith effort to satisfy this request during working drawings and will be presented in a meeting per section 6.2 prior to construction. In addition, we have included a photo of intention for the dumpster surround at the rear of the building; see sheet #1.



1477 Chain Bridge Rd, Suite 200
McLean, VA 22101
703.893.0102
www.devereauxarch.com

Statile_013

*Devereaux & Associates*

ARCHITECTS INC.

6.2: The Architect agrees to attend a meeting with the Land Use Board Planners and subcommittee to discuss comments regarding the finial architectural design and details; upon owner's approval.

6.13: In addition, we have provided revised to scale example floor plans on Sheet #7 and a new sheet #8. Building Height, see response on 2.1.

6.15: The Architect agrees to use all good faith effort to satisfy this request during working drawings and will be presented in a meeting per section 6.2 prior to construction.

6.27: Per sheet #1 Tables, this current project provides 147 Residential Dwelling units, 22 of which are COAH Dwelling units.

| BUILDING UNIT MIX ** | | | | | |
|---|---|---|---|---|---|
| FLOOR | UNIT TYPE | | | | FLOOR TOTAL |
| | STUDIO | 1 BEDRM | 2 BEDRM | 3 BEDRM | |
| GROUND FLOOR | 3 | 12 | 3 | 0 | 18 |
| SECOND FLOOR | 1 | 34 | 6 | 2 | 43 |
| THIRD FLOOR | 1 | 34 | 6 | 2 | 43 |
| FOURTH FLOOR | 1 | * 34 | * 6 | 2 | 43 |
| BUILDING TOTAL | 6 | 84 | 21 | 6 | 147 |

* BEDROOM COUNT MAY VARY AT 4TH FLOOR UNITS WITH 5' BALCONIES

** BEDROOM COUNT AND LOCATION MAY VARY ONCE IN CONSTRUCTION DOCUMENTS.

The 22 COAH units will be distributed throughout the building as required; 4 (four) Studio/1bedroom, 13 (thirteen) 2 bedrooms and 5 (five) 3 bedrooms.

| COAH DWELLING UNITS | | | | |
|---|---|---|---|---|
| 15% OF UNIT TOTAL = 147 * 0.15 = 22 UNITS | | | | |
| | NUMBER OF BEDROOMS | | | TOTAL UNITS |
| | 1 BDRM/STUDIO | 2 BEDROOM | 3 BEDROOM | |
| REQUIRED COAH | 20% | 60% | 20% | 100% |
| NUMBER OF UNITS | 22 * 0.20 = 4 | 22 * 0.40 = 13 | 22 * 0.20 = 5 | 22 |

0The Owner, is to provide specification on the required offsite 7 (seven) affordable units.

Correct, the residential units will be on the ground floor along Lincoln Blvd. and at the rear near the surface parking lot and round lot 5. There will be residential units above that on the second, third and fourth floor. There are three access points; primary access at the corner of Kinderkamack and Lincoln Blvd. With secondary entries as at the rear of the building, adjacent to lot #5 and within each floor of the parking garage. All entries are labeled with an arrow symbol on sheet #1.



1477 Chain Bridge Rd, Suite 200
McLean, VA 22101
703.893.0102
www.devereauxarch.com

Statile_014

*Devereaux & Associates*

ARCHITECTS INC.

A table has been added to sheet #1, to provide the total SQFT of retail space #1 and #2.

| RETAIL SQFT TOTAL | | | | FLOOR SQFT TOTAL |
|---|---|---|---|---|
| | RETAIL #1 | RETAIL #2 | | |
| FLOOR SQFT | 8,944 | 5,766 | | 14,700 |

6.28 (a):

Dimensions to each floor- Please see sheet #4 (elevations #1, #2 and #3) and Sheet #6 (elevations # 9 and #10) dimensions have been provided to the floor to floors.

Balconies -- All balconies with dimensions have been labeled on preliminary floor plans on sheet #7 & #8.

Reliefs -- The main building reliefs have been dimensioned on sheet #1 around the front of the building on sheet #1 first floor plan. In addition, per the architectural ordinance 209-70(A)2; each vertical articulation must be a minimum of one-foot deep.

Overhangs -- Building overhangs have been dimensioned on sheet #1 at Residential Lobby, Breezeway between Retail #1 & #2. There are no other building overhangs at the roof line.

Parapets/Cornices -- They have been labeled on sheet #4 (drawing #1), height and projection of each major parapet. In additional, dimensions have been added throughout elevations #1, #2, #3, #8, #9 and #10.

6.28 (c): See sheet #5 (Elevation #4) is the South Elevation at Lot #5, (Elevation #5) is the North Elevation at Lot #5.

6.28 (d): See statement on 2.1; for response.

6.28 (f): See statement on 2.1; for response.

6.28 (g): See statement on 2.1; for response.

6.28 (h): See statement on 2.1; for response.



1477 Chain Bridge Rd, Suite 200
McLean, VA 22101
703.893.0102
www.devereauxarch.com

Statile_015

*Devereaux & Associates*

ARCHITECTS INC.

6.28 (m): See sheet #1, #2 and #3, spot grades have been provided. At first floor near parking gate 47.5; at second floor 63.04; at third floor 73.44; and at fourth floor 83.83. All spot grades to be confirmed by the civil engineer.

6.28 (bb): In reviewing the overall building design; Linwood sidewalk has been increased to 12'-5" and Lincoln Blvd. side walk has been increased to 12'-4" to 14'-4", depending on location along the side walk.

6.30: We will await comments providing the building garage building height and waiver from the Boroughs Land Use Board Planners.

If there are any question regarding the statements above, please call 703-893-0102, thank you.

Sincerely,

Devereaux & Associates



1477 Chain Bridge Rd, Suite 200
McLean, VA 22101
703.893.0102
www.devereauxarch.com

Statile_016

Exhibit 90

# Bowman
## CONSULTING

STANLEY T. OMLAND, PE, PP, LEED AP
ERIC L. KELLER, PE, PP, LEED AP
WILLIAM H. HAMILTON, PP, AICP, LLA, LEED AP
GEOFFREY R. LANZA, PE, PP, LEED AP, CFM
SEAN A. DELANY, PE, PP
JAMES GIURINTANO, PE, PP, CME
MARTIN F. TIRELLA, PLS
THEODORE D. CASSERA, PE, PP
KEVIN P. BOLLINGER, PLS
WAYNE A. CORSEY, PE, PP
ANTHONY J. DILODOVICO, MS
DAVID B. DIXON, PLS, PP
ANTHONY FACCHINO, PE, PP, PLS
R. MICHAEL MCKENNA, PE, PP
JARYD MORAN, LLA
MARC L. OLMEDA, PLS
MICHAEL J. ROTH, PE
JAMES M. WARD, PE
PAUL J. WINTERS, PE, CME
JAMES R. WOODS, PE

November 22, 2019

Mayor and Council
Borough of Emerson
One Municipal Plaza
Emerson, NJ  07630

Attn.:  Jane Dietsche, RMC, Borough Clerk

RE:   **Resolution Compliance I Engineering Review**
      **Preliminary & Final Major Site Plan**
      **Emerson Redevelopers Urban Renewal, LLC**
      **Block 419, Lots 1-4, 6.01, 6.02 and 7-10**
      **Borough of Emerson, Bergen County, NJ**
      **BCG File No. 080642-C2-001**

Dear Honorable Mayor and Council:

We reviewed Neglia Engineering's letter dated July 12, 2019, and we offer the following responses to the comments (responses in ***bold italics***). Enclosed are the following:

- Six (6) copies of the response letter from Devereax & Associates Architects, dated November 14, 2019;
- Six (6) sets of signed and sealed Site Plan Sets, sheets 1 through 18, last revised 11/15/2019;
- Six (6) sets of signed and sealed Architectural Plan Sets, sheets 1 through 8, last revised 11/7/2019;
- Six (6) copies of the Soil Movement Calculations;
- Six (6) copy of the Bergen County Planning Board Conditional Approval, and
- Six (6) copies of the Bergen County Soil Conservation District Certification.

2.   <u>**Variances I Deviations I Waivers**</u>

NEA defers to the Borough of Emerson Land Use Board Planner and Attorney with respect to required variances, deviations and waivers from applicable requirements established within the Borough of Emerson Zoning Code. However, the following is noted with respect to the proposed building height:

Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 2 of 31

2.1.  In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290-69, the maximum allowable building height (in feet) for the CBD-10 Zone is 42 feet along public right-of-ways and 50 feet along railroad right-of-ways. Furthermore, in accordance with note 5 provided under the aforementioned Table A, "additional height is permitted in accordance with §290-70.A(3) and shall only be permitted on development parcels which are two (2) acres or greater. Further, the fifty (50) foot building height will only be permitted set back from the front building facade by a minimum of (5) feet in depth on buildings facing Lincoln Boulevard and Kinderkamack Road."   "Based on the above, it is NEA interpretation that the maximum allowable building height along Lincoln Boulevard, Kinderkamack Road and the subject railroad right-of-way to the west, when incorporating the requirements established within the above-referenced note and §290-70.A(3), is 50 feet. Likewise, it appears that the maximum allowable height along Linwood Avenue is 47 feet. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, the building height is defined as "the vertical distance measured from the curb level, as defined, to the extreme high point of the building, exclusive of a chimney, weather vane or similar structure."  Furthermore, the curb level is defined as "the permanently established natural grade at the midpoint of the front building line."  The Applicant has provided top of curb and top of roof profiles for the building facades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way.  Irrespective of the above required plan revisions, it appears that the Applicant is proposing a building height that exceeds 47 feet along Linwood Avenue. Therefore, based on the above definitions and requirements, it is NEA's opinion that the Applicant does not comply with the building height requirements for the CBD-10 Zone along Linwood Avenue. However, we defer to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same.

***The profiles have been amended to illustrate the alignment midpoint and to provide the building heights at these midpoints. We have revised the roof elevation on the profiles to correspond with the elevation of 95, as shown on the Architectural Plan Set. An additional roof line profile along the railroad right-of-way has been provided on Sheet 8. See response letter from Architect dated 11/14/2019 for further clarification.***



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 3 of 31

2.2.    In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290- 69 of the Borough of Emerson Zoning Code, the maximum allowable building height (in stories) for the CBD-10 Zone is four (4) stories. The Applicant is currently proposing to construct a four (4) story building with an additional parking level located on the roof. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, a building story is defined as *"That part of a building between a floor and the floor above or, in its absence, the ceiling or roof above."*  Based on this definition, it does not appear that the additional rooftop parking qualifies as a building story since the rooftop parking will not have a roof or ceiling enclosing the same, However, NEA defers to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same.

   ***Noted.***

**4.    Engineering Comments from Boswell Engineering Review Letter dated December 6, 2018 (NEA's responses to these comments are shown in bold):**

*Site Plan*

4.1.    *"The proposed site plan consolidates numerous lots within this block. The Applicant should provide testimony how the street addresses will be determined and how the lot configurations would be achieved, and if multiple lots are to remain. This may require a major subdivision of the consolidated parcels."*  **The Applicant has indicated by way of the submitted comment response letter that the subject parcels will be consolidated into one (1) lot under single ownership. All documentation related to the same shall be submitted for review.**

   ***We will comply with this requirement.***

4.6.    *"The plans should provide the location and datum where the building height is to be measured. The Emerson Code, Section 290-6 -DEFINITIONS - BUILDING HEIGHT states the building height is to be determined as the vertical distance measured from the curb level, as defined, to the extreme high point of the building exclusive of a chimney, weather vane or similar structure. The curbline datum references for each structure at the existing curblines shall be determined and shown on the plans so the height of the building can be determined in the field.*"  **The Applicant has provided top of curb and top of roof profiles for the building facades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 4 of 31

**elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way.**

*See our response to comment 2.1.*

4.9.    *"The Borough of Emerson may require the proposed 42-inch drainage line to remain the responsibility of the developer so a drainage easement may not be required. The proposed 42-inch RCP will require the existing storm drain manhole on Lincoln Boulevard to be reconstructed to provide enough wall surface to make the connection. The existing catch basin chamber on the north side of Linwood Avenue was constructed to accept a sleeve for the 42-inch RCP on the northeast corner of the chamber. The Applicant shall verify the elevation of the invert and demonstrate the proposed slope of the drainage line and connection to be Lincoln Boulevard drainage system."*  **The Applicant has provided stormwater conveyance calculations for the 25-year storm event.  However, the Applicant shall submit a stormwater management report, inclusive of existing and proposed peak flow rates, along with the associated hydrographs, to confirm the impact to the aforementioned conveyance system.**

*The Stormwater Management Report will be provided under separate cover.*

4.11.    *"Kinderkamack Road is a County road.  Therefore, the Applicant will require a Bergen County Planning Board Approval.  The Applicant shall provide testimony as to where they are in the Bergen County Planning Board review/approval process and further discuss all the County requirements."*  **This application has been approved by the Borough of Emerson Land Use Board.  As such, the above requested testimony is no longer applicable. However, the Applicant shall submit all correspondence and approvals from the Bergen County Planning Board for review.**

*A copy of the August 14, 2019 letter Bergen County Planning Board granting Conditional Approval is enclosed for your files.*

4.13.    *"The Applicant should provide testimony how residents form the complex will access the NJ Transit train platform. Will crosswalks be provided in the parking lot areas? Will there be pedestrian access other than along Linwood Avenue and Lincoln Boulevard?"*  **This application has been approved by the Borough of Emerson and Use Board.  As such, the above request for testimony is no longer applicable.  However, it is noted within the submitted comment response letter**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 5 of 31

**that the Applicant will assist with the Borough's efforts to create pedestrian routes between the proposed development and the Borough's New Jersey Transit train station located. As such, this comment remains applicable.**

*We will comply with this requirement.*

4.14.    *"The Borough's Police and Fire Departments shall review and comment with regard to emergency access, firefighting ability, site circulation and the like. It does not appear that the Applicant provided any type of fire truck area striping. The Applicant shall provide testimony with regard to this matter."*  **This application has been approved by the Borough of Emerson Land Use Board.  As such, the above request for testimony is no longer applicable.  However, this comment remains applicable until the Applicant has acquired plan review letters from the Borough of Emerson Police and Fire Departments.**

*We will comply with this requirement.*

4.15.    *"According to the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), the number of Barrier Free Parking spaces required for parking lots containing between 301 and 400 total parking spaces is seven (7) accessible parking spaces plus one (1) additional space to be van accessible. Therefore, the Applicant has satisfied this condition. Boswell takes no exception to this matter. The Applicant shall coordinate the location of these parking spaces with the Borough's Construction Official."*  **This comment remains applicable until the Applicant has confirmed the location of the required ADA-accessible parking spaces within the Borough Construction Official.**

*We will comply with this requirement.*

4.16.    *"There doesn't appear to be any place for trash to be stored and picked up. The Applicant shall provide testimony with regard to the location, frequency and time of garbage pickup. If garbage pickup is encountered during peak operational times, a backup into the site could occur not allowing the entering vehicles to access the angular parking stalls."*  **The Architectural Plan Set has been revised to illustrate the location of a proposed dumpster enclosure in the vicinity of the interior building trash room. In addition, the Applicant has indicated within the submitted comment response letter that trash removal operations will be conducted through a private hauler during off-peak hours. Overall, NEA takes no exception to overall trash removal operations. However, the Applicant shall revise the Site Plan Set to illustrate the location of the proposed trash enclosure location, as per the Architectural Plan Set.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 6 of 31

*The trash enclosure location has been coordinated with the Architectural Plan Set and the Site Plan has been revised. A detail has been provided on the Details sheet 17.*

## *Architecture*

4.17.   *"The Applicant should present testimony regarding the proposed exterior facade of the various buildings, including materials and colors, overhangs, facades, setbacks, railings, roofing styles, etc. Architectural renderings in 2D and 3D and in color should be provided to the Land Use Board to demonstrate how the redevelopment site will look from all four (4) sides of the property. Substantial, additional information will be required. The building designs shall be in conformance with Chapter 290 Article XIII, CBD-10 Central Business District Zones of the Emerson Zoning Code."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable.  However, based on NEA's review of the proposed building facade design and articulation, it appears that the Applicant complies with the standards established within Chapter §290-70.A (Architectural Guidelines) of the Borough of Emerson Zoning Code. NEA defers to the Borough's Land Use Board Planner for a final determination with respect to the proposed building facade components and compliance with applicable sections of the Borough of Emerson Zoning Code.**

   *Noted.*

4.18.   *"The architectural plan shows a cut away section view A-A on the northwest corner of Kinderkamack Road and Linwood Avenue with an overall height in excess of 50 feet. This is contrary to the maximum permitted building height for the redevelopment area. The Applicant shall explain this ·design feature, and if it complies with Chapter 290-69 of the Zoning Code."*  **See previous comments addressing the proposed building height.**

   *See response to comment 2.1.*

4.22.   *"No information has been provided concerning any retail store signage that may be required or anticipated for the site. All proposed advertising and site signage shall be shown on a supplemental plan and submitted to the Borough Planner and Borough Engineer for approval prior to construction and meet the latest requirements of the Emerson Code for signage restrictions."*  **This comment remains applicable and shall be addressed prior to construction.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 7 of 31

*We will comply with this requirement. The Owner will provide signage for approval. Signs shall meet the requirements of Section 232 of the Land Use Ordinance.*

*Traffic*

4.24.  *"The Applicant should provide testimony concerning how they anticipated the shared parking spaced between commuter spaces and retail spaces to operate, and the hours reserved for this designation. The Applicant should provide testimony regarding how many parking spaces will be reserved for commuter parking, where these spaces will be designated, and the fee, if any for parking."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, the Site Plan Set has been revised to illustrate the locations of proposed signs indicating the locations, as well as associated time restrictions of commuter parking spaces. The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station.**

*The signage has been revised to designate the parking spaces as "resident" commuter parking.*

4.25.  *"Testimony should be provided as to how many vehicles trips are expected to be generated during peak hours for the parking garage and the impacts on surrounding streets, particularly concerning the close proximity to the railroad grade crossing on Lincoln Boulevard."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, NEA has provided comments addressing the Traffic and Parking Assessment Report in Section 5 (Neglia Engineering Associates Technical Review Comments) below.**

*Noted.*

4.27.  *"The Applicant should present information and testimony as to how many vehicles can be queued for the Lincoln Boulevard entrance to the parking garage before they could affect vehicle flow along Lincoln Boulevard."* **This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, NEA has provided comments addressing the Traffic and Parking Assessment Report in Section 5 (Neglia Engineering Associates Technical Review Comments) below.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 8 of 31

*Noted.*

4.28.   *"The Applicant should provide testimony with regard to the days and hours of operation of the parking garage, the fees to the charges for visitors, the method of payment, a discussion concerning whether the fee is collected while entering or exiting the structure, whether a tow truck can be accommodated to service disabled vehicles, etc. Will the drive aisle from Lincoln Boulevard provide access to the surface parking lot without going through a gate? How would emergency vehicles enter the surface parking lot from Lincoln Boulevard?"* **As per the submitted Site Plan Set and Architectural Plan Set, as well as the Applicant's comment response letter there will be no access restrictions to the site via the driveways located along Lincoln Boulevard and Linwood Avenue.  However, access to parking levels 2 through 5 will be restricted via a parking gate for residents only. NEA defers to the Borough of Emerson Police and Fire Departments for comments regarding access to the site for emergency vehicles.**

*We will comply with any requirements of the Police and Fire departments.*

4.29.   *"The parking spaces for the surface plot and in the parking garage should be striped in a hairpin striping style to ensure the parked vehicles are centered in the spaces."* **This comment has not been addressed. The Site Plan Set and Architectural Plan Set shall be revised to illustrate hairpin striping within the parking lots.**

*A Hairpin Striping detail has been provided on Sheet 14.*

*Stormwater Management*

4.32.   *"No runoff from this site shall affect any adjacent site both during and subsequent to construction. Should a drainage issue persist, the Applicant shall remedy the matter at his/her own cost."* **Notation indicating the same has been provided on the Site Plan Set.  However, this comment remains applicable for the duration of construction.**

*Noted. We shall comply.*

*Site Lighting*

4.33.   *"A site lighting plan has not been provided for the redevelopment area. A site lighting plan is required to be designed in accordance with the Emerson Code, and site lighting at all property lines to other properties shall not exceed one (1) Fc.  Glare cannot exceed one (1) Fc along with westerly property line. The proposed lighting*



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 9 of 31

*should be shielded to reduce this intensity."* **The Applicant has revised the Site Plan Set to include a lighting plan. However, in accordance with Chapter §290-70.E(1)(c) of the Borough of Emerson Zoning Code, the maximum allowable illumination along the property line is 0.5 foot-candles. Based on the lighting plan, it appears that lighting levels along the westerly property line will exceed 0.5 foot-candles. In addition, in accordance with Chapter §290-70.E(1)(c) of the Borough of Emerson Zoning Code, access driveways are required to have a minimum illumination level of 1.0 foot-candle and an overall average illumination level of 2.0 foot-candles. Illumination levels at the driveways along Lincoln Boulevard and Linwood Avenue do not comply with these requirements. The Applicant shall revise the plan to comply with the above requirements or new variances from the Borough of Emerson Zoning Code will be required.**

***The Lighting Plan has been revised so that the intensity along the westerly property line does not exceed 0.5 fc. The access driveways meet the minimum and average illumination requirements.***

4.35.    *"The Board shall consider having the Applicant agree to a six (6) month period from the time of receiving the Certificate of Occupancy that site light is monitored, and should there be a problem, the Applicant shall correct said problem at his or her own cost. Lights shall be shielded to prevent light from escaping this site and affecting adjacent properties."* ***Notation indicating the same has been provided on the Site Plan Set However, this comment remains applicable and shall addressed within the six (6) month period following the completion of construction.***

***Noted. We will comply.***

<u>Soil Movement</u>

4.36.    *"The Applicant shall provide soil movement calculations from a licensed professional engineer in the State of New Jersey and file a Soil Moving Permit application all in accordance with §244 of the Emerson Code."* **This comment has not been addressed.**

***Soil movement calculations are enclosed for your review.***

4.37.    *"The Applicant shall obtain a Bergen County Soil Moving Permit and provide the Borough and this office [Neglia Engineering Associates] with a copy for our files."* **This comment remains applicable until the Applicant has obtained approval from the Bergen County Soil Conservation District. This comment shall be addressed prior to construction.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 10 of 31

*Certification from the Bergen County Soil Conservation District was received on September 24, 2019. A copy is enclosed for your files.*

<u>*Landscaping*</u>

4.38.  *"Boswell is in the process of reviewing the site landscaping. We will submit our comments under separate cover. Boswell takes no exception to have the review and approval of site landscaping to be stated in the resolution as a condition of approval should be Board so desire."*  <u>**NEA has reviewed the proposed landscaping and has provided comments below in Section 5 (Neglia Engineering Associates Technical Review Comments).**</u>

*Noted.*

<u>*General Comments and Jurisdictional Approvals*</u>

4.39.  *"All ADA pedestrian facilities constructed on site and within public rights-of-way or easements must be constructed in accordance with Federal ADA Standards. This includes ramps located at intersections as well as driveways. Compliant Design and Construction Certifications for Pedestrian Facilities within Public Rights-of-Way must be completed and submitted to the Municipal Engineer."*  <u>**This comment remains applicable.**</u>

*We will comply with this requirement.*

4.40.  *"All recently constructed sidewalk areas surrounding the redevelopment area will need to be removed and reconstructed in accordance with the streetscape design approved by the Borough of Emerson and prepared by Burgis Associates in 2005. It stall include street lighting pedestals and fixtures designed in conformance with the other street lighting in the downtown area. The reconstruction should include the area in ·front of Lot 5, to the extent possible, so the sidewalk and streetscape design is consistent along Kinderkamack Road."*  <u>**This comment still applies. In addition, the Applicant shall submit shop drawings for all streetscape elements (i.e. lighting, benches, trash receptacles, etc.) for review and approval prior to construction.**</u>

*The area in front of Lot 5 has been included in the extents of reconstruction to the maximum extent possible. We will comply with the shop drawing requirement.*



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 11 of 31

4.42. *"A complete set of construction plans will be required for submittal and approval of the Borough Engineer and Borough Planner prior to the start of any construction in the redevelopment area."* **This comment remains applicable and shall be addressed prior to construction.**

*We will comply.*

4.43. *"ADA Compliance Construction Certification must be submitted by the Project Engineer of record and must be submitted with the as-built drawings(s) after the ramp(s) have been inspected. The Certification Forms for construction must be obtained from the Municipal Engineer."* **This comment remains applicable.**

*We will comply with this requirement.*

4.44. *"The Applicant should obtain approvals and/or waivers from the following agencies:*

   a. *The Bergen County Planning Board,*
   b. *The Bergen County Soil Conservation District,*
   c. *Borough of Emerson Police Department (regarding site circulation and emergency access.)*
   d. *Borough of Emerson Fire Department (Emergency Access, Fire Lanes, Ability to fight fires)*
   e. *All other Agencies having jurisdiction."*

   **This comment remains applicable.  All correspondences and approvals from the above respective agencies shall be submitted for review.**

   *We will comply. Bergen County Soil Conservation District certification and Bergen County Planning Board Conditional approval are enclosed for your files.*

5. **Neglia Engineering Associates Technical Review Comments:**

5.1. The Applicant proposes to provide a total of 120 parking spaces on the ground floor parking garage level and the exterior parking area along the rear of the building. In accordance with the ADA Standards for Accessible Design provided by the Department of Justice, latest revised, parking facilities with 101 to 150 parking stalls are required to provide five (5) ADA accessible parking spaces. The Applicant is currently proposing a total of four (4) ADA accessible parking spaces within the ground floor parking garage level and exterior parking area along the rear of the building. The Applicant shall provide an additional ADA accessible parking space within the rear exterior parking area as a means of achieving compliance with the ADA Standards for Accessible Design provided by the Department of Justice, latest



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 12 of 31

revised. NEA recommends that this additional required space be located within the southernmost portion of the parking lot to provide an ADA-accessible parking space for commuters utilizing the Borough of Emerson New Jersey Transit train station across Linwood Avenue. **This comment has not been addressed.**

*We will comply with this requirement.*

5.2.   The Applicant shall provide parking stall and drive aisle dimensions for the parking garage levels. **This comment has not been addressed.**

*Parking stall and drive aisle dimensions have been provided within the parking garage levels. See architectural plans for further clarification.*

5.3.   As per the submitted Architectural Plan Set, the Applicant is proposing to construct a trash enclosure structure within a curb island located along a 14-foot service access lane. The location of the same shall be illustrated within the Site Plan Set and associated construction details shall be provided for review. In addition, the location of the proposed trash enclosure conflicts with proposed landscaping. The landscaping plan within the Site Plan Set shall be revised accordingly. **This comment has not been addressed.**

*See our response to comment 4.16. The landscaping conflict has been eliminated.*

5.4.   The Applicant shall provide construction details for the proposed bollards at the front building entrance at the Lincoln Boulevard and Kinderkamack Road intersection. **This comment has not been addressed.**

*A detail of the proposed bollards has been included on Details sheet 17.*

5.5.   The Applicant shall revise the grading plan within the Site Plan Set to include additional bottom of curb elevations along Lincoln Boulevard, Kinderkamack Road and Linwood Avenue. **This comment has not been addressed.**

*Additional bottom of curb elevations have been provided on the Grading Plan.*

5.6.   The proposed site improvements classify the project as a "Major Development" as defined under the Stormwater Management Adopted New Rule: N.J.A.C. 7:8 by disturbing more than an acre of land. As per the submitted Site Plan Set, under the proposed conditions, it appears that stormwater runoff generated within the site drains to the existing municipal conveyance systems within the Lincoln Boulevard,



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 13 of 31

Kinderkamack Road and Linwood Avenue right-of-ways via overland sheet flow, shallow concentrate flow and pipe conveyance. Under the proposed conditions, the Applicant intends to construct a 42-inch reinforced concrete pipe (RCP) that conveys stormwater runoff from the municipal conveyance system within Lincoln Boulevard to the conveyance system within Linwood Avenue. Stormwater runoff generated within the proposed exterior parking area will be directed to inlets that drain to the aforementioned 42-inch reinforced concrete pipe (RCP). The Applicant shall submit a stormwater management report, inclusive of existing and proposed peak runoff rates along with the associated hydrographs, demonstrating compliance with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8. **This comment has not been addressed.**

*A Stormwater Management Report will be submitted under separate cover.*

5.9.    The Applicant shall submit a stormwater maintenance manual for review. **This comment has not been addressed.**

*A Stormwater Maintenance Manual will be submitted under separate cover.*

5.10.    The Applicant shall revise the Site Plan Set to clearly illustrate how stormwater runoff generated by the building roof areas and parking levels will drain to the on-site stormwater conveyance system. **This comment has not been addressed.**

*Roof leader connections to inlets/conveyance system have been provided on the utility plan.*

5.11.    The Applicant shall be responsible for ensuring that any and all soils imported to the site are certified clean soils in accordance with current NJDEP Standards, with a copy of the said certification provided to the Borough of Emerson and NEA prior to the import of any material by a professional. Recycled material or demolished materials are not permitted for the purposes of backfilling a vacated excavation area. The Site Plan Set shall be revised to include notation indicating the same. **This comment remains applicable for the duration of the construction period.**

*A note (#78) has been added to the General Notes in the Site Plan Set.*

5.12.    The Applicant shall ensure that all disturbed work areas are stabilized. The Applicant shall topsoil, seed, hay, and straw mulch to ensure lawn growth, where appropriate. **This comment remains applicable for the duration of the construction period.**

*Noted. We will comply with the requirements of the certified Bergen County Soil Conservation District Soil Erosion Plan.*



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 14 of 31

5.13.  A Soil Evaluation Report shall be prepared and submitted by a licensed professional engineer in the State of New Jersey, prior to any construction. This report shall include the following content at a minimum:

- Soil boring or test pit logs and location map;

- Detailed procedures and methods used to conduct any soil test;

- Weather conditions at the time of any testing, including time, temperature, and the amount of precipitation within the preceding 48-hour period;

- Identification of the seasonal groundwater elevation;

- Field observations; data collected during any on-site test; derived/calculated infiltration rate(s), if applicable;

- A statement of certification signed and sealed by an appropriate professional attesting that the field and conditions observed are either suitable or unsuitable for construction of the approved stormwater management system. If unsuitable conditions are encountered, the Applicant shall include a proposed revised stormwater management plan. The revised plan must result in the equivalent runoff rate and volume as the originally approved plan; and

- NEA shall be notified 48 hours in advance of this testing so that a representative of our office may be present for this testing.

**This comment has not been addressed. The required Soil Evaluation Report shall be provided prior to commencement of construction.**

*We will comply as necessary for the stormwater management system.*

5.14.  The Applicant shall provide a final certification memorandum, prepared, signed, and sealed by a licensed engineer in the State of New Jersey before a recommendation to issue a final certificate of occupancy can be made. This certification shall contain the following content at a minimum:

- A chronological log of site visits that include the date, time, weather and the nature of stormwater management-related work;

- Signed and sealed certification of a licensed professional in the State of New Jersey attesting to the following:

    o  He/She was on-site and observed key phases of active construction;



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 15 of 31

  o He/She evaluated the as-built condition and that all aspects of the stormwater management system conforms to the approved plan or justify any exceptions thereto; and

  o He/She is of the professional opinion that the stormwater management system is expected to operate in accordance with the approved plan.

  **This comment remains applicable and shall be addressed prior to issuance of a final certificate of occupancy.**

  *We will comply with the inspection and reporting requirements identified above.*

5.15. The Applicant shall provide water usage and sanitary sewer calculations signed and sealed by a Professional Engineer licensed in the State of New Jersey to ensure that the existing systems provides sufficient capacities for the proposed development. The Applicant shall submit a set of plans to the Borough of Emerson DPW for review. **This comment has not been addressed.**

  *Water usage and sanitary sewer calculations shall be provided as part of the TWA applications to the NJDEP and copies shall be provided to your office.*

5.16. The Applicant shall perform a comprehensive thirty (30) day meter study for the existing sanitary sewers system within the Kinderkamack Road right-of-way, to ensure that adequate capacity is provided within the existing systems to service the proposed improvements. **This comment has not been addressed.**

  *We will contact your office to further discuss this requirement once the sanitary sewer report calculations are finalized.*

5.17. The Applicant shall acquire an NJDEP Treatment Works Approval and an NJDEP water extension permit for the proposed development. Copies of the same shall be provided to the Borough of Emerson and NEA, if necessary. **This comment has not been addressed.**

  *A copy of the TWA is enclosed for Borough Endorsement. A NJDEP water extension permit is not required as Suez water has a master permit.*



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 16 of 31

5.18. All rooftop equipment shall be sufficiently screened and baffled to satisfy all applicable noise ordinances. Notation indicating the same shall be provided within the Site Plan Set.  **This comment has not been addressed.**

*A note has been provided in the General Notes of the Site Plan Set. See Architectural response letter dated 11/14/2019 for further clarification.*

5.19. The Applicant shall illustrate the locations of all meters, transformers, generators, or other external equipment associated with the proposed building addition. All meters and transformers shall be screened and not visible from public view. Notation indicating the same shall be provided.  **This comment has not been addressed.**

*A note has been provided in the General Notes of the Site Plan Set.*

5.20. The Applicant is proposing to relocate overhead electric utility lines and poles. The Applicant shall provide associated documentation and approvals from the electric utility purveyor confirming the proposed overhead electric utility line and pole relocations.  **This comment has not been addressed.**

*We will comply.*

5.21. Based on the lighting plan provided within the Site Plan Set, no illumination will be provided along the Lincoln Boulevard sidewalk areas.  NEA recommends that the Applicant provide lighting improvements along this area.  **This comment has not been addressed.**

*Lighting has been provided along Lincoln Boulevard.*

5.22. The Site Plan Set and/or Architectural Plan Set shall be revised to include lighting iso-contours and a point-to-point lighting analysis for the parking garage levels, including the roof parking level.  **This comment has not been addressed.**

*This has been addressed. See response to comment 4.33.*

5.23. The Applicant shall provide an irrigation system to ensure that the proposed landscaping improvements thrive.  Notation indicating the same shall be provided within the Site Plan Set.  **This comment has not been addressed.**

*A note has been provided in the General Notes section of the Site Plan Set.*



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 17 of 31

5.24.  All street trees shall be limbed up to seven (7) feet at the time of planting. Notation indicating the same shall be provided within the Site Plan Set.  **This comment has not been addressed.**

*A note has been provided in the General Notes section of the Site Plan Set.*

5.25.  NEA has reviewed the Applicant's submitted Traffic and Parking Assessment Report. The Applicant provided trip generations for the proposed mixed-used development with 147 residential units and 17,300 square feet of retail based on the ITE's *'Trip Generation',* 10th Edition. This report is inclusive of trip generation data related to the proposed residential development.   The residential development will generate approximately 53 new trips during weekday morning peak hours and 65 new trips during the weekday evening hour. The proposed trip generation for the retail development is anticipated to be more than the proposed trip generation stated by the Applicant.  The Applicant shall address why the proposed trip generation for retail is not approximate to ITE's *'Trip Generation',* 10th Edition Land Use 820. In addition, based on the most recent Architectural Plan Set submission, the Applicant is proposing 14,700 square feet of retail space. The Traffic and Parking Assessment Report shall be revised accordingly.  **This comment has not been addressed.**

*The revised Traffic and Parking Assessment will be provided under separate cover.*

6.  **Resolution Compliance**

*Stipulations made by the Applicant:*

6.1.  Applicant shall comply with all landscaping comments regarding the application, which are to be submitted by the Board Engineer's office or the Board Planner's office, one or the other which shall be completed to the satisfaction of the Board Engineer and/or Board Planner. **See landscaping comments above.**

*Noted. We will comply.*

6.2.  Applicant will meet with the Land Use Board Planner and a subcommittee of the Governing Body for the Borough and the Land Use Board to discuss and address the Board's and the Borough's concerns and comments regarding the final architectural design and details of the project and all other aspects of the project. Applicant agrees to use all good faith efforts to satisfactorily address the Board's and Governing Body's concerns and comments through the subcommittee. The sample materials that were submitted as hearing evidence shall be the ones utilized during construction unless otherwise approved by the Borough. **This resolution condition remains applicable.**

*Noted. We will comply.*



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 18 of 31

6.3. Applicant shall dedicate at least fifty-five (55) of the seventy-three (73) surface parking spaces on the Property for the exclusive use by New Jersey Transit (Emerson Borough) train station users during the hours of 7:00 AM and 6:00 PM, Monday through Friday. The signage and permitting for these 55 commuter spaces shall be agreed upon between the Borough and Applicant. **The Applicant has revised the Site Plan Set to designate fifty-five (55) parking spaces for commuter use via proposed signage. The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station.**

*Noted. See response to comment 4.24.*

6.4. Insofar as the proposed development is constructed with the parking reduction set forth in Section §290- 71.A(a) of the Borough Code: medical office space - which shall include walk-in and urgent-care clinics and other medical, dental, treatment and therapy-related facilities - shall be a prohibited use in the proposed development. **The Applicant has provided notation within the Site Plan Set noting the above prohibited uses. However, the Applicant is advised that this resolution condition remains applicable.**

*Noted.*

6.6. Applicant shall provide drainage calculations for the proposed development for the review and approval of the Board Engineer. **This resolution condition has not been addressed. As stated above, the Applicant has submitted conveyance calculations associated with the proposed stormwater conveyance system. However, the Applicant shall submit an accompanying stormwater management report demonstrating that the development will comply with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8.**

*A Stormwater Management Report will be provided under separate cover.*

6.7. The Applicant shall provide any off-tract improvements required by the application consistent with the MLUL and the Redevelopment Agreement. **This resolution condition remains applicable, as required.**

*We will comply.*

6.8. There shall be a review after six (6) months to address any lighting concerns, and adjustments are to be made at the direction and approval of the Board Engineer. **This resolution condition remains applicable and shall be addressed six (6) months after the completion of construction.**

*We will comply. See response to comment 4.35.*



6.9.    Deliveries shall not be made from Kinderkamack Road and shall only be made in the rear of the building(s) of the proposed development.  **The Applicant has provided notation within the Site Plan Set noting the above.  However, the Applicant is advised that this resolution condition remains applicable**.

*We will comply.*

6.10.    Applicant will reasonably assist the Borough efforts to create pedestrian connections to and from the Property and the Borough's New Jersey Transit train station.  **This resolution condition remains applicable.**

*We will comply.*

6.11.    All standing snow of 2 inches or more, from one or multiple snow events, shall be removed from the Property by the Applicant at the Applicant's sole cost and expense.  **The Applicant has provided notation within the Site Plan Set indicating that snow accumulation of 4-6 inches or more, from one or multiple snow events, shall be removed from the property, at the Applicant's sole cost and expense.  However, the Applicant is advised that this resolution condition remains applicable.**

*We will comply.*

6.12.    Subject to obtaining the permission of the owner of Block 419, Lot 5 ("Lot 5"), and provided same does not encroach onto Lot 5, the Applicant shall continue the streetscape for the proposed development across the frontage of Lot 5.  **This resolution condition has not been addressed to date.**

*We will comply. The plans have been revised to show the reconstruction in front of Lot 5 to the extent pravticable.*

6.13.    Applicant shall revise the architectural plans to be to scale and to provide dimensions to confirm compliance with all Borough Code requirements, including but not limited to, the design standards set forth in the Redevelopment Plan, and the Applicant shall provide elevations of all four sides of the proposed development for review and approval by the Board Engineer and/or the Board Engineer.  **The Applicant has provided to-scale architectural drawings for review.  However, the Architectural Plan Set shall be revised to include additional dimensions associated with each of the building elevations.  NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the design standards set forth in the Redevelopment Plan.  However, please note NEA's comments regarding the building height, as stated in Section 2 (Variances / Deviations / Waivers) above.**

*Noted.*

6.14.    Applicant shall comply with all applicable requirements of the Redevelopment Agreement, the Settlement Agreement and UHAC with respect to the affordable



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 20 of 31

housing proposed as part of the development.  **This resolution condition remains applicable.**

*We will comply.*

6.15. Applicant shall design the HVAC units to be shielded from public view and shall provide some HVAC and vents for units suitable for future restaurant uses within the development to the approval of the Board Engineer.  **This resolution condition remains applicable. All documents related to the same shall be submitted for review.**

*We will comply.*

6.16. Applicant shall provide a point-to-point lighting plan for the review and approval of the Board Engineer.  **This resolution condition remains applicable.  The Applicant has provided a point-to-point lighting plan.  However, see the comments in Section 5 (Neglia Engineering Associates Technical Review Comments) above for additional required lighting information.**

*See response to comment 4.33.*

6.17. Applicant shall submit a directional sign package for the review and approval of the Board Engineer and/or Board Planner.  **This resolution condition has not been addressed.**

*See response to comment 4.22.*

*Conditions Specific to this Application:*

6.18. Applicant shall abide by all of the stipulations set forth at length above.  **This resolution conditions remains applicable.  See our responses above to the said stipulations.**

*We will comply.*

6.19. The Applicant shall submit revised site plan and architectural plan sets incorporating any and all applicable condition set forth herein, and conditions of all engineering reports and reports of the Land Use Board's professionals, and the subcommittee of the Board and the Governing Body, for the review and approval of the Board Engineer and/or Board Planner.  **This resolution conditions remains applicable.**

*Noted.*

6.20. The Applicant shall obtain the appropriate approvals, permits and/or letter for the Application from all applicable local, county, state and federal bodies and agencies, including, but not limited to, the following:



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 21 of 31

    a. Bergen County Planning Board;

    b. Bergen County Soil Conservation District;

    c. Borough of Emerson Police Department;

    d. Borough of Emerson Fire Department; and

    e. New Jersey Department of Environmental Protection.

**This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review.**

*We will comply.*

6.21 If any material changes to the site plan as approved by this Resolution of the Board are required by any other governmental body or agency, said changes are to be brought by the Applicant on a forthwith basis before the Board, which retains jurisdiction over the application. **This resolution conditions remains applicable.**

*We will comply.*

6.22 The Applicant shall at all times comply with all applicable rules, regulations, ordinances and statutes of the Borough of Emerson, County of Bergen, State of New Jersey and the federal government with regard to the development, including but not limited to, the Americans with Disabilities Act. **This resolution conditions remains applicable.**

*Noted.*

6.23 The Applicant agrees that the work to be performed consistent with this resolution will be consistent with Emerson's Redevelopment Plan. **This resolution conditions remains applicable.**

*Noted.*

6.24 Nothing herein grants the Applicant an approval of any material changes to this application as set forth in detail in this resolution. Any such changes or amendments will require amended site plan and/or variance approval from this Board, as applicable. **This resolution conditions remains applicable, as required.**

*Noted.*

6.25 The Applicant shall comply with the following comments set forth in the Boswell Engineering review letter dated December 6, 2018 ("Engineering Review Letter") and the Brigette Bogart Planning & Design Professionals, LLC review letter dated December 10, 2018 ("Planning Review Letter"):

    a. Engineering Review Letter Comments. **See outstanding comments above.**

    b. Planning Review Letter Comments. **NEA defers to the Land Use Board Planner with respect outstanding Planning Review Letter comments.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 22 of 31

*We will comply.*

6.26 The Applicant shall comply with the following final site plan checklist items:

a. Final Site Plan Checklist Item 2: Original tracings with signature lines. **This item remains applicable.**

b. Final Site Plan Checklist Item 3: Proof of execution of developer's agreement. **This item remains applicable.**

c. Final Site Plan Checklist Item 4: Proof of posting of performance and/or maintenance bonds. **This item remains applicable.**

d. Final Site Plan Checklist Item 5: Copies of recorded easements, rights-of-way or conveyances of open space or public easements, if required. **This item remains applicable, as required.**

e. Final Site Plan Checklist Item 6: Deposit of escrow funds for engineering inspections, and any other items required by the Borough. **This item remains applicable.**

f. Final Site Plan Checklist Item 7: Bergen County Planning Board approval. This item remains applicable. **All related documentation and approvals shall be submitted for review.**

g. Final Site Plan Checklist Item 9: Bergen County Soil Erosion and Sediment Control Plan approval, where required. This item remains applicable. **All related documentation and approvals shall be submitted for review.**

*We will comply with all the requirements of comment 6.26.*

6.27 The Settlement Agreement requires twenty-nine (29) affordable units, seven (7) of which may be provided off-site. The project will have 147 residential units including twenty-two (22) COAH or affordable units on-site and the Applicant will comply with the requirement of providing seven (7) off-site affordable units. The residential units will be on the ground floor along Lincoln Boulevard and on the ground floor in the rear parking lot. There will be residential units above that on the second, third and fourth floors. There are three access points: primary access points at the corner and one in the rear area. There will also be 14,700 square feet of retail space. **This resolution condition remains applicable.**

*Noted.*

6.28 The following construction drawings and site plan items are required to be submitted and approved by the subcommittee review team of the Emerson Land Use Board and Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer:



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 23 of 31

a. Provide building elevation drawings for all four (4) sides of the redevelopment area with dimensions for each floor, balconies, reliefs, overhangs, parapets, cornices, and any other requested items.  **The Applicant has provided building elevation drawings for each of the building facades.  However, as is noted elsewhere in this report, the Applicant shall provide additional dimensions on the said building elevation drawings.**

c. Provide building elevation views for the side of the complex to face the existing building on Lot 5.  **This resolution condition has not been addressed.  The Applicant shall provide additional building elevation drawings illustrating the proposed northerly and southerly building facades facing the existing building on Lot 5.**

d. Provide datum elevations and locations from where all height measurements will be made for field verification.  **As is stated elsewhere in this report, the Applicant has provided top of curb and top of roof profiles for the building facades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue.  These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height.  Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet.  The Applicant shall clarify this discrepancy.  Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the railroad right-of-way.**

e. The low point along Lincoln Boulevard may be the same as the final first floor elevation on the northeast corner of the building. Design area to drain properly to reduce possible flooding of recessed stair entrance on the northeast corner of the building.  **This item has not been addressed.  The Applicant shall revise the Site Plan Set to illustrate a means of ensuring that stormwater does not accumulate in the vicinity the recessed stair entrance at the northeast corner of the building.**

f. Provide top of curb profile of Lincoln Boulevard and. roof profile. **This item has been partially addressed.  See the comment associated with Item d above for additional required information.**

g. Provide top of curb profile of Kinderkamack Road and roof profile**.  This item has been partially addressed.  See the comment associated with Item d above for additional required information.**

h. Provide top of curb profile of Linwood Avenue and roof profile.  **This item has been partially addressed. See the comment associated with Item d above for additional required information.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 24 of 31

i.  Provide typical construction details for all curbs, parking lots, sidewalks, drainage, sanitary sewers, electrical connections, and any other items requested**. See Section 5 (Neglia Engineering Associates Technical Review Comments) above for any outstanding required construction details.**

j.  Provide construction staging concepts, where work will commence, and construction staging schedules.  **This item has not been addressed.**

k.  Provide plan and details of fences along the railroad property.  **The Applicant has revised the Site Plan Set to illustrate the location of fencing along the railroad property, along with an associated construction detail.  However, NEA recommends that the proposed fence include additional screening measures.**

l.  Provide the location of the PSE&G 230 KV underground electrical line located along the west side of the redevelopment property.  **This item has not been addressed.**

m.  Provide cross-sections, slopes and access controls for parking garage operation.  **The Applicant has provided proposed slopes for the parking garage ramps. However, the Site Plan Set and/or Architectural Plan Set shall be revised to include proposed contours and spot elevations for the parking garage levels.**

n.  Provide inverts and slopes for proposed drainage system throughout the site. **This item has been partially addressed. The Site Plan Set indicates the proposed inverts and slopes for the proposed drainage conveyance system.  However, the Site Plan Set shall be revised to illustrate how stormwater runoff from the roof area will drain to the on-site conveyance system.**

q.  Provide a site lighting plan with intensities plotted throughout site.  **This item has been partially addressed.  See additional comments provided in Section 5 (Neglia Engineering Associates Technical Review Comments) above for outstanding required lighting plan information.**

r.  Provide a streetscape lighting electrical plan to match county project lighting recently completed.  **This item has not been addressed.**

s.  Provide a construction plan and cross-sections for new curb line along Lincoln Boulevard.  **This item has not been addressed.**

u.  Provide quantity receipts for all recycled asphalt, concrete, contaminated soil, and steel removed from the site and presented to the Borough Superintendent of Public Works for municipal recycling credits.  **This item remains applicable and shall be enforced during construction.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 25 of 31

v. Provide traffic control plans for construction phases that will interfere with traffic flow on Kinderkamack Road, Lincoln Boulevard, and Linwood Avenue, to the satisfaction of the Borough Chief of Police. **This item has not been addressed.**

w. Provide documentation that all NJDEP requirements regarding the underground monitoring wells on the site have been satisfied for the redevelopment. **This item has not been addressed.**

x. Supply, relocate and modify the traffic signal equipment on the southwest corner of the Kinderkamack Road and Lincoln Boulevard intersection to the satisfaction of Bergen County. **This item remains applicable. The Applicant shall provide documentation confirming that the aforementioned traffic signal equipment is to be supplied, relocated and modified to the satisfaction of Bergen County prior to construction.**

y. Review and upsize the existing drainage line, as needed, along the south side of Lincoln Boulevard to provide additional flow capacity, once reviewed. **This item remains applicable. NEA will review the same upon receipt of the required stormwater management report, as stated above in Section 5 (Neglia Engineering Associates Technical Review Comments).**

bb. Provide ·a minimum of a 9.5-foot wide streetscape sidewalk design around the perimeter of the redevelopment zone, including along Linwood Avenue and Lincoln Boulevard. **The Applicant proposes to construct streetscape improvements along Kinderkamack Road. However, no streetscape improvements are proposed along Linwood Avenue or Lincoln Boulevard. Based on the configuration of the proposed building, 9.5-foot wide sidewalk areas for streetscape are not provided along Lincoln Boulevard or Linwood Avenue. NEA defers to the Borough's Land Use Board Planner with respect to the streetscape requirements along Lincoln Boulevard and Linwood Avenue.**

cc. Provide all necessary road widening easements, with parcel descriptions and parcel maps, to the County of Bergen and Borough of Emerson. **This item has not been addressed.**

dd. Provide a cost estimate for all curbing, sidewalk, drainage paving, streetscape lighting, traffic signs, pavement markings, traffic signal relocation, regulatory and warnings signs, and utility relocation. This estimate will be submitted for review and be the basis for the performance bond requirements. **This item remains applicable and shall be addressed prior to construction.**

ee. Provide the date when the commuter parking spaces are required to be vacated for the start of construction. **This item has not been addressed.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 26 of 31

hh.   Provide a written traffic report to support the traffic testimony presented at the December 10, 2018 Land Use Board meeting. **The Applicant has submitted a Traffic and Parking Assessment Report, as requested. However, see the comments with respect to the same provided in Section 5 (Neglia Engineering Associates Technical Review Comments).**

ii.   Provide an ADA compliance letter from a licensed New Jersey Professional Engineer to verify all ADA requirements have been installed in accordance with current requirements. **This item has not been addressed.**

jj.   Developer to agree to a six (6) month lookback regarding site lighting to resolve any and all complaints regarding non-complaint site lighting. **This item remains applicable.**

kk    Developer to abide by the noise ordinances for the Borough of Emerson. **This item remains applicable.**

ll.   Developer to abide by all New Jersey Transit and Federal Railroad Administration  requirements regarding construction techniques and operations near the New Jersey Transit rail line and ·crossings. **This item remains applicable.**

mm. Developer to abide by all New Jersey Department of Transportation and County of Bergen construction materials and methods of construction for work within the public right of way. **This item remains applicable.**

nn.   Developer to abide by all Bergen County Planning Board requirements. **This item remains applicable.**

oo.   Developer to abide by all Bergen County Soil Conservation District requirements. **This item remains applicable.**

*We will comply with all requirements of comment 6.28.*

6.29  Applicant shall schedule a pre-construction meeting with the Board Engineer, Borough Engineer & Board Planner prior to construction. **This resolution condition remains applicable and shall be addressed prior to construction.**

*We will comply.*

6.30  The parking garage structure shall not exceed the height requirements in the CBD-10 zone and levels and ramps of the garage are to be spaced at a height that is consistent with the requirements in the zone and to the satisfaction of the Board and Borough Engineer. **This resolution condition remains applicable. NEA has provided comments regarding the proposed building height in Section 2 (Variances / Deviations / Waivers) above. However, NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the height requirements established for the CBD-10 zone.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 27 of 31

*Noted. See response to comment 2.1.*

6.31    Applicant shall enter into the appropriate Developer's Agreement with the Borough and Land Use Board and shall post all necessary fees, escrows, and performance guarantees and payment of off-site improvements in the future. The Developer's Agreement shall be drawn by the applicant and submitted to the Borough and Planning Board Attorneys for review and approval. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

*We will comply.*

*General Conditions*

6.32    Applicant shall adhere to the Borough of Emerson's storm water management requirements with regard to groundwater recharge for a major development as required in by the Borough Ordinance. **This resolution condition remains applicable. See comments above in Section 5 (Neglia Engineering Associates Technical Review Comments).**

*A stormwater management report will be provided under separate cover.*

6.33    Applicant or any successor in interest shall address all recommendations and requirements of the Borough Police Department, Fire Department and Department of Public Works. **This resolution condition remains applicable.**

*We will comply.*

6.34    No certificate of occupancy will be granted unless all conditions imposed by this Land Use Board, and Land Use Board's professionals, Board Attorney, Planner, Engineer and the Borough's Attorney, Engineer and Planner have been satisfied in full. **This resolution condition remains applicable. See all outstanding engineering comments above. Applicant shall be responsible for obtaining any other approvals or permits from other governmental agencies as may be required by law, including, but not limited to, the Bergen County Soil Conservation District, and the New Jersey Department of Environmental Protection and Applicant shall comply with any requirements or conditions for such approvals or**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 28 of 31

**permits. This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review, as required.**

*Noted.*

6.35　Applicant is responsible for any environmental clean-up and/or environmental conditions as to the site as required by federal, state, coun1y and local governmental agencies and officials, which must be complied with to the satisfaction of each of the aforementioned agencies and officials. **This item remains applicable and shall be addressed, as required, All documentation related to the same shall be submitted for review, as required.**

*Noted.*

6.36　Applicant agrees to comply with any and all conditions and requirements of the Borough Engineer and/or Board Engineer with regard to Soil Movement, including but not limited to truck routes and hours of operation, and will comply with the Borough Engineer's requirements as to any and all soil movement, in conjunction with the Emerson Police Department. **This resolution condition remains applicable. See comments below with respect to specific conditions related to the Soil Movement Permit approval.**

*We will comply.*

6.37　Applicant shall submit revised plans, as necessary, with correct revision dates on all sheets. **This resolution condition remains applicable.**

*Noted.*

6.38　Applicant will comply with any and all requirements of the Property's water company. **This resolution condition remains applicable. All documentation related to the same shall be submitted for review, as required.**

*We will comply.*

6.39　All construction shall be completed in accordance with all ordinances and building requirements of the Borough of Emerson, the Uniform Construction Code of the State of New Jersey and in accordance with the instructions of the Construction Official of the Borough of Emerson, the Borough Engineer and in accordance with the requirements of all other departments of the Borough. **This resolution condition remains applicable.**

*Noted.*

6.40　Applicant is required to obtain a building permit, post all necessary fees and costs with the Borough of Emerson prior to any construction. This approval is subject to Applicant obtaining a building permit and any other State, County or Borough approvals if required. **This resolution condition remains applicable.**



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 29 of 31

*Noted.*

6.41   Applicant shall pay all fees, costs, bonds and escrows when due or becoming due and shall post all performance guarantees in connection with the review of this application prior and subsequent to the approval of this application. Any monies are to be paid within twenty {20) days of said request by the Borough's Chief Financial Officer. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

*We will comply.*

6.42   If an application before the Bergen County Planning Board is required and any material or substantial changes are required by the Bergen County Planning Board to the site plan as approved by this Resolution, then the Emerson Land Use Board retains jurisdiction over this application and reserves its right to amend or withdraw its approval of this application. **This resolution condition remains applicable.**

*Noted.*

6.43   Applicant shall file, as applicable, a deed restriction regarding any and all affordable units constructed pursuant to the approval granted herein, as same is required by N.J.A.C. §5:93-9.2(e). **This resolution condition remains applicable.**

*We will comply.*

6.44   Applicant shall comply with all affordable housing requirements of the Borough of Emerson Code as well as the Uniform Housing Affordability Control Rules, N.J.A.C. §5.80-26.1 et seq., including, but not limited to, administration of units, marketing, rent pricing and stratification, qualification and selection of households, and any other items. Documentation demonstrating such compliance is required as an ongoing condition of this approval. **This resolution condition remains applicable.**

*We will comply.*

6.45   All representations and stipulations made by Applicant or its agents shall be deemed conditions of this approval and any misrepresentations by Applicant contrary to the representations and stipulations made before the Land Use Board shall be deemed a violation of this approval. **This resolution condition remains applicable.**

*Noted.*

6.46   The action of the Land Use Board in approving this application shall not relieve Applicant of responsibility for any damages caused by this project, nor does the Land Use Board of the Borough of Emerson, or its reviewing professionals and agencies, accept any responsibility of design of the proposed improvement or for any damages



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 30 of 31

that may be caused by this development. **This resolution condition remains applicable.**

*Noted.*

6.47   Any and all conditions imposed upon Applicant in connection with the approval granted herein shall apply to any successor in interest to Applicant. **This resolution condition remains applicable."**

*Noted.*

6.48   All easements, deeds, subdivision maps and deed restrictions as may be required hereunder must be reviewed and approved by the Borough of Emerson and recorded by Applicant before any permit is issued by the Borough. **This resolution condition remains applicable.**

*Noted.*


*Soil Moving Permit Conditions*


6.49   Prior to the commencement of any soil operations (fill or cut), the Applicant agrees to develop trucking routes for the hauling of soil to the site which shall be submitted to the Borough for review and approval. The review will include the Borough's Police Department and engineering professionals. **This resolution condition has not been addressed.**

6.50   The Applicant agrees to comply with any and all conditions and requirements rendered by the Borough and/or Board Engineer with regard to soil movement, including but not limited to truck routes and hours of operations. **This resolution condition remains applicable.**

6.51   The Applicant will provide motor vehicle and general liability insurance for all necessary vehicles and parties involved in the soil movement in sums and form deemed appropriate by the Borough Attorney. **NEA defers to the Borough attorney with respect to this resolution condition.**

6.52   The Applicant agrees to comply with the Borough Police Department Traffic Control Officers in order to provide a safe means for moving soil as deemed required by the Borough Engineer or his designees. **This resolution condition remains applicable.**

6.53   The Applicant shall comply with any and all other applicable Borough regulations, ordinances and directives pertaining to soil movement. **This resolution condition remains applicable, as required.**

6.54   The Applicant shall obtain all other necessary governmental approvals and permits and shall perform all acts of compliance which may be required under the applicable Federal, State, County and local statutes, regulations and ordinances. The Applicant



Ms. Jane Dietsche
BCG 08642-C2-001
November 22, 2019
Page 31 of 31

shall submit to the Board copies of all permits or approvals, or in the alternative, written verification that no permits or approvals are required. **This resolution condition remains applicable.**

6.55   The Board reserves the right to require further review of this permit request in the event that another governmental entity requires "substantial modifications or revisions" to the plan as approved. **This resolution condition remains applicable.**

*We shall comply with all the Soil Moving Permit comments 6.49 through 6.55 above.*

Very truly yours
William H. Hamilton, PP, AICP, LLA, LEED AP

Principal
*whamilton@bowmanconsulting.com*

WHH/NL:
Enclosures
cc:    Marie Shust, Land Use Board Secretary *(via e-mail)*
       Christopher Martin, Esq., Land Use Board Attorney *(via e-mail)*
       Caroline Reiter, PP, Land Use Board Planner *(via e-mail)*
       David Atkinson, PE, PP, CME, Borough Engineer (via e-mail)
       Emerson Redevelopers Urban Renewal, LLC, Applicant *(via regular)*
       Joseph A. Paparo, Esq. Applicant's Attorney, Porzio, Bromberg & Newman, *(via regular mail)*
       Angela Kostelecky, R.A., Applicant's Architect, Devereaux & Associates *(via regular mail)*
       Charles D. Olivo, PE, PP, PTOE, Applicant's Traffic Engineer, Stonefield Engineering *(via e-mail)*
       Nicki Louloudis, PE, PP, CME, Bowman Consulting



Exhibit 91

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

November 25, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Robert G. Hermansen, Borough Administrator
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

       ***Re:   Emerson Commuter Parking Spaces***
             ***Block 419 Redevelopment***

Dear Mr. Hermansen:

As you know, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the above matter.

To date, Redeveloper has not yet received a response from the Borough of Emerson ("Borough"), the Borough Land Use Board ("Board"), or their professionals, to my letter to Mayor DiPaola dated September 13, 2019. In this letter, a copy of which is enclosed, Redeveloper proposed a date of December 1, 2019, for the removal of the commuter parking spaces located on the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps.

This December 1st date is quickly approaching and Redeveloper is in the process of applying for a permit to erect fencing to prohibit access to these commuter parking spaces. Please advise as soon as possible whether Redeveloper may begin prohibiting access to these commuter parking spaces on December 1, 2019.

In addition, please be reminded that Redeveloper has already constructed security fencing around the vacated portions of the Property and will be demolishing the vacant buildings on the Property as soon as the pending demolition permits are issued. Redeveloper is also in the process of removing the few remaining tenants from the Property. Although the Redeveloper is not yet in a position to apply for building permits for the Project, Redeveloper anticipates that it will be in a position to do so shortly.

To the extent that the subcommittee review team of the Board and Borough Governing Body still needs to convene to discuss this issue, Redeveloper respectfully requests that this subcommittee review team meet as soon as possible. As mentioned previously, Redeveloper will also make itself available to attend any such meeting to discuss the issue in greater detail with the subcommittee review team.

Emerson Borough Administrator
November 25, 2019
Page 2

Thank you in advance for your cooperation with this matter and I look forward to hearing promptly from the Borough regarding same.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

Enclosure

cc:     Hon. Danielle DiPaola, Mayor, Borough of Emerson
        Jane Dietsche, Clerk, Borough of Emerson
        John J. McCann, Esq., Borough of Emerson Attorney
        Marie Shust, Secretary, Borough of Emerson Land Use Board
        Christopher Martin, Esq., Borough of Emerson Land Use Board Attorney
        Emerson Redevelopers Urban Renewal, LLC

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

September 13, 2019

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Hon. Danielle DiPaolo, Mayor
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

>    *Re:  Emerson Commuter Parking Spaces*
>         *Block 419 Redevelopment*

Dear Mayor DiPaolo:

This firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the above matter.

As you know, Redeveloper proposes to redevelop the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps as a 4-story, 147-unit inclusionary residential development with parking garage, ground floor retail, amenities and other site improvements ("Project"). On December 10, 2018, Redeveloper obtained preliminary and final major site plan approval for the Project from the Borough Land Use Board ("Board"). The Board memorialized this approval through the adoption of a resolution ("Resolution") on December 28, 2018.

In accordance with Condition 11)EE. of the Resolution, Redeveloper is required to "[p]rovide the date when the commuter parking spaces are required to be vacated for the start of construction." This date is to be "approved by the subcommittee review team of the Emerson Land Use Board and the Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer."

By this letter, Redeveloper hereby submits for approval by the Borough, Board and their professionals a date of December 1, 2019 for the removal of the commuter parking spaces on the Property. Redeveloper is now the fee simple owner of all the parcels comprising the Property and Redeveloper is actively pursuing the relocation of the three remaining tenants on the Property. Redeveloper is also in the process of obtaining permits to demolish all the vacated buildings and to construct security fencing around the Property. Although the Redeveloper is not yet in a position to pull building permits for the Project, Redeveloper is hopeful that it will be in a position to do so shortly.

Redeveloper respectfully requests that the subcommittee review team of the Board and Borough Governing Body convene in the near future to discuss this proposed date of December 1, 2019 for the removal of the commuter parking spaces on the Property. Redeveloper will also make

Hon. Danielle DiPaolo
September 13, 2019
Page 2

itself available to attend this meeting to discuss the issue in greater detail with the subcommittee review team.

Thank you in advance for your cooperation with this matter and I look forward to hearing from the Borough regarding this issue.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

cc:    Jane Dietsche, Clerk, Borough of Emerson
John J. McCann, Esq., Borough of Emerson Attorney
Marie Shust, Secretary, Borough of Emerson Land Use Board
Christopher Martin, Esq., Borough of Emerson Land Use Board Attorney
Emerson Redevelopers Urban Renewal, LLC

Exhibit 92

**Christine A. Principe**

| | |
|---|---|
| **From:** | McCann Law <mccannlaw@comcast.net> |
| **Sent:** | Wednesday, November 27, 2019 2:45 PM |
| **To:** | Peter Flannery |
| **Cc:** | Robert Kasuba |
| **Subject:** | Re: Emerson: Block 419 Demo |

We will get this straightened out.

JM

On Nov 27, 2019, at 1:54 PM, Peter Flannery <pflannery@bisgaierhoff.com> wrote:

> John-
>
> FYI – I think your older e-mail was used by Silvia and you may not have received the messages
> below.  This matter is very concerning and we need to discuss it at our meeting on Monday.
>
> Thanks
>
> Peter
>
>
> **PETER M. FLANNERY | BISGAIER HOFF, LLC**
> 25 Chestnut Street | Suite 3 | Haddonfield, NJ 08033
> Tel: 856.375.2804 | Fax: 856.795.0312
> pflannery@bisgaierhoff.com | www.bisgaierhoff.com
>
> This electronic mail transmission may constitute an attorney-client communication that is
> privileged at law.  It is not intended for transmission to, or receipt by, any unauthorized
> persons. Unless you are the addressee (or authorized to receive for the addressee), you may
> not use, copy or disclose to anyone the message or any information contained in the
> message. If you have received the message in error, please advise the sender by reply e-mail,
> and delete or destroy the message. Thank you.

**From:** Jack Klugmann [mailto:jack@accuratebuildersnj.com]
**Sent:** Wednesday, November 27, 2019 1:42 PM
**To:** Rich Silvia <buildingdept@emersonnj.org>; Mendy Tendler <mendy@accuratebuildersnj.com>;
constructionofficial@emersonnj.org
**Cc:** administrator@emersonnj.org; johnmccann@optonline.net; Peter Flannery
<pflannery@bisgaierhoff.com>; Robert Kasuba <RKasuba@bisgaierhoff.com>
**Subject:** RE: Block 419 Demo

Rich with all due respect this is crazy you are clearly showing that you are doing what ever you can to
delay the project as well as to make as many problems for us as possible. Well I am fed up with it and we

are not going to put up with this anymore. You don't work for the borough you work for the dca. You are making up codes, just like you did with the asbestos,  you are holding back permits on properties that don't have issues you are not even issuing the cut and caps permits because you are on a mission to make problems. The fact that you are copying the borough attorney shows us that they are guiding you what to do which is illegal and puts your license on the line with the dca.  I will be reaching out to the dca to get involved, as well I am copying my attorneys on this email as I am going to be seeking all my legal rights to stop putting up with all the games you guys are throwing at me and to be compensated for the loses you are causing me.

Thank you,

<image002.jpg>

**Jack Klugmann**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 551.206.0341
jack@accuratenj.com
accuratenj.com

---

**From:** Rich Silvia <buildingdept@emersonnj.org>
**Sent:** Wednesday, November 27, 2019 1:26 PM
**To:** Mendy Tendler <mendy@accuratebuildersnj.com>; constructionofficial@emersonnj.org
**Cc:** Jack Klugmann <jack@accuratebuildersnj.com>; administrator@emersonnj.org; johnmccann@optonline.net
**Subject:** RE: Block 419 Demo

Mendy,

This is to confirm our discussion today concerning the Dry Cleaners located at 190 Kinderkamack Road. I just found out that the cleaners were there for 30 years. They did dry cleaning onsite using Perchloroethylen which is now banned. It is a cancer causing chemical that can spread into the ground and water if spilled. I do not know if the site is contaminated or not. I need verification from the DEP that the site is ok. This should not be very difficult to do. This chemical is very dangerous and I need to find out.

Richard Silvia, Construction Official
Borough of Emerson, Building Department
1 Municipal Place
Emerson, NJ  07630
(201) 262-6086 x 1502
Fax (201) 599-6333
Constructionofficial@emersonnj.org
Web site: www.emersonnj.org

---

**From:** Mendy Tendler [mailto:mendy@accuratebuildersnj.com]
**Sent:** Wednesday, November 27, 2019 11:35 AM
**To:** constructionofficial@emersonnj.org

**Cc:** Jack Klugmann
**Subject:** RE: Block 419 Demo

Hi Rich,
Just to clarify my previous email, I am not aware of any contamination at 190 Kinderkamack, but you are requesting verification of this before we demo. Please detail your concerns in an email.

Thank you,

<image005.jpg>

**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

---

**From:** Mendy Tendler
**Sent:** Wednesday, November 27, 2019 11:02 AM
**To:** constructionofficial@emersonnj.org
**Cc:** Jack Klugmann <jack@accuratebuildersnj.com>
**Subject:** Block 419 Demo

Hi Rich,
Can you please send me an email detailing the conversation we just had, explaining that we can't demo any properties until we clear up the situation with the past usage as a dry cleaners at 190 Kinderkamack, and any possible contamination that it may have caused.

Thank you,

<image005.jpg>

**Mendy Tendler**
Accurate Builders & Developers
32 Cross St, Suite 301, Lakewood, NJ 08701
P: 732.941.0300
C: 732.573.5296
mendy@accuratenj.com
accuratenj.com

3

Exhibit 93

BOROUGH OF EMERSON
1 MUNICIPAL PLACE
EMERSON, NEW JERSEY 07630

**UCC NEW JERSEY**
**CONSTRUCTION**
**PERMIT**

Date Issued 12/4/19
Control # C419-4
Permit #19-444

## IDENTIFICATION    Block 419    Lot 4

Wk Site Location  214 KINDERKAMACK ROAD    Qual

| | |
|---|---|
| Owner in Fee | EMERSON REDEVELOPERS LLC |
| Address | 32 CROSS STREET |
| | LAKEWOOD, NJ 08701- |

Telephone (732) 941-0300

| | |
|---|---|
| Contractor | V ROSE EXCAVATING |
| Address | 990 CEDAR BRIDGE |
| | BRICK, NJ 08723- |

Telephone (848) 992-9826
Lic. No. or Bldrs. Reg. No. 13VH08134000
Federal Emp. No. 26-0261148

I hereby granted permission to perform the following work:

| BUILDING | [ ] | ASBESTOS ABATEMENT (subchapter 8 only) |
|---|---|---|
| [X] PLUMBING | [ ] | LEAD HAZARD ABATEMENT |
| [ ] ELECTRICAL | [ ] FIRE PROTECTION | |
| [ ] ELEVATOR DEVICES | [ ] MECHANICAL | [X] DEMOLITION |
| | | [ ] OTHER |

DESCRIPTION OF WORK:

DEMOLITION

NOTE: If construction does not commence within one (1) year of date of issuance, or if construction ceases for a period of six (6) months, this permit is void.

| PAYMENTS (Office Use Only) | |
|---|---|
| Building | 950 |
| Electrical | 0 |
| Plumbing | 125 |
| Fire Protection | 0 |
| Mechanical | 0 |
| Elevator Devices | 0 |
| Other | |
| DCA State Permit Fee | 0 |
| Cert. of Occupancy | 0 |
| Other | 0 |
| Total | 1,075 |
| Check No. 508 | |
| Cash | |
| Collected By | |

Estimated Cost of Work $  7,500

_signature_ R.Reuel Siliwa
Construction official

12/4/19
Date

D.C.A. F170 (rev. 3/96)

BOROUGH OF EMERSON
1 MUNICIPAL PLACE
EMERSON, NEW JERSEY 07630

## UCC NEW JERSEY
## CONSTRUCTION
## PERMIT

Date Issued 10/9/19
Control # C-419-9
Permit # 19-445

**IDENTIFICATION**

Work Site Location    176 KINDERKAMACK RD

Block 419          Lot 9

Order in Fee   176 KINDERKAMACK RD

Address   EMERSON REDEVELOPERS URBAN REN

          LAKEWOOD, NJ 08701-

Telephone (732) 941-0300

Qual

Contractor   V ROSE EXCAVATING
Address   990 CEDAR BRIDGE
          BRICK, NJ 08723-
Telephone (848) 992-9826
Lic. No. or Bldrs. Reg. No. 13VH08134000
Federal Emp. No. 26-0261148

I hereby granted permission to perform the following work:

[X] BUILDING          [ ] PLUMBING            [ ] ASBESTOS ABATEMENT (Subchapter 8 only)
[X] ELECTRICAL        [ ] FIRE PROTECTION     [ ] LEAD HAZARD ABATEMENT
[ ] ELEVATOR DEVICES  [ ] MECHANICAL          [X] DEMOLITION
                                             [ ] OTHER

DESCRIPTION OF WORK:

DEMOLITION

NOTE: If construction does not commence within one (1) year of date of issuance,
or if construction ceases for a period of six (6) months, this permit is void.

Estimated Cost of Work $        7,500

_Richard Silvoro_
Construction Official

12/4/19
Date

| PAYMENTS (Office Use Only) | |
|---|---|
| Building | 950 |
| Electrical | 0 |
| Plumbing | 125 |
| Fire Protection | 0 |
| Mechanical | 0 |
| Elevator Devices | 0 |
| Other | 0 |
| DCA State Permit Fee | 0 |
| Cert. of Occupancy | 0 |
| Other | 0 |
| Total | 1,075 |
| Check No. 5096 | |
| Cash | |
| Collected By | |

-300-    EMERSON

BOROUGH OF EMERSON
1 MUNICIPAL PLACE
EMERSON, NEW JERSEY 07630

UCC NEW JERSEY
CONSTRUCTION PERMIT

Date Issued 12/9/19
Control # C419-10
Permit # 19-446

IDENTIFICATION    Block 419    Lot 10    Qual

Work Site Location   76-78 LINWOOD AVE

Owner in Fee   EMERSON REDEVELOPERS URBAN REN

Address   26026148
          LAKEWOOD, NJ 08701-

Telephone (732) 941-0300

Contractor   V ROSE EXCAVATING
Address   990 CEDAR BRIDGE
          BRICK, NJ 08723-
Telephone  (848) 992-9826
Lic. No. or Bldrs. Reg. No.  13VH08134000
Federal Emp. No.  26-026148

I hereby granted permission to perform the following work:

DEMOLITION

DESCRIPTION OF WORK:

[X] BUILDING          [ ] ASBESTOS ABATEMENT (Subchapter 8 only)
[ ] ELECTRICAL        [ ] LEAD HAZARD ABATEMENT
[X] PLUMBING          [ ] DEMOLITION
[ ] FIRE PROTECTION   [X] DEMOLITION
[ ] ELEVATOR DEVICES  [ ] OTHER
[ ] MECHANICAL

NOTE: If construction does not commence within one (1) year of date of issuance, or if construction ceases for a period of six (6) months, this permit is void.

PAYMENTS (Office Use Only)
Building                      950
Electrical                      0
Plumbing                      250
Fire Protection                 0
Mechanical                      0
Elevator Devices                0
Other                           0
DCA State Permit Fee            0
Cert. of Occupancy              0
Other                           0
Total                       1,200
Check No.  5205
Cash
Collected By

_____    _____
Construction Official       Date  12/4/19

Estimated Cost of Work $   8,000

-301-

BOROUGH OF EMERSON
1 MUNICIPAL PLACE
EMERSON, NEW JERSEY 07630

## UCC NEW JERSEY
## CONSTRUCTION
## PERMIT

Date Issued 12/9/19
Control # C419-7
Permit # 19-447

**IDENTIFICATION**          Block 419          Lot 7          Qual

We Site Location    9 KENNETH STREET

Owner in Fee    EMERSON REDEVELOPERS URBAN REN

Address    32 CROSS STREET
LAKEWOOD, NJ 08701-

Telephone    (732) 941-0300

Contractor    V ROSE EXCAVATING
Address    990 CEDAR BRIDGE
BRICK, NJ 08723-
Telephone    (848) 992-9826
Lic. No. or Bldrs. Reg. No.    13VH08134000.
Federal Emp. No.    26-0261148

Is hereby granted permission to perform the following work:

[X] BUILDING
[X] PLUMBING
[ ] ELECTRICAL
[ ] ELEVATOR DEVICES
[ ] MECHANICAL

[ ] ASBESTOS ABATEMENT (Subchapter 8 only)
[ ] FIRE PROTECTION
[ ] LEAD HAZARD ABATEMENT
[X] DEMOLITION
[ ] OTHER

**DESCRIPTION OF WORK:**

DEMOLITION

**NOTE:** If construction does not commence within one (1) year of date of issuance, or if construction ceases for a period of six (6) months, this permit is void.

Estimated Cost of Work $    7,600

_signature_          12/4/19
                     Date

_signature_
Construction Official

DC. #170 (rev. 3/96)

**PAYMENTS (Office Use Only)**

| | |
|---|---|
| Building | 950 |
| Electrical | 0 |
| Plumbing | 125 |
| Fire Protection | 0 |
| Mechanical | 0 |
| Elevator Devices | 0 |
| Other | |
| DCA State Permit Fee | 0 |
| Cert. of Occupancy | 0 |
| Other | 0 |
| Total | 1,075 |
| Check No. 5909 | |
| Cash | |
| Collected By | |

BOROUGH OF EMERSON
1 MUNICIPAL PLACE
EMERSON, NEW JERSEY 07630

## UCC NEW JERSEY
## CONSTRUCTION
## PERMIT

Date Issued 10/9/19
Control # C419-1
Permit # 19-448

IDENTIFICATION    Block 419    Lot 1    Qual

Work Site Location  19 LINCOLN BLVD

Owner in Fee  EMERSON REDEVELOPER/URBAN REN    Contractor  V ROSE EXCAVATING
Address  32 CROSS ST    Address  990 CEDAR BRIDGE
                                  BRICK, NJ 08723-
LAKEWOOD, NJ 08701-    Telephone (848) 992-9826
Telephone (732) 941-0300    Lic. No. or Bldrs. Reg. No. 13VH08134000
                            Federal Emp. No. 26-0261148

Is hereby granted permission to perform the following work:

[X] BUILDING           [X] PLUMBING            [ ] ASBESTOS ABATEMENT (Subchapter 8 only)
[ ] ELECTRICAL         [ ] FIRE PROTECTION     [ ] LEAD HAZARD ABATEMENT
[ ] ELEVATOR DEVICES   [ ] MECHANICAL          [X] DEMOLITION
                                               [ ] OTHER

DESCRIPTION OF WORK:

DEMOLITION

NOTE: If construction does not commence within one (1) year of date of issuance,
or if construction ceases for a period of six (6) months, this permit is void.

Estimated Cost of Work $  7,500

U.C.C. F170 (rev. 3/98)

_R.[signature] Sellers_    _12/4/19_
Construction Official        Date

| PAYMENTS (Office Use Only) | |
|---|---|
| Building | 850 |
| Electrical | 0 |
| Plumbing | 75 |
| Fire Protection | 0 |
| Mechanical | 0 |
| Elevator Devices | 0 |
| Other | |
| DCA State Permit Fee | 0 |
| Cert. of Occupancy | 0 |
| Other | 0 |
| Total | 925 |
| Check No. 508 | |
| Cash | |
| Collected By [initials] | |

EMERSON   -302-

Exhibit 94

CONFIDENTIAL

**REGULAR MEETING OF DECEMBER 17, 2019**
**CLOSED EXECUTIVE SESSION MEETING MINUTES**

I.  CLOSED EXECUTIVE SESSION - Resolution No. 307-19

☞**Motion** to go into an executive session to discuss matters exempt from the public as duly
noticed by Resolution No. 307-19 was **moved** by Councilwoman McGuire, **seconded** by
Councilman Knoller and carried by a roll call vote of 6-0:
**RC: Council members:**
**YES: Bayley, Hoffman, McGuire, Falotico, Knoller, Gordon**

| | | |
|---|---|---|
| #19-12/17-49 | Potential Litigation – Redevelopment Update | N.J.S.A. 10-4-7 |
| #19-12/17-50 | Potential Litigation – Lease Condemnation - Block 419, Lot 6.01 | N.J.S.A. 10-4-7 |
| #19-12/17-51 | Contract Negotiations – SRO | N.J.S.A. 10-4-7 |

**PRESENT**: Mayor DiPaola, Councilman Bayley, Council President Falotico, Councilman
Gordon, Councilman Hoffman, Councilman Knoller, Councilwoman McGuire

Also present were Borough Administrator Robert Hermansen, Borough Attorney John McCann,
Councilwoman-elect Argenzia and Borough Clerk Jane Dietsche.

| | | |
|---|---|---|
| **#19-12/17-51** | **Contract Negotiations – SRO** | **N.J.S.A. 10-4-7** |

Councilman Bayley departed the room for this portion of the Closed Session discussion.
Mr. Hermansen led the discussion and said that the Board of Education requested a 30-day out
within 30 days of the end of the year on the agreement. Originally it had been a 90 day out. The
final agreement was to a three-year contract with a 30 day out for a couple situations which
would be considered out of the norm. He would share a revised resolution for the Governing
Body to pass before the SRO Agreement went forward.

Councilman Bayley returned to the conference room at 9:06 p.m. for the remainder of the Closed
Session discussions.

| | | |
|---|---|---|
| **#19-12/17-49** | **Potential Litigation – Redevelopment Update** | **N.J.S.A. 10-4-7** |
| **#19-12/17-50** | **Potential Litigation – Lease Condemnation -** Block 419, Lot 6.01 | **N.J.S.A. 10-4-7** |

Mr. McCann provided the Governing Body with an update on the two topics above and
discussed Mr. Hermansen's proposal to have the Borough assist the Cork and Keg in seeking a
new location in town. He added that the Governing Body had an obligation under the
redevelopment agreement to proceed with the developer's request for lease condemnation but
they could hold off on any actual actions until January 2, 2020 as they tried to settle. This would
avoid lawsuits and protect the taxpayers. Council consensus was to concur with Mr. McCann's
advice.

Exhibit 95

CONFIDENTIAL

**REORGANIZATION MEETING OF JANUARY 2, 2020
CLOSED EXECUTIVE SESSION MEETING MINUTES**

**CLOSED EXECUTIVE SESSION - RESOLUTION No. 40-20**

☞**Motion** to go into an executive session to discuss matters exempt from the public as duly
noticed by Resolution No. 40-20 was **moved** by Council President Hoffman, **seconded** by
Councilwoman McGuire and carried by a roll call vote of 6-0:
**RC: Council members:**
**YES: Bayley, McGuire, Dinallo, Hoffman, Gordon, Argenzia**

| | | |
|---|---|---|
| #20-1/02-01 | Potential Litigation – Redevelopment Update | N.J.S.A. 10-4-7 |
| #20-1/02-02 | Potential Litigation – Lease Condemnation - Block 419, Lot 6.01 | N.J.S.A. 10-4-7 |

**PRESENT**: Mayor DiPaola, Councilwoman Argenzia, Councilman Bayley, Councilwoman
Dinallo, Councilman Gordon, Councilman Hoffman, Councilwoman McGuire

Also present were Borough Administrator Robert Hermansen, Borough Attorney John McCann
and Borough Clerk Jane Dietsche.

**#20-1/02-01     Potential Litigation – Redevelopment Update          N.J.S.A. 10-4-7**
**#20-1/02-02     Potential Litigation – Lease Condemnation -  N.J.S.A. 10-4-7**
**Block 419, Lot 6.01**

Mr. Hermansen provided an update on his part in negotiating with Cork and Keg, Mr. Scalco's
attorney, the redeveloper and his attorneys about relocating the Cork and Keg to another place on
Kinderkamack Road. He discussed two potential locations and their lease and space
considerations. He recommended not doing anything further regarding condemnation to see if the
parties could come to an amicable agreement.

P002212

Exhibit 96

BER-L-006300-15   06/24/2020 5:26:05 PM   Pg 34 of 36 Trans ID: LCV20201114789
Case 2:20-cv-04728-MCA-MAH   Document 84-4   Filed 10/28/24   Page 241 of 350
PageID: 2359

# MAYORS DISH: Emerson Governing Body Weathering Unwelcome Redevelopment



**Emerson Mayor Danielle DiPaola. | Photo by Murray Bass**

Alvarez Roofing -
Roof Repairs

Ad   We Specialize in
Roof Systems, Built-l

roofingbyalvarez.com

Learn more

EMERSON, N.J.—Mayor Danielle DiPaola, a Republican who inherited Democratic predecessor Louis Lamatina's agreements for a major mixed-use redevelopment project downtown, told the Greater Pascack Valley Chamber of Commerce on Jan. 29 that the borough has lost "seven of its thriving businesses due to redevelopment in the name of affordable housing."

In order to get 29 affordable housing units, Emerson "lost seven businesses so far. Two others are still open and they're fighting for their lives," she said at the chamber's annual mayors breakfast at The Iron Horse Restaurant in Westwood.

BER-L-006300-15   06/24/2020 5:26:05 PM   Pg 35 of 36 Trans ID: LCV20201114789
Case 2:20-cv-04728-MCA-MAH   Document 84-4   Filed 10/28/24   Page 242 of 350 PageID: 2360

DiPaola said the borough is "desperately" looking for a place to help relocate Cork & Keg liquor store at 188 Kinderkamack Road after the borough's redevelopment partner exercised their right to condemn the store's lease.



MONTVALE HEALTH
SPORT + SPINE
www.MontvaleHealth.com
ACUTE & CHRONIC
PAIN RELIEF
No Surgery · Gentle Treatments



**In Emerson, a Kinderkamack Road restaurant site was recently demolished to make way for Emerson Station, a mixed-use redevelopment project.**

She said the project, known locally as Block 419, was pitched such that it would result in something "similar to a Westwood Avenue" in Westwood.

"That's not what's happening," she said. She described 14,000 square feet of retail space, in addition to the majority of the first floor occupied by "a large gym for the people living in the building only. The project will have a five-story parking garage, and traffic is going to be a very big issue."

DiPaola also predicted a worsening of traffic on Linwood and Lincoln.

She said the borough hadn't seen many traffic benefits from the recent Kinderkamack Road corridor overhaul, saying the council is "reaching out to Bergen County and New Jersey Transit for meetings, asking them to come back and revisit this issue."

Case 2:20-cv-06723-MCA-MAH    Document 104-4    Filed 10/28/24    Page 243 of 350
PageID: 2361
BER-L-006300-15   06/24/2020 5:26:05 PM   Pg 36 of 36 Trans ID: LCV20201114789

Regarding the planned 29 affordable housing units, 22 will be incorporated into Emerson Station as three-, two-, and one-bedroom units. The remaining seven units, DiPaola said, will comprise a standalone building across from Dunkin' Donuts.

Alvarez Roofing - Roof Repairs

Ad   We Specialize in Roof Systems, Built-l

roofingbyalvarez.com

Learn more

**0 Comments**

Sort by   Oldest

Exhibit 97

# BISGAIER HOFF

**Attorneys At Law** A Limited Liability Company

Robert A. Kasuba
Member of the NJ Bar
E-mail: rkasuba@bisgaierhoff.com
Phone: (856) 375-2807

February 14, 2020

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Robert G. Hermansen, Borough Administrator
Borough of Emerson
146 Linwood Avenue
Emerson, New Jersey 07630

> *Re:  Emerson NJ Transit Station*
> *Block 419 Redevelopment*

Dear Mr. Hermansen:

As you know, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper") in connection with the above matter.

Redeveloper proposes to redevelop the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps as a 4-story, 147-unit inclusionary residential development with parking garage, ground floor retail, amenities and other site improvements ("Project"). On December 10, 2018, Redeveloper obtained preliminary and final major site plan approval for the Project from the Borough Land Use Board ("Board"). The Board memorialized this approval through the adoption of a resolution ("Resolution") on December 28, 2018.

In accordance with Condition 11)J. of the Resolution, Redeveloper is required to "reasonably assist Borough efforts to create pedestrian connections to and from the Property and the Borough's New Jersey Transit train station."

By this letter, Redeveloper requests an update regarding the Borough's efforts to create pedestrian connections to and from the Property and the Borough's New Jersey Transit train station, including input as to how Redeveloper can assist with these efforts. As needed, Redeveloper will also make its principals and its consultants available for a meeting or conference call to further discuss these issues with the appropriate Borough representatives.

Thank you in advance for your cooperation with this matter and I look forward to hearing promptly from the Borough regarding same.

Very truly yours,

BISGAIER HOFF, LLC

Robert A. Kasuba
Peter M. Flannery

Emerson Borough Administrator
February 14, 2020
Page 2


cc:    Hon. Danielle DiPaola, Mayor, Borough of Emerson
       Jane Dietsche, Clerk, Borough of Emerson
       John J. McCann, Esq., Borough of Emerson Attorney
       Marie Shust, Secretary, Borough of Emerson Land Use Board
       Christopher Martin, Esq., Borough of Emerson Land Use Board Attorney
       Emerson Redevelopers Urban Renewal, LLC

Exhibit 98

# Bowman
## CONSULTING

STANLEY T. OMLAND, PE, PP, LEED AP
ERIC L. KELLER, PE, PP, LEED AP
WILLIAM H. HAMILTON, PP, AICP, LLA, LEED AP
GEOFFREY R. LANZA, PE, PP, LEED AP, CFM
SEAN A. DELANY, PE, PP
JAMES GIURINTANO, PE, PP, CME
MARTIN F. TIRELLA, PLS
THEODORE D. CASSERA, PE, PP
KEVIN P. BOLLINGER, PLS
WAYNE A. CORSEY, PE, PP
ANTHONY J. DILODOVICO, MS
DAVID B. DIXON, PLS, PP
ANTHONY FACCHINO, PE, PP, PLS
R. MICHAEL MCKENNA, PE, PP
JARYD MORAN, LLA
MARC L. OLMEDA, PLS
MICHAEL J. ROTH, PE
JAMES M. WARD, PE
PAUL J. WINTERS, PE, CME
JAMES R. WOODS, PE

February 19, 2020

Chief Anthony Sottile
Emerson Fire Department
Borough of Emerson
146 Thomas Avenue
Emerson, NJ 07630

RE:     **Resolution Compliance I Engineering Review**
**Preliminary & Final Major Site Plan**
**Emerson Redevelopers Urban Renewal, LLC**
**Block 419, Lots 1-4, 6.01, 6.02 and 7-10**
**Borough of Emerson, Bergen County, NJ**
**BCG File No. 080642-C2-001**

Dear Chief Sottile:

Bowman Consulting has been retained as civil engineer for the above referenced project, also known as Emerson Station. The project is located on the westerly side of Kinderkamack Avenue between Lincoln Boulevard and Linwood Avenue and consists of a 4-story mixed-used multi-family residential and commercial building with parking for 307 vehicles.

A Site Plan approval for this project was granted in December 2018. As part of our resolution compliance, we have been requested to distribute drawings to your Department for review and comment, specifically as related to fire safety and access.

Enclosed for your review are the following:

- One (1) copy of Site Plan drawings, prepared by Bowman Consulting, sheets 1 through 18, last revised 11/15/2019, and
- One (1) copy of Architectural drawings, sheets 1 through 8, last revised 12/20/2019.

We would be more than happy to meet with you in person to facilitate your review, if necessary. Should you have any questions or comments, please feel free to contact me.

Very truly yours,
Nicki M. Louloudis, PE, PP, CME, CFM

Senior Project Manager
nlouloudis@bowmanconsulting.com

Bowman Consulting Group, Ltd.
54 Horsehill Road • Cedar Knolls, NJ 07927
Phone: 973.359.8400 • www.bowmanconsulting.com

Chief Anthony Sottile
Emerson Fire Department
BCG 08642-C2-001
February 19, 2020
Page 2 of 2


NL:
Enclosures
cc:     Marie Shust, Land Use Board Secretary *(via e-mail)*
        Rivky Eisemann / Mendy Tendler / Jack Klugman / Steve Aisenstark, Accurate Builders &
        Developers *(via e-mail)*
        William Hamilton, PP, AICP, LLA, LEED AP Bowman Consulting *(via e-mail)*



Exhibit 99

# Bowman
# C O N S U L T I N G

STANLEY T. OMLAND, PE, PP, LEED AP
ERIC L. KELLER, PE, PP, LEED AP
WILLIAM H. HAMILTON, PP, AICP, LLA, LEED AP
GEOFFREY R. LANZA, PE, PP, LEED AP, CFM
SEAN A. DELANY, PE, PP
JAMES GIURINTANO, PE, PP, CME
MARTIN F. TIRELLA, PLS
THEODORE D. CASSERA, PE, PP
KEVIN P. BOLLINGER, PLS
WAYNE A. CORSEY, PE, PP
ANTHONY J. DILODOVICO, MS
DAVID B. DIXON, PLS, PP
ANTHONY FACCHINO, PE, PP, PLS
R. MICHAEL MCKENNA, PE, PP
JARYD MORAN, LLA
MARC L. OLMEDA, PLS
MICHAEL J. ROTH, PE
JAMES M. WARD, PE
PAUL J. WINTERS, PE, CME
JAMES R. WOODS, PE

February 19, 2020

Chief Michael Mazzeo
Emerson Police Department
Borough of Emerson
146 Linwood Avenue
Emerson, NJ 07630

**RE:    Resolution Compliance I Engineering Review**
**Preliminary & Final Major Site Plan**
**Emerson Redevelopers Urban Renewal, LLC**
**Block 419, Lots 1-4, 6.01, 6.02 and 7-10**
**Borough of Emerson, Bergen County, NJ**
**BCG File No. 080642-C2-001**

Dear Chief Mazzeo:

Bowman Consulting has been retained as civil engineer for the above referenced project, also known as Emerson Station. The project is located on the westerly side of Kinderkamack Avenue between Lincoln Boulevard and Linwood Avenue and consists of a 4-story mixed-used multi-family residential and commercial building with parking for 307 vehicles.

A Site Plan approval for this project was granted in December 2018. As part of our resolution compliance, we have been requested to distribute drawings to your Department for review and comment.

Enclosed for your review are the following:

- One (1) copy of Site Plan drawings, prepared by Bowman Consulting, sheets 1 through 18, last revised 11/15/2019, and
- One (1) copy of Architectural drawings, sheets 1 through 8, last revised 12/20/2019.

We would be more than happy to meet with you in person to facilitate your review, if necessary. Should you have any questions or comments, please feel free to contact me.

Very truly yours,
Nicki M. Louloudis, PE, PP, CME, CFM

Senior Project Manager
nlouloudis@bowmanconsulting.com

Bowman Consulting Group, Ltd.
54 Horsehill Road • Cedar Knolls, NJ 07927
Phone: 973.359.8400 • www.bowmanconsulting.com

Chief Michael Mazzeo
Emerson Police Department
BCG 08642-C2-001
February 19, 2020
Page 2 of 2


NL:
Enclosures
cc:    Marie Shust, Land Use Board Secretary *(via e-mail)*
       Rivky Eisemann / Mendy Tendler / Jack Klugman / Steve Aisenstark, Accurate Builders &
       Developers *(via e-mail)*
       William Hamilton, PP, AICP, LLA, LEED AP Bowman Consulting *(via e-mail)*



Exhibit 100

Peter M. Flannery
Member of the NJ & NY Bars
E-mail: pflannery@bisgaierhoff.com
Phone: (856) 375-2804

February 20, 2020

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Christopher E. Martin, Esq.
Morrison Mahoney LLP
Waterview Plaza
2001 US Highway 46
Suite 200, Parsippany, NJ 07054

> *Re:  **Preliminary and Final Major Site Plan Approval
> Borough of Emerson Land Use Board
> Emerson Redevelopers Urban Renewal, LLC
> Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10***

Dear Mr. Martin:

As you know, this firm represents Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"). Redeveloper is redeveloping the property ("Property") designated as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10 on the Borough of Emerson ("Borough") tax maps as a 4-story, 147-unit inclusionary residential development with parking garage, ground floor retail, amenities and other site improvements ("Project"). On December 10, 2018, Redeveloper obtained preliminary and final major site plan approval ("Approval") for the Project from the Borough Land Use Board ("Board"). The Board memorialized this approval through the adoption of a resolution ("Resolution") on December 28, 2018 (a copy of which is enclosed).

Redeveloper is in receipt of the resolution compliance/engineering review letter of the Board's engineer, Neglia Engineering Associates ("Board Engineer"), last revised February 6, 2020 ("2/6/2020 Neglia Review Letter"), which provides comments regarding the revised plans and other materials for the Project that Redeveloper submitted to the Borough of Emerson in November, 2019 and December, 2019.

Please be advised that Redeveloper has several objections to the comments set forth in this 2/6/2020 Neglia Review Letter.

First, the Board Engineer has made a determination regarding the maximum building height for the Project which is inconsistent with the Approval. At paragraph 2, pages 2-3 of the 2/6/2020 Neglia Review Letter, the Board Engineer indicates that the proposed building ("Building") for the Project does not comply with the maximum building height requirements of the Borough's CBD-10 Zone. Specifically, the Board Engineer argues that, while the portions of the Building fronting on Lincoln Boulevard and Kinderkamack Road are permitted to be 50 feet, the portion of the Building fronting on Linwood Avenue cannot be higher than 47 feet.

The Board, however, has already made the determination that the permitted maximum height of the entire Building – which is a single building fronting on Lincoln Boulevard,

Christopher E. Martin, Esq.
February 20, 2020
Page 2

Kinderkamack Road, and Linwood Boulevard – is 50 feet. At the Board's hearing on December 10, 2018, the Board's engineer at the time, Gary Ascolese, P.E., of Boswell Engineering, agreed with Redeveloper's architect that the maximum building height for the Building – on all three frontages – was 50 feet. Enclosed please find the certified transcript for the December 10, 2018 hearing ("Transcript"), with this discussion at pages 35-36, 85-87, and 103 thereof.

The Board incorporated these findings into the Approval and confirmed that the Project did not require any variances, as memorialized by the Resolution. See Resolution, pp. 3, 8-9. Although the Board did require that Redeveloper provide revised elevations confirming the building height for the Building (see Resolution, pp. 12, 16-17), this condition was intended to confirm that the Building complied with the 50-foot building height maximum, and not to determine whether the Building's maximum height was 47 or 50 feet (which question had already been settled). See Transcript, pp. 35 and 103.

The Board Engineer's interpretation is not only contrary to the findings of the Board with respect to the Approval and the Resolution, but it is also inconsistent with a practical reading of the CDB-10 Zone ordinance ("Ordinance"). Although the Ordinance does indicate that a building fronting on Linwood Avenue has a maximum height of 47 feet while buildings fronting on Lincoln Boulevard and Kinderkamack Road have a maximum height of 50 feet, these different building height standards clearly contemplate a scenario where there are separate buildings fronting on different streets, e.g., a building fronting only on Linwood, a building fronting only on Lincoln Boulevard, etc. Where there is one building fronting on all three streets – as is the case with the Building – it is clear that the maximum building height would default to the higher building height standard (50 feet) governing Lincoln Boulevard and Kinderkamack Road.

Accordingly, Redeveloper requests that your office confirm in writing that the Building height is 50 feet for all frontages and that the proposed Building conforms to the Ordinance. Redeveloper also requests that the Board Engineer issue a revised compliance/engineering review letter confirming that the 50-foot height of the Building conforms to the Ordinance.

Second, the Board Engineer is requiring that Redeveloper comply with a condition involving a sewer study that was not a condition of the Approval. At paragraph 5.16, p. 13, of the 2/6/2020 Neglia Review Letter, the Board Engineer is requiring that Redeveloper complete a "comprehensive thirty (30) day meter study for the existing sanitary sewers system within the Kinderkamack Road right-of-way to ensure that adequate capacity is provided within the existing systems to service the proposed improvements." Such a condition, however, is not set forth in the Resolution or the review letters of the Board professionals incorporated therein. In addition, this condition was not even discussed, let alone stipulated to by Redeveloper, at the Board's hearing on the Project. Redeveloper's project engineer, Bowman Consulting, is also unaware of this condition being required in connection with any other governmental approvals for the Project. This condition is also unduly cost generative in violation of the Mount Laurel Doctrine.

Accordingly, Redeveloper requests that this request be withdrawn and that the Board Engineer issue a revised resolution compliance/engineering review letter omitting this condition.

Moreover, Redeveloper reserves the right to make additional objections to the 2/6/2020 Neglia Review Letter upon further review of same.

Christopher E. Martin, Esq.
February 20, 2020
Page 3

      Thank you in advance for your assistance with this matter and please feel free to contact me with any questions.

                    Very truly yours,

                    BISGAIER HOFF, LLC


                    Peter M. Flannery


cc:    Marie Shust, Secretary, Borough of Emerson Land Use Board
       David Atkinson, P.E., P.P., C.M.E., Neglia Engineering
       Lina P. Corriston, Esq.
       Emerson Redevelopers Urban Renewal, LLC

Exhibit 101

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102**
**Tel: (973) 643-7000**
**Fax (973) 643-6500**

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

Joseph B. Fiorenzo
Member
Admitted NJ, NY
Direct Dial: 973-643-5499
Email: jfiorenzo@sillscummis.com

100 Overlook Center, 2nd Floor
Princeton, NJ 08540
Tel: (609) 227-4600
Fax: (609) 227-4646

February 27, 2020

**VIA EMAIL: johnjmccann@optonline.net**
**and REGULAR MAIL**

John J. McCann, Esq.
The Law Office of John J. McCann, Esq.
13 Ponds Way
Oakland, New Jersey 07302

> **Re:** **Emerson Redevelopers Urban Renewal, LLC**
> **Emerson Station – Block 419, Emerson, New Jersey**

Dear Mr. McCann:

This firm has been retained by Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"), with respect to its relationship with the Borough of Emerson, and the project known as Emerson Station, being the construction of a 147 unit inclusionary residential building on Block 419, Kinderkamack Road, Emerson, New Jersey (the "Project").

The Project is part of the Settlement Agreement approved by the Superior Court of New Jersey in the Conditional Final Judgment in *In the Matter of the Application of the Borough of Emerson, Bergen County, For a Declaratory Judgment*, Bergen County Law Division, Docket No. BER-L-6300-15 (the "Conditional Final Judgment"), entered on January 25, 2019. The Hon. Gregg A. Padovano, J.S.C., retains jurisdiction over the Borough's compliance with the Conditional Final Judgment and the Settlement Agreement.

Pursuant to the Settlement Agreement as incorporated into the Conditional Final Judgment, the Borough is required to complete 73 Fair Share units, of which 29 units will be built by Redeveloper, with 22 units physically within the Project. Further, the Settlement Agreement specifically recites and is conditioned upon the fact that the Borough has a realistic opportunity to provide 29 units of its Fair Share units through the Redevelopment Agreement with the Redeveloper. The Settlement Agreement contemplated the Borough's good faith cooperation with

**Sills Cummis & Gross**
A Professional Corporation

John J. McCann, Esq.
February 27, 2020
Page 2

and assistance to the Redeveloper in completing the Project pursuant to the Redevelopment Agreement. Further, compliance with the Settlement Agreement and the Conditional Final Judgment is necessary for the Borough to continue to be "immune from exclusionary housing lawsuits, including but not limited to 'builder's remedy' lawsuits for its third round of <u>Mount Laurel</u> affordable housing obligations . . ."

Also pursuant to the terms of the Conditional Final Judgement, the Borough was required provide an annual report on or before January 26, 2020, to Fair Share Housing Center, setting forth the status of all affordable housing in the Borough, obviously including the progress of the Project and compliance with the Settlement Agreement and the Conditional Final Judgment, and to post this annual report on the Borough website. The annual report cannot be located on the Borough website.

Under *Mount Laurel* case law, the Borough has an obligation to avoid imposing unnecessary delay and expense on the Project. "In order to meet their Mount Laurel obligations, municipalities, at the very least, must remove all municipally created barriers to the construction of their fair share of lower income housing. Thus, to the extent necessary to meet their prospective fair share and provide for their indigenous poor (and, in some cases, a portion of the region's poor), municipalities must remove zoning and subdivision restrictions and exactions that are not necessary to protect health and safety." *S. Burlington County NAACP v. Mt. Laurel*, 92 N.J. 158 (1983) ("*Mount Laurel II*").

Further, the Redevelopment Agreement and its amendments also require the cooperation and assistance of the Borough in the Project. Indeed, the Redevelopment Agreement specifically provides:

> The Borough agrees to support any applications for Governmental Approvals that are consistent with the terms of the Redevelopment Plan and this Agreement, and to execute any documents required to obtain such approvals and otherwise to cooperate with the Redeveloper with respect to the Governmental Approvals . . .

Finally, as you are likely aware, efforts by municipal officials to frustrate, hinder and delay lawful development are actionable in a number of ways, including under civil rights laws. For instance, in *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 (3rd Cir., 1982), the Third Circuit reinstated a complaint with allegations that bear similarity to the events herein:

> The complaint alleges that the various defendants conspired to use their offices to cripple and destroy the plaintiffs' business. Their course of conduct, spanning almost three years, was aimed at preventing the plaintiffs from carrying out plans for various residential developments. The attack was waged on various fronts. The defendants unlawfully denied the necessary governmental approval for certain development projects. Building permits were denied despite the knowledge that the denial of the permits was unlawful under Township ordinances. Escrow monies

**Sills Cummis & Gross**
A Professional Corporation

John J. McCann, Esq.
February 27, 2020
Page 3

were not released for work completed. Certificates of occupancy were refused for completed and approved developments. The complaint alleges with great specificity a number of "illegal, arbitrary, unreasonable, confiscatory, (and) discriminatory" acts on the part of the defendants "to frustrate, hinder, obstruct, delay and prevent development of plaintiffs' properties solely for the purpose of inflicting economic harm upon plaintiffs under the color of law."

*Heritage Farms*, 671 F.2d at 745. Indeed, the Third Circuit noted concerning these allegations that "All parties agree that the complaint states on its face a claim under § 1983." *Heritage Farms*, 671 F.2d at 745.

The Borough has not been complying with its obligations under the Settlement Agreement, the Conditional Final Judgment, *Mount Laurel II* and later case law, or the Redevelopment Agreement. In 2018, Mayor Daniella DiPoalo ran for office and was elected on an anti-development platform, and voiced specific displeasure concerning the Project. Since then, the Borough has adopted a policy of slowness and reticence in compliance with lawful requests from the Redeveloper to further the Project, causing delay, expense and unnecessary effort. Some examples include:

1. **Refusal to issue demolition permit.** The Borough initially refused to issue demolition permits, demanding that the Redeveloper first show full resolution compliance, as well as all outside agency approvals. Eventually, after considerable discussion and delay, the Borough relented and issued the demolition permit.

2. **Refusal to issue fence permit.** At the last minute, the Borough demanded to conduct a new review of the area to be fenced, and withheld approval of the permit. At the same time, the Borough asserted that the Redeveloper was not securing the Project sufficiently and that there were squatters in the vacant buildings. The permit was eventually issued, but again costing additional time, effort and money.

3. **Demand for inappropriate information from asbestos contractor.** When asbestos removal began, the Borough demanded that the asbestos removal contractor file for a Borough permit, as well as provide the names of all their workers and insurance information. After discussion, costing additional time, effort and money, the Borough again withdrew its inappropriate request, and the removal went ahead without further incident.

4. **Denial of permits for disconnections.** The Borough denied these permits by asserting that the Project contained monitoring wells, and demanded that the Redeveloper obtain documentation from the NJDEP concerning the alleged monitoring wells. As is or should be well known to the Borough, the Project contains four wells that were decommissioned years ago, and are no longer in use. This caused further delay.

**Sills Cummis & Gross**
A Professional Corporation

John J. McCann, Esq.
February 27, 2020
Page 4

5. **More delay of demolition permits.**  The Borough still further delayed the demolition permits by insisting that all the demolition permits, for every lot in the Project, had to be completed and submitted at once.  This also had no basis in law, and caused further delay and effort.

6. **Refuse to issue sewer and water cutting and capping permits.**  The Borough unnecessarily refused to process and issue permits for the cutting and capping of the sewer and water lines until all the demolition was complete for all of the lots.  This again caused delay and expense.

7. **Signoff by fire and police.**  The Borough required that fire and police officials physically sign an acknowledgement that any concerns of theirs are being addressed despite extensive verbal communications.  When approached for their signatures, the departments were unaware of the requirement.  Again, this cost time and effort.

8. **Delay in issuance of resolution compliance.**  The necessary paperwork for issuance of resolution compliance was submitted in November, but no action was taken on it for nearly two months.

9. **Refusal to execute municipal consent for TWA.**  Currently, the Borough has refused to issue its consent for the Treatment Works Approval ("TWA").  In fact, the Borough has missed its deadline under law to consent or object to the issuance of the TWA to Redeveloper, so the Redeveloper can proceed without the Borough's consent.  However, the Borough's refusal to act on the request caused another 60 day delay in the Project.

10. **Failure to contest prerogative writ lawsuit.**  A prerogative writ action was filed challenging the Borough's December 28, 2019, Resolution memorializing site plan approvals for the Project, and the entire Redevelopment Plan, *Tanveer A. Hassan v. Borough of Emerson*, Superior Court of New Jersey, Bergen County, Docket No. BER-L-002577-19.  Although the Complaint was filed well after the 45 day deadline of R. 4:69 to challenge the Resolution, the Borough failed to answer or otherwise respond to the lawsuit, and seemingly was going to allow a default judgment to be entered, with a finding that the Resolution and the Redevelopment Plan were invalid.  Redeveloper had to intervene in the lawsuit and move for dismissal, which was granted with prejudice.  The Borough never filed an appearance in response to the lawsuit.

11. **Failure to respond to cease & desist letter.**  After the Settlement Agreement, the Conditional Final Judgment, and the dismissal of the *Hassan* prerogative writ suit, counsel for Cork & Keg purported to demand that the Borough "cease and desist" from redeveloping Block 419 with the Project, and demanded that the Borough refuse to issue demolition permits.  Incredibly, the Borough again made no response to this demand, and left it to the Redeveloper to respond to counsel.

# Sills Cummis & Gross
A Professional Corporation

John J. McCann, Esq.
February 27, 2020
Page 5

12. **Failure to proceed with condemnation of Caiqui Zheng.** The Borough has been duly informed that the Redeveloper has been unable to reach an agreement with Caiqui Zheng regarding his leasehold interest on the project and that condemnation proceedings must be initiated. Although a letter has been drafted with the Borough's counsel to inform Mr. Zheng of the initiation of condemnation proceedings, it has inexplicably not been sent, such that the condemnation proceedings have effectively not yet begun.

The Redeveloper has continually sought to work with the Borough to accomplish the Project, which will assist in fulfilling the Borough's Fair Share commitment, and maintaining its immunity from exclusionary zoning lawsuits. The Borough has failed to cooperate and failed to assist the Project, and has failed to defend the Project and its own Redevelopment Plan against spurious claims and lawsuits seeking to derail the Project. These failures have been previously brought to your attention by at least two letters, one from Joseph A. Paparo, Esq., dated July 15, 2019, and a second from Robert Kasuba, Esq., dated August 2, 2019. Nevertheless, the Borough's intransigence continues through the date hereof.

It is imperative that the Borough begin to provide proper cooperation and assistance to the Project, and cease its efforts to delay, hinder or stop the Project. Continued inappropriate hindrance on the part of the Borough may result in legal action, and the potential that damages will be asserted against the Borough. Immediate execution of the TWA-1, and immediate advancement of the condemnation proceedings, would be an initial show of a resumption of cooperation, as would written assurances of cooperation going forward.

Very truly yours,

Joseph B. Fiorenzo

c:    Hon. Danielle DiPaola, Mayor, Borough of Emerson (Via email
          ddipaola@emersonnj.org)
      Robert G. Hermansen, Borough Administrator Hermansen (Via email
          administrator@emersonnj.org)
      Special Master Mary Beth Lonergan, PP, AICP (Via email mblonergan@cchnj.com)
      Adam Gordon, Esq. (Via email adamgordon@fairsharehousing.org)
      Richard Malagiere, Esq. (Via email rm@malagierelaw.com)
      Jack Klugman (Via email)
      Peter Flannery, Esq. (Via email)
      David W. Phillips, Esq.

Exhibit 102

*Devereaux & Associates*

ARCHITECTS INC.

March 6, 2020

***VIA Email***

David Atkinson, P.E., P.P, C.M.E
For the Borough Engineer
Borough of Emerson
34 Park Avenue
Lyndhurst, NJ 07071

RE:    **Resolution Compliance / Engineering Review**
       **Prelim. & final Major Site Plan, Emerson Redevelopers Urban Renewal, LLC**
       Block 419, Lots 1-4, 6.01, 6.02, & 7-10
       Borough of Emerson
       Bergen County, NJ
       NEA No: EMERSPL 19.029

Dear David Atkinson:

Attached please find the following revised plans and additional information in response to your review of 2.6.2020 for the above-mentioned project:

- 4 sets of the revised Architectural Floor Plans and Elevations (30" X 42"); Sheets 1-9; revised 3.6.2020.

The following are our itemized responses to required items in the Approval Resolution:

**2.    Variances/Deviations/Waivers:**

2.1:   The Applicant believes they are in compliance with the Resolution and therefore no variance is being requested for building height.   Based on 290-69; Table A: Area and Bulk Requirements for CBD-10 and CBD-15:
       1. The **building** height is 50'-0" for properties located along the railroad right-of-way as agreed upon at the 12.10.2018 hearing.
       2. Per note 5:  An additional 5'-0" in height is allowed set back 5'-0" from Kinderkamack and Lincoln
       3. Per note 5:  An additional 5'-0" in height is allowed on Linwood
       4. Per 290-70A(3) the areas of additional height shall not exceed 25 feet in length and 66% of each elevation.

Sections along each building side with top of curb and mean curb profiles have been provided (Sheet 9).  In addition, curb heights, mean curbs, and building heights have been noted on each elevation (Sheets 6, 7, and 8).  A summary is below:





| STREET | CURB LEFT | MEAN | CURB RIGHT | TOP OF ROOF | HEIGHT OF MEAN TO TOP OF ROOF [1] | TOP OF PARAPET A [2] | HEIGHT OF MEAN TO PARAPET A [3] | TOP OF PARAPET B | HEIGHT OF MEAN TO PARAPET B [1] | TOP OF PARAPET C | HEIGHT OF MEAN TO PARAPET C [1] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UNWOOD | 45.81 | 45.1 | 44.87 | 95 | 49.9 | 100 | 54.9 | | | | |
| KINDERKAMACK | 44.85 | 47.6 | 53.2 | | | 100 | 52.4 | 97.4 | 49.8 | | |
| LINCOLN | 53.2 | 46.5 | 48.51 | | | 100 | 53.5 | | | 96.5 | 50 |
| RAILROAD | 48.5 | 47.4 | 45.76 | 95 | 47.6 | 100 | 52.6 | | | 96.5 | 49.1 |

**NOTES
1. LIMITED TO 50'-0" MAXIMUM
2. LIMITED TO 66% OF ELEVATION FRONTAGE AND 25 FEET IN LINEAR LENGTH MAX.
3. LIMITED TO 55'-0" MAXIMUM

Per the table above:
1. All dimensions from the mean curb to the main roof line on each elevation (noted in yellow) are less than or equal to 50'-0".
2. All dimensions to the additional 5'-0" allowance are less than 55'-0", less than 25'-0" in length, and less than 66% of the elevation profile (noted in blue)

2.2: The Applicant believes they are in compliance with the Resolution and therefore no variance is being requested for parking on the garage roof.

**4.    Engineering Comments from Boswell Engineering Review Letter dated 12.6.2018:**

4.6: Sections along each building side with top of curb and mean curb profiles have been provided (Sheet 9). In addition, curb heights, mean curbs, and building heights have been noted on each elevation (Sheets 6, 7, and 8).

4.17: As stated, NEA confirms that the proposed building façade design and articulation conforms to Chapter 290-70A.

4.18: Please see the response for 2.1

4.22: Acknowledged. The Owner agrees to provide a signage package (in conformance with the Emerson Code) to the Borough Planner and Engineer for approval prior to construction.

4.28: Devereaux awaits the response from the Borough of Emerson Police and Fire Departments.

**5.    Neglia Engineering Associates Technical Review Comments:**

5.3: Additional details for the trash enclosure have been added to Sheet 1. Detailed construction documents will be included with the construction documents submitted for building permits.

5.19: Acknowledged. Devereaux will provide locations of all meters, transformers, and generators prior to construction.

**6.    Resolution Compliance:**

6.2:    Acknowledged. This has been complied with through the multiple communications with Emerson to address the various comments and issues they have raised.

6.13    Devereaux awaits the response from the Borough Land Use Board Planner and/or Attorney.

6.15:   Acknowledged. Devereaux will provide screening details for HVAC equipment prior to construction

6.19:   Acknowledged. Devereaux will submit revised architectural plan sets incorporating any and all conditions prior to construction.

6.27:   Acknowledged. The Owner will provide 23 (revised) COAH units at Emerson Station (Owner to provide the offsite requirement) and 14,710 square feet of retail space.

6.28:   m. Spot grades have been added to all garage levels adjacent to the ramp and at the stair/elevator

6.30:   Devereaux awaits the response from the Borough's Land Use Board Planner and/or Attorney

6.40:   Acknowledged.

If there are any further questions or comments regarding the statements above, please contact our office. Thank you.

Sincerely,

Angela Kostelecky, AIA
Devereaux & Associates

Statile_041

Exhibit 103

# Bowman

May 1, 2020


Mayor and Council
Borough of Emerson
One Municipal Plaza
Emerson, NJ 07630


Attn.: Jane Dietsche, RMC, Borough Clerk


**RE:    Resolution Compliance I Engineering Review**
**Preliminary & Final Major Site Plan**
**Emerson Redevelopers Urban Renewal, LLC**
**Block 419, Lots 1-4, 6.01, 6.02 and 7-10**
**Borough of Emerson, Bergen County, NJ**
**BCG File No. 080642-C2-001**


Dear Honorable Mayor and Council:

<u>**Background**</u>

On December 28, 2018, a Resolution was adopted by the Emerson Land Use Board for approval of "Preliminary and Final Site Plan Approval and Major Soil Moving Permit to Demolish Existing Improvements on Property and Redevelop the Property."  The Resolution related to the Applicant's Project consisting of a "four-story 147 unit inclusionary residential development with a parking garage, ground floor retail, amenities and other site improvements, including 22 affordable housing units on the site and an additional seven (7) credits of off-site within the Borough" which would provide for a total of 29 affordable housing credits.  The Resolution was subject to a number of specifically delineated and limited conditions (the "Resolution Conditions").  Among other things, the Resolution confirmed that the Site Plan approval "conforms with municipal ordinances" (¶2) and that the Board concluded that the "proposed use complies with the municipal ordinances." (¶3). Prior to the Hearing resulting in the Resolution, the Site Plan and architectural plans submitted in connection with the Application were reviewed by the Borough Engineer, Boswell Engineering, by letter dated December 6, 2018 (the "Engineering Review Letter") and by the Borough Planner, Bridgette Bogart Planning and Design Professionals, LLC, through a review letter dated December 10, 2018 (the "Planning Review Letter").  Following the Hearing there were only certain specific comments in the Engineering Review Letter and Planning Review Letter which were incorporated as conditions in the Resolution.  Following the Resolution, the following actions took place:

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 2 of 37

&bull; On June 19, 2019, Bowman Consulting sent a letter to Emerson addressing "outstanding items contained in the Approved Resolutions (the "Bowman Resolution Compliance Letter"). The letter enclosed Preliminary and Final Site Plans (revised 6/19/19); traffic and parking assessment Report (3/22/19); soil movement plan (3/29/19); and drainage calculations. This letter contained a detailed, itemized response to each of the conditions of the Resolution, including that this compliance review letter states that the Site Plans "should be ready for signatures."

&bull; As a result of the election of November 2018, the Borough determined to replace Boswell Engineering with Neglia Engineering Associates ("Neglia"). On July 12, 2019, Neglia submitted a letter to the Borough regarding "Resolution Compliance/Engineering Review" (the "First Neglia Review Letter"). This letter attempted to raise a variety of issues which were not conditions of the Resolution and attempted to reopen issues which had already been decided by the Land Use Board in approved Site Plan Application.

&bull; On July 18, 2019, Christopher P. Statile, P.A., submitted a letter to the Borough commenting on the revised architectural plans and parking assessment report of Stonefield Engineering.

&bull; On November 22, 2019, our firm, Bowman, prepared a response to the 7/12/19 Neglia Compliance Review Letter and responded to each of the issues raised by Neglia.

&bull; On December 20, 2019, Devereaux Associates sent a letter to Statile addressing issues that had been raised and submitted the revised and sealed architectural plans.

&bull; On February 6, 2020, we received from Neglia yet another "Resolution Compliance/Engineering Review" letter (the "Neglia Second Engineering Review Letter"). This letter again raises issues above and beyond those which are conditions in the Site Plan Resolution. Although we responded to all of the issues raised by Neglia on November 22, 2019 (even those not required by the Resolution), the Second Neglia Review Letter contains new issues not raised in their prior submission.

Without prejudice, we provide to you the following additional information, much of which has been previously provided:

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 3 of 37

- Six (6) sets of signed and sealed Site Plan sets, sheets 1 through 18, last revised 11/15/2019;
- Six (6) signed and sealed Architectural Plan sets, sheets 1 through 9, last revised 3/6/2020;
- Six (6) copies of the Stormwater Management Report dated July 1, 2019;
- Six (6) copies of Bisgaier Hoff letter to Borough Administrator Robert G. Hermansen dated February 14, 2020;
- Six (6) copies of Bowman letter to Chief Mazzeo of the Emerson Police Department dated February 19, 2020;
- Six (6) copies of Bowman letter to Chief Sottile of the Emerson Fire Department dated February 19, 2020;
- Six (6) copies of authorization letter from Bill Suser for streetscape improvements along Lot 5;
- Six (6) copies of the Traffic & Parking Assessment Report prepared by Stonefield Engineering, last revised April 22, 2020;
- Six (6) copies of Bergen County Soil Conservation District certification dated September 24, 2019;
- Six (6) copies of Bergen County Planning Board approval dated August 14, 2019;
- Six (6) copies of PSEG reference map for 230kV line last revised 3/31/17, and
- Six (6) copies of Bisgaier Hoff letter related to Demolition Permits dated November 21, 2019.

We provide the following response to Neglia Engineering's February 6, 2020 letter, which is duplicative, in many respects, to its letter of July 12, 2019:

2. **Variances / Deviations / Waivers**
   NEA defers to the Borough of Emerson Land Use Board Planner and Attorney with respect to required variances, deviations and waivers from applicable requirements established within the Borough of Emerson Zoning Code. However, the following is noted with respect to the proposed building height:

   2.1.   In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290-69, the maximum allowable building height (in feet) for the CBD-10 Zone is 42 feet along public right-of-ways and 50 feet along railroad right-of-ways. Furthermore, in accordance with note 5 provided under the aforementioned Table A, "additional height is permitted in accordance with §290-70.A(3) and shall only be permitted on development parcels which are two (2) acres or greater. Further, the fifty (50) foot building height will only be permitted set back from the front building facade by a

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 4 of 37

minimum of (5) feet in depth on buildings facing Lincoln Boulevard and Kinderkamack Road." "Based on the above, it is NEA interpretation that the maximum allowable building height along Lincoln Boulevard, Kinderkamack Road and the subject railroad right-of-way to the west, when incorporating the requirements established within the above-referenced note and §290-70.A(3), is 50 feet. Likewise, it appears that the maximum allowable height along Linwood Avenue is 47 feet. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, the building height is defined as "the vertical distance measured from the curb level, as defined, to the extreme high point of the building, exclusive of a chimney, weathervane or similar structure." Furthermore, the curb level is defined as "the permanently established natural grade at the midpoint of the front building line." The Applicant has provided top of curb and top of roof profiles for the building facades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way. Irrespective of the above required plan revisions, it appears that the Applicant is proposing a building height that exceeds 47 feet along Linwood Avenue. Therefore, based on the above definitions and requirements, it is NEA's opinion that the Applicant does not comply with the building height requirements for the CBD-10 Zone along Linwood Avenue. However, we defer to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same. This item remains applicable.

***Response from November 22, 2019 letter: The profiles have been amended to illustrate the alignment midpoint and to provide the building heights at these midpoints. We have revised the roof elevation on the profiles to correspond with the elevation of 95, as shown on the Architectural Plan Set. An additional roof line profile along the railroad right-of-way has been provided on Sheet 8. See response letter from Architect dated 11/14/2019 for further clarification.***

***Additional Response: There is no issue whatsoever regarding the building height. The Site Plan Application was reviewed and***

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 5 of 37

> *commented upon, and the subject of testimony before the Land Use Board. The height was originally addressed in the December 20, 2019, Devereaux & Associates letter and the issue of the height was testified to at the time of Hearing on December 18, 2018. Applicant's expert testified that 50 feet was the permitted height. This was confirmed by the testimony of Borough Engineer, Gary Ascolese of Boswell Engineering, who confirmed that the Site Plan conformed to the Emerson height ordinance. In the Resolution the Land Use Board found as a fact that the "proposed development conforms to the building height requirements and the design standards set forth in the Redevelopment Plan." Simply because a new engineering firm has been hired after approval was received by the Land Use Board is no justification for attempting to reopen the determination made by the Land Use Board. This issue was fully vetted at the time of the Hearing. There is no further action required with regard to this issue.*

2.2.   In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290- 69 of the Borough of Emerson Zoning Code, the maximum allowable building height (in stories) for the CBD-10 Zone is four (4) stories. The Applicant is currently proposing to construct a four (4) story building with an additional parking level located on the roof. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, a building story is defined as *"That part of a building between a floor and the floor above or, in its absence, the ceiling or roof above."* Based on this definition, it does not appear that the additional rooftop parking qualifies as a building story since the rooftop parking will not have a roof or ceiling enclosing the same, However, NEA defers to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same.

> *Response from November 22, 2019 letter: Noted.*

> *Additional Response: This issue was also fully vetted before the Land Use Board and decided when the Board granted approval for four stories as set forth in the Site Plan. The Neglia comment that it "does not appear that the additional rooftop parking qualifies as a building story" is correct and was fully vetted and approved by the Land Use Board when it granted approval. There is no further action required on this issue.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 6 of 37

**4.**     **Engineering Comments from Boswell Engineering Review Letter dated December 6, 2018 (NEA's responses to these comments are shown in bold):**

*Site Plan*

4.1.     "The proposed site plan consolidates numerous lots within this block. The Applicant should provide testimony how the street addresses will be determined and how the lot configurations would be achieved, and if multiple lots are to remain. This may require a major subdivision of the consolidated parcels."   The Applicant has indicated by way of the submitted comment response letter that the subject parcels will be consolidated into one (1) lot under single ownership. **All documentation related to the same shall be submitted for review.**

   ***Response: A Deed of Consolidation will be recorded once all the tenants vacate the property.***

4.6.     "The plans should provide the location and datum where the building height is to be measured. The Emerson Code, Section 290-6 -DEFINITIONS - BUILDING HEIGHT states the building height is to be determined as the vertical distance measured from the curb level, as defined, to the extreme high point of the building exclusive of a chimney, weathervane or similar structure. The curbline datum references for each structure at the existing curblines shall be determined and shown on the plans so the height of the building can be determined in the field."   The Applicant has provided top of curb and top of roof profiles for the building facades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way. This comment has been addressed. **The Site Plan Set includes roofline profiles as compared to the proposed / existing top of curb elevations. In addition, a roofline profile as compared to the top of curb elevations is provided within the Architectural Plan Set. However, the**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 7 of 37

> **top of curb elevations provided within this profile differ from those provided within the Site Plan Set. The Applicant shall revise the profile provided within the Architectural Plan Set such that the top of curb elevations correspond with the Site Plan Set.**
>
> *Response: Although it is unnecessary, the profiles provided with the Architectural Plan Set have been revised.*

4.9.   "The Borough of Emerson may require the proposed 42-inch drainage line to remain the responsibility of the developer so a drainage easement may not be required. The proposed 42-inch RCP will require the existing storm drain manhole on Lincoln Boulevard to be reconstructed to provide enough wall surface to make the connection. The existing catch basin chamber on the north side of Linwood Avenue was constructed to accept a sleeve for the 42-inch RCP on the northeast corner of the chamber. The Applicant shall verify the elevation of the invert and demonstrate the proposed slope of the drainage line and connection to be Lincoln Boulevard drainage system." The Applicant has provided stormwater conveyance calculations for the 25-year storm event.  However, the Applicant shall submit a stormwater management report, inclusive of existing and proposed peak flow rates, along with the associated hydrographs, to confirm the impact to the aforementioned conveyance system. **This comment remains applicable and shall be addressed accordingly.**

> *Response: This request is unnecessary and an expansion of the obligations under the Resolution which have already been complied with.  The Resolution provided for, as a condition of the Resolution, submission of Drainage calculations which were submitted back in June 2019.  Thus, the condition of the Resolution was completely satisfied.  Nonetheless, and without prejudice, a Stormwater Management Report is enclosed.*

4.13.   "The Applicant should provide testimony how residents form the complex will access the NJ Transit train platform. Will crosswalks be provided in the parking lot areas? Will there be pedestrian access other than along Linwood Avenue and Lincoln Boulevard?"  This application has been approved by the Borough of Emerson and Use Board.  As such, the above request for testimony is no longer applicable.  However, it is noted within the submitted comment response letter that the Applicant will assist with the Borough's efforts to create pedestrian routes between the proposed development and

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 8 of 37

the Borough's New Jersey Transit train station located. **This comment remains applicable and shall be addressed as required.**

*Response: As noted in our November 22, 2019 response, the Applicant will comply with this requirement. See enclosed copy of Bisgaier Hoff's February 14, 2020 letter to Borough Administrator Hermansen requesting input for these efforts.*

4.14.   "The Borough's Police and Fire Departments shall review and comment with regard to emergency access, firefighting ability, site circulation and the like. It does not appear that the Applicant provided any type of fire truck area striping. The Applicant shall provide testimony with regard to this matter." This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, this comment remains applicable until the Applicant has acquired plan review letters from the Borough of Emerson Police and Fire Departments.

*Response: A set of the architectural and engineering plans were previously sent to Chief Mazzeo of the Police Department and Chief Sottile of the Fire Department, but no response has been received. We assume their lack of response indicates the plans are acceptable.*

4.15.   "According to the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), the number of Barrier Free Parking spaces required for parking lots containing between 301 and 400 total parking spaces is seven (7) accessible parking spaces plus one (1) additional space to be van accessible. Therefore, the Applicant has satisfied this condition. Boswell takes no exception to this matter. The Applicant shall coordinate the location of these parking spaces with the Borough's Construction Official." **This comment remains applicable until the Applicant has confirmed the location of the required ADA-accessible parking spaces with the Borough Construction Official.**

*Response: The location of accessible parking spaces will conform to the Land Use Board-approved plans. This will be addressed during construction. This should be a condition for final Certificate of Occupancy, not resolution compliance.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 9 of 37

*Architecture*

4.17.    "The Applicant should present testimony regarding the proposed exterior facade of the various buildings, including materials and colors, overhangs, facades, setbacks, railings, roofing styles, etc. Architectural renderings in 2D and 3D and in color should be provided to the Land Use Board to demonstrate how the redevelopment site will look from all four (4) sides of the property. Substantial, additional information will be required. The building designs shall be in conformance with Chapter 290 Article XIII, CBD-10 Central Business District Zones of the Emerson Zoning Code." This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable.  However, based on NEA's review of the proposed building facade design and articulation, it appears that the Applicant complies with the standards established within Chapter §290-70.A (Architectural Guidelines) of the Borough of Emerson Zoning Code.  **NEA defers to the Borough's Land Use Board Planner for a final determination with respect to the proposed building facade components and compliance with applicable sections of the Borough of Emerson Zoning Code.**

*Response: There is no issue with regard to the building façade and its components.  These issues were presented to the Land Use Board which fully vetted the issue and determined that the application, including the building façade, was in full compliance with the Emerson Zoning Code.*

4.18.    *"The architectural plan shows a cut away section view A-A on the northwest corner of Kinderkamack Road and Linwood Avenue with an overall height in excess of 50 feet. This is contrary to the maximum permitted building height for the redevelopment area. The Applicant shall explain this ·design feature, and if it complies with Chapter 290-69 of the Zoning Code."* **See previous comments addressing the proposed building height profiles within the Architectural Plan Set and Site Plan Set.**

*Response: See our comments above regarding building height. This issue was fully presented and vetted before the Land Use Board.  They specifically found as a fact, based upon the testimony at the Hearing, that the proposed development "conforms to the building height*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 10 of 37

*requirements and the design standards set forth in the Redevelopment Plan." It is important to note that this project is specifically addressed in a certain Settlement Agreement in connection with certain Mt. Laurel litigation and that the approved Site Plan was submitted and approved consistent with the Borough's Affordable Housing Ordinance and Amendments to the housing element and fair share plan required by the "Conditional Final Judgment of Compliance and Repose."*

4.22.   *"No information has been provided concerning any retail store signage that may be required or anticipated for the site. All proposed advertising and site signage shall be shown on a supplemental plan and submitted to the Borough Planner and Borough Engineer for approval prior to construction and meet the latest requirements of the Emerson Code for signage restrictions."* **This comment remains applicable and shall be addressed prior to construction.**

   **Response: The Applicant shall comply with this requirement. The Owner will provide signage for approval once tenants are finalized. Signs shall meet the requirements of Section 232 of the Land Use Ordinance.**

<u>Traffic</u>

4.24.   "The Applicant should provide testimony concerning how they anticipated the shared parking spaced between commuter spaces and retail spaces to operate, and the hours reserved for this designation. The Applicant should provide testimony regarding how many parking spaces will be reserved for commuter parking, where these spaces will be designated, and the fee, if any for parking." This application has been approved by the Borough of Emerson Land Use Board.  As such, the above request for testimony is no longer applicable.  However, the Site Plan Set has been revised to illustrate the locations of proposed signs indicating the locations, as well as associated time restrictions of commuter parking spaces. The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station. **It should be noted that the language on the sign should note "Borough of Emerson Residents" as to not to confuse residents of the complex.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 11 of 37

*Response: The signage detail has been revised to designate the parking
spaces as "Borough of Emerson Resident Commuter Parking".*

4.25.  "Testimony should be provided as to how many vehicles trips are expected
to be generated during peak hours for the parking garage and the impacts on
surrounding streets, particularly concerning the close proximity to the railroad
grade crossing on Lincoln Boulevard."  This application has been approved
by the Borough of Emerson Land Use Board.  As such, the above request for
testimony is no longer applicable.  **However, NEA has provided comments
addressing the Traffic and Parking Assessment Report in Section 5
(Neglia Engineering Associates Technical Review Comments) below.**

*Response: Traffic issues were previously addressed at the Hearing
through the testimony of Charles Olivo, P.E., P.P., P.T.O.E. of Stonefield
Engineering, as reflected in the Resolution.  There are no further issues
regarding traffic, which was fully vetted prior to the issuance of the Site
Plan Approval.*

4.27.  "The Applicant should present information and testimony as to how many
vehicles can be queued for the Lincoln Boulevard entrance to the parking
garage before they could affect vehicle flow along Lincoln Boulevard."  This
application has been approved by the Borough of Emerson Land Use Board.
As such, the above request for testimony is no longer applicable. **However,
NEA has provided comments addressing the Traffic and Parking
Assessment Report in Section 5 (Neglia Engineering Associates
Technical Review Comments) below.**

*Response: See response to 4.25 above.*

4.28.  "The Applicant should provide testimony with regard to the days and hours of
operation of the parking garage, the fees to the charges for visitors, the
method of payment, a discussion concerning whether the fee is collected
while entering or exiting the structure, whether a tow truck can be
accommodated to service disabled vehicles, etc. Will the drive aisle from
Lincoln Boulevard provide access to the surface parking lot without going
through a gate? How would emergency vehicles enter the surface parking lot
from Lincoln Boulevard?"   As per the submitted Site Plan Set and
Architectural Plan Set, as well as the Applicant's comment response letter

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 12 of 37

there will be no access restrictions to the site via the driveways located along Lincoln Boulevard and Linwood Avenue.  However, access to parking levels 2 through 5 will be restricted via a parking gate for residents only.  **NEA defers to the Borough of Emerson Police and Fire Departments for comments regarding access to the site for emergency vehicles.**

*Response: As noted in the response to comment 4.14, above, architectural and engineering drawings were previously forwarded to the Police and Fire Departments.  Given their lack of response we assume there are no issues.*

_Stormwater Management_

4.32.   "No runoff from this site shall affect any adjacent site both during and subsequent to construction. Should a drainage issue persist, the Applicant shall remedy the matter at his/her own cost."   Notation indicating the same has been provided on the Site Plan Set. **However, this comment remains applicable for the duration of construction.**

*Response: Noted. The Applicant shall comply.*

_Site Lighting_

*4.35.*   "The Board shall consider having the Applicant agree to a six (6) month period from the time of receiving the Certificate of Occupancy that site light is monitored, and should there be a problem, the Applicant shall correct said problem at his or her own cost. Lights shall be shielded to prevent light from escaping this site and affecting adjacent properties."  Notation indicating the same has been provided on the Site Plan Set. **However, this comment remains applicable and shall addressed within the six (6) month period following the completion of construction.**

*Response: Noted. The Applicant shall comply.*

_Landscaping_

4.38.   "Boswell is in the process of reviewing the site landscaping. We will submit our comments under separate cover. Boswell takes no exception to have the review and approval of site landscaping to be stated in the resolution as a condition of approval should be Board so desire."  **NEA has reviewed the**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 13 of 37

**proposed landscaping and has provided comments below in Section 5
(Neglia Engineering Associates Technical Review Comments).**

*Response: Noted.*

_General Comments and Jurisdictional Approvals_

4.39. "All ADA pedestrian facilities constructed on site and within public rights-of-way or easements must be constructed in accordance with Federal ADA Standards. This includes ramps located at intersections as well as driveways. Compliant Design and Construction Certifications for Pedestrian Facilities within Public Rights-of-Way must be completed and submitted to the Municipal Engineer."  **This comment remains applicable and shall be addressed prior to construction of ADA facilities.**

*Response: The Applicant shall comply with this requirement.*

4.40. "All recently constructed sidewalk areas surrounding the redevelopment area will need to be removed and reconstructed in accordance with the streetscape design approved by the Borough of Emerson and prepared by Burgis Associates in 2005. It stall include street lighting pedestals and fixtures designed in conformance with the other street lighting in the downtown area. The reconstruction should include the area in ·front of Lot 5, to the extent possible, so the sidewalk and streetscape design is consistent along Kinderkamack Road."  **This comment still applies.  In addition, the Applicant shall submit shop drawings for all streetscape elements (i.e. lighting, benches, trash receptacles, etc.) for review and approval prior to construction.**

*Response: The area in front of Lot 5 has been included in the extents of reconstruction to the maximum extent possible. We received confirmation from the Owner of Lot 5 that the Applicant has permission to continue the streetscape outside of the landscaping area which is not to be disturbed. We will comply with the shop drawing requirement.*

4.42. "A complete set of construction plans will be required for submittal and approval of the Borough Engineer and Borough Planner prior to the start of

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 14 of 37

any construction in the redevelopment area." **This comment remains applicable and shall be addressed prior to construction.**

*Response: The Applicant shall comply.*

4.43.  "ADA Compliance Construction Certification must be submitted by the Project Engineer of record and must be submitted with the as-built drawings(s) after the ramp(s) have been inspected. The Certification Forms for construction must be obtained from the Municipal Engineer." **This comment remains applicable.**

*Response: The Applicant shall comply.*

4.44.  *"The Applicant should obtain approvals and/or waivers from the following agencies:*

a.  *The Bergen County Planning Board,*
b.  *The Bergen County Soil Conservation District,*
c.  *Borough of Emerson Police Department (regarding site circulation and emergency access.)*
d.  *Borough of Emerson Fire Department (Emergency Access, Fire Lanes, Ability to fight fires)*
e.  *All other Agencies having jurisdiction."*

**This comment remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review.**

*Response: Bergen County Soil Conservation District certification and Bergen County Planning Board Conditional approval were previously provided to your office. Per response to comment #4.14, the architectural and engineering drawings have been submitted to the Police and Fire Departments.*

5.  **Neglia Engineering Associates Technical Review Comments:**

5.3.  As per the submitted Architectural Plan Set, the Applicant is proposing to construct a trash enclosure structure within a curb island located along a 14-foot service access lane. The location of the same shall be illustrated within the Site Plan Set and associated construction details shall be provided for

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 15 of 37

review. In addition, the location of the proposed trash enclosure conflicts with proposed landscaping. The landscaping plan within the Site Plan Set shall be revised accordingly. **This comment has been partially addressed. The Applicant has provided a detail in the form of a photo representation of the proposed enclosure. The Applicant shall additionally provide a dimension construction drawing of said trash enclosure.**

*Response: We have provided a dimensioned detail of the proposed enclosure on the Detail Sheet.*

5.5. The Applicant shall revise the grading plan within the Site Plan Set to include additional bottom of curb elevations along Lincoln Boulevard, Kinderkamack Road and Linwood Avenue. **This comment has been partially addressed. The Applicant shall provide additional bottom of curb grades along Kinderkamack Road and Linwood Avenue.**

*Response: Additional bottom of curb elevations have been provided on the Grading Plan.*

5.6. The proposed site improvements classify the project as a "Major Development" as defined under the Stormwater Management Adopted New Rule: N.J.A.C. 7:8 by disturbing more than an acre of land. As per the submitted Site Plan Set, under the proposed conditions, it appears that stormwater runoff generated within the site drains to the existing municipal conveyance systems within the Lincoln Boulevard, Kinderkamack Road and Linwood Avenue right-of-ways via overland sheet flow, shallow concentrate flow and pipe conveyance. Under the proposed conditions, the Applicant intends to construct a 42-inch reinforced concrete pipe (RCP) that conveys stormwater runoff from the municipal conveyance system within Lincoln Boulevard to the conveyance system within Linwood Avenue. Stormwater runoff generated within the proposed exterior parking area will be directed to inlets that drain to the aforementioned 42-inch reinforced concrete pipe (RCP). The Applicant shall submit a stormwater management report, inclusive of existing and proposed peak runoff rates along with the associated hydrographs, demonstrating compliance with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8. **This comment has not been addressed.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 16 of 37

> *Response: Applicant previously submitted Drainage calculations, which was all that was required under the condition of approval. Notwithstanding same, and despite having no obligation to do so, Applicant has prepared an additional Stormwater Management Report which, without prejudice, is enclosed.*

5.9.   The Applicant shall submit a stormwater maintenance manual for review. **This comment has not been addressed.**

> *Response: See response to 5.6 above.*

5.10.   The Applicant shall revise the Site Plan Set to clearly illustrate how stormwater runoff generated by the building roof areas and parking levels will drain to the on-site stormwater conveyance system. **The Applicant has amended the site plan to illustrate that the stormwater runoff from the roof area will convey to the on-site conveyance system via a 12-inch roof drain. The Applicant shall specify the pipe material and slope. Furthermore, upon submission of the Stormwater Management Report, the Applicant shall submit revised conveyance calculations demonstrating that the proposed roof drain has adequate capacity.**

> *Response: The conveyance calculations will be provided once the roof leader connections are finalized.*

5.11.   The Applicant shall be responsible for ensuring that any and all soils imported to the site are certified clean soils in accordance with current NJDEP Standards, with a copy of the said certification provided to the Borough of Emerson and NEA prior to the import of any material by a professional. Recycled material or demolished materials are not permitted for the purposes of backfilling a vacated excavation area. The Site Plan Set shall be revised to include notation indicating the same. **This comment remains applicable for the duration of the construction period.**

> *Response: A note (#80) has been added to the General Notes in the Site Plan Set.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 17 of 37

5.12.   The Applicant shall ensure that all disturbed work areas are stabilized. The Applicant shall topsoil, seed, hay, and straw mulch to ensure lawn growth, where appropriate. **This comment remains applicable for the duration of the construction period.**

*Response: As noted in our November 22, 2019 response, we will comply with the requirements of the certified Bergen County Soil Conservation District Soil Erosion Plan.*

5.13.   A Soil Evaluation Report shall be prepared and submitted by a licensed professional engineer in the State of New Jersey, prior to any construction. This report shall include the following content at a minimum:

- Soil boring or test pit logs and location map;

- Detailed procedures and methods used to conduct any soil test;

- Weather conditions at the time of any testing, including time, temperature, and the amount of precipitation within the preceding 48-hour period;

- Identification of the seasonal groundwater elevation;

- Field observations; data collected during any on-site test; derived/calculated infiltration rate(s), if applicable;

- A statement of certification signed and sealed by an appropriate professional attesting that the field and conditions observed are either suitable or unsuitable for construction of the approved stormwater management system. If unsuitable conditions are encountered, the Applicant shall include a proposed revised stormwater management plan. The revised plan must result in the equivalent runoff rate and volume as the originally approved plan; and

- NEA shall be notified 48 hours in advance of this testing so that a representative of our office may be present for this testing.

**This comment has not been addressed. The required Soil Evaluation Report shall be provided prior to commencement of construction.**

*Response: A Soil Evaluation Report is not required under the Resolution as a condition of approval. In addition, since there is no ground infiltration with the stormwater management system, it is otherwise unnecessary.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 18 of 37

5.14.   The Applicant shall provide a final certification memorandum, prepared, signed, and sealed by a licensed engineer in the State of New Jersey before a recommendation to issue a final certificate of occupancy can be made. This certification shall contain the following content at a minimum:

- A chronological log of site visits that include the date, time, weather and the nature of stormwater management-related work;

- Signed and sealed certification of a licensed professional in the State of New Jersey attesting to the following:

  o He/She was on-site and observed key phases of active construction;

  o He/She evaluated the as-built condition and that all aspects of the stormwater management system conforms to the approved plan or justify any exceptions thereto; and

  o He/She is of the professional opinion that the stormwater management system is expected to operate in accordance with the approved plan.

**This comment remains applicable and shall be addressed prior to issuance of a final certificate of occupancy.**

*Response: The Applicant shall comply with the inspection and reporting requirements identified above. We do not know who will be doing inspections at this time.*

5.15.   The Applicant shall provide water usage and sanitary sewer calculations signed and sealed by a Professional Engineer licensed in the State of New Jersey to ensure that the existing systems provides sufficient capacities for the proposed development. The Applicant shall submit a set of plans to the Borough of Emerson DPW for review.   **This comment has not been addressed.**

*Response: Applicant is dealing directly with Suez.  No water extension permit is required.  As to sewer capacity, this information is contained in Applicant's TWA Application.  We have been advised by Applicant that the TWA Application cannot be considered by the BCUA or the DEP without sign off from Emerson.  We were further advised that Emerson*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 19 of 37

*has refused to provide a signature, which precludes the ability to obtain this permit.*

5.16.   The Applicant shall perform a comprehensive thirty (30) day meter study for the existing sanitary sewers system within the Kinderkamack Road right-of-way, to ensure that adequate capacity is provided within the existing systems to service the proposed improvements.   **This comment has not been addressed.**

*Response: A thirty-day meter study is not required. We will be providing a sewer capacity analysis for your review as part of the sewer calculations.*

5.17.   The Applicant shall acquire an NJDEP Treatment Works Approval and an NJDEP water extension permit for the proposed development. Copies of the same shall be provided to the Borough of Emerson and NEA, if necessary. **This comment has not been addressed.**

*Response:  The Borough has refused to endorse the TWA Application which is interfering with the ability to obtain same.  An NJDEP water extension permit is not required.*

5.19.   The Applicant shall illustrate the locations of all meters, transformers, generators, or other external equipment associated with the proposed building addition. All meters and transformers shall be screened and not visible from public view. Notation indicating the same shall be provided.  **The requested notation has been provided. The location of all meters, transformers, generators, or other external equipment associated with the proposed building shall be provided prior to construction.**

*Response: The Applicant shall comply with this requirement.*

5.20.   The Applicant is proposing to relocate overhead electric utility lines and poles. The Applicant shall provide associated documentation and approvals from the electric utility purveyor confirming the proposed overhead electric utility line and pole relocations. **This comment has not been addressed.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 20 of 37

*Response: This will be finalized when we have our electric application submitted and a design for our service, then they will finalize moving the poles as needed.*

5.25.   NEA has reviewed the Applicant's submitted Traffic and Parking Assessment Report. The Applicant provided trip generations for the proposed mixed-used development with 147 residential units and 17,300 square feet of retail based on the ITE's *'Trip Generation',* 10th Edition. This report is inclusive of trip generation data related to the proposed residential development.   The residential development will generate approximately 53 new trips during weekday morning peak hours and 65 new trips during the weekday evening hour. The proposed trip generation for the retail development is anticipated to be more than the proposed trip generation stated by the Applicant.   The Applicant shall address why the proposed trip generation for retail is not approximate to ITE's *'Trip Generation',* 10th Edition Land Use 820. In addition, based on the most recent Architectural Plan Set submission, the Applicant is proposing 14,700 square feet of retail space. The Traffic and Parking Assessment Report shall be revised accordingly.   **This comment has not been addressed.**

*Response: The issue of Traffic and Parking was fully addressed and vetted at the Hearing resulting in the Resolution.  Because of this, there is no condition of the Resolution requiring submission of a revised traffic and parking assessment.*

6.   **Resolution Compliance**

*Stipulations made by the Applicant:*

6.1.   Applicant shall comply with all landscaping comments regarding the application, which are to be submitted by the Board Engineer's office or the Board Planner's office, one or the other which shall be completed to the satisfaction of the Board Engineer and/or Board Planner. **See landscaping comments above.**

*Response: All landscaping comments in section 5 have been addressed.*

6.2.   Applicant will meet with the Land Use Board Planner and a subcommittee of the Governing Body for the Borough and the Land Use Board to discuss and

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 21 of 37

address the Board's and the Borough's concerns and comments regarding the final architectural design and details of the project and all other aspects of the project. Applicant agrees to use all good faith efforts to satisfactorily address the Board's and Governing Body's concerns and comments through the subcommittee. The sample materials that were submitted as hearing evidence shall be the ones utilized during construction unless otherwise approved by the Borough. **This resolution condition remains applicable.**

*Response:  Applicant has addressed all concerns and comments in the written communications and has, in good faith, gone even beyond the requirements of the Resolution to accommodate concerns and comments raised by Emerson.*

6.3.   Applicant shall dedicate at least fifty-five (55) of the ~~seventy-three (73)~~ **seventy-two (72)** surface parking spaces on the Property for the exclusive use by New Jersey Transit (Emerson Borough) train station users during the hours of 7:00 AM and 6:00 PM, Monday through Friday. The signage and permitting for these 55 commuter spaces shall be agreed upon between the Borough and Applicant. The Applicant has revised the Site Plan Set to designate ~~fifty-five (55)~~ **fifty-four (54)** parking spaces for commuter use via proposed signage.  The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station. **Through the process of adding one additional ADA compliant parking space, the Applicant has reduced the number of commuter parking spaces from fifty-five (55) to fifty-four (54). The Applicant shall relocate a "Reserved for Resident Commuter Parking" sign in order to comply with the required number of fifty-five (55) spaces.**

*Response: One additional spot was added in the surface parking area to comply with the fifty-five space resident commuter parking requirement. Additionally, two spots have been added within the ground floor garage, bringing the total number of surface spots to 75.*

6.4.   Insofar as the proposed development is constructed with the parking reduction set forth in Section §290- 71.A(a) of the Borough Code: medical office space - which shall include walk-in and urgent-care clinics and other medical, dental, treatment and therapy-related facilities - shall be a prohibited use in the proposed development.  **The Applicant has provided notation within the**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 22 of 37

**Site Plan Set noting the above prohibited uses. However, the Applicant is advised that this resolution condition remains applicable.**

*Response: Noted.*

6.6.    Applicant shall provide drainage calculations for the proposed development for the review and approval of the Board Engineer. **This resolution condition has not been addressed. As stated above, the Applicant has submitted conveyance calculations associated with the proposed stormwater conveyance system. However, the Applicant shall submit an accompanying stormwater management report demonstrating that the development will comply with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8.**

*Response: See comments above. Drainage calculations were provided to the Borough back on June 19, 2019, and there is no further requirement under the Resolution. Notwithstanding this, as a gesture of good faith, enclosed is the requested Stormwater Management Report.*

6.7.    The Applicant shall provide any off-tract improvements required by the application consistent with the MLUL and the Redevelopment Agreement. **This resolution condition remains applicable, as required.**

*Response: The Applicant shall comply.*

6.8.    There shall be a review after six (6) months to address any lighting concerns, and adjustments are to be made at the direction and approval of the Board Engineer. **This resolution condition remains applicable and shall be addressed six (6) months after the completion of construction.**

*Response: The Applicant shall comply. See response to comment 4.35.*

6.9.    Deliveries shall not be made from Kinderkamack Road and shall only be made in the rear of the building(s) of the proposed development. **The Applicant has provided notation within the Site Plan Set noting the above. However, the Applicant is advised that this resolution condition remains applicable**.

*Response: The Applicant shall comply.*

6.10.   Applicant will reasonably assist the Borough efforts to create pedestrian connections to and from the Property and the Borough's New Jersey Transit train station. **This resolution condition remains applicable.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 23 of 37

> *Response: The Applicant shall comply.*

6.11.   All standing snow of 2 inches or more, from one or multiple snow events, shall be removed from the Property by the Applicant at the Applicant's sole cost and expense. **The Applicant has provided notation within the Site Plan Set indicating that snow accumulation of 4-6 inches or more, from one or multiple snow events, shall be removed from the property, at the Applicant's sole cost and expense. However, the Applicant is advised that this resolution condition remains applicable. The note shall be updated, and this condition will run with the property.**

> *Response: This is not a required obligation under the Resolution. Nonetheless, as a gesture of good faith, Note # 72 under General Notes has been updated to state that this condition shall run with the property.*

6.12.   Subject to obtaining the permission of the owner of Block 419, Lot 5 ("Lot 5"), and provided same does not encroach onto Lot 5, the Applicant shall continue the streetscape for the proposed development across the frontage of Lot 5. **This resolution condition has not been addressed to date.**

> *Response: Enclosed is a letter from Bill Suser, owner of Block 419, Lot 5, and authorizing Emerson Redevelopers Urban Renewal, LLC to continue the streetscape along the frontage of his lot. The Site Plan has been revised.*

6.13.   Applicant shall revise the architectural plans to be to scale and to provide dimensions to confirm compliance with all Borough Code requirements, including but not limited to, the design standards set forth in the Redevelopment Plan, and the Applicant shall provide elevations of all four sides of the proposed development for review and approval by the Board Engineer and/or the Board Engineer. **The Applicant has revised the Architectural Plans to include the requested additional dimensions. However, NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the design standards set forth in the Redevelopment Plan.**

> *Response: The Applicant has revised the architectural plans. No further action is required.*

6.14.   Applicant shall comply with all applicable requirements of the Redevelopment Agreement, the Settlement Agreement and UHAC with respect to the affordable housing proposed as part of the development. **This resolution condition remains applicable.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 24 of 37

> *Response: The Applicant shall comply.  Applicant notes that there is a reciprocal obligation on the part of the Borough to comply with the terms of the Redevelopment Agreement and the Settlement Agreement which expressly require the Borough to cooperate to ensure timely completion of the Project.*

6.15.  Applicant shall design the HVAC units to be shielded from public view and shall provide some HVAC and vents for units suitable for future restaurant uses within the development to the approval of the Board Engineer.  **This resolution condition remains applicable. All documents related to the same shall be submitted for review.**

> *Response: The Applicant shall comply. We will be using Magic Paks.*

6.17.  Applicant shall submit a directional sign package for the review and approval of the Board Engineer and/or Board Planner.  **This resolution condition has not been addressed.**

> *Response: As noted in response to comment 4.22, we will comply with this requirement. The Owner will provide signage for approval once tenants are finalized. Signs shall meet the requirements of Section 232 of the Land Use Ordinance.*

_Conditions Specific to this Application:_

6.18.  Applicant shall abide by all of the stipulations set forth at length above.  **This resolution conditions remains applicable.  See our responses above to the said stipulations.**

> *Response: The Applicant shall comply as set forth in its response to the specific stipulations set above.*

6.19.  The Applicant shall submit revised site plan and architectural plan sets incorporating any and all applicable condition set forth herein, and conditions of all engineering reports and reports of the Land Use Board's professionals, and the subcommittee of the Board and the Governing Body, for the review and approval of the Board Engineer and/or Board Planner.  **This resolution conditions remains applicable.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 25 of 37

*Response: Applicant has complied with all Resolution conditions which are preconditions to issuance of a building permit.*

6.20.    The Applicant shall obtain the appropriate approvals, permits and/or letter for the Application from all applicable local, county, state and federal bodies and agencies, including, but not limited to, the following:

a.    Bergen County Planning Board;

b.    Bergen County Soil Conservation District;

c.    Borough of Emerson Police Department;

d.    Borough of Emerson Fire Department; and

e.    New Jersey Department of Environmental Protection.

**This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review.**

*Response: Applicant understands that there are other governmental approvals required which have been obtained or will be obtained. As to the Emerson Police and Fire Departments, see comments above.*

6.21    If any material changes to the site plan as approved by this Resolution of the Board are required by any other governmental body or agency, said changes are to be brought by the Applicant on a forthwith basis before the Board, which retains jurisdiction over the application. **This resolution conditions remains applicable.**

*Response: The Applicant shall comply.*

6.22    The Applicant shall at all times comply with all applicable rules, regulations, ordinances and statutes of the Borough of Emerson, County of Bergen, State of New Jersey and the federal government with regard to the development, including but not limited to, the Americans with Disabilities Act. **This resolution conditions remains applicable.**

*Response: The Applicant shall comply.*

6.23    The Applicant agrees that the work to be performed consistent with this resolution will be consistent with Emerson's Redevelopment Plan. **This resolution conditions remains applicable.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 26 of 37

>*Response: The Applicant shall comply with the Redevelopment Plan in effect at the time of the Site Plan approval and the executed Redevelopment Agreement.*

6.24    Nothing herein grants the Applicant an approval of any material changes to this application as set forth in detail in this resolution. Any such changes or amendments will require amended site plan and/or variance approval from this Board, as applicable. **This resolution conditions remains applicable, as required.**

>*Response: Noted.*

6.25    The Applicant shall comply with the following comments set forth in the Boswell Engineering review letter dated December 6, 2018 ("Engineering Review Letter") and the Brigette Bogart Planning & Design Professionals, LLC review letter dated December 10, 2018 ("Planning Review Letter"):

   a.    Engineering Review Letter Comments. **See outstanding comments above.**

   b.    Planning Review Letter Comments. **NEA defers to the Land Use Board Planner with respect outstanding Planning Review Letter comments.**

   >*Response: As noted above, the Resolution requires compliance with only certain limited comments in the Engineering Review Letter and the Planning Review Letter.  Applicant has complied with those comments which are conditions of approval.*

6.26    The Applicant shall comply with the following final site plan checklist items:

   a.    Final Site Plan Checklist Item 2: Original tracings with signature lines. **This item remains applicable.**

   b.    Final Site Plan Checklist Item 3:  Proof of execution of developer's agreement. **This item remains applicable.**

   c.    Final Site Plan Checklist Item 4: Proof of posting of performance and/or maintenance bonds. **This item remains applicable.**

   d.    Final Site Plan Checklist Item 5:  Copies of recorded easements, rights-of-way or conveyances of open space or public easements, if required.  **This item remains applicable, as required.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 27 of 37

e. Final Site Plan Checklist Item 6:  Deposit of escrow funds for engineering inspections, and any other items required by the Borough. **This item remains applicable.**

f. Final Site Plan Checklist Item 7:  Bergen County Planning Board approval. This item remains applicable. **This item remains applicable. All related documentation and approvals shall be submitted for review.**

g. Final Site Plan Checklist Item 9:  Bergen County Soil Erosion and Sediment Control Plan approval, where required. This item remains applicable. **All related documentation and approvals shall be submitted for review.**

*Response: Applicant has obtained Bergen County Planning Board approval and Bergen County Soil Erosion approval. A Redevelopment Agreement has already been executed. Original tracings with signature lines shall be provided once the Borough has advised that the Plans are acceptable and in final form.*

6.27  The Settlement Agreement requires twenty-nine (29) affordable units, seven (7) of which may be provided off-site.  The project will have 147 residential units including twenty-two (22) COAH or affordable units on-site and the Applicant will comply with the requirement of providing seven (7) off-site affordable units.  The residential units will be on the ground floor along Lincoln Boulevard and on the ground floor in the rear parking lot.  There will be residential units above that on the second, third and fourth floors.  There are three access points: primary access points at the corner and one in the rear area. There will also be 14,700 square feet of retail space.  **This resolution condition remains applicable.**

*Response: Noted.*

6.28  The following construction drawings and site plan items are required to be submitted and approved by the subcommittee review team of the Emerson Land Use Board and Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer:

i. Provide typical construction details for all curbs, parking lots, sidewalks, drainage, sanitary sewers, electrical connections, and any other items requested**. See Section 5 (Neglia Engineering Associates Technical Review Comments) above for any outstanding required construction details.**

*Response: All details have been provided.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 28 of 37

j.   Provide construction staging concepts, where work will commence, and construction staging schedules. **This item has not been addressed.**

*Response: This item will be addressed during construction.*

k.   Provide plan and details of fences along the railroad property. **The Applicant has revised the Site Plan Set to illustrate the location of fencing along the railroad property, along with an associated construction detail. However, NEA recommends that the proposed fence include additional screening measures.**

*Response: We do not believe additional screening is required. As shown on the Landscape Plan, the entire strip between the commuter parking and the 6-foot high privacy fence is proposed to be planted with several shade trees (oak) as well as a variety of evergreen shrubs.*

l.   Provide the location of the PSE&G 230 KV underground electrical line located along the west side of the redevelopment property. **This item has not been addressed.**

*Response: The 230 KV underground electrical line is shown on the drawings.*

m.   Provide cross-sections, slopes and access controls for parking garage operation. **The Applicant has provided proposed slopes for the parking garage ramps. However, the Site Plan Set and/or Architectural Plan Set shall be revised to include proposed contours and spot elevations for the parking garage levels.**

*Response: The Applicant shall comply. This will be submitted as part of the building permit drawings.*

r.   Provide a streetscape lighting electrical plan to match county project lighting recently completed. **The Applicant shall provide shop drawings to insure proposed streetscape lighting matches the County project.**

*Response: The Applicant shall comply. This will be submitted as part of the building permit drawings.*

u.   Provide quantity receipts for all recycled asphalt, concrete, contaminated soil, and steel removed from the site and presented to the Borough Superintendent of Public Works for municipal recycling credits. **This item remains applicable and shall be enforced during construction.**

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 29 of 37

*Response: The Applicant shall comply.*

v.  Provide traffic control plans for construction phases that will interfere with traffic flow on Kinderkamack Road, Lincoln Boulevard, and Linwood Avenue, to the satisfaction of the Borough Chief of Police.  **This item has not been addressed.**

*Response: The Applicant shall comply.*

w.  Provide documentation that all NJDEP requirements regarding the underground monitoring wells on the site have been satisfied for the redevelopment.  **This item has not been addressed.**

*Response: Enclosed for your review is a letter prepared by Bisgaier Hoff dated November 21, 2019 regarding the monitoring wells.*

x.  Supply, relocate and modify the traffic signal equipment on the southwest corner of the Kinderkamack Road and Lincoln Boulevard intersection to the satisfaction of Bergen County.  **This item remains applicable.  The Applicant shall provide documentation confirming that the aforementioned traffic signal equipment is to be supplied, relocated and modified to the satisfaction of Bergen County prior to construction.**

*Response: This work has been completed by Bergen County. We are not proposing supplying, relocating or modifying any traffic signal equipment as part of this project.*

y.  Review and upsize the existing drainage line, as needed, along the south side of Lincoln Boulevard to provide additional flow capacity, once reviewed. **This item remains applicable.  NEA will review the same upon receipt of the required stormwater management report, as stated above in Section 5 (Neglia Engineering Associates Technical Review Comments).**

*Response: See Stormwater Management Report.*

cc.  Provide all necessary road widening easements, with parcel descriptions and parcel maps, to the County of Bergen and Borough of Emerson.  **This item has not been addressed.**

*Response: The Applicant shall comply.*

dd.  Provide a cost estimate for all curbing, sidewalk, drainage paving, streetscape lighting, traffic signs, pavement markings, traffic signal

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 30 of 37

relocation, regulatory and warnings signs, and utility relocation. This estimate will be submitted for review and be the basis for the performance bond requirements. **This item remains applicable and shall be addressed prior to construction.**

*Response: The Applicant shall comply.*

ee. Provide the date when the commuter parking spaces are required to be vacated for the start of construction. **This item has not been addressed.**

*Response: The commuter spaces have been vacated already.*

hh. Provide a written traffic report to support the traffic testimony presented at the December 10, 2018 Land Use Board meeting. **The Applicant has submitted a Traffic and Parking Assessment Report, as requested. However, see the comments with respect to the same provided in Section 5 (Neglia Engineering Associates Technical Review Comments).**

*Response: There is no obligation under the Resolution to provide an additional traffic report. The traffic issues were fully vetted at the Land Use Board Meeting, as noted in the Resolution. Notwithstanding the foregoing, the Applicant has submitted a Traffic and Parking Assessment Report as requested.*

ii. Provide an ADA compliance letter from a licensed New Jersey Professional Engineer to verify all ADA requirements have been installed in accordance with current requirements. **This item has not been addressed.**

*Response: To be provided post-construction.*

jj. Developer to agree to a six (6) month lookback regarding site lighting to resolve any and all complaints regarding non-complaint site lighting. **This item remains applicable.**

*Response: The Applicant shall comply.*

kk. Developer to abide by the noise ordinances for the Borough of Emerson. **This item remains applicable.**

*Response: The Applicant shall comply to the noise ordinance in effect on the date of the Site Plan approval.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 31 of 37

    ll.  Developer to abide by all New Jersey Transit and Federal Railroad Administration  requirements regarding construction techniques and operations near the New Jersey Transit rail line and ·crossings. **This item remains applicable.**

    *Response: The Applicant shall comply.*

    mm. Developer to abide by all New Jersey Department of Transportation and County of Bergen construction materials and methods of construction for work within the public right of way. **This item remains applicable.**

    *Response: The Applicant shall comply.*

    nn.  Developer to abide by all Bergen County Planning Board requirements. **This item remains applicable.**

    *Response: The Applicant shall comply.*

    oo.  Developer to abide by all Bergen County Soil Conservation District requirements.  **This item remains applicable.**

    *Response: The Applicant shall comply.*

6.29  Applicant shall schedule a pre-construction meeting with the Board Engineer, Borough Engineer & Board Planner prior to construction.  **This resolution condition remains applicable and shall be addressed prior to construction.**

*Response: The Applicant shall comply.*

6.30  The parking garage structure shall not exceed the height requirements in the CBD-10 zone and levels and ramps of the garage are to be spaced at a height that is consistent with the requirements in the zone and to the satisfaction of the Board and Borough Engineer. **The Applicant has provided revised Curb Level, Building Height, and Building Line sections based on the zoning definitions per Chapter 290-6. NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the height requirements established for the CBD-10 zone.**

*Response: See response to comment 2.1.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 32 of 37

6.31    Applicant shall enter into the appropriate Developer's Agreement with the Borough and Land Use Board and shall post all necessary fees, escrows, and performance guarantees and payment of off-site improvements in the future. The Developer's Agreement shall be drawn by the applicant and submitted to the Borough and Planning Board Attorneys for review and approval. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

*Response: The Applicant has already entered into a Redeveloper's Agreement and acknowledges the need to post appropriate fees, escrows and performance guarantees.*

_General Conditions_

6.32    Applicant shall adhere to the Borough of Emerson's storm water management requirements with regard to groundwater recharge for a major development as required in by the Borough Ordinance. **This resolution condition remains applicable. See comments above in Section 5 (Neglia Engineering Associates Technical Review Comments).**

*Response: See response above regarding Stormwater calculations and Stormwater Management Report.*

6.33    Applicant or any successor in interest shall address all recommendations and requirements of the Borough Police Department, Fire Department and Department of Public Works. **This resolution condition remains applicable.**

*Response: This comment is duplicative and repetitive. See response above regarding Police and Fire Departments.*

*6.34*    No certificate of occupancy will be granted unless all conditions imposed by this Land Use Board, and Land Use Board's professionals, Board Attorney, Planner, Engineer and the Borough's Attorney, Engineer and Planner have been satisfied in full. **This resolution condition remains applicable. See all outstanding engineering comments above.**

*Response: Noted.*
Applicant shall be responsible for obtaining any other approvals or permits from other governmental agencies as may be required by law, including, but not

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 33 of 37

limited to, the Bergen County Soil Conservation District, and the New Jersey Department of Environmental Protection and Applicant shall comply with any requirements or conditions for such approvals or permits. **This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review as required.**

*Response: The Applicant shall comply with all reasonable and lawful requests by outside agencies having jurisdiction over this project.*

6.35    Applicant is responsible for any environmental clean-up and/or environmental conditions as to the site as required by federal, state, county and local governmental agencies and officials, which must be complied with to the satisfaction of each of the aforementioned agencies and officials. **This item remains applicable and shall be addressed, as required, All documentation related to the same shall be submitted for review, as required.**

*Response: The Applicant shall comply with all reasonable and lawful requests, as required by the agencies.*

6.36    Applicant agrees to comply with any and all conditions and requirements of the Borough Engineer and/or Board Engineer with regard to Soil Movement, including but not limited to truck routes and hours of operation, and will comply with the Borough Engineer's requirements as to any and all soil movement, in conjunction with the Emerson Police Department. **This resolution condition remains applicable. See comments below with respect to specific conditions related to the Soil Movement Permit approval.**

*Response: The Applicant shall comply with all reasonable and lawful requests with regard to Soil Movement.*

6.37    Applicant shall submit revised plans, as necessary, with correct revision dates on all sheets. **This resolution condition remains applicable.**

*Response: The Applicant shall comply.*

6.38    Applicant will comply with any and all requirements of the Property's water company. **This resolution condition remains applicable. All documentation related to the same shall be submitted for review, as required.**

*Response: The Applicant is working with Suez and shall comply with their requirements.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 34 of 37

6.39   All construction shall be completed in accordance with all ordinances and building requirements of the Borough of Emerson, the Uniform Construction Code of the State of New Jersey and in accordance with the instructions of the Construction Official of the Borough of Emerson, the Borough Engineer and in accordance with the requirements of all other departments of the Borough. **This resolution condition remains applicable.**

*Response: The Applicant shall comply with all ordinances and building requirements of the Borough of Emerson and the State of New Jersey in effect at the time of the application's approval, and all reasonable and lawful requests of the Construction Official, Borough Engineer and all other departments of the Borough.*

6.40   Applicant is required to obtain a building permit, post all necessary fees and costs with the Borough of Emerson prior to any construction.  This approval is subject to Applicant obtaining a building permit and any other State, County or Borough approvals if required.  **This resolution condition remains applicable.**

*Response: The Applicant shall comply with all reasonable and lawful requests.*

6.41   Applicant shall pay all fees, costs, bonds and escrows when due or becoming due and shall post all performance guarantees in connection with the review of this application prior and subsequent to the approval of this application. Any monies are to be paid within twenty {20) days of said request by the Borough's Chief Financial Officer.  **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover.  The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

*Response: The Applicant shall comply.*

6.42   If an application before the Bergen County Planning Board is required and any material or substantial changes are required by the Bergen County Planning Board to the site plan as approved by this Resolution, then the Emerson Land Use Board retains jurisdiction over this application and reserves its right to amend or withdraw its approval of this application. **This resolution condition remains applicable.**

*Response: Noted.*

6.43   Applicant shall file, as applicable, a deed restriction regarding any and all affordable units constructed pursuant to the approval granted herein, as same

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 35 of 37

is required by N.J.A.C. §5:93-9.2(e).  **This resolution condition remains applicable.**

*Response: The Applicant shall comply.*

6.44    Applicant shall comply with all affordable housing requirements of the Borough of Emerson Code as well as the Uniform Housing Affordability Control Rules, N.J.A.C. §5.80-26.1 et seq., including, but not limited to, administration of units, marketing, rent pricing and stratification, qualification and selection of households, and any other items.  Documentation demonstrating such compliance is required as an ongoing condition of this approval.  **This resolution condition remains applicable.**

*Response: The Applicant shall comply.*

6.45    All representations and stipulations made by Applicant or its agents shall be deemed conditions of this approval and any misrepresentations by Applicant contrary to the representations and stipulations made before the Land Use Board shall be deemed a violation of this approval.  **This resolution condition remains applicable.**

*Response: Noted.*

6.46    The action of the Land Use Board in approving this application shall not relieve Applicant of responsibility for any damages caused by this project, nor does the Land Use Board of the Borough of Emerson, or its reviewing professionals and agencies, accept any responsibility of design of the proposed improvement or for any damages that may be caused by this development.  **This resolution condition remains applicable.**

*Response: Noted.*

6.47    Any and all conditions imposed upon Applicant in connection with the approval granted herein shall apply to any successor in interest to Applicant.  **This resolution condition remains applicable."**

*Response: Noted.*

6.48    All easements, deeds, subdivision maps and deed restrictions as may be required hereunder must be reviewed and approved by the Borough of Emerson and recorded by Applicant before any permit is issued by the Borough.  **This resolution condition remains applicable.**

*Response: The Applicant shall comply.*

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 36 of 37

*Soil Moving Permit Conditions*

6.49    Prior to the commencement of any soil operations (fill or cut), the Applicant agrees to develop trucking routes for the hauling of soil to the site which shall be submitted to the Borough for review and approval.  The review will include the Borough's Police Department and engineering professionals.  **This resolution condition has not been addressed.**

   *Response: The Applicant shall comply.*

6.50    The Applicant agrees to comply with any and all conditions and requirements rendered by the Borough and/or Board Engineer with regard to soil movement, including but not limited to truck routes and hours of operations.  **This resolution condition remains applicable.**

   *Response: The Applicant shall comply.*

6.51    The Applicant will provide motor vehicle and general liability insurance for all necessary vehicles and parties involved in the soil movement in sums and form deemed appropriate by the Borough Attorney.  **NEA defers to the Borough attorney with respect to this resolution condition.**

   *Response: The Applicant shall provide a reasonable and customary amount and form of motor vehicle and general liability insurance for its vehicles and shall provide proof of such coverage for its subcontractors.*

6.52    The Applicant agrees to comply with the Borough Police Department Traffic Control Officers in order to provide a safe means for moving soil as deemed required by the Borough Engineer or his designees.  **This resolution condition remains applicable.**

   *Response: The Applicant shall comply.*

6.53    The Applicant shall comply with any and all other applicable Borough regulations, ordinances and directives pertaining to soil movement.  **This resolution condition remains applicable, as required.**

   *Response: The Applicant shall comply with all reasonable and lawful directives of the Borough.*

6.54    The Applicant shall obtain all other necessary governmental approvals and permits and shall perform all acts of compliance which may be required under the applicable Federal, State, County and local statutes, regulations and ordinances.  The Applicant shall submit to the Board copies of all permits or

Mayor and Council
Borough of Emerson
Emerson Redevelopers Urban Renewal, LLC
May 1, 2020
Page 37 of 37

approvals, or in the alternative, written verification that no permits or approvals are required. **This resolution condition remains applicable.**

*Response: The Applicant shall comply.*

6.55   The Board reserves the right to require further review of this permit request in the event that another governmental entity requires "substantial modifications or revisions" to the plan as approved. **This resolution condition remains applicable.**

*Response: The Applicant shall comply.*

Very truly yours,
Nickoletta M. Louloudis, PE, PP, CME, CFM

Sr. Project Manager
*nlouloudis@bowmanconsulting.com*

NL/:
Enclosures
cc:      Marie Shust, Land Use Board Secretary *(via e-mail)*
         Christopher Martin, Esq., Land Use Board Attorney *(via regular mail)*
         Caroline Reiter, PP, Land Use Board Planner *(via e-mail)*
         David Atkinson, PE, PP, CME, Borough Engineer *(via e-mail)*
         Emerson Redevelopers Urban Renewal, LLC, Applicant *(via e-mail)*
         Joseph A. Paparo, Esq. Applicant's Attorney, Porzio, Bromberg & Newman *(via regular mail)*
         Angela Kostelecky, R.A., Applicant's Architect, Devereaux & Associates *(via regular mail)*
         Charles D. Olivo, PE, PP, PTOE, Applicant's Traffic Engineer, Stonefield Engineering *(via regular mail)*
         David Phillips, Sills Cummis *(via email)*
         Joseph Fiorenzo, Sills Cummis *(via email)*
         William Hamilton, PP, AICP, LLA, LEED AP, Bowman Consulting

Exhibit 104



34 Park Avenue – PO Box 426
**LYNDHURST, NEW JERSEY 07071**
Tel: 201.939.8805 • Fax: 201.939.0846

200 Central Avenue – Suite 102
**MOUNTAINSIDE, NJ 07092**
Tel: 201.939.8805 • Fax: 732.943.7249

---

**Via Email & Hand Delivery**

July 12, 2019
**Revised: June 16, 2020**

Mayor and Council
Borough of Emerson
One Municipal Plaza
Emerson, NJ 07630

Attn.:   Jane Dietsche, R.M.C., Borough Clerk

RE:   **Resolution Compliance / Engineering Review**
      **Preliminary & Final Major Site Plan, Emerson Redevelopers Urban Renewal, LLC**
      Block 419, Lots 1-4, 6.01, 6.02 and 7-10
      Borough of Emerson
      Bergen County, New Jersey
      NEA No.: EMERSPL19.029

Dear Honorable Mayor and Council:

Neglia Engineering Associates ("NEA") has received and reviewed the following documents, submitted in support of the above-referenced application:

- Site plan review letter prepared by Gary M. Ascolese, P.E., of Boswell Engineering, dated December 6, 2018;

- Borough of Emerson Land Use Board Resolution approving the above-referenced application with conditions, dated December 28, 2018;

- Site Plan Set consisting of ~~seventeen (17)~~ twenty (20) sheets, entitled "Preliminary and Final Site Plan for Emerson Station, Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10, Borough of Emerson, Bergen County, New Jersey, Tax Map Sheet 4," prepared by Eric L. Keller, P.E., of Bowman Consulting, dated November 15, 2018, revised through **April 22, 2020**;

- Architectural Plan Set consisting of ~~seven (7)~~ ~~eleven (11)~~ **nine (9)** sheets, entitled "Emerson Station, Emerson Redevelopers Urban Renewal, LLC," prepared by Angela Kostelecky, R.A., of Devereaux & Associates, **revision dated March 6, 2020**;

- Building Colors and Materials Exhibit prepared by Accurate Builders & Developers and Devereaux & Associates, undated;

- Stormwater Conveyance Calculations prepared by Bowman Consulting, dated June 20, 2019;

- Traffic and Parking Assessment Report prepared by Charles D. Olivo, P.E., P.P., P.T.O.E. and Matthew Seckler, P.E., P.P., P.T.O.E., of Stonefield Engineering and Design, dated March 22, 2019, **revised April 22, 2020**;

- Comment Response Letter prepared by William H. Hamilton, P.P., A.I.C.P., L.L.A., LEED A.P., of Bowman Consulting, dated June 19, 2019;

- Comment Response Letter prepared by William H. Hamilton, P.P., A.I.C.P., L.L.A., LEED A.P., of Bowman Consulting, dated November 22, 2019;

- Comment Response Letter prepared by Devereaux & Associates dated November 14, 2019;

---



- Conditional approval letter from Bergen County Department of Planning and Engineering dated August 14, 2019;

- Bergen County Soil Conservation District approval letter dated September 24, 2019;

- Soil Movement Plan & Calculations consisting of one sheet prepared by Eric L. Keller, P.E., of Bowman Consulting, undated;

- Cover Letter prepared by Bowman Consulting, dated December 26, 2019;

- Comment Response Letter prepared by Devereaux & Associates, dated December 26, 2019 **and March 6, 2020**;

- **Plan entitled "Preliminary and Final Site Plan for Emerson Station, Proposed Inlet Areas, Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10, Borough of Emerson, Bergen County, New Jersey," prepared by Eric L. Keller, P.E., of Bowman Consulting, dated June 20, 2018;**

- **Plan entitled "Preliminary and Final Site Plan for Emerson Station, Existing Drainage Area, Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10, Borough of Emerson, Bergen County, New Jersey," prepared by Eric L. Keller, P.E., of Bowman Consulting, dated July 1, 2019;**

- **Plan entitled "Preliminary and Final Site Plan for Emerson Station, Existing Inlet Areas, Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10, Borough of Emerson, Bergen County, New Jersey," prepared by Eric L. Keller, P.E., of Bowman Consulting, dated July 1, 2019;**

- **Plan entitled "Preliminary and Final Site Plan for Emerson Station, Proposed Drainage Map, Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 & 10, Borough of Emerson, Bergen County, New Jersey," prepared by Eric L. Keller, P.E., of Bowman Consulting, dated July 1, 2019;**

- **Stormwater Management Report prepared by Eric L. Keller, P.E., of Bowman Consulting, dated July 1, 2019;**

- **Letter from Bowman Consulting to Emerson Fire Department dated February 19, 2020.**

- **Letter from Bowman Consulting to Emerson Police Department dated February 19, 2020.**

- **Comment Response Letter prepared by Nickoletta M. Louloudis, P.E., P.P., C.M.E., C.F.M., of Bowman Consulting, dated May 1, 2020;**

- **Plan entitled "New Milford Switching Station to Hillsdale Switching Station Plan and Profile" prepared by PSE&G, last revision date of March 31, 2017;**

- **Letter from Bisgaier Hoff, LLC to Borough of Emerson Administrator regarding Emerson NJ Transit Station Block 419 Redevelopment dated February 14, 2020.**

- **Demolition Permit Applications Letter from Bisgaier Hoff, LLC to Borough of Emerson Construction Official dated November 21, 2019; and**

- **Streetscape confirmation / permission letter from Bill Suser to Dave Atkinson, P.E. dated February 13, 2019.**

1. <u>General Information</u>

The subject property is located on Block 419, Lots 1-4, 6.01, 6.02 and 7-10. The site is bound to the north by Lincoln Boulevard, to the south by Linwood Avenue, to the east by Kinderkamack Road (Bergen County Route 503), and to the west by a New Jersey Transit commuter rail line right-of-way. Properties to the north and east, across Lincoln Boulevard and Kinderkamack Road, respectively, consist primarily of commercial properties, the property to the south, across Linwood Avenue, consists of the Borough of Emerson New Jersey Transit commuter rail line station, and the properties to the west, across the New Jersey Transit commuter rail line right-of-way, consist of residential uses. The subject parcels are currently occupied by a variety uses including retail, restaurant,



personal-service and residential. The existing two (2) story masonry building within Block 419, Lot 5 consists of a martial arts / fitness studio with office space and is not included within this application. The subject property is located within the CBD-10 Zone and is designated as an area in need of redevelopment.

The Applicant is proposing to demolish all existing buildings and improvements within the subject parcels for the purpose of constructing a four (4) story multi-use building consisting of residential and retail uses, along with four (4) parking garage levels and rooftop parking. Overall, the development will consists of 14,700 square feet of retail space fronting Kinderkamack Road on the ground floor of the building along with 147 residential units. Additional site improvements include stormwater management facilities, utility, landscape, lighting and streetscape improvements. The Applicant has revised the building setbacks along Lincoln Boulevard and Linwood Avenue in order to provide a 9.5 foot minimum streetscape sidewalk as per Resolution Condition 6.28 bb.

2. **Variances / Deviations / Waivers**

NEA defers to the Borough of Emerson Land Use Board Planner and Attorney with respect to required variances, deviations and waivers from applicable requirements established within the Borough of Emerson Zoning Code. However, the following is noted with respect to the proposed building height:

2.1.   In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290-69, the maximum allowable building height (in feet) for the CBD-10 Zone is 42 feet along public right-of-ways and 50 feet along railroad right-of-ways. Furthermore, in accordance with note 5 provided under the aforementioned Table A, *"additional height is permitted in accordance with §290-70.A(3) and shall only be permitted on development parcels which are two (2) acres or greater. Further, the fifty (50) foot building height will only be permitted set back from the front building façade by a minimum of five (5) feet in depth on buildings facing Lincoln Boulevard and Kinderkamack Road."* Based on the above, it is NEA interpretation that the maximum allowable building height along Lincoln Boulevard, Kinderkamack Road and the subject railroad right-of-way to the west, when incorporating the requirements established within the above-referenced note and §290-70.A(3), is 50 feet. Likewise, it appears that the maximum allowable height along Linwood Avenue is 47 feet. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, the building height is defined as *"the vertical distance measured from the curb level, as defined, to the extreme high point of the building, exclusive of a chimney, weather vane or similar structure."* Furthermore, the curb level is defined as *"the permanently established natural grade at the midpoint of the front building line."* The Applicant has provided top of curb and top of roof profiles for the building façades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way. Irrespective of the above required plan revisions, it appears that the Applicant is proposing a building height that exceeds 47 feet along Linwood Avenue. Therefore, based on the above definitions and requirements, it is NEA's opinion that the Applicant does not comply with the building height requirements for the CBD-10 Zone along Linwood Avenue. However, we defer to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same. **The Applicant has provided the midpoint heights for the building facades fronting Lincoln Boulevard (48.5 feet), Kinderkamack Road (47.4 feet), along the railroad (47.6 feet), and Linwood Avenue (49.9 feet). Additionally, the Applicant has revised the Engineering and Architectural Plan sets to coincide with each other regarding the façade heights. The maximum allowable façade height based upon Chapter §290-70.A(3) of the Borough of Emerson Zoning Code for Linwood Avenue is 47 feet. However, NEA defers to the Borough Land**



**NEGLIA**
ENGINEERING ASSOCIATES

**Use Board Planner and Attorney for confirmation with respect to previous determinations made regarding the allowable building heights.**

2.2.  In accordance with Table A (Area and Bulk Requirements for CBD-10 and CBD-15) within Chapter §290-69 of the Borough of Emerson Zoning Code, the maximum allowable building height (in stories) for the CBD-10 Zone is four (4) stories. The Applicant is currently proposing to construct a four (4) story building with an additional parking level located on the roof. As per Chapter §290-6 (Definitions) of the Borough of Emerson Zoning Code, a building story is defined as *"That part of a building between a floor and the floor above or, in its absence, the ceiling or roof above…"* Based on this definition, it does not appear that the additional rooftop parking qualifies as a building story since the rooftop parking will not have a roof or ceiling enclosing the same. However, NEA defers to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same. **Pending confirmation from the Borough Land Use Board Planner and Attorney regarding rooftop parking, this item remains applicable.**

3.  **Parking Requirements**

| Regulation | Ordinance Section | Required | Required | Proposed | Status |
|---|---|---|---|---|---|
| Retail Use | §290-71.A (Table C) | One (1) space per 250 square feet of gross floor area | (1.0 spaces / 250 S.F.) x 14,710 S.F.= 58.84 spaces | 314 spaces (this value includes 55 spaces dedicated to commuters) | **Conforming** |
| Residential (within Mixed-Use) | §290-71.A (Table C)[1] | One-Bedroom / Studio: 1.8 spaces per unit[1] | (1.8 spaces / unit) x 120 units = 216 spaces[1] | | |
| | | Two-Bedroom: 2.0 spaces per unit[1] | (2.0 spaces / unit) x 21 units = 42 spaces[1] | | |
| | NJAC §5:21-4.14 (Table 4.4) (RSIS)[1] | Three-Bedroom: 2.1 spaces per unit[1] | (2.1 spaces / unit) x 6 units = 12.6 spaces[1] | | |
| | | Total Number of Required Parking Spaces | 329.44 spaces | | |
| | | Total Required Parking with Allowable 25% Reduction per §290-71.A (note a) and §290-71.B(7)[2] | 329.44 x 75% = 247.08 spaces = 247 required parking spaces[2] | | |

(1)  Table C within Chapter §290-71.A of the Borough of Emerson Zoning Code, does not include parking requirements for three-bedroom apartment units. As such, since the requirements for one- and two-bedroom units are in accordance with the parking requirements established within NJAC §5:21-4.14 (Residential Site Improvements Standards), the parking requirement established within NJAC §5:21-4.14 for three-bedroom units was utilized for the above calculation.

(2)  In accordance with Note (a) under Table C within Chapter §290-71.A of the Borough of Emerson Zoning Code, and as similarly established within §290-71.B(7), *"if a project contains retail on the first floor with residential above, the parking requirement may be reduced to a maximum of up to 25% to account for shared parking, subject to and conditioned upon: (i) the receipt of testimony provided by the Applicant's traffic/parking expert supporting such reduction: and, (ii) the Land Use Board retaining a traffic/parking consultant to support and confirm such determination, which shall be paid for by the Applicant. If a development is constructed with the parking reduction then medical office space shall be a prohibited use. For the purpose of this section, 'medical office' shall include walk-in and urgent-care clinics, other medical, dental, treatment and therapy-related facilities."*



4. **Engineering Comments from Boswell Engineering Review Letter dated December 6, 2018 (NEA's responses to these comments are shown in bold):**

*Site Plan*

4.1.   *"The proposed site plan consolidates numerous lots within this block. The Applicant should provide testimony how the street addresses will be determined and how the lot configurations would be achieved, and if multiple lots are to remain. This may require a major subdivision of the consolidated parcels."* The Applicant has indicated by way of the submitted comment response letter that the subject parcels will be consolidated into one (1) lot under single ownership. **All documentation related to the same shall be submitted for review.**

4.2.   *"Section 236-6.B.2(f) requires the locations, names, and existing widths of adjacent streets, rights-of-way, and curblines. This information is not plotted on the site plan set nor the survey set submitted."* This comment has been addressed. **No further action is required.**

4.3.   *"Section 236-6.B.2(j) requires existing zoning of the property and all adjacent lands. The zoning for Block 419, Lot 5 is not indicated on the plans."* This comment has been addressed. **No further action is required.**

4.4.   *"Section 236-6.B.4(a) requires the location of uses and outlines of structures drawn to scale on and within 200 feet of the property, including the setback. This information is not included on the plans."* This comment has been addressed. **No further action is required.**

4.5.   *"Section 236-6.B.4(c) requires locations, dimensions, grades and flow direction of existing sewers. This information is not included on the plans."* This comment has been addressed. **No further action is required.**

4.6.   *"The plans should provide the location and datum where the building height is to be measured. The Emerson Code, Section 290-6 – DEFINITIONS – BUILDING HEIGHT states the building height is to be determined as the vertical distance measured from the curb level, as defined, to the extreme high point of the building exclusive of a chimney, weather vane or similar structure. The curbline datum references for each structure at the existing curblines shall be determined and shown on the plans so the height of the building can be determined in the field."* The Applicant has provided top of curb and top of roof profiles for the building façades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet (not inclusive of the building parapet). The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the rear railroad right-of-way. This comment has been addressed. The Site Plan Set includes roofline profiles as compared to the proposed / existing top of curb elevations. In addition, a roofline profile as compared to the top of curb elevations is provided within the Architectural Plan Set. However, the top of curb elevations provided within this profile differ from those provided within the Site Plan Set. The Applicant shall revise the profile provided within the Architectural Plan Set such that the top of curb elevations correspond with the Site Plan Set. **The Applicant has provided the midpoint heights for the building facades fronting Lincoln Boulevard (48.5 feet), Kinderkamack Road (47.4 feet), along the railroad (47.6 feet), and Linwood Avenue (49.9 feet). Additionally, the Applicant has revised the Engineering and Architectural Plan sets to coincide with each other regarding the façade heights. The maximum allowable façade height based upon Chapter §290-70.A(3) of the Borough of Emerson Zoning Code for Linwood Avenue is 47 feet. However, NEA defers to the Borough Land Use Board Planner and Attorney for confirmation with respect to previous determinations made regarding the allowable building heights.**



4.7.    *"During the construction of the Kinderkamack Road project, there were monitoring wells located on the Lot 5 and Lot 9 parcels. These monitoring well locations should be provided on the site plans for assessments and review."* This comment has been addressed. **No further action is required.**

4.8.    *"Lincoln Boulevard has experienced significant flooding during major storm events, with water accumulating to a depth of over 3 feet at times in the vicinity of the double "B" catch basins on Lincoln Boulevard.  The proposed installation of the 42-inch drainage line should significantly increase the carrying capacity of the drainage system in this area.  The Applicant should review the drainage calculations for the site and for the Lincoln Boulevard frontage to determine the best design elevations for the proposed parking garage entrance and residential units along Lincoln Boulevard."* The proposed first floor elevations along Lincoln Boulevard are situated approximately 6 to 8 inches above the roadway curb line. The Applicant is proposing to construct a 42-inch reinforced concrete pipe that will convey stormwater runoff from the Lincoln Boulevard right-of-way, including from the aforementioned type 'B' inlets, to the municipal conveyance system within the Linwood Avenue right-of-way. It is NEA's understanding, that the purpose of this improvement is to alleviated the occurrence of the above-mentioned flooding incidences within Lincoln Boulevard. Based on the same, NEA takes no objection to the proposed first floor and garage entrance elevations along Lincoln Boulevard. **No further action is required.**

4.9.    *"The Borough of Emerson may require the proposed 42-inch drainage line to remain the responsibility of the developer so a drainage easement may not be required.  The proposed 42-inch RCP will require the existing storm drain manhole on Lincoln Boulevard to be reconstructed to provide enough wall surface to make the connection.  The existing catch basin chamber on the north side of Linwood Avenue was constructed to accept a sleeve for the 42-inch RCP on the northeast corner of the chamber.  The Applicant shall verify the elevation of the invert and demonstrate the proposed slope of the drainage line and connection to be Lincoln Boulevard drainage system."* The Applicant has provided stormwater conveyance calculations for the 25-year storm event. However, the Applicant shall submit a stormwater management report, inclusive of existing and proposed peak flow rates, along with the associated hydrographs, to confirm the impact to the aforementioned conveyance system. **The Applicant has submitted a stormwater management report, as requested. The Applicant has provided existing and proposed condition peak runoff calculations indicating that the impervious coverage on the site will not increase. Based upon this fact, the Applicant notes that the hydrographs for the 2-, 10-, and100-year storm events under the proposed conditions will not exceed that hydrographs for the same corresponding storm events under the existing conditions. The Applicant shall revise the stormwater management report to include the said hydrographs in tabular form to confirm the same.**

4.10.   *"The southwest corner of Kinderkamack Road and Lincoln Boulevard intersection presently has too small a curb return to effectively pass larger vehicles using the intersection.  The existing building has recently been struck by a truck making a right turn onto Kinderkamack Road.  The County of Bergen and Borough of Emerson will likely require the increase of the corner radius to 20-25 feet to better accommodate these turns."* This comment has been addressed. **No further action is required.**

4.11.   *"Kinderkamack Road is a County road.  Therefore, the Applicant will require a Bergen County Planning Board Approval.  The Applicant shall provide testimony as to where they are in the Bergen County Planning Board review/approval process and further discuss all the County requirements."* This application has been approved by the Borough of Emerson Land Use Board. As such, the above requested testimony is no longer applicable. However, the Applicant shall submit all correspondence and approvals from the Bergen County Planning Board for review. The Applicant has received conditional approval from the Bergen County Planning Board. This comment has been addressed. **No further action required.**

4.12.   *"The Applicant shall provide testimony with regard to traffic site circulation and the operation method of the gated entrance and exit to the parking garage, as well as who will be permitted to access this*



*structure.  Testimony should also be given to determine how the surface parking spaces will be utilized.*"
This application has been approved by the Borough of Emerson Land Use Board. As such, the above
request for testimony is no longer applicable. However, the Applicant has indicated within the submitted
comment response letter that a parking control arm will restrict access to parking levels 2 through 5 for
residential uses only.  In addition, information addressing traffic circulation within the development is
provided within the submitted Traffic and Parking Assessment Report. **No further action is required.**

4.13.    *"The Applicant should provide testimony how residents from the complex will access the NJ Transit train
platform.  Will crosswalks be provided in the parking lot areas?  Will there be pedestrian access other
than along Linwood Avenue and Lincoln Boulevard?"* This application has been approved by the Borough
of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. However, it
is noted that the Applicant will assist with the Borough's efforts to create pedestrian routes between the
proposed development and the Borough's New Jersey Transit train station located. **The Applicant has
indicated through his letter to the Borough Administrator dated February 14, 2020 that input
regarding these efforts has been requested. No action required at this time.**

4.14.    *"The Borough's Police and Fire Departments shall review and comment with regard to emergency access,
firefighting ability, site circulation and the like.  It does not appear that the Applicant provided any type of
fire truck area striping.  The Applicant shall provide testimony with regard to this matter."* This
application has been approved by the Borough of Emerson Land Use Board. As such, the above request
for testimony is no longer applicable. <u>**The Applicant has submitted plans to the Borough Fire
Department and Borough Police Department and is awaiting their reviews responses. This comment
remains applicable until the Applicant has acquired plan review letters from the Borough of
Emerson Police and Fire Departments.**</u>

4.15.    *"According to the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), the number of
Barrier Free Parking spaces required for parking lots containing between 301 and 400 total parking
spaces is seven (7) accessible parking spaces plus one (1) additional space to be van accessible.
Therefore, the Applicant has satisfied this condition.  Boswell takes no exception to this matter.  The
Applicant shall coordinate the location of these parking spaces with the Borough's Construction Official."*
<u>**This comment remains applicable and shall be addressed during construction.**</u>

4.16.    *"There doesn't appear to be any place for trash to be stored and picked up.  The Applicant shall provide
testimony with regard to the location, frequency and time of garbage pickup.  If garbage pickup is
encountered during peak operational times, a backup into the site could occur not allowing the entering
vehicles to access the angular parking stalls."* The Architectural Plan Set has been revised to illustrate the
location of a proposed dumpster enclosure in the vicinity of the interior building trash room. In addition,
the Applicant has indicated within the submitted comment response letter that trash removal operations
will be conducted through a private hauler during off-peak hours. Overall, NEA takes no exception to
overall trash removal operations. However, the Applicant shall revise the Site Plan Set to illustrate the
location of the proposed trash enclosure location, as per the Architectural Plan Set. This comment has been
addressed. **No further action required.**

*Architecture*

4.17.    *"The Applicant should present testimony regarding the proposed exterior façade of the various buildings,
including materials and colors, overhangs, facades, setbacks, railings, roofing styles, etc.  Architectural
renderings in 2D and 3D and in color should be provided to the Land Use Board to demonstrate how the
redevelopment site will look from all four (4) sides of the property.  Substantial, additional information
will be required.  The building designs shall be in conformance with Chapter 290 Article XIII, CBD-10
Central Business District Zones of the Emerson Zoning Code."* This application has been approved by the
Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable.



However, based on NEA's review of the proposed building façade design and articulation, it appears that the Applicant complies with the standards established within Chapter §290-70.A (Architectural Guidelines) of the Borough of Emerson Zoning Code. NEA defers to the Borough's Land Use Board Planner for a final determination with respect to the proposed building façade components and compliance with applicable sections of the Borough of Emerson Zoning Code. **Refer to 2.1 above. This item has not been addressed.**

4.18.  *"The architectural plan shows a cut away section view A-A on the northwest corner of Kinderkamack Road and Linwood Avenue with an overall height in excess of 50 feet.  This is contrary to the maximum permitted building height for the redevelopment area.  The Applicant shall explain this design feature, and if it complies with Chapter 290-69 of the Zoning Code."* **NEA defers to the Borough Land Use Board Planner and Attorney with respect to compliance with this comment.**

4.19.  *"The architectural plan shows a cut away section view B-B on the southwest corner of Kinderkamack Road and Linwood Avenue with a set of stairs leading to the ground floor of the complex.  The Applicant is to provide testimony of guiderail protection for an errant vehicle leaving the road and travelling down the steps is required."* The plans have been revised to include bollards along the main entrance stairway. This comment has been addressed. **No further action is required.**

4.20.  *"The Building Unit Mix Chart on Sheet 1 of the architectural plans prepared by Devereance & Associates and dated 11/15/2018 shows an error for the total of studio apartments units in the complex.  It shows a total of one studio unit on each of the three floors, but a total of 6 units.  This discrepancy should be corrected."* This comment has been addressed. **No further action is required.**

4.21.  *"The COAH Dwelling Units chart on the same sheet indicates a COAH ratio of 15% of the unit totals, but the calculation indicates 25% of 127 units, not 15% of 147 units.  The calculations appear to be incorrect. The Applicant shall provide testimony regarding this requirement.  Also, the COAH calculation shows 3-bedroom units, but no 3-bedroom units appear in the Building Unit Mix Chart."* This comment has been addressed. **No further action is required.**

4.22.  *"No information has been provided concerning any retail store signage that may be required or anticipated for the site.  All proposed advertising and site signage shall be shown on a supplemental plan and submitted to the Borough Planner and Borough Engineer for approval prior to construction, and meet the latest requirements of the Emerson Code for signage restrictions."* **The Applicant has indicated that compliance with this comment will be adhered to and provide signage for approval once tenants are finalized. This comment remains applicable.**

*Traffic*

4.23.  *"The Applicant's design has eliminated all driveways from Kinderkamack Road into the site in order to permit less operational conflicts for the Kinderkamack Road corridor between intersections, and has located their new driveways as far from Kinderkamack Road as possible to improve stacking.  Access to the site will be provided from the signalized intersections recently completed by the Borough of Emerson and Bergen County improvements, and maintained by Bergen County.  Road widening and actuated turning lanes have been installed to permit safe access to the site.  Boswell Engineering does not anticipate the need for any additional pavement widening or improvements along Kinderkamack Road, which will be subject to the review and approval of Bergen County."* **No response required.**

4.24.  *"The Applicant should provide testimony concerning how they anticipated the shared parking spaced between commuter spaces and retail spaces to operate, and the hours reserved for this designation.  The Applicant should provide testimony regarding how many parking spaces will be reserved for commuter parking, where these spaces will be designated, and the fee, if any for parking."* This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no



longer applicable. However, the Site Plan Set has been revised to illustrate the locations of proposed signs indicating the locations, as well as associated time restrictions, of commuter parking spaces. The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station. It should be noted that the language on the sign should note "Borough of Emerson Residents" as to not confuse residents of the complex. **The Applicant has revised the signage detail to avoid confusion. This comment has been addressed. No further action required.**

4.25.  *"Testimony should be provided as to how many vehicles trips are expected to be generated during peak hours for the parking garage and the impacts on surrounding streets, particularly concerning the close proximity to the railroad grade crossing on Lincoln Boulevard."* This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. **However, NEA has provided comments addressing the Traffic and Parking Assessment Report in Section 5 (Neglia Engineering Associates Technical Review Comments) below.**

4.26.  *"The Applicant shall provide information with regard to the traffic site circulation and the operation method of the gated entrance and exit to the parking garage, as well as who will be permitted to access this structure. Testimony should also be given to determine how the surface parking spaces will be utilized."* As is noted elsewhere in this letter, the Applicant has indicated within the submitted comment response letter that a parking control arm will restrict access to parking levels 2 through 5 for residential uses only. In addition, the Applicant has submitted a Traffic and Parking Assessment Report which addresses traffic circulation associated with the site. This comment has been addressed. **No further action is required.**

4.27.  *"The Applicant should present information and testimony as to how many vehicles can be queued for the Lincoln Boulevard entrance to the parking garage before they could affect vehicle flow along Lincoln Boulevard."* This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. **However, NEA has provided comments addressing the Traffic and Parking Assessment Report in Section 5 (Neglia Engineering Associates Technical Review Comments) below.**

4.28.  *"The Applicant should provide testimony with regard to the days and hours of operation of the parking garage, the fees to the charges for visitors, the method of payment, a discussion concerning whether the fee is collected while entering or exiting the structure, whether a tow truck can be accommodated to service disabled vehicles, etc. Will the drive aisle from Lincoln Boulevard provide access to the surface parking lot without going through a gate? How would emergency vehicles enter the surface parking lot from Lincoln Boulevard?"* As per the submitted Site Plan Set and Architectural Plan Set, as well as the Applicant's comment response letter, there will be no access restrictions to the site via the driveways located along Lincoln Boulevard and Linwood Avenue. However, access to parking levels 2 through 5 will be restricted via a parking gate for residents only. **NEA defers to the Borough of Emerson Police and Fire Departments for comments regarding access to the site for emergency vehicles.**

4.29.  *"The parking spaces for the surface plot and in the parking garage should be striped in a hairpin striping style to ensure the parked vehicles are centered in the spaces."* This comment has not been addressed. The Site Plan Set and Architectural Plan Set shall be revised to illustrate hairpin striping within the parking lots. This comment has been addressed. **No further action required.**

4.30.  *"All signs that regulate or control traffic movements and restrictions shall meet the requirements of the current Manual on Uniform Traffic Control Devices published by the Federal Highway Administration."* This comment has been addressed through notation within the Site Plan Set. **No further action is required.**



*Stormwater Management*

4.31.   *"It appears that the Applicant is proposing that a stormwater management facility be constructed along the southerly portion of the site along with three (3) proposed catch basins connected to said facility via piping to the proposed 42-inch drainage line. The site shall be graded so that runoff from the pavement will be collected in these basins, conveyed to the 42-inch drainage line, and then enter the existing drainage system in Kinderkamack Road at Linwood Avenue."* This comment has been addressed. **No further action is required.**

4.32.   *"No runoff from this site shall affect any adjacent site both during and subsequent to construction. Should a drainage issue persist, the Applicant shall remedy the matter at his/her own cost."* Notation indicating the same has been provided on the Site Plan Set. **<u>However, this comment remains applicable for the duration of construction.</u>**

*Site Lighting*

4.33.   *"A site lighting plan has not been provided for the redevelopment area. A site lighting plan is required to be designed in accordance with the Emerson Code, and site lighting at all property lines to other properties shall not exceed one (1) Fc. Glare cannot exceed one (1) Fc along with westerly property line. The proposed lighting should be shielded to reduce this intensity."* The Applicant has revised the Site Plan Set to include a lighting plan. However, in accordance with Chapter §290-70.E(1)(c) of the Borough of Emerson Zoning Code, the maximum allowable illumination along the property line is 0.5 foot-candles. Based on the lighting plan, it appears that lighting levels along the westerly property line will exceed 0.5 foot-candles. In addition, in accordance with Chapter §290-70.E(1)(c) of the Borough of Emerson Zoning Code, access driveways are required to have a minimum illumination level of 1.0 foot-candle and an overall average illumination level of 2.0 foot-candles. Illumination levels at the driveways along Lincoln Boulevard and Linwood Avenue do not comply with these requirements. The Applicant shall revise the plan to comply with the above requirements or new variances from the Borough of Emerson Zoning Code will be required. This comment has been addressed. **No further action required.**

4.34.   *"The Applicant should provide testimony if the site lighting will be in conformance with Borough Standards (§290-48.B and §290-54)."* This application has been approved by the Borough of Emerson Land Use Board. As such, the above request for testimony is no longer applicable. **No further action required.**

4.35.   *"The Board shall consider having the Applicant agree to a six (6) month period from the time of receiving the Certificate of Occupancy that site light is monitored and should there be a problem, the Applicant shall correct said problem at his or her own cost. Lights shall be shielded to prevent light from escaping this site and affecting adjacent properties."* Notation indicating the same has been provided on the Site Plan Set. However, this comment remains applicable and shall addressed within the six (6) month period following the completion of construction **The Applicant has provided confirmation regarding the above. No action required at this time**

*Soil Movement*

4.36.   *"The Applicant shall provide soil movement calculations from a licensed professional engineer in the State of New Jersey and file a Soil Moving Permit application all in accordance with §244 of the Emerson Code."* This comment has been addressed. **No further action required.**

4.37.   *"The Applicant shall obtain a Bergen County Soil Moving Permit and provide the Borough and this office* [Neglia Engineering Associates] *with a copy for our files."* This comment remains applicable until the Applicant has obtained approval from the Bergen County Soil Conservation District. This comment shall be addressed prior to construction. This comment has been addressed. **No further action required.**



NEGLIA
ENGINEERING ASSOCIATES

*Landscaping*

4.38.    *"Boswell is in the process of reviewing the site landscaping. We will submit our comments under separate cover. Boswell takes no exception to have the review and approval of site landscaping to be stated in the resolution as a condition of approval should be Board so desire."* NEA has reviewed the proposed landscaping and has provided comments below in Section 5 (Neglia Engineering Associates Technical Review Comments). **The Applicant has addressed all landscape issues regarding this application. No further action required.**

*General Comments and Jurisdictional Approvals*

4.39.    *"All ADA pedestrian facilities constructed on site and within public rights-of-way or easements must be constructed in accordance with Federal ADA Standards. This includes ramps located at intersections as well as driveways. Compliant Design and Construction Certifications for Pedestrian Facilities within Public Rights-of-Way must be completed and submitted to the Municipal Engineer."* <u>**This comment remains applicable, and shall be addressed prior to construction of ADA facilities.**</u>

4.40.    *"All recently constructed sidewalk areas surrounding the redevelopment area will need to be removed and reconstructed in accordance with the streetscape design approved by the Borough of Emerson and prepared by Burgis Associates in 2005. It stall include street lighting pedestals and fixtures designed in conformance with the other street lighting in the downtown area. The reconstruction should include the area in front of Lot 5, to the extent possible, so the sidewalk and streetscape design is consistent along Kinderkamack Road."* <u>**This comment still applies. In addition, the Applicant shall submit shop drawings for all streetscape elements (i.e. lighting, benches, trash receptacles, etc.) for review and approval prior to construction.**</u>

4.41.    *"The Emerson Zoning Code Section 290-70.B.1(b) requires that buildings set back 17 feet from the curb face are required to have a minimum sidewalk width of 12 feet, inclusive of a four-foot minimum landscaped planter separating two four-foot-wide sidewalks, one of which is adjacent to the building and the other adjacent to the curb. The Applicant shall provide a plan and cross-section view of the proposed sidewalk area and provide testimony that this requirement is satisfied."* This comment has been addressed. **No further action required.**

4.42.    *"A complete set of construction plans will be required for submittal and approval of the Borough Engineer and Borough Planner prior to the start of any construction in the redevelopment area."* <u>**This comment remains applicable and shall be addressed prior to construction.**</u>

4.43.    *"ADA Compliance Construction Certification must be submitted by the Project Engineer of record and must be submitted with the as-built drawings(s) after the ramp(s) have been inspected. The Certification Forms for construction must be obtained from the Municipal Engineer."* <u>**This comment remains applicable.**</u>

4.44.    *"The Applicant should obtain approvals and/or waivers from the following agencies:*

   a.    *The Bergen County Planning Board,*
   b.    *The Bergen County Soil Conservation District,*
   c.    *Borough of Emerson Police Department (regarding site circulation and emergency access…)*
   d.    *Borough of Emerson Fire Department (Emergency Access, Fire Lanes, Ability to fight fires…)*
   **e.**    *All other Agencies having jurisdiction."*

   <u>**This comment remains applicable, as required. All correspondences and approvals from the above respective agencies shall be submitted for review.**</u>



5. **Neglia Engineering Associates Technical Review Comments:**

5.1.    The Applicant proposes to provide a total of 120 parking spaces on the ground floor parking garage level and the exterior parking area along the rear of the building. In accordance with the ADA Standards for Accessible Design provided by the Department of Justice, latest revised, parking facilities with 101 to 150 parking stalls are required to provide five (5) ADA accessible parking spaces. The Applicant is currently proposing a total of four (4) ADA accessible parking spaces within the ground floor parking garage level and exterior parking area along the rear of the building. The Applicant shall provide an additional ADA accessible parking space within the rear parking area as a means of achieving compliance with the ADA Standards for Accessible Design provided by the Department of Justice, latest revised. NEA recommends that this additional required space be located within the southernmost portion of the parking lot to provide an ADA-accessible parking space for commuters utilizing the Borough of Emerson New Jersey Transit train station across Linwood Avenue. This comment has been addressed. **No further action required.**

5.2.    The Applicant shall provide parking stall and drive aisle dimensions for the parking garage levels. This comment has been addressed. **No further action required.**

5.3.    As per the submitted Architectural Plan Set, the Applicant is proposing to construct a trash enclosure structure within a curb island located along a 14-foot service access lane. The location of the same shall be illustrated within the Site Plan Set and associated construction details shall be provided for review. In addition, the location of the proposed trash enclosure conflicts with proposed landscaping. The landscaping plan within the Site Plan Set shall be revised accordingly. This comment has been partially addressed. The Applicant has provided a detail in the form of a photo representation of the proposed enclosure. The Applicant shall additionally provide a dimensioned construction drawing of said trash enclosure. **This comment has been addressed. No further action required.**

5.4.    The Applicant shall provide construction details for the proposed bollards at the front building entrance at the Lincoln Boulevard and Kinderkamack Road intersection. This comment has been addressed. **No further action required.**

5.5.    The Applicant shall revise the grading plan within the Site Plan Set to include additional bottom of curb elevations along Lincoln Boulevard, Kinderkamack Road and Linwood Avenue. This comment has been partially addressed. The Applicant shall provide additional bottom of curb grades along Kinderkamack Road and Linwood Avenue. **This comment has been addressed. No further action required.**

5.6.    The proposed site improvements classify the project as a "Major Development" as defined under the Stormwater Management Adopted New Rule: N.J.A.C. 7:8 by disturbing more than an acre of land. As per the submitted Site Plan Set, under the proposed conditions, it appears that stormwater runoff generated within the site drains to the existing municipal conveyance systems within the Lincoln Boulevard, Kinderkamack Road and Linwood Avenue right-of-ways via overland sheet flow, shallow concentrate flow and pipe conveyance. Under the proposed conditions, the Applicant intends to construct a 42-inch reinforced concrete pipe (RCP) that conveys stormwater runoff from the municipal conveyance system within Lincoln Boulevard to the conveyance system within Linwood Avenue. Stormwater runoff generated within the proposed exterior parking area will be directed to inlets that drain to the aforementioned 42-inch reinforced concrete pipe (RCP). The Applicant shall submit a stormwater management report, inclusive of existing and proposed peak runoff rates along with the associated hydrographs, demonstrating compliance with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8. **The Applicant has submitted a stormwater management report, as requested. The Applicant has provided existing and proposed condition peak runoff calculations indicating that the impervious coverage on the site will not increase. Based upon this fact, the Applicant notes that the hydrographs for the 2-, 10-, and 100-year storm events under the proposed conditions will not exceed that hydrographs for the same corresponding storm events**



**under the existing conditions. The Applicant shall revise the stormwater management report to include the said hydrographs in tabular form to confirm the same.**

5.7.    As per the Stormwater Management Adopted New Rule: N.J.A.C. 7:8-5.5, stormwater management measures shall be designed to reduce the post construction load of total suspended solid (TSS) in stormwater runoff generated from the water quality design storm by 80 percent of the anticipated load from the developed site for developments that increase the impervious coverage by one-quarter acre. Based on the submitted Site Plan Set, it does not appear that the development will result in an increase in the overall impervious coverage by one-quarter acre or more. As such, the Applicant is exempt from this requirement. **No response required.**

5.8.    As per the Stormwater Management Adopted New Rule: N.J.A.C. 7:8-5.4 (a)(2), 100 percent of the sites average annual pre-developed recharge volume must be maintained after development. As per the State of New Jersey Smart Growth Area Plan, the Borough of Emerson is designated as a Metropolitan Planning Area.  The project is exempt from groundwater recharge requirements as per N.J.A.C. 7:8 5.4 (a)(2)ii. **No action required.**

5.9.    The Applicant shall submit a stormwater maintenance manual for review. **This comment has not been addressed.**

5.10.   The Applicant shall revise the Site Plan Set to clearly illustrate how stormwater runoff generated by the building roof areas and parking levels will drain to the on-site stormwater conveyance system. The Applicant has amended the site plan to illustrate that the stormwater runoff from the roof area will convey to the on-site conveyance system via a 12 inch roof drain. The Applicant shall specify the pipe material and slope. Furthermore, upon submission of the Stormwater Management Report, the Applicant shall submit revised conveyance calculations demonstrating that the proposed roof drain has adequate capacity. **The Applicant has indicated that conveyance calculations will be provided once the roof leader connections have been finalized. Pending the forthcoming calculations, this comment remains applicable.**

5.11.   The Applicant shall be responsible for ensuring that any and all soils imported to the site are certified clean soils in accordance with current NJDEP Standards, with a copy of the said certification provided to the Borough of Emerson and NEA prior to the import of any material by a professional. Recycled material or demolished materials are not permitted for the purposes of backfilling a vacated excavation area. The Site Plan Set shall be revised to include notation indicating the same. **This comment remains applicable for the duration of the construction period. Notation indicating the same has been provided.**

5.12.   The Applicant shall ensure that all disturbed work areas are stabilized. The Applicant shall topsoil, seed, hay, and straw mulch to ensure lawn growth, where appropriate. **This comment remains applicable for the duration of the construction period.**

5.13.   A Soil Evaluation Report shall be prepared and submitted by a licensed professional engineer in the State of New Jersey, prior to any construction. This report shall include the following content at a minimum:

- Soil boring or test pit logs and location map;

- Detailed procedures and methods used to conduct any soil test;

- Weather conditions at the time of any testing, including time, temperature, and the amount of precipitation within the preceding 48-hour period;

- Identification of the seasonal groundwater elevation;

- Field observations; data collected during any on-site test; derived/calculated infiltration rate(s), if applicable;



- A statement of certification signed and sealed by an appropriate professional attesting that the field and conditions observed are either suitable or unsuitable for construction of the approved stormwater management system. If unsuitable conditions are encountered, the Applicant shall include a proposed revised stormwater management plan. The revised plan must result in the equivalent runoff rate and volume as the originally approved plan; and

- NEA shall be notified 48 hours in advance of this testing so that a representative of our office may be present for this testing.

This comment remains applicable. The required Soil Evaluation Report shall be provided prior to commencement of construction. **Per the plans and stormwater calculations, the Applicant is not proposing to construct any subsurface infiltration basins. As such, this comment no longer applies.**

5.14. The Applicant shall provide a final certification memorandum, prepared, signed, and sealed by a licensed engineer in the State of New Jersey before a recommendation to issue a final certificate of occupancy can be made. This certification shall contain the following content at a minimum:

- A chronological log of site visits that include the date, time, weather and the nature of stormwater management-related work;

- Signed and sealed certification of a licensed professional in the State of New Jersey attesting to the following:

  o He/She was on-site and observed key phases of active construction;

  o He/She evaluated the as-built condition and that all aspects of the stormwater management system conforms to the approved plan or justify any exceptions thereto; and

  o He/She is of the professional opinion that the stormwater management system is expected to operate in accordance with the approved plan.

  **This comment remains applicable and shall be addressed prior to issuance of a final certificate of occupancy.**

5.15. The Applicant shall provide water usage and sanitary sewer calculations signed and sealed by a Professional Engineer licensed in the State of New Jersey to ensure that the existing systems provides sufficient capacities for the proposed development. The Applicant shall submit a set of plans to the Borough of Emerson DPW for review. **This comment has not been addressed.**

5.16. The Applicant shall perform a comprehensive thirty (30) day meter study for the existing sanitary sewers system within the Kinderkamack Road right-of-way to ensure that adequate capacity is provided within the existing systems to service the proposed improvements. **This comment has not been addressed.**

5.17. The Applicant shall acquire an NJDEP Treatment Works Approval and an NJDEP water extension permit for the proposed development. Copies of the same shall be provided to the Borough of Emerson and NEA, if necessary. **This comment has not been addressed.**

5.18. All rooftop equipment shall be sufficiently screened and baffled to satisfy all applicable noise ordinances. Notation indicating the same shall be provided within the Site Plan Set. This comment has been addressed. **No further action required.**

5.19. The Applicant shall illustrate the locations of all meters, transformers, generators, or other external equipment associated with the proposed building. All meters and transformers shall be screened and not visible from public view. Notation indicating the same shall be provided. The requested notation has been provided. **The locations of all meters, transformers, generators, or other external equipment associated with the proposed building shall be provided prior to construction.**



5.20.   The Applicant is proposing to relocate overhead electric utility lines and poles. The Applicant shall provide associated documentation and approvals from the electric utility purveyor confirming the proposed overhead electric utility line and pole relocations. **This comment has not been addressed.**

5.21.   Based on the lighting plan provided within the Site Plan Set, no illumination will be provided along the Lincoln Boulevard sidewalk areas. NEA recommends that the Applicant provide lighting improvements along this area. This comment has been addressed. **No further action required.**

5.22.   The Site Plan Set and/or Architectural Plan Set shall be revised to include lighting iso-contours and a point-to-point lighting analysis for the parking garage levels, including the roof parking level. This comment has been addressed. **No further action required.**

5.23.   The Applicant shall provide an irrigation system to ensure that the proposed landscaping improvements thrive. Notation indicating the same shall be provided within the Site Plan Set. This comment has been addressed. **No further action required.**

5.24.   All street trees shall be limbed up to seven (7) feet at the time of planting. Notation indicating the same shall be provided within the Site Plan Set. This comment has been addressed**. No further action required.**

5.25.   NEA has reviewed the Applicant's submitted Traffic and Parking Assessment Report. The Applicant provided trip generations for the proposed mixed-used development with 147 residential units and 17,300 square feet of retail based on the ITE's '*Trip Generation'*, 10th Edition. This report is inclusive of trip generation data related to the proposed residential development. The residential development will generate approximately 53 new trips during weekday morning peak hours and 65 new trips during the weekday evening hour. The proposed trip generation for the retail development is anticipated to be more than the proposed trip generation stated by the Applicant. The Applicant shall address why the proposed trip generation for retail is not approximate to ITE's '*Trip Generation'*, 10th Edition Land Use 820. In addition, based on the most recent Architectural Plan Set submission, the Applicant is proposing 14,700 square feet of retail space. The Traffic and Parking Assessment Report shall be revised accordingly. **This comment has been addressed. No further action required.**

**6.   Resolution Compliance:**

*Stipulations made by the Applicant:*

6.1.    Applicant shall comply with all landscaping comments regarding the application, which are to be submitted by the Board Engineer's office or the Board Planner's office, one or the other which shall be completed to the satisfaction of the Board Engineer and/or Board Planner. **The Applicant has addressed all landscape issues regarding this application. This resolution condition has been addressed. No further action required.**

6.2.    Applicant will meet with the Land Use Board Planner and a subcommittee of the Governing Body for the Borough and the Land Use Board to discuss and address the Board's and the Borough's concerns and comments regarding the final architectural design and details of the project and all other aspects of the project. Applicant agrees to use all good faith efforts to satisfactorily address the Board's and Governing Body's concerns and comments through the subcommittee. The sample materials that were submitted as hearing evidence shall be the ones utilized during construction unless otherwise approved by the Borough. **This resolution condition remains applicable.**

6.3.    Applicant shall dedicate at least fifty-five (55) of the ~~seventy-three (73)~~ ~~seventy-two (72)~~ seventy three (73) surface parking spaces on the Property for the exclusive use by New Jersey Transit (Emerson Borough) train station users during the hours of 7:00 AM and 6:00 PM, Monday through Friday. The signage and permitting for these 55 commuter spaces shall be agreed upon between the Borough and Applicant. The Applicant has revised the Site Plan Set to designate ~~fifty-five (55)~~ fifty-four (54) parking



spaces for commuter use via proposed signage. The signage shall be revised to note that the proposed commuter parking spaces are to be designated only for residents of the Borough of Emersion using the New Jersey Transit train station. Through the process of adding one additional ADA compliant parking space, the Applicant has reduced the number of commuter parking spaces from fifty-five (55) to fifty-four (54). The Applicant shall relocate a 'Reserved for Resident Computer Parking' sign in order to comply with the required number of fifty-five (55) spaces. **The Applicant has not relocated the "Reserved for Resident Computer Parking" sign. In addition, the Architectural Plan illustrating the parking spaces along the railroad does not coincide with the Engineering Plan. This resolution condition has not been addressed.**

6.4.   Insofar as the proposed development is constructed with the parking reduction set forth in Section §290-71.A(a) of the Borough Code: medical office space – which shall include walk-in and urgent-care clinics and other medical, dental, treatment and therapy-related facilities – shall be a prohibited use in the proposed development. The Applicant has provided notation within the Site Plan Set noting the above prohibited uses. **However, the Applicant is advised that this resolution condition remains applicable.**

6.5.   Applicant shall provide turning templates for garbage trucks and emergency vehicles accessing the property, for the review and approval of the Board Engineer and/or Board Planner. The required vehicle turning exhibits have been provided. Overall, NEA takes no exception to the same. This resolution condition has been addressed. **No further action is required.**

6.6.   Applicant shall provide drainage calculations for the proposed development for the review and approval of the Board Engineer. This resolution condition has not been addressed. As stated above, the Applicant has submitted conveyance calculations associated with the proposed stormwater conveyance system. However, the Applicant shall submit an accompanying stormwater management report demonstrating that the development will comply with the requirements established within the Stormwater Management Adopted New Rule: N.J.A.C. 7:8. **The Applicant has submitted a stormwater management report, as requested. The Applicant has provided existing and proposed condition peak runoff calculations indicating that the impervious coverage on the site will not increase. Based upon this fact, the Applicant notes that the hydrographs for the 2-, 10-, and 100-year storm events under the proposed conditions will not exceed that hydrographs for the same corresponding storm events under the existing conditions. The Applicant shall revise the stormwater management report to include the said hydrographs in tabular form to confirm the same.**

6.7.   The Applicant shall provide any off-tract improvements required by the application consistent with the MLUL and the Redevelopment Agreement. **This resolution condition remains applicable, as required.**

6.8.   There shall be a review after six (6) months to address any lighting concerns, and adjustments are to be made at the direction and approval of the Board Engineer. **This resolution condition remains applicable and shall be addressed six (6) months after the completion of construction.**

6.9.   Deliveries shall not be made from Kinderkamack Road and shall only be made in the rear of the building(s) of the proposed development**. The Applicant has provided notation within the Site Plan Set noting the above. **However, the Applicant is advised that this resolution condition remains applicable.**

6.10.  Applicant will reasonably assist the Borough efforts to create pedestrian connections to and from the Property and the Borough's New Jersey Transit train station. **The Applicant has indicated through his letter to the Borough Administrator dated February 14, 2020 that he has requested input regarding these efforts. This resolution condition remains applicable.**

6.11.  All standing snow of 2 inches or more, from one or multiple snow events, shall be removed from the Property by the Applicant at the Applicant's sole cost and expense. The Applicant has provided notation within the Site Plan Set indicating that snow accumulation of 4-6 inches or more, from one or multiple snow events, shall be removed from the property, at the Applicant's sole cost and expense. However, the



Applicant is advised that this resolution condition remains applicable as the approval stipulates 2 inches or more. The note shall be updated and this condition will run with the property. **Notation of the above has been provided on the plans. This resolution condition has been addressed. No further action required.**

6.12. Subject to obtaining the permission of the owner of Block 419, Lot 5 ("Lot 5"), and provided same does not encroach onto Lot 5, the Applicant shall continue the streetscape for the proposed development across the frontage of Lot 5. **Permission to continue the streetscape has been provided by the owner of Block 419, Lot 5. This resolution condition has been addressed. No further action is required.**

6.13. Applicant shall revise the architectural plans to be to scale and to provide dimensions to confirm compliance with all Borough Code requirements, including but not limited to, the design standards set forth in the Redevelopment Plan, and the Applicant shall provide elevations of all four sides of the proposed development for review and approval by the Board Engineer and/or the Board Engineer. The Applicant has revised the Architectural Plans to include the requested additional dimensions. **However, NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the design standards set forth in the Redevelopment Plan.**

6.14. Applicant shall comply with all applicable requirements of the Redevelopment Agreement, the Settlement Agreement and UHAC with respect to the affordable housing proposed as part of the development. **This resolution condition remains applicable.**

6.15. Applicant shall design the HVAC units to be shielded from public view and shall provide some HVAC and vents for units suitable for future restaurant uses within the development to the approval of the Board Engineer. This resolution condition remains applicable. All documents related to the same shall be submitted for review. **The Applicant indicates that the HVAC units will be shielded from public view. This resolution condition has been addressed, No further action required.**

6.16. Applicant shall provide a point-to-point lighting plan for the review and approval of the Board Engineer. This resolution condition remains applicable. The Applicant has provided a point-to-point lighting plan. However, see the comments in Section 5 (Neglia Engineering Associates Technical Review Comments) above for additional required lighting information. This comment has been addressed. **No further action required.**

6.17. Applicant shall submit a directional sign package for the review and approval of the Board Engineer and/or Board Planner. **The Applicant has indicated that he will comply with this condition and will provide signage for approval once tenants are finalized. This comment remains applicable.**

*Conditions Specific to this Application:*

6.18. Applicant shall abide by all of the stipulations set forth at length above. **This resolution conditions remains applicable. See our responses above to the said stipulations.**

6.19. The Applicant shall submit revised site plan and architectural plan sets incorporating any and all applicable conditions set forth herein, and conditions of all engineering reports and reports of the Land Use Board's professionals, and the subcommittee of the Board and the Governing Body, for the review and approval of the Board Engineer and/or Board Planner. **This resolution conditions remains applicable, as required.**

6.20. The Applicant shall obtain the appropriate approvals, permits and/or letter for the Application from all applicable local, county, state and federal bodies and agencies, including, but not limited to, the following:

   a. Bergen County Planning Board;
   b. Bergen County Soil Conservation District;
   c. Borough of Emerson Police Department;



d.  Borough of Emerson Fire Department; and

e.  New Jersey Department of Environmental Protection.

**This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review.**

6.21  If any material changes to the site plan as approved by this Resolution of the Board are required by any other governmental body or agency, said changes are to be brought by the Applicant on a forthwith basis before the Board, which retains jurisdiction over the application. **This resolution conditions remains applicable.**

6.22  The Applicant shall at all times comply with all applicable rules, regulations, ordinances and statutes of the Borough of Emerson, County of Bergen, State of New Jersey and the federal government with regard to the development, including but not limited to, the Americans with Disabilities Act. **This resolution conditions remains applicable.**

6.23  The Applicant agrees that the work to be performed consistent with this resolution will be consistent with Emerson's Redevelopment Plan. **This resolution conditions remains applicable.**

6.24  Nothing herein grants the Applicant an approval of any material changes to this application as set forth in detail in this resolution. Any such changes or amendments will require amended site plan and/or variance approval from this Board, as applicable. **This resolution conditions remains applicable, as required.**

6.25  The Applicant shall comply with the following comments set forth in the Boswell Engineering review letter dated December 6, 2018 ("Engineering Review Letter") and the Brigette Bogart Planning & Design Professionals, LLC review letter dated December 10, 2018 ("Planning Review Letter"):

a.  Engineering Review Letter Comments. **See outstanding comments above.**

b.  Planning Review Letter Comments. **NEA defers to the Land Use Board Planner with respect outstanding Planning Review Letter comments.**

6.26  The Applicant shall comply with the following final site plan checklist items:

a.  *Final Site Plan Checklist Item 2:* Original tracings with signature lines. **This item remains applicable.**

b.  *Final Site Plan Checklist Item 3:* Proof of execution of developer's agreement. **This item remains applicable.**

c.  *Final Site Plan Checklist Item 4:* Proof of posting of performance and/or maintenance bonds. **This item remains applicable.**

d.  *Final Site Plan Checklist Item 5:* Copies of recorded easements, rights-of-way or conveyances of open space or public easements, if required. **This item remains applicable, as required.**

e.  *Final Site Plan Checklist Item 6:* Deposit of escrow funds for engineering inspections, and any other items required by the Borough. **This item remains applicable.**

f.  *Final Site Plan Checklist Item 7:* Bergen County Planning Board approval. **The Applicant has been granted conditional approval from the Bergen County Department of Planning and Engineering and shall address all comments and conditions stated within their letter dated August 14, 2019. The final approval letter shall be provided when granted. This resolution item remains applicable.**

g.  *Final Site Plan Checklist Item 9:* Bergen County Soil Erosion and Sediment Control Plan approval, where required. **No further action required.**



6.27    The Settlement Agreement requires twenty-nine (29) affordable units, seven (7) of which may be provided off-site. The project will have 147 residential units including twenty-two (22) COAH or affordable units on-site and the Applicant will comply with the requirement of providing seven (7) off-site affordable units. The residential units will be on the ground floor along Lincoln Boulevard and on the ground floor in the rear parking lot. There will be residential units above that on the second, third and fourth floors. There are three access points: primary access points at the corner and one in the rear area. There will also be 14,710 square feet of retail space. **This resolution condition remains applicable.**

6.28    The following construction drawings and site plan items are required to be submitted and approved by the subcommittee review team of the Emerson Land Use Board and Governing Body, the Board Planner and Borough Planner, and the Board Engineer and Borough Engineer:

a.    Provide building elevation drawings for all four (4) sides of the redevelopment area with dimensions for each floor, balconies, reliefs, overhangs, parapets, cornices, and any other requested items. This resolution condition has been addressed. **No further action required.**

b.    Provide building elevation grades for the highest points for each façade section. This resolution condition has been addressed. **No further action is required.**

c.    Provide building elevation views for the side of the complex to face the existing building on Lot 5. This resolution condition has been addressed. **No further action required.**

d.    Provide datum elevations and locations from where all height measurements will be made for field verification. As is stated elsewhere in this report, the Applicant has provided top of curb and top of roof profiles for the building façades fronting Lincoln Boulevard, Kinderkamack Road, and Linwood Avenue. These profile views shall be amended to illustrate the associated alignment midpoint to confirm the building heights along the same as they relate to the maximum allowable building height. Furthermore, these profiles illustrate the top of roof elevation at 100 feet, whereas, the Architectural Plan Set illustrates the top of roof elevation at 95 feet. The Applicant shall clarify this discrepancy. Additionally, the Applicant shall revise the Site Plan Set to include an additional roof line profile along the railroad right-of-way. This resolution condition has been addressed. **No further action required.**

e.    The low point along Lincoln Boulevard may be the same as the final first floor elevation on the northeast corner of the building.  Design area to drain properly to reduce possible flooding of recessed stair entrance on the northeast corner of the building. This resolution condition has been addressed. **No further action required.**

f.    Provide top of curb profile of Lincoln Boulevard and roof profile. This resolution condition has been addressed. **No further action required.**

g.    Provide top of curb profile of Kinderkamack Road and roof profile. This resolution condition has been addressed. **No further action required.**

h.    Provide top of curb profile of Linwood Avenue and roof profile. This resolution condition has been addressed. **No further action required.**

i.    Provide typical construction details for all curbs, parking lots, sidewalks, drainage, sanitary sewers, electrical connections, and any other items requested. See Section 5 (Neglia Engineering Associates Technical Review Comments) above for any outstanding required construction details. **This resolution condition item has been addressed. No further action required.**

j.    Provide construction staging concepts, where work will commence, and construction staging schedules. **This item remains applicable and shall be addressed during construction.**



k.  Provide plan and details of fences along the railroad property. The Applicant has revised the Site Plan Set to illustrate the location of fencing along the railroad property, along with an associated construction detail. However, NEA recommends that the proposed fence include additional screening measures. **As indicated by the Applicant, the proposed fence has additional screening measures via evergreen shrubs and shade trees. This resolution condition item has been addressed. No further action required.**

l.  Provide the location of the PSE&G 230 KV underground electrical line located along the west side of the redevelopment property. **This resolution condition item has been addressed. No further action required.**

m.  Provide cross-sections, slopes and access controls for parking garage operation. The Applicant has provided proposed slopes for the parking garage ramps. However, the Site Plan Set and/or Architectural Plan Set shall be revised to include proposed contours and spot elevations for the parking garage levels. **The Applicant has provided spot elevations and slopes to the Architectural Plan Set. This resolution condition has been addressed. No further action required.**

n.  Provide inverts and slopes for proposed drainage system throughout the site. This resolution condition has been addressed. **No further action required.**

o.  Provide a grading plan for site, with spot grades plotted every 50 feet. This item has been addressed. **No further action is required.**

p.  Provide a soil erosion and sediment control plan with details. This item has been addressed. **No further action is required.**

q.  Provide a site lighting plan with intensities plotted throughout site. This resolution condition has been addressed. **No further action required.**

r.  Provide a streetscape lighting electrical plan to match county project lighting recently completed. **<u>The Applicant shall provide shop drawings to insure proposed streetscape lighting matches the County project.</u>**

s.  Provide a construction plan and cross-sections for new curb line along Lincoln Boulevard. This item has been addressed. **No further action is required.**

t.  Provide demolition plans and stone mat requirements for trucking operations. This item has been addressed. **No further action is required.**

u.  Provide quantity receipts for all recycled asphalt, concrete, contaminated soil, and steel removed from the site and presented to the Borough Superintendent of Public Works for municipal recycling credits. **<u>This item remains applicable and shall be enforced during construction.</u>**

v.  Provide traffic control plans for construction phases that will interfere with traffic flow on Kinderkamack Road, Lincoln Boulevard, and Linwood Avenue, to the satisfaction of the Borough Chief of Police. **<u>The Applicant has indicated that traffic control plans will be addressed. As such, this resolution condition remains applicable.</u>**

w.  Provide documentation that all NJDEP requirements regarding the underground monitoring wells on the site have been satisfied for the redevelopment. **The Applicant has provided documentation related to the monitoring wells in the letter November 21, 2019 letter from Bisgaier Hoff to the Borough Construction Official. This resolution condition item has been addressed. No further action required.**

x.  Supply, relocate and modify the traffic signal equipment on the southwest corner of the Kinderkamack Road and Lincoln Boulevard intersection to the satisfaction of Bergen County. This item remains



applicable. The Applicant shall provide documentation confirming that the aforementioned traffic signal equipment is to be supplied, relocated and modified to the satisfaction of Bergen County prior to construction. **The Applicant has indicated that all traffic signal related work has been completed by Bergen County. The Applicant shall submit documentation confirming same and insuring compliance with all comments contained within the August 14, 2019 letter from the Bergen County Department of Planning and Engineering. This resolution condition item has not been addressed.**

y.  Review and upsize the existing drainage line, as needed, along the south side of Lincoln Boulevard to provide additional flow capacity, once reviewed. This item remains applicable. NEA will review the same upon receipt of the required stormwater management report, as stated above in Section 5 (Neglia Engineering Associates Technical Review Comments). **The Applicant has submitted a stormwater management report, as requested. The Applicant has provided existing and proposed condition peak runoff calculations indicating that the impervious coverage on the site will not increase. Based upon this fact, the Applicant notes that the hydrographs for the 2-, 10-, and 100-year storm events under the proposed conditions will not exceed that hydrographs for the same corresponding storm events under the existing conditions. The Applicant shall revise the stormwater management report to include the said hydrographs in tabular form to confirm the same.**

z.  Provide information and the location of loading zones on-site for deliveries to the back of the proposed stores. This item has been addressed. **No further action is required.**

aa.  Provide the locations, parking signs, and pavement markings for the commuter parking and retail parking spaces for the site of the construction plans. This item has been addressed. **No further action is required.**

bb.  Provide a minimum of a 9.5-foot wide streetscape sidewalk design around the perimeter of the redevelopment zone, including along Linwood Avenue and Lincoln Boulevard. The Applicant proposes to construct streetscape improvements along Kinderkamack Road. However, no streetscape improvements are proposed along Linwood Avenue or Lincoln Boulevard. Based on the configuration of the proposed building, 9.5-foot wide sidewalk areas for streetscape are not provided along Lincoln Boulevard or Linwood Avenue. NEA defers to the Borough's Land Use Board Planner with respect to the streetscape requirements along Lincoln Boulevard and Linwood Avenue. The Applicant has revised the plans to provide for the required streetscape improvements. This comment has been addressed. **No further action required.**

cc.  Provide all necessary road widening easements, with parcel descriptions and parcel maps, to the County of Bergen and Borough of Emerson. **This item has not been addressed.**

dd.  Provide a cost estimate for all curbing, sidewalk, drainage paving, streetscape lighting, traffic signs, pavement markings, traffic signal relocation, regulatory and warnings signs, and utility relocation. This estimate will be submitted for review and be the basis for the performance bond requirements. **This item remains applicable and shall be addressed prior to construction.**

ee.  Provide the date when the commuter parking spaces are required to be vacated for the start of construction. **The Applicant has stated in their comment response letter from Bowman Engineering dated May 1, 2020 that the commuter spaces have already been vacated. This item has been addressed. No further action required.**

ff.  Provide truck turning radii on a plan showing how a truck will access the trash areas for service. The Applicant has provided a truck turning exhibit illustrating how trash removal vehicles will access the site. This item has been addressed. **No further action is required.**



gg.   Provide a note on the plans indicating where snow would be stockpiled during heavy snow events, with snow to be removed from the site for snow events over 2 inches in depth. The Applicant has provided notation within the Site Plan Set indicating that snow accumulation of 4-6 inches or more, from one or multiple snow events, shall be removed from the property, at the Applicant's sole cost and expense. This item has been addressed. **No further action is required.**

hh.   Provide a written traffic report to support the traffic testimony presented at the December 10, 2018 Land Use Board meeting. The Applicant has submitted a Traffic and Parking Assessment Report, as requested. However, see the comments with respect to the same provided in Section 5 (Neglia Engineering Associates Technical Review Comments). **This resolution condition has been addressed. No further action required.**

ii.   Provide an ADA compliance letter from a licensed New Jersey Professional Engineer to verify all ADA requirements have been installed in accordance with current requirements. **This resolution condition remains applicable and shall be addressed following construction.**

jj.   Developer to agree to a six (6) month lookback regarding site lighting to resolve any and all complaints regarding non-complaint site lighting. **This item remains applicable.**

kk.   Developer to abide by the noise ordinances for the Borough of Emerson. **This item remains applicable.**

ll.   Developer to abide by all New Jersey Transit and Federal Railroad Administration requirements regarding construction techniques and operations near the New Jersey Transit rail line and crossings. **This item remains applicable.**

mm.   Developer to abide by all New Jersey Department of Transportation and County of Bergen construction materials and methods of construction for work within the public right of way. **This item remains applicable.**

nn.   Developer to abide by all Bergen County Planning Board requirements. **This item remains applicable.**

oo.   Developer to abide by all Bergen County Soil Conservation District requirements. **This item remains applicable.**

6.29   Applicant shall schedule a pre-construction meeting with the Board Engineer, Borough Engineer & Board Planner prior to construction. **This resolution condition remains applicable and shall be addressed prior to construction.**

6.30   The parking garage structure shall not exceed the height requirements in the CBD-10 zone and levels and ramps of the garage are to be spaced at a height that is consistent with the requirements in the zone and to the satisfaction of the Board and Borough Engineer. The Applicant has provided revised Curb Level, Building Height, and Building Line sections based on the zoning definitions per Chapter 290-6. NEA defers to the Borough's Land Use Board Planner and/or Attorney with respect to compliance with the height requirements established for the CBD-10 zone. **The Applicant has provided the midpoint heights for the building façades fronting Lincoln Boulevard (48.5 feet), Kinderkamack Road (47.4 feet), along the railroad (47.6 feet), and Linwood Avenue (49.9 feet). Additionally, the Applicant has revised the Engineering and Architectural Plan sets to coincide with each other regarding the façade heights. The maximum allowable façade height based upon Chapter §290-70.A(3) of the Borough of Emerson Zoning Code for Linwood Avenue is 47 feet. NEA, however, defers to the Borough Land Use Board Planner and Attorney for confirmation with respect to the same.**

6.31   Applicant shall enter into the appropriate Developer's Agreement with the Borough and Land Use Board and shall post all necessary fees, escrows, and performance guarantees and payment of off-site



improvements in the future. The Developer's Agreement shall be drawn by the applicant and submitted to the Borough and Planning Board Attorneys for review and approval. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

*General Conditions*

6.32    Applicant shall adhere to the Borough of Emerson's storm water management requirements with regard to groundwater recharge for a major development as required in by the Borough Ordinance. This resolution condition remains applicable. See comments above in Section 5 (Neglia Engineering Associates Technical Review Comments). **See comments in Section 5 as indicated in comment 5.8. This resolution condition has been addressed. No further action required.**

6.33    Applicant or any successor in interest shall address all recommendations and requirements of the Borough Police Department, Fire Department and Department of Public Works. **The Applicant has submitted plans to the Borough Fire Department and Borough Police Department and is awaiting their reviews responses. This resolution condition remains applicable until the Applicant has acquired plan review letters from the Borough of Emerson Police and Fire Departments.**

6.34    No certificate of occupancy will be granted unless all conditions imposed by this Land Use Board, and Land Use Board's professionals, Board Attorney, Planner, Engineer and the Borough's Attorney, Engineer and Planner have been satisfied in full. **This resolution condition remains applicable. See all outstanding engineering comments above.**

6.35    The Applicant shall be responsible for obtaining any other approvals or permits from other governmental agencies as may be required by law, including, but not limited to, the Bergen County Soil Conservation District, and the New Jersey Department of Environmental Protection and Applicant shall comply with any requirements or conditions for such approvals or permits. **This resolution condition remains applicable. All correspondences and approvals from the above respective agencies shall be submitted for review, as required.**

6.36    Applicant is responsible for any environmental clean-up and/or environmental conditions as to the site as required by federal, state, county and local governmental agencies and officials, which must be complied with to the satisfaction of each of the aforementioned agencies and officials. **This item remains applicable and shall be addressed, as required. All documentation related to the same shall be submitted for review, as required.**

6.37    Applicant agrees to comply with any and all conditions and requirements of the Borough Engineer and/or Board Engineer with regard to Soil Movement, including but not limited to truck routes and hours of operation, and will comply with the Borough Engineer's requirements as to any and all soil movement, in conjunction with the Emerson Police Department. **This resolution condition remains applicable. See comments below with respect to specific conditions related to the Soil Movement Permit approval.**

6.38    Applicant shall submit revised plans, as necessary, with correct revision dates on all sheets. **This resolution condition remains applicable.**

6.39    Applicant will comply with any and all requirements of the Property's water company. **This resolution condition remains applicable. All documentation related to the same shall be submitted for review, as required.**

6.40    All construction shall be completed in accordance with all ordinances and building requirements of the Borough of Emerson, the Uniform Construction Code of the State of New Jersey and in accordance with the instructions of the Construction Official of the Borough of Emerson, the Borough Engineer and in



accordance with the requirements of all other departments of the Borough. **This resolution condition remains applicable.**

6.41    Applicant is required to obtain a building permit, post all necessary fees and costs with the Borough of Emerson prior to any construction. This approval is subject to Applicant obtaining a building permit and any other State, County or Borough approvals if required. **This resolution condition remains applicable.**

6.42    Applicant shall pay all fees, costs, bonds and escrows when due or becoming due and shall post all performance guarantees in connection with the review of this application prior and subsequent to the approval of this application. Any monies are to be paid within twenty (20) days of said request by the Borough's Chief Financial Officer. **This resolution condition remains applicable. The calculation of the amounts for bonds and fees, where applicable, will be provided under separate cover. The Applicant shall post all appropriated bonds and fees upon receipt of the same by the Applicant from NEA.**

6.43    If an application before the Bergen County Planning Board is required and any material or substantial changes are required by the Bergen County Planning Board to the site plan as approved by this Resolution, then the Emerson Land Use Board retains jurisdiction over this application and reserves its right to amend or withdraw its approval of this application. **This resolution condition remains applicable.**

6.44    Applicant shall file, as applicable, a deed restriction regarding any and all affordable units constructed pursuant to the approval granted herein, as same is required by N.J.A.C. §5:93-9.2(e). **This resolution condition remains applicable.**

6.45    Applicant shall apply with all affordable housing requirements of the Borough of Emerson Code as well as the Uniform Housing Affordability Control Rules, N.J.A.C. §5.80-26.1 et seq., including, but not limited to, administration of units, marketing, rent pricing and stratification, qualification and selection of households, and any other items. Documentation demonstrating such compliance is required as an ongoing condition of this approval. **This resolution condition remains applicable.**

6.46    All representations and stipulations made by Applicant or its agents shall be deemed conditions of this approval and any misrepresentations by Applicant contrary to the representations and stipulations made before the Land Use Board shall be deemed a violation of this approval. **This resolution condition remains applicable.**

6.47    The action of the Land Use Board in approving this application shall not relieve Applicant of responsibility for any damages caused by this project, nor does the Land Use Board of the Borough of Emerson, or it reviewing professionals and agencies, accept any responsibility of design of the proposed improvement or for any damages that may be caused by this development. **This resolution condition remains applicable.**

6.48    Any and all conditions imposed upon Applicant in connection with the approval granted herein shall apply to any successor in interest to Applicant. **This resolution condition remains applicable.**

6.49    All easements, deeds, subdivision maps and deed restrictions as may be required hereunder must be reviewed and approved by the Borough of Emerson and recorded by Applicant before any permit is issued by the Borough. **This resolution condition remains applicable.**

*Soil Moving Permit Conditions*

6.50    Prior to the commencement of any soil operations (fill or cut), the Applicant agrees to develop trucking routes for the hauling of soil to the site which shall be submitted to the Borough for review and approval. The review will include the Borough's Police Department and engineering professionals. **This resolution condition has not been addressed.**



6.51    The Applicant agrees to comply with any and all conditions and requirements rendered by the Borough and/or Board Engineer with regard to soil movement, including but not limited to truck routes and hours of operations. **This resolution condition remains applicable.**

6.52    The Applicant will provide motor vehicle and general liability insurance for all necessary vehicles and parties involved in the soil movement in sums and form deemed appropriate by the Borough Attorney. **NEA defers to the Borough Attorney with respect to this resolution condition.**

6.53    The Applicant agrees to comply with the Borough Police Department Traffic Control Officers in order to provide a safe means for moving soil as deemed required by the Borough Engineer or his designees. **This resolution condition remains applicable.**

6.54    The Applicant shall comply with any and all other applicable Borough regulations, ordinances and directives pertaining to soil movement. **This resolution condition remains applicable, as required.**

6.55    The Applicant shall obtain all other necessary governmental approvals and permits, and shall perform all acts of compliance which may be required under the applicable Federal, State, County and local statutes, regulations and ordinances. The Applicant shall submit to the Board copies of all permits or approvals, or in the alternative, written verification that no permits or approvals are required. **This resolution condition remains applicable.**

6.56    The Board reserves the right to require further review of this permit request in the event that another governmental entity requires "substantial modifications or revisions" to the plan as approved. **This resolution condition remains applicable.**

We trust that you will find the above in order. Should you have any questions or require additional information, please do not hesitate to contact the undersigned.

Very truly yours,
**Neglia Engineering Associates**

David Atkinson, P.E., P.P., C.M.E.
For the Borough Engineer
Borough of Emerson

cc:    Land Use Board *(via Land Use Board Secretary)*
       Jeff Bischoff, Land Use Board Chairman *(via email)*
       Rob Hermansen, Borough Administrator *(via email)*
       Perry Solimando, Superintendent, Department of Public Works *(via email)*
       Richard Silvia, Construction Official *(via email)*
       Marie Shust, Land Use Board Secretary *(via email)*
       Christopher Martin, Esq., Land Use Board Attorney *(via email)*
       John McCann, Esq., Borough Attorney *(via email)*
       Caroline Reiter, P.P., Land Use Board Planner *(via email)*
       Emerson Redevelopers Urban Renewal, LLC, Applicant *(via mail)*
       Joseph A. Paparo, Esq. Applicant's Attorney, Porzio, Bromberg & Newman, P.C. *(via mail)*
       Eric L. Keller, P.E., Applicant's Engineer, Bowman Consulting *(via mail)*
       Angela Kostelecky, R.A., Applicant's Architect, Devereaux & Associates *(via mail)*
       Charles D. Olivo, P.E., P.P. P.T.O.E., Applicant's Traffic Engineer, Stonefield Engineering *(via email)*

Exhibit 105

*Prepared by the court*

|  |  |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE BOROUGH OF EMERSON, NEW JERSEY, FOR A DECLARATORY JUDGMENT,<br><br>Petitioner. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>Docket No.: BER-L-6300-15<br><br>CIVIL ACTION<br>(Mt. Laurel)<br><br>**ORDER** |

FILED

MAR 16 2021

GREGG A. PADOVANO, J.S.C.

**THIS MATTER** having come before the court upon a motion filed by Sills, Cummis & Gross, P.C., counsel for Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"), an interested party, seeking an order in aid of litigant's rights pursuant to R. 1:10-3;  Fair Share Housing Center ("FSHC"), through its counsel, Bassam F. Gergi, Esq., filed a cross-motion also seeking an order to enforce litigant's rights; and opposition having been filed by Giblin & Gannaio, LLC on behalf of plaintiff / petitioner the Borough of Emerson (the "Borough"); and based upon the arguments presented, the reasons set forth on the record and below and for other good cause shown

**IT IS ON THIS 16th DAY OF MARCH 2021**

**ORDERED** that the portion of the motion of Redeveloper and cross-motion of FSHC seeking appointment of a "Mt. Laurel Implementation Monitor" is **GRANTED**.  A Mt. Laurel Implementation Monitor shall be appointed by separate order of the court which order shall also provide for the scope of the monitor's duties and powers.  All costs and expense associated with the court appointed Mt. Laurel Monitor shall be the sole responsibility of the Borough of Emerson; and it is further

**ORDERED** that all applications for building permits, or for other governmental approvals, sought by Emerson Redevelopers Urban Renewal, LLC from the Borough of Emerson shall be reviewed by the Borough, and/or its agents, on an expedited basis, but in no event shall said applications be reviewed later than 28 days from date of submission; and it is further,

**ORDERED** that the Borough of Emerson shall execute the completed treatment works approval application, as may have been previously submitted, within 28 days of the date of this order; and it is further,

**ORDERED** that  pursuant to R. 1:10-3 and in accordance with the terms of the previously approved Settlement Agreement executed between the Borough and FSHC on or about November 17, 2017,  Redeveloper's and FSHC's request for reasonable fees and costs associated with the subject motion are **GRANTED**.  Redeveloper and FSHC shall each submit a certification of services for reasonableness review by the court within 14 days of the date of this order; and it is further

**ORDERED** that the portion of the subject motion(s) seeking restraints as to the Mayor of the Borough of Emerson, as well as any and all other restraints sought not otherwise addressed herein, are **DENIED, without prejudice**; and it is further

**ORDERED** that the portion of the subject motion(s) requesting  to eliminate rental bonus credits,  or other alteration / amendment of the previously approved Settlement Agreement dated November 17, 2017 is **DENIED, without prejudice**; and it is further

**ORDERED** that the portion of the subject motion(s) requesting to vacate the Borough's temporary immunity is **DENIED, without prejudice**; and it is further

**ORDERED** that the Borough of Emerson is granted continued temporary immunity from builder's remedies actions or exclusionary zoning actions until and including  June 30, 2021; and it is further

**ORDERED** that all other relief sought not otherwise specifically addressed by this order is **DENIED, without prejudice**; and it is further

**ORDERED** that a true copy of this order shall be served on all counsel of record by eCourts.

_____

GREGG A. PADOVANO, J.S.C.

**IN THE MATTER OF THE APPLICATION OF THE BOROUGH OF EMERSON,
NEW JERSEY, FOR A DECLARATORY JUDGMENT**

**DOCKET NO.: BER-L-6300-15
RIDER TO THE MARCH 16, 2021 ORDER**

This matter having initially come before the court upon a compliant seeking declaratory judgment filed wherein the Borough of Emerson (the "Borough") sought determination of compliance pursuant to procedures set forth in the In Re Adoption of N.J.A.C. 5:96 and 5:97 by the Council on Affordable Housing, ("Mount Laurel IV") 221 N.J. 1 (2015); and the court having previously conducted a "fairness hearing" on June 20, 2018 to review a settlement agreement between the Borough and Fair Share Housing Center ("FSHC") dated November 21, 2017 (the "Settlement Agreement"); and having entered an order dated June 29, 2018 identifying the court's findings in accordance with the holdings in East / West Venture v. Borough of Fort Lee, 286 N.J. Super. 311 (App. Div. 1996) and Morris County Fair Housing Council v. Booton Twp., 197 N.J. Super. 359 (Law Div. 1984) aff'd o.b., 209 N.J. Super. 108 (App. Div. 1986) and granting conditional order of compliance subject to a final hearing; and the subject Settlement Agreement reviewed and approved by the court; and the court having conducted a "compliance hearing" on December 21, 2018 and having set forth its findings and identifying ongoing obligations and final conditions required to be completed in order for the Borough in order to receive final judgment of compliance and repose and immunity from exclusionary zoning lawsuits through July 1, 2025, which conditions are further identified under the court's order dated January 25, 2019; and

Emerson Redevelopers Urban Renewal, LLC ("Redeveloper"), an interested party, having filed a motion seeking an order in aid of litigant's rights. Redeveloper was previously designated as the redeveloper of a "downtown" block of parcel(s) in Emerson known as the "Block 491 Project" which parcels were designated, in part, to satisfy a majority of the Borough's affordable

housing obligation as identified under the Settlement Agreement approved by the court. Redeveloper now seeks the following specific relief in aid of litigant's rights: 1) that all applications for building permits, or for other governmental approvals, sought by Redeveloper from the Borough to be reviewed, and all permits and approvals shall be issued on an expedited basis, but in no event later than ten (10) days from date of submission; 2) compelling the Borough to execute the Treatment Works Approval application previously submitted by Redeveloper; 3) restraining and enjoining the Borough Mayor, Danielle Dipaola (in her capacity as Mayor of the Borough Emerson and as a member of the Borough Planning Board) from participating in any consideration of any zoning or construction applications, consents or approvals sought by Redeveloper from the Borough including, but not limited to, in connection with the issuance of building permits contemplated by the Redevelopment Agreement dated June 27, 2016, and amendments thereto, the Settlement Agreement between the Borough and Fair Share Housing Center dated November 21, 2017, and the January 25, 2019, conditional final judgment of compliance and repose order of the court; 4) amendment of the court's the court's prior order dated January 25, 2019 to eliminate 14 rental bonus credits provided to the Borough; 5) vacating the conditional immunity granted to the Borough under the January 25, 2019 order of the court; prohibiting the Borough from thwarting ongoing construction and development of Redeveloper's project; 6) compelling the Borough to execute previously approved site plan(s) of Redeveloper's project to permit further filing of and issuance of construction permits; 7) declaration that the Borough has violated the court's prior order of January 25, 2019 regarding the conditional final judgment of compliance and repose by failing to comply with the reporting requirements and other conditions, contained in the order; 8) declaring that the Borough breached the conditions identified under the court's prior order dated January 25, 2019 by failing to fully cooperate with Redeveloper

regarding all "Governmental approvals" as required by Paragraph 5.01 and 13.01 of the Settlement Agreement; 9) appointment of a "Mt. Laurel Implementation Monitor" for the Borough; and 10) fees and costs.

Redeveloper argues that the Borough has purposefully delayed or otherwise obstructed the enforcement and/or implementation of the terms of the Settlement Agreement. Redeveloper also argues that the actions of the Borough directly impact the development of its property and the creation of affordable housing units as previously approved by the court, and the Borough itself. Redeveloper specifically argues that the leadership of the Borough's governing body, elected after the execution of the Settlement Agreement, have taken steps through direct action, or purposeful inaction, to eviscerate the terms and obligations identified under the Settlement Agreement and prior orders of the court.

Fair Share Housing Center ("FSHC") filed a cross-motion also seeking an order to enforce litigant's rights and specifically sought the following relief: 1) issuance of an order granting all site specific relief to ensure that all inclusionary development is achieved under Redeveloper's property; 2) appointment of a Mount Laurel Implementation Monitor; 3) ) amendment of the court's the court's prior order dated January 25, 2019 to revoke the 14 rental bonus credits provided to the Borough; 4) revocation of the Borough's temporary immunity; 4) compelling production of the Borough's midpoint realistic opportunity review report; 5) fees and costs.

FSHC also argues that the Borough has failed to comply with its obligations under the subject Settlement Agreement and prior orders of the court. Specifically, FSHC asserts that the Borough has

> stalled and procrastinated for <u>years</u> in meeting its outstanding
> conditions of compliance, and it has engaged in a transparent
> attempt to slow down and try to stop the most significant mechanism
> in its fair share plan – the Block 419 [Project] inclusionary
> development – from actually being built.
> [FSHC Brief at 17.]

The Borough argues in opposition to both motions that Redeveloper bears some, if not the

majority of, fault for delay of development of the Block 491 Project.  Specifically, the Borough

argues that Redeveloper failed to execute required documents, failed to timely apply for required

regional approvals and failed to satisfy other obligations.  The Borough denies any undue delay in

issuance of permits or appropriate approvals in connection with Redeveloper's parcel.  The

Borough also argues that FSHC's motion should be denied as the Borough did not purposefully

act to obstruct compliance with its obligations under the Settlement Agreement.  The Borough

further asserts that various factors, such as relocation of pre-existing businesses within the

parcel(s) comprising the Block 419 Project delayed compliance.  The Borough also argues that

Redeveloper itself failed to execute the required developer's agreement to assure proper develop

of the Block 419 Project.

The court recognizes that the Borough first filed its complaint in this matter almost six

years ago.  The New Jersey Supreme Court in <u>S. Burlington Cnty.  NAACP v. Mount </u>Laurel, 92

N.J. 158, 199 (1983) held that

> [w]e have learned from experience, however, that unless a strong
> judicial hand is used, <u>Mount Laurel</u> will not result in housing, but in
> paper, process, witnesses, trials and appeals. We intend by this
> decision to strengthen it, clarify it, and make it easier for public
> officials, including judges, to apply it.

New Jersey Court Rule 1:10-3 provides a device to enable a litigants to enforce his or her rights. Although R. 1:10-3 encompasses the notion of civil contempt, the New Jersey Supreme Court has expressly stated that "we view the process [under R. 1:10-3] as one of relief to litigants." In re Daniels, 118 N.J. 51, 60 (per curiam) (emphasis added) (citing R. 1:10-5, now R. 1:10-3), cert. denied, 498 U.S. 951 (1990). The focus being on the vindication of litigants' rights, relief sought pursuant to R. 1:10-3 does not necessarily require establishing that the violator of an order acted with intention to disobey. The court here recognizes that the New Jersey Rules of Court are to "be construed and applied to secure a just determination." R. 1:1-2. That admonition has particular force when it comes to assisting a litigant in securing vindication of rights. In fact, the Court in Mount Laurel IV clearly stated that

> [t]he focus being on the vindication of litigants' rights, relief sought pursuant to R. 1:10-3 does not necessarily require establishing that the violator of an order acted with intention to disobey. Indeed, courts have recognized that "demonstration of a mens rea, willful disobedience and lack of concern for the order of the court, is necessary for a finding of contempt, but irrelevant in a proceeding designed simply to enforce a judgment on a litigant's behalf." Lusardi v. Curtis Point Prop. Owners Ass'n, 138 N.J. Super. 44, 49 (App. Div. 1975) (emphasis added); see also N.J. Dep't of Health v. Roselle, 34 N.J. 331, 347 (1961) ("The Appellate Division correctly held that upon a litigant's application for enforcement of an injunctive order, relief should not be refused merely because the violation was not willful.").
>
> . . .
>
> The Court Rules overall evince an intent toward flexibility when the enforcement of rights is at stake. If a judgment or order directs a party to perform a specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of such defaulting party by some other person appointed by the court, and the act when so done shall have like effect as if done by the defaulting party. See also Roselin v. Roselin, 208 N.J. Super. 612, 618, (App. Div.) (citing R. 4:59-2(a) when noting alternatives available to trial court for enforcing party's rights), certif. denied, 105 N.J. 550 (1986).
> [In re N.J.A.C. 5:96 & 5:97, 221 N.J. at 17.]

The court is concerned by the apparent failure of the timely development of affordable housing in the Borough and is more concerned that the development was directly approved and ordered by the court. The undisputed facts now presented reveal that the Borough has failed to provide evidence of final satisfaction of all conditions identified and referenced under the court's January 25, 2019 order of conditional final judgment of compliance and repose. Over two years have passed since the entry of the court's January 25, 2019 order. The Settlement Agreement executed in this is matter during November 2017 identified Redeveloper's property, the "Block 419 Project," as the parcel within the municipality designated the majority of its third round realistic development potential. The Borough was obligated under the very specific terms of the Settlement Agreement to assist in the development of the Block 419 Project to assure the timely development of affordable housing units and timely compliance with the Borough's Constitutional obligations under the Mount Laurel doctrine.

The court specifically identified several outstanding items under the January 25, 2019 order of conditional final judgment which outstanding items were required to be satisfied within 120 days of the date of the order. The court recognizes that the time for compliance was subsequently extended through September 25, 2019 under an order dated May 13, 2019 and thereafter extended again. However, it the record reveals that the Borough has failed to provide evidence of final compliance and failed to request further extension for timely compliance. Redeveloper and FHSC have provided sufficient information revealing that the Borough has not adequately proceeded with fulfillment of the terms and obligations under the approved Settlement Agreement. However, the information presented does not provide the court with evidence meriting the granting of all relief sought by the movants at this time.

There clearly has been a delay in implementation of the previously approved plan and timeline provided for under the Settlement Agreement and subsequent court orders. What is not clear at this time is whether the Borough's actions, or inactions, are solely responsible for the delay at this stage. Accordingly, the court finds that appointment of a special, independent Mt. Laurel Implementation Monitor is appropriate and warranted to address outstanding issues and to determine and advise the court of the basis for any purported delay in compliance. Therefore, the portion of the pending motion and cross-motion seeking appointment of a Mt. Laurel Implementation Monitor is granted, subject to terms and scope to be further identified under a separate order of the court. Furthermore, in order to assure continued progress in the development of the Block 419 Project, the court also grants movants' request to compel review of all applications for permits in connection with the Block 419 Project to be conducted within 28 days of the submission to the Borough.

As to the movants' request for restraints upon Mayor DiPaolo, the court does not find that the relief requested, that is restraining the actions of the Borough mayor, is justified based upon the record presented at this time. While the court finds that the actions of Mayor DiPaolo identified at this time do not rise to the level of obstruction or purposeful interference, the parties are not prohibited from renewing the request for restraints if appropriate at a later time. Based upon the totality of the information presented, the court also finds that revocation of the Borough's immunity or revocation of the 14 rental credits identified in the motion papers is not appropriate at this time. While the delay in final compliance is disquieting to the court, the court does not find that the Borough's actions, or inaction, when reviewed in the broad scope of all of the facts and circumstances presented, do not rise to the level requiring revocation of temporary immunity or alteration of the terms of the Settlement Agreement as otherwise sought at this time.

Accordingly, the motion and cross-motion of Redeveloper and FSHC is **GRANTED, in part** and **DENIED, in part**. The court's denial of portions of Redeveloper's motion and FSHC's cross-motion is intended to be <u>without prejudice</u>. Based upon the court's partial granting of the relief sought, the court also finds that awarding movants' requests for fees and costs in connection with the motion and cross-motion is appropriate and warranted under applicable the Rules of Court.

Exhibit 106

*Prepared the court*

IN THE MATTER OF THE APPLICATION
OF THE BOROUGH OF EMERSON, NEW
JERSEY, FOR A DECLARATORY
JUDGMENT,

Petitioner.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
Docket No.: BER-L-6300-15

*FILED*

*APR 22 2021*

*GREGG A. PADOVANO, J.S.C.*

Civil Action
(*Mt. Laurel Action*)

**ORDER APPOINTING
IMPLEMENTATION MONITOR**

**THIS MATTER** having been opened to the Court by Emerson Redevelopers Urban

Renewal, LLC (the "Redeveloper") through its counsel, Sills, Cummis & Gross, P.C., (Joseph B.

Fiorenzo, Esq., appearing) upon motion in aid of litigant's rights pursuant to R. 1:10-3 seeking

various relief, including an Order compelling Emerson to expedite review and approval of all

applications necessary for construction of the "Project" on Block 419, as defined herein, and for

enforcement of the Court-approved Settlement Agreement between Emerson and the Fair Share

Housing Center dated November 21, 2017 (the "Settlement Agreement") and the Court's January

25, 2019 Conditional Final Judgment of Compliance and Repose (the "Conditional Final

Judgment"); with the Fair Housing Center ("FSHC"), through its counsel, Bassam F. Gergi, Esq.,

appearing in support of said motion and filing a cross-motion also seeking enforcement of the

Settlement Agreement and Conditional Final Judgment; with the Borough of Emerson

("Emerson") through its counsel Giblin & Cannaio, appearing in opposition thereto[1]; and the

applications being on notice to Mary Beth Lonergan, PP, AICP, Special Master; and Emerson

being obligated under the Settlement Agreement to assist in development of the Project to assure

expeditious construction of at least twenty-nine (29) family non-age-restricted affordable housing

rental units and timely compliance with Emerson's constitutional obligations under the Mt. Laurel

---

[1] Redeveloper, FSHC and Emerson are collectively referred to as the "Parties" for purposes of this Order.

Doctrine; and it appearing that Emerson has not proceeded to fulfill the terms and obligations of

the approved Settlement Agreement; and the Court having read and considered the various moving

and opposing papers and considered the oral arguments of counsel; and the Court having entered

a companion Order dated March 16, 2021, and made various findings of fact and conclusions of

law therein; and good cause otherwise appearing for the making and granting of the within Order;

**IT IS ON THIS 22nd DAY OF APRIL 2021**

**ORDERED** as follows:

1.     The Court does hereby appoint the Hon. Harry G. Carroll, JAD (Ret.), as a "Mt.

Laurel Implementation Monitor" (the "Monitor"), as agreed upon by the Parties in this matter,

with respect to the redevelopment project being undertaken by Redeveloper at Block 419 in

Emerson that will produce twenty-nine (29) family non-age-restricted affordable housing rental

units, including no more than seven (7) off-site affordable units related thereto, (the "Project") for

the purpose of ensuring that the Settlement Agreement and Conditional Final Judgment are fully

complied with and that the Mt. Laurel housing necessary for Emerson to fulfill its constitutional

obligation be constructed on an expedited basis as contemplated by the Settlement Agreement and

Conditional Final Judgment.  All fees, costs and expenses of the Monitor shall be borne solely by

Emerson, with the Monitor having the following powers:

> A. The Monitor shall oversee all actions of the Parties with regard to
> the Project with the overriding goal and purpose of expediting
> construction and completion of the Project, in accordance with
> applicable laws, regulations, etc., by eliminating all impediments
> which either stop or delay such construction;

B.  The Monitor shall ensure that the Block 419 Project produces at least twenty-nine (29) family non-age-restricted affordable housing rental units, including no more than seven (7) off-site affordable units, that shall fully comply with the Uniform Housing Affordability Controls, N.J.A.C. 5:80-26.1, et seq. ("UHAC"), including but not limited to the required bedroom and income distribution, with the sole exception that, consistent with the Settlement Agreement, thirteen percent (13%) of the affordable units within each bedroom distribution shall be for very low income households earning thirty percent (30%) or less of the median income pursuant to the Fair Housing Act, N.J.S.A. 52:27D-301, et seq. ("FHA"), and/or complies with the terms of the Settlement Agreement and/or Conditional Final Judgment;

C.  The Monitor and Emerson shall review all applications for building permits, or for other governmental approvals, sought by the Redeveloper from Emerson, and/or other governmental entities.  If Emerson should fail to give review and approval within 28 days of submission, the Monitor shall have the ability to direct and order issuance of applications for building permits, or other governmental approvals, including, but not limited to, the ability to direct appropriate Emerson officials/agents to sign approved site plans required in connection with the issuance of construction and/or other permits;

D.  The Monitor shall review Emerson's compliance with the Conditional Final Judgment, including, but not limited to, whether Emerson has complied with and implemented the various compliance mechanisms set forth in the Settlement Agreement, Emerson Housing Element and Fair Share Plan (the "EHEFSP") and the Conditional Final Judgment;

E.  The Monitor shall have authority to grant all site-specific relief to Emerson Redevelopers Urban Renewal, LLC, to ensure that the Project, and inclusionary Mt. Laurel development, is permitted to proceed expeditiously;

F.  The Monitor shall have unfettered access to all documents and information the Monitor deems necessary to assist in the execution of the Monitor's duties;

G. The Monitor shall provide a report (which may include recommendations) to the Court every ninety (90) days outlining the progress the Parties have made in implementing and complying with the terms of the Settlement Agreement, the EHEFSP, and the Conditional Final Judgment relating to the Project;

H. The Monitor shall receive and report on the Emerson's annual reporting obligations for affordable housing activity and trust fund expenditures to ensure compliance with the terms of the Conditional Final Judgment; and

I. The Monitor shall be authorized to recommend to the Court an award of attorney's fees and costs pursuant to Rule 1:10-3 and Paragraph 26 of the Settlement Agreement if it is necessary to make applications to the Monitor and/or the Court in order to compel compliance with the Settlement Agreement, the Conditional Final Judgment, the March 16, 2021 Order of this Court, or this Order; and

2. A true copy of this Order shall be served on all counsel of record by eCourts.

Counsel for Emerson shall serve a copy of this order upon the Monitor appointed herein within 7 days of the date of this Order.

_____
GREGG A. PADOVANO, J.S.C.

This appointment is approved by the Assignment Judge pursuant to R. 4:41-1.

_____
BONNIE J. MIZDOL, A.J.S.C.

Page **4** of **4**

Exhibit 107



34 Park Avenue – PO Box 426
**LYNDHURST, NEW JERSEY 07071**
Tel: 201.939.8805 • Fax: 201.939.0846

200 Central Avenue – Suite 102
**MOUNTAINSIDE, NJ 07092**
Tel: 201.939.8805 • Fax: 732.943.7249

April 28, 2021

**Via E-mail**

Mayor and Council
Borough of Emerson
One Municipal Plaza
Emerson, NJ 07630

Attn.:  Jane Dietsche, R.M.C., Borough Clerk

Re:  **Treatment Works Approval (TWA) Review**
 **Emerson Station (Emerson Redevelopers Urban Renewal, LLC.)**
 Block 419, Lots 1-4, 6.01, 6.02 and 7-10
 Borough of Emerson
 Bergen County, New Jersey
 NEA No.: EMERSPL19.029

Honorable Mayor DiPaola and Council Members:

The above-referenced project was previously granted conditional approval for preliminary and final site plan. Due to the size of the proposed redevelopment, and the amount of sanitary sewage generated therefrom, the Applicant is required to obtain a Treatment Works Approval ("TWA") from the NJDEP prior to constructing sewerage improvements. As such, the Applicant will require endorsement from the Borough of Emerson for the TWA application as the owner of the sewer system and the Municipality within which the project is occurring. NEA understands with the recent New Jersey Superior Court Order filed on March 16, 2021 for the above-referenced site, the Borough of Emerson has been ordered to execute the completed TWA application. As requested, Neglia Engineering Associates ("NEA") has reviewed the submitted documents, listed below:

- A transmittal letter addressed to the Honorable Mayor and Council, prepared by Nicki M. Louloudis, P.E., P.P., C.M.E., dated April 15, 2021;

- TWA-1 Form (Permit Application);

- WQM-003 Form (Statements of Consent);

- WQM-006 Form (Engineer's Report for Domestic Treatment Works Approval Applications);

- Engineer's Estimate for Sanitary Sewer Improvements;

- USGS Quadrangle Map;

- Sanitary Sewer Specifications; and

- All documents submitted as part of the Site Plan and Subdivision applications for the subject development (refer to prior Resolution Compliance review letters, prepared by this office, for a listing of these documents).



**Project Description**

The Applicant has obtained conditional preliminary and final site plan approval from the Borough of Emerson to demolish all existing buildings and improvements within the subject parcels for the purpose of constructing a four (4) story multi-use building consisting of 147 units of residential apartments, 25-seat fast food restaurant, and multiple retail spaces totaling 12,231 square feet. The proposed 147 dwelling units are broken down as follows:

| Size of Unit | Total Number of Units |
|---|---|
| 1 - Bedroom | 120 Units |
| 2 - Bedroom | 21 Units |
| 3 - Bedroom | 6 Units |
| TOTAL | 147 Units |

1. **TWA Review Comments**

1.1.    The Applicant indicated in the sanitary sewer specifications that no sanitary manholes are proposed. However, in the project description of the TWA-1 the application states the connections to the existing sanitary sewer will be made utilizing two (2) new doghouse manholes. NEA recommends the Applicant revises the sanitary sewer specifications to account for the sanitary manholes prior to submission to additional agencies for review. NEA recommends adding manhole exfiltration testing or other approved testing methods.

1.2.    NEA was only provided unsealed electronic copies of the application and associated documents for review. The Applicant shall ensure that signed and sealed copies of all applicable items are submitted to additional agencies for review.

1.3.    The Applicant indicates on the TWA-1 form and on the WQM-006 form calculations that a proposed 25-seat fast food restaurant will be built. However, under the scope of project on the WQM-006 form, a 20-seat fast food restaurant is cited. NEA recommends that the Applicant revise all project documents to revise the discrepancy prior to submission to additional agencies for review.

1.4.    The Applicant shall provide a copy of all correspondences to and from the NJDEP regarding this Treatment Works Approval permit application, including, but not limited to, copies of the permit, denial, comment letters, etc.

Per the above-referenced Court Order and the completed TWA application, NEA recommends that the Borough executes the TWA application documents, when required. Upon execution, the Borough shall provide the Applicant with three (3) signed and sealed copies of the resolution authorized by the Borough's representative to sign these forms.



We trust you will find the above in order.  Should you have any questions or require additional information, please do not hesitate to contact the undersigned.

Very truly yours,
**Neglia Engineering Associates**

David Atkinson, P.E., P.P., C.M.E.
For the Borough Engineer
Borough of Emerson

DRA/mjg

cc:    Rob Hermansen, Borough Administrator *(via email)*
       Perry Solimando, Superintendent, Department of Public Works *(via email)*
       Richard Silvia, Construction Official *(via email)*
       John McCann, Esq., Borough Attorney *(via email)*
       Emerson Redevelopers Urban Renewal, LLC, Applicant *(via mail)*
       Nicki M. Louloudis, P.E., P.P., C.M.E., Applicant's Engineer, Bowman Consulting *(via mail)*

*\\Nea-file01\WDOX$\MUNI\EMER\EMERSPL19029\CORRESP\00259911.DOCX*