UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERSON REDEVELOPERS URBAN RENEWAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BOROUGH OF EMERSON AND MAYOR DANIELLE DiPAOLA,<br><br>Defendants. | Docket No. 2:20-cv-04728<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT DiPAOLA'S STATEMENT OF MATERIAL FACTS** |

Pursuant to L. Civ. R. 56.1, Plaintiff submits the within response to Defendants Borough of Emerson's ("Emerson") statement of material facts, as follows:

1. Plaintiff, Emerson Redevelopers Urban Renewal, LLC ("ERUR") is the owner of property and certain development rights in Emerson, New Jersey. Plaintiff's property, located on Kinderkamack Road between Linwood Avenue and Lincoln Boulevard makes up Block 419 on the Borough's tax map and is commonly referred to as the Block 419 Project. (Amended Compl. ¶ 1).

    RESPONSE: Admit.

2. Defendant, Danille DiPaola, was elected mayor of the Borough in the 2018 general election. (Declaration of Leonard E. Seaman, 9/13/2024, Exhibit A, Deposition of Danille DiPaola, 4/26/2023 ("DiPaolo 1T"), 140-3 to 9).

    RESPONSE: Admit.

3. Seventeen years earlier, during a builder's remedy lawsuit under the Mount Laurel doctrine a New Jersey Superior Court Judge, the Honorable Jonahtan Harris, J.S.C. made a sweeping declaration that the Borough "persists as a bastion of exclusionary zoning. It has steadfastly resisted taking affirmative steps to provide realistic opportunities for affordable housing within its borders." (Seaman Decl., Exhibit B at 1).

RESPONSE: Admit the finding from Judge Harris. Defendants' characterization of it as a "sweeping declaration" is not a proper "fact" pursuant to L. Civ. R. 56.1.

4. Judge Harris determined that builder's remedy was not warranted and, instead, directed the Borough "to adopt affirmative measures … in order to fulfill its constitutional obligations to provide shelter opportunities for the beneficiary class of unhoused poor." (Id. at 2).

RESPONSE: Denied. On December 15, 2020, Judge Harris declared Emerson's zoning ordinance invalid and unconstitutional. Fiorenzo Cert. Ex. 3, at 4. He entered an injunction restraining land development in the Borough. *Id.* at 5. For years, Judge Harris stated that he would grant a builders' remedy if the Borough did not begin the process to build affordable units based on Emerson's palpably invidious discrimination." Fiorenzo Cert. Ex. 4, at 9:22. While he did not ultimately enter a builder's remedy, he did not find that it was "unwarranted."

5. Mayor DiPaolo was not a party to that lawsuit or even active in the Borough government at that time. She does not recall when she became aware of that decision. (DePaolo 1T 21-22 to 22-4).

RESPONSE: Admit.

6. ERUR and the Borough—through the administration that preceded Mayor DiPaola's—entered into a Redevelopment Agreement dated June 14, 2016, (Seaman Decl., Exhibit C).

RESPONSE: Admit.

7. The redevelopment agreement was amended three times on October 4, 2016 (Seaman Decl., Exhibit D), November 20, 2017 (Seaman Decl., Exhibit E), and December 31, 2018. (Seaman Decl., Exhibit F).

RESPONSE: Admit.

8. The third amendment was completed two days before Mayor DiPaola was sworn in to her first term as mayor on January 2, 2019. (Seaman Decl., Exhibit G).

RESPONSE: Denied. The third amendment was "completed" and voted upon during negotiations between ERUR and Mayor-elect DiPaola on December 18, 2018. Fiorenzo Cert. 33.

9. It allowed Accurate Builders and Redevelopers to join the project as the majority owner of ERUR. (Seaman Decl., Exhibit F).

RESPONSE: Admit.

10. In its answers to interrogatories, as amended as of July 11, 2023, the Plaintiff described the facts that formed the basis for its contention that Mayor DiPaola intended to obstruct or interfere with the Block 419 Project to discriminate against minorities simply by referring to an earlier answer that put forth a laundry list of actions that allegedly demonstrated defendants' course of action to impede ERUR's ability to complete the project. (Seaman Decl., Exhibit H, Answer to Interrogatory 17.)

RESPONSE: Admit that Plaintiff provided a list of actions that it claims demonstrated defendants' course of conduct to obstruct and impede ERUR's ability to complete the project and that DiPaola intended to obstruct or interfere in responses to interrogatories. Seaman Ex. H.

11. Plaintiff's response sets out a series of bullet points that include: the Courts, Special Masters, and Borough professionals identified a pattern of frustration of affordable housing in Emerson by public officials. Moreover, as to the Block 419 Project, the Borough, among other things:

- Sought to increase the cost and time necessary to construct the Project with knowledge that the private construction and operation of affordable housing requires efficiencies to control costs and minimize delays, with the intent that the increased costs and time to complete the project would render the project no longer economical and thereby avoid the construction of affordable housing.

- Repeatedly delayed or conditioned acceptance of an application or granting an application for demolition permits upon various unlawful asserted preconditions, including but not limited to demonstrating the properties had no environmental issues even though environmental actions are governed by the NJDEP; requiring approval of construction drawings prior to demolition; requiring demolition on any lot or portion of a lot be performed at the same time as all other lots in the Project; demanding information regarding demolition contractors without any basis in an ordinance or statute including but not limited to demanding the names of all employees of the asbestos contractors; delaying and obstructing cut and cap permits • and utility disconnections needed for demolition until ERUR was able to proceed with construction on all lots; delayed vacating Lot 7 after repeated demands to vacate for purposes of demolition; persistently delayed issuance of fence permit needed for demolition, then, when the Zoning Officer issued the fence permit, Borough officials directed ERUR to desist from constructing the duly permitted fence and failed to respond when ERUR modified fence plan at Borough's request;

- as well as additional actions.

- Borough officials attempted to solicit an investigation by NJDEP of the site to stall or stop the Project.

- ERUR contacted the Borough for required meetings regarding the project and repeatedly received either no response or attempts to stall any meeting.

- Imposed a Developer Fee while refusing to justify its calculations.

- Failed and refused to institute condemnation proceedings, including but not limited to proceedings against Cork & Keg and Laurel Chinese Restaurant, for months after ERUR advised of its inability to settle through good faith negotiations and made demand for condemnation proceedings; assisted the tenants in resisting the Developer in violation of the Borough's cooperation covenant; advised residents that the project would not go forward or would be scaled back thereby frustrating efforts at good faith negotiations; and unlawfully delayed the Borough's obligation to proceed forward with condemnation.

- Failed to oppose prerogative writ action filed by owners/leasees [*sic*] in redevelopment area and failed to respond to a cease and desist letter by an attorney for Cork & Keg.

- Required physical signatures of police and fire department before moving forward with site plan when all that is required is notice to the police and fire department.

- Failed and delayed in giving consent to the request for consent to the Treatment Works Approval.

- Delayed forming the Redevelopment Subcommittee which was required for review of the construction plans and the commencement of construction.

- Obstructed the agreed-upon construction of seven units of affordable housing on Block 610, Lot 1 needed to satisfy the Redevelopment Agreement and the Borough's affordable housing obligations.

- Wrongfully conditioned issuance of construction permits upon full satisfaction of "resolution compliance," including invented conditions contained nowhere in the

- resolution of approval, conditions on items already resolved by the Land Use Board, and conditions that were to be completed at the conclusion of the project, even the Uniform Construction Code provided no basis to refuse the ministerial act of granting the construction permits, resulting in a delay in construction until after

[*Id*., Answer to Interrogatory 8.]

RESPONSE: Admit.

12. Only the final bullet point even mentions Mayor DiPaolo by name and simply contends that: Borough officials, including but not limited to Councilmember and Mayor Danielle DiPaola, expressed opposition to affordable housing, the Borough's declaratory judgment action, the settlement with Fair Share Housing Center, the completion of the Block 419 Project, by way of example only, and without limitation, expressing the aim of delaying,

stopping, or scaling back the Project, in statements at meetings, to the press, to residents and representatives of Plaintiffs, and with respect to votes on pending ordinances and resolutions, as well as terminating Borough professionals who endorsed or failed to curtail affordable housing and the Block 419 Project, among other things. [Id., Answer to Interrogatory 8.]

RESPONSE: Denied. Each bullet point refers to Mayor DiPaola because DiPaola's Interrogatory asked Plaintiff to describe "the basis for your allegation that on November 8, 2018, defendant DiPaola intended to obstruct and interfere with the Project to discriminate against minorities." Seaman Decl. Ex. H. Every bullet point thereafter refers to Mayor DiPaola.

13. The press reported that Mayor DiPaola expressed a desire to ensure development in downtown is done in a "reasonable" way "that isn't four-story buildings" but that "[e]veryone has this idea that I'm against development, but I'm not against it." "I'm against eminent domain. I would like to move forward and bring positive change to downtown." (Seaman Decl., Exhibit I). "My opponents have said I'm against progress, but this couldn't be further from the truth. I've always supported and voted yes on projects that actually improve the borough while still being consistent with its small-town character." (Seaman Decl. Exhibit J).

RESPONSE: Admit that the exhibit contains the above statements.

14.     During a meeting with mayors of neighboring municipalities shortly after she assumed office on January 23, 2019, Mayor DiPaolo was quoted by the press as noting that plaintiff was in process of acquiring properties while the Borough was "trying to scale back this project and make it a more reasonable development that is friendlier to our small town." (Seaman Decl., Exhibit K).

RESPONSE: Admit that the exhibit contains the above statements.

15. At a local chamber of commerce meeting a week later, the press reported that Mayor DiPaolo based her criticism of the Block 419 Project on its impact on local businesses since the Borough had lost seven businesses and two others were "fighting for their lives" and traffic issues the project would create. (Seaman Decl., Exhibit L).

RESPONSE: Denied. DiPaola stated: the borough has lost "'seven of its thriving businesses due to redevelopment in the name of affordable housing." In order to get 29 affordable housing units, Emerson "lost seven businesses so far. Two others are still open and they're fighting for their lives.'" Fiorenzo Cert. Ex. 96.

16. While a member of the Borough Council, Danielle DiPaolo voted against several measures related to the redevelopment project. Those included: (a) an October 4, 2016 resolution authorizing the Borough's entry into the First Amendment to the Redevelopment Agreement (Seaman Decl., Exhibit M); (b) an ordinance to amend the redevelopment plan on December 20, 2026. (Seaman Decl., Exhibit N); and, (c) a July 18, 2017 resolution authorizing the Borough to enter into the Second Amendment to the Redevelopment Agreement (Seaman Decl., Exhibit O).

RESPONSE: Admit.

17. When the Borough Council considered a resolution authorizing adoption of the Third Amendment to the Redevelopment Agreement that, among other things, allowed plaintiff's representative, Yaakovi "Jack" Klugmann, to join the project at the majority owner of ERUR, then Council Member DiPaolo abstained. (Seaman Decl., Exhibit F, Exhibit P).

RESPONSE: Admit.

18. Mayor DiPaolo expressed her reasons for her opposition to the project. They included: because the building size was increased to four stories (DiPaola 1T 68-18 to 23, 85-22

to 24) making it "too big" so it "didn't fit into [the Borough's] downtown" (DiPaola 1T 85-19 to 21), because it was too dense (DiPaola 1T 70-1 to 5; 84-18 to 22; 85-14 to 16), and because it required the use of eminent domain (DiPaola 1T 75-13 to 15; 85-17 to 18).

RESPONSE: Denied. DiPaola opposed the Project because she campaigned against affordable housing and, implicitly, the likely minority residents it would bring. Fiorenzo Cert. Ex. 96 (stating Emerson "has lost 'seven of its thriving businesses due to redevelopment in the name of affordable housing'" and others are "fighting for their lives."); Fiorenzo Cert. Ex. 15 (claiming that the residents of affordable housing would bring more children and she did not want Emerson "bleeding funds" for the children of those who occupy affordable housing); Fiorenzo Cert. Ex. 13 (DiPaola tried to obtain "another judge [who] could have another decision" on Emerson's obligation for affordable housing).

19.     During his deposition, plaintiff's representative, Yaakovi "Jack" Klugmann, could not supply any facts to support ERUR's contention that Mayor DiPaolo's actions were motivated by animus against minorities who might occupy the 29 low to moderate income housing units that will comprise a portion of the Block 419 Project's residential units. Instead, he attempted to pivot to allegations that Mayor DiPaola expressed that she did not want Orthodox Jews like him moving into the Borough. (Seaman Decl., Exhibit Q, Deposition of Yaakovi "Jack" Klugmann ("Klugman T.") 57:2-14).

RESPONSE: Admit that Klugmann did not have personal knowledge, not obtained from attorneys, of DiPaola's "motivat[ions]." Ex. Q, 57:2-14.  Admit that Klugmann expressed concerns that DiPaola may not favorably view Orthodox Jews. Id.

20. However, he could only glean this purported animus from her efforts in "fighting the Mount Laurel lawsuit" and comments she allegedly made to other unidentified individuals that she did not want Orthodox Jews to take over the Borough. (Id. 57-17 to 6).

RESPONSE: Admit that Klugmann did not have personal knowledge, not obtained from attorneys, of DiPaola's internal mental "animus."

21. Mr. Klugmann based his purported sentiment on one conversation he had had with Mayor DiPaolo where they discussed the possibility that kosher breastmilk facility might be part of the Block 419 development and hearsay statements relayed to him by others who reported her comments while campaigning for her second mayoral term. (Id. at 58-3 to 13).

RESPONSE:  This paragraph does not contain a statement of purported fact in violation of L.Civ.R. 56.1 that the statement only set forth those "material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." Instead, it offers legal conclusions about whether items are "hearsay." Plaintiff admits that Klugmann testified to conversations he had with the Mayor and others.

        **SILLS CUMMIS & GROSS P.C.**
        **Joseph B. Fiorenzo, Esq. (021421980)**
        One Riverfront Plaza
        Newark, NJ 07102
        (973) 643-7000
        *Attorneys for Emerson Redevelopers Urban Renewal, LLC*

        *s/Joseph B. Fiorenzo*
        Joseph B. Fiorenzo

Dated: October 28, 2024