UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERSON REDEVELOPERS URBAN RENEWAL, LLC,**<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>**BOROUGH OF EMERSON AND MAYOR DANIELLE DIPAOLA,**<br><br>　　　　　Defendants. | Docket No. 2:20-cv-04728<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br><br>**<u>PLAINTIFF'S RESPONSE TO DEFENDANT EMERSON'S STATEMENT OF MATERIAL FACTS</u>** |

　　　Pursuant to L. Civ. R. 56.1, Plaintiff submits the within response to Defendants Borough of Emerson's ("Emerson") statement of material facts, as follows:

　　　1.　　Defendant, Borough of Emerson, specially adopts the Statement of Material Facts Not in Dispute set forth with the Notice of Motion for Summary Judgment filed by co-defendant Danielle DiPaolo, and supplements these facts herein below.

　　　RESPONSE: This paragraph does not contain any purported fact in violation of L.Civ.R. 56.1 that the statement only set forth those "material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."

　　　2.　　Plaintiff is the owner of property located in the Borough of Emerson that has been approved for construction of a 147 Unit, four-story mixed-use development (the "Project") that

includes 29 low- and moderate-income housing units (See First Amended Complaint, ¶ 1, annexed to the Certification of Christopher C. Botta as Exhibit A).

RESPONSE: Admitted.

3. The Plaintiff and the Borough entered into a Redevelopment Agreement on December 20, 2016 (the "Redevelopment Agreement") in connection with the Project. (See First Amended Complaint, ¶ 1, annexed to the Certification of Christopher C. Botta as Exhibit A).

RESPONSE: Admitted.

4. Plaintiff, in response to the dismissal of its Complaint without prejudice by Judge Madeline Cox Arelo on February 23, 2021, asserted in its First Amended Complaint, in words only with no evidence presented, that the Borough, through its interaction with the Plaintiff, had a racial animus and engaged in actions designed to prevent racial integration of the Borough. (See First Amended Complaint, ¶ 5 & ¶ 12, annexed to the Certification of Christopher C. Botta as Exhibit A).

RESPONSE: Admit that the Complaint asserted racial animus, among other things. Plaintiff objects to the legal conclusion, which is improper under L.Civ.R. 56.1, that Plaintiff was obligated to provide "evidence" at the pleading stage.

5. Nowhere in the First Amended Complaint nor the extensive discovery record is there any factual evidence or overt action/inaction that even remotely connects the legitimate concerns and contractual disputes between the parties to any racial animus on the part of the Borough defendants.

RESPONSE: Denied. The record contains a history of "palpably invidious discrimination" as found by Courts, Fiorenzo Cert. Exs. 4, 3; repeated statements by DiPaola that she sought to block affordable housing, Exs. 26 (DiPaola urging "the governing body, out of respect to the voters, take no further action [on redevelopment] until January," and "questioned where additional affordable housing is expected to go."), Ex. 37 (DiPaola telling others "We're trying to scale this back," with reference to the project), Ex 29 ("[This was] a one-issue election, and it was a referendum on the development of Block 419 in our downtown."); Ex. 15 ("[DiPaola] asked what would happen if more affordable housing had to be made available just to make ends meet and then there were more children. She said that in that case, Emerson would be stuck in a 30 year agreement with a redeveloper and the Borough would be bleeding because funds had to be given to the school system to sustain the children."), Ex. 96 (DiPaola claiming Emerson "has lost 'seven of its thriving businesses due to redevelopment in the name of affordable housing.' In order to get 29 affordable housing units, Emerson "lost seven businesses so far. Two others are still open and they're fighting for their lives.'"); and the Bernard Report, which opines that, considering the available housing stock and demand from African-American and Hispanic communities, delays by Emerson in construction of the Project (if proved) have a disproportionate and discriminatory impact on minorities, Fiorenzo Cert. Ex. 1, 9-11.

6. Plaintiff has produced an expert report from Art Bernard, P.P., entitled "Impact of Exclusionary Zoning in Emerson". (See Report, annexed to the Certification of Christopher C. Botta as Exhibit B). This report concludes: "I understand that ERUR asserts that the Borough's current leadership has attempted to block this construction. As discussed above, Emerson's exclusionary zoning has, in my opinion, to a reasonable degree of certainty in the field, had a disproportionate impact on African-American and Hispanic households; and delays in the

construction of the 29 low and moderate income units at issue in this matter, will continue the exclusionary status quo." See Bernard Report, page 10.

RESPONSE: Admit.

7. The only document reviewed by Mr. Bernard in preparation of his report was the "2017 - 2021 American Community Survey, published by the United Census Department." See Bernard Report, page 2.

RESPONSE: Denied. Nothing in the report's description of certain data "reviewed" suggested that this was exclusive or that the expert did not review, or was not aware, of other facts and information. Fiorenzo Cert. Ex. 1, at 2. Indeed, the report footnotes other sources, decisions, and treatises, *id.* at n.1-5, and discusses others in the body of the report, id. at 3-5. Tellingly, Defendants did not depose the expert and ask whether the information he reviewed, and was known to him, was limited to the Survey, and they can point to no testimony or evidence of same.

8. Mr. Bernard did not review any discovery in the litigation, did not review testimony or statements of any Borough witness, did not review testimony or statements of any of Plaintiff's witnesses, did not review voluminous documents produced in discovery, and did not review any zoning ordinances or records of the Borough of Emerson before making his declaration that any delay in construction of low and moderate income units would impact African American and Hispanic households disproportionately to other low and moderate income households. See Bernard Report, page 2.

RESPONSE: Denied. *See* Response to SUMF ¶ 7. Regardless, that the expert was asked to assume that Plaintiff would present proofs at trial that Emerson engaged in actions to block the

Project and to opine as to the impact and inferences, if any, that could be drawn with respect to minority communities, does not suggest he did not review relevant documents. *See Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008) (holding expert can testify to hypothetical based on assumed facts, "so long as those assumed facts are reasonably based on the evidence in the record" at trial). The expert is not offering opinions as to, factually, what conduct the Borough engaged in or their mental processes, but the effect of Emerson blocking of the Project (if proved by Plaintiff) on a race or class-based community. Fiorenzo Cert. Ex. 1, 9-10.

9. Mr. Bernard's report does not reference any specific examples, instances or factual support of racial animus by the Borough or any Borough officials. See Bernard Report.

RESPONSE: Denied. The report provides facts and data indicating that African-American and Hispanic households rely on rental stock a significant percentage more than white households, including in Emerson. Fiorenzo Cert. Ex. 1, at 8. It notes Emerson has a homogenous housing stock with comparatively few rental units and many single-family homes. *id.* at 9. Unsurprisingly, then, the percentage of African-American or Hispanic families living in Emerson is significantly less than the larger community, comprised of Housing Region 1. *Id*. at 10. Despite demand from minority communities, since Round III began, Emerson had not built a new unit of affordable housing. *Id.* Indeed, as of the filing of this suit, Emerson had admitted notes "no affordable units have been physically rehabilitated or constructed within the Borough." Fiorenzo Cert. Ex. 61. Plaintiff admits that the expert report does not assert, factually, what conduct the Borough engaged in or its members' mental processes. Assuming Plaintiff is able to prove the Project was, factually, delayed by Emerson, the expert opines that such delay "had a disproportionate impact on African-American and Hispanic households; and delays in the construction of the 29 low and moderate income units, at issue in this matter, will continue the

exclusionary status quo." Fiorenzo Cert. Ex. 1, at 10. Plaintiff's expert concludes that, based on the available date, if the 29 units required were built, demand from "African-Americans and Hispanics [that would be] occupying the affordable units within the ERUR community will be much more representative of the percentage of these minority populations currently living in the housing region." Because the 29 units have been delayed ( if proved by Plaintiff), there is only a "very low percentage of African-Americans and Hispanics currently living in Emerson." Fiorenzo Cert. Ex. 1, at 11.

10. Defendants have produced an expert planning report, prepared by the Preferred Planning Group, dated November 9, 2023, which cites to various and numerous primary sources, and concludes, among other things, that the Borough is making substantial progress in advancing diversity and rental housing opportunity. (See Report entitled "Expert Planning Rebuttal Report Prepared for Defendants", dated November 9, 2023, annexed to the Certification of Christopher C. Botta as Exhibit C).

RESPONSE: Plaintiff admits that Defendants have served an expert report contesting the facts and opinions of Plaintiff's expert. Plaintiff denies the other characterizations in this paragraph, which are improper under L.Civ.R. 56.1 because they do not cite "material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."

11. The Defendants' planning expert report further opines and concludes: In conclusion, the Bernard Report fails to recognize the substantial number of affordable housing units already built in the community and the fact that the Borough's land use policies comply with the Mt. Laurel doctrine and Fair Housing Act. Although a fully developed community, the Borough has effectuated a variety of affordable housing, including supportive living

arrangements and rental housing, to continue its upward trajectory on diversity in the racial composition of residents and housing types. Therefore, we see no evidence of Plaintiff's assertion of Defendant's goal "to prevent racially diverse minorities from moving into Emerson, which Defendants connect to Mt. Laurel low-income housing". See Preferred Planning Group Report, page 3.

RESPONSE: Plaintiff admits that Defendants' expert report makes such claims, contesting the facts and opinions of Plaintiff's expert. Plaintiff denies the other characterizations in this paragraph, which are improper under L.Civ.R. 56.1 because they do not cite "material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."

12. On March 16, 2021, in response to competing Motions to Aid Litigant's Rights by the parties in State Court, New Jersey Superior Court Judge Gregg Padovano, J.S.C. ordered that a "Mt. Laurel Implementation Monitor" be appointed to oversee the issues surrounding the Redevelopment Agreement and the Borough compliance with its Mt. Laurel obligations. (See Judge Padovano's March 16, 2021 Order, annexed to the Certification of Christopher C. Botta as Exhibit D).

RESPONSE: Admitted.

13. The entry of the Judge Padovano's Order in State Court is consistent with the Choice of Law provision at Paragraph 14.12 of the Redevelopment Agreement between the parties, which states, "This Agreement shall be governed by and construed by the laws of the State of New Jersey. Any legal action filed in this matter shall be heard in Superior Court of New

Jersey, Bergen County Vicinage." (See Redevelopment Agreement, dated June 14, 2016, annexed to the Certification of Christopher C. Botta as Exhibit E).

RESPONSE: Denied. Judge Padovano's order does not reference anything about choice of law, forum selection, or this Action. Plaintiff admits that Defendant has quoted the Redevelopment Agreement. Botta Ex. C.

14. Defendant files this Motion for Summary Judgement seeking to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 56 since there are no material facts at issue that would allow a recovery or remedy under Federal law.

RESPONSE: This paragraph does not contain any purported fact in violation of L.Civ.R. 56.1 that the statement only set forth those "material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."

                                                    **SILLS CUMMIS & GROSS P.C.**
                                                    **Joseph B. Fiorenzo, Esq. (021421980)**
                                                    One Riverfront Plaza
                                                    Newark, NJ 07102
                                                    (973) 643-7000
                                                    *Attorneys for Emerson Redevelopers Urban Renewal, LLC*

                                                    *s/Joseph B. Fiorenzo*
                                                    Joseph B. Fiorenzo

Dated: October 28, 2024