## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERSON REDEVELOPERS URBAN RENEWAL, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**THE BOROUGH OF EMERSON, NEW JERSEY, AND DANIELLE DIPAOLA,**<br><br>Defendants. | Civil Action No.: 2:20-cv-04728 |

## REPLY BRIEF ON BEHALF OF DEFENDANT, DANIELLE DIPAOLA, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

THE LAW OFFICES OF RICHARD MALAGIERE
A PROFESSIONAL CORPORATION
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
Tel: (201) 440-0675
Attorneys for Defendant, Danielle DiPaola

Richard Malagiere
    Of Counsel
Leonard E. Seaman
Richard Malagiere
    On the Brief

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ..................................................................................... ii

LEGAL ARGUMENT ...........................................................................................1

     I.  PLAINTIFF FAILED TO PRESENT ANY EVIDENCE THAT MAYOR DIPAOLA'S LAND USE DECISIONS WERE MOTIVAITED BY RACIAL ANIMUMS .................................................................................1

     II.  MAYOR DIPAOLA'S POLICTICAL MOTIVATION FOR OPPOSING THE PROJECT IS NOT CONSCIOUS SHOCKING CONDUCT ..........5

CONCLUSION .....................................................................................................7

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1201 W. Girard Ave., LLC v. Clarke*,
No. 23-3194, 2024 U.S. App. LEXIS 25131 (3d Cir. Oct. 4, 2024)...............6

*Aman v. Cort Furniture Rental Corp.*,
85 F.3d 1074 (3d Cir. 1996) ........................................................................1, 2

*Button v. Snelson*,
679 F. App'x 150 (3d Cir. 2017) ......................................................................5

*UA Theatre Circuit v. Twp. of Warrington*,
316 F.3d 392 (3d Cir. 2003)) ...........................................................................5

## LEGAL ARGUMENT

### I. PLAINTIFF FAILED TO PRESENT ANY EVIDENCE THAT MAYOR DIPAOLA'S LAND USE DECISIONS WERE MOTIVATED BY RACIAL ANIMUS

When it denied, in part, defendants' second motion to dismiss, this Court established plaintiff's mission to put forth a colorable claim. "Plaintiff will ultimately need to produce **evidence** showing that Defendants' land use decisions were motivated by racial animus, as opposed to a mere reluctance to comply with state law or a general dislike of large residential buildings" (ECF No. 36 at 4, fn. 6) (emphasis added). Plaintiff's opposition to this motion for summary judgment concedes that no such direct evidence exists.

Rather, plaintiff suggests only that a jury could infer that Mayor DiPaola's land use decisions were motivated by racial animus "from conduct or coded language" (Pb at 17 *citing Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3d Cir. 1996). But that inference can only be drawn when those statements "send a clear message and carry the distinct tone of racial motivations and implications." *Aman,* 85 F.3d at 1083.

Plaintiff cites only two instances where Mayor DiPaola used purportedly coded language from which it claims such an inference might be drawn. First, when—as a member of the Borough council—then Councilwoman DiPaola posed a hypothetical question to an attorney who was addressing how the PILOT

("Payment in Lieu of Taxes") agreement with the redeveloper would operate (Certification of Joseph B. Fiorenzo, Esq., Exhibit 15), and, second, through a newspaper article relating comments she made to the local chamber of commerce (Fiorenzo Certif., Exhibit 96). Neither of these purported comments "send[s] a clear message" of racial animus on Mayor DiPaola's part, nor do they "carry the distinct tone of racial motivations [or] implications." *Aman,* 85 F.3d at 1083.

In the first instance, plaintiff lifts a single word from Mayor DiPaolo's question ("bleeding"). Then truncates that word and works it into plaintiff's baseless and context-free interpretation of the discussion to argue that, through this single comment, Mayor DiPaola "[r]epeatedly stoked the fear that affordable housing would generate an undesirable population that would harm businesses and schools and 'bleed[]' funds from the purportedly real residents to 'sustain [their] children'" (Db at 19-20). The full context of the cited remarks makes it clear that nothing in Mayor DiPaola's comment sends any message of racial animus (let alone a clear one) nor does it convey any tone of racial motivation or implication (distinct or otherwise.)

Rather, during the January 17, 2017 meeting of the mayor and council, Matt Karrenberg, Esq. "was present to answer questions related to payments in lieu of taxes, better known as PILOT agreements" (Fiorenzo Certif., Exhibit 15 at 5, ECF No. 84-3, p. 35). After he explained the financial structure of the PILOT and

2

distribution of payments to the Borough, the school district, and the county, the minutes reflect Mayor DiPaolo's comments as:

> **Councilwoman DiPaola** said the numbers sounded great but **<u>questioned</u> what would happen <u>if</u>** the development turned into a big white elephant and **they were not getting the anticipated revenue or could not sustain the rents they anticipated**. She asked what would happen **<u>if</u> more affordable housing had to be made available** just to make ends meet **and then there were more children**. She said that **<u>in that case</u>**, Emerson would be **stuck in a 30 year agreement** with a redeveloper **and** the Borough **would be bleeding because funds had to be given to the school system to sustain the children**.

> [Fiorenzo Certif., Exhibit 15 at 7, ECF No. 84-3, p. 37 (emphasis added).]

Thus, when the word cited by plaintiff—bleeding—is considered in the context of the full comment, the inference that plaintiff asks the Court to draw is untenable. Mayor DiPaolo raised a concern about what might occur *if* the project failed to draw the expected number of market rate units which then *might* bring more school aged children into the community. This hypothetical exercise said nothing about any part of the population being undesirable nor did it characterize any resident as less real than another.

Likewise, in the newspaper article the unattributed author relays statements Mayor DiPaola allegedly made to the local chamber of commerce about the project's impact on local businesses (Fiorenzo Certif., Exhibit 96, ECF No. 84-4,

pp. 241-43). Her concerns, grounded in the project's impact on the business community—a prime concern of her audience—and parking and traffic. These were not "code words" or "racist tropes" that could support in inference of some hidden motivation. Rather, defendant argues—without any evidence—that the project was delayed because of racial bias because that is its only path to recovery in this action.

Similarly, plaintiff's heavy reliance on state court determinations handed down long before Mayor DiPaola took office and references to actions undertaken to allegedly delay the project fail to sustain plaintiff's obligation to show that these actions were taken at Mayor DiPaola's direction let alone that such a direction was motivated by the potential racial background of the occupants of the 29 low- and moderate-income families who will reside within the 147-unit project.

Plaintiff's proofs of any racial animus on Mayor DiPaola's part are woefully lacking. In truth, they are non-existent. Plaintiff has no credible evidence that it can put before the jury from which it would ever find conscious shocking racial animus. Under plaintiff's interpretation, any public official who offers criticism—however valid—of a redevelopment scheme with an affordable housing component can be accused of an alternative, unstated but implied, racist motive and be subjected to a jury trial on a substantive due process claim. Allowing this would dilute the shocks the conscious standard out of existence and undo the Third

4

Circuit's admonition to keep federal courts "from being cast in the role of a zoning board of appeals." *Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) (*quoting UA Theatre Circuit v. Twp. of Warrington,* 316 F.3d 392, 400, 402 (3d Cir. 2003))

## II. MAYOR DIPAOLA'S PURPORTED POLITICAL MOTIVATION FOR OPPOSING THE PROJECT IS NOT CONSCIOUS SHOCKING CONDUCT.

Plaintiff also tries to equate Mayor DiPaola's purported political motivation in opposing the project with conscious shocking behavior as a form of corruption or self-dealing, arguing that she placed her "personal political benefit over the law" (Pb at 24).

Yet, in an analogous situation, the Third Circuit affirmed the dismissal of a developer's claim against Darrell L. Clarke, the president of the Philadelphia City Council, whose opposition to a project before the city's zoning board resulted the loss of construction permits even though Clarke admitted that his challenge "might not necessarily have anything to do with the zoning." *1201 W. Girard Ave., LLC v. Clarke*, No. 23-3194, 2024 U.S. App. LEXIS 25131, at *2 (3d Cir. Oct. 4, 2024) (cleaned up). The plaintiff argued that Clarke "advocated against the permits to curry favor with voters." *Id.* at *4. But the Third Circuit flatly rejected that this contention rose to a conscious shocking, substantive due process violation declaring "this does not constitute 'self-dealing.' If pleasing voters were suspect,

so would be the concept of representative democracy." *Ibid.* Moreover, because Clarke, like Mayor DiPaola here, "was not seeking reelection" the Third Circuit concluded that plaintiff's "argument holds no water." *Ibid.*

Mayor DePaolo is unequivocally on the record opposing plaintiff's project. Her reasons include the building size being increased to four stories ((Declaration of Leonard E. Seaman, 9/12/2024, Exhibit A, Deposition of Danille DiPaola, 4/26/2023 ("DiPaola 1T"), 1T 68-18 to 23, 85-22 to 24) making it "too big" so it "didn't fit into [the Borough's] downtown" (DiPaola 1T 85-19 to 21), because it was too dense (DiPaola 1T 70-1 to 5; 84-18 to 22; 85-14 to 16), and because it required the use of eminent domain (DiPaola 1T 75-13 to 15; 85-17 to 18).

Her legitimate concerns have stuck a chord with voters leading to her election as mayor. Nevertheless, her political success does not amount to self-dealing or corruption that shocks the conscience or supports plaintiff's substantive due process claim. Plaintiff's allegations here are not sufficient to overcome defendants' summary judgment motions.

## **CONCLUSION**

For the reasons set forth above, it is respectfully submitted that summary judgment is appropriate and the remaining claims against Mayor DiPaola should be dismissed with prejudice.

s/ Leonard E. Seaman
Richard Malagiere
Leonard E. Seaman
THE LAW OFFICES OF RICHARD
MALAGIERE, PC
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
(201) 440-0675
rm@malagierelaw.com
les@malagierelaw.com
Attorneys for Defendant, Danielle DiPaola
Dated: November 18, 2024